Law Offices of Albert J. Rescinio, L.L.C.
1500 Allaire Avenue - Unit #101
Ocean Township, New Jersey  07712
Telephone:   (732) 531-2005
Telefax:       (732) 531-8009
By:     Albert J. Rescinio, Esq. (ID#034331989)
Attorneys for Plaintiff David M. Greco, *individually and on behalf of others similarly situated*

## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF NEW JERSEY
### TRENTON VICINAGE

------------------------------------------------------X

| | |
|---|---|
| **David M. Greco,** | Civil Action No. _____ |
| *individually and on behalf of others similarly situated,* | |
| | |
| ***Plaintiff,*** | |
| | |
| *vs.* | |
| | |
| (1)  **Gurbir S. Grewal,** | |
|     *New Jersey Attorney General;* | |
| (2)  **Jared M. Maples,** | |
|     *Director, New Jersey Office of Homeland Security* | |
|     *and Preparedness;* | |
| (3)  **New Jersey Office of Homeland Security** | |
|     **and Preparedness,** | |
|     *a Cabinet Level Department of the State of* | |
|     *New Jersey;* | |
| (4)  **Camden County Prosecutor's Office;** | |
|     *a municipal entity of the State of New Jersey,* | |
| (5)  **Jill S. Mayer,** | ***Civil Action:*** |
|     *Acting Camden County Prosecutor;* | |
| (6)  **Nevan Soumais,** | **VERIFIED CLASS ACTION** |
|     *Assistant Camden County Prosecutor;* | **COMPLAINT AND JURY DEMAND** |
| (7)  **Gloucester Township Police Department,** | |
|     *a Municipal entity of the State of New Jersey,* | |
| (8)  **Bernard John Dougherty,** | |
|     *Detective, Gloucester Township Police* | |
|     *Department;* | |
| (9)  **Nicholas C. Aumendo,** | |
|     *Patrolman, Gloucester Township Police* | |
|     *Department;* | |
| (10)  **Donald B. Gansky,** | |
|     *Detective Sergeant, Gloucester Township* | |

|  |  |
|---|---|
| *Police Department;* | : |
| **(11) William Daniel Rapp,** | : |
| *Detective, Gloucester Township Police* | : |
| *Department;* | : |
| **(12) Brian Anthony Turchi,** | : |
| *Patrolman, Gloucester Township Police* | : |
| *Department;* | : |
| **(13) "JOHN DOE #1"** | : |
| *(a fictitious name); and* | : |
| **(14) "JOHN DOES 2 -10"** | : |
| *(fictitious names),* | : |
|  | : |
| ***Defendants.*** | : |

-------------------------------------------------------------X

Plaintiff David M. Greco, individually and on behalf of others similarly situated, by way of Verified Class Action Complaint and Jury Demand against the named Defendants, say as follows:

## I.   JURISDICTION AND VENUE:

### A.   Jurisdiction:

1.   Jurisdiction to entertain Plaintiff's Federal Constitutional legal claims is conferred on the United Sates District Court pursuant to 28 *U.S.C.* §1331.   Jurisdiction to entertain Plaintiff's New Jersey State Law Claims is conferred pursuant to 28 *U.S.C.* §1367. Authority to grant the Plaintiffs' claims for declaratory and injunctive relief is authorized by 28 *U.S.C.* §2201 and 28 *U.S.C.* §2202 ("Federal Declaratory Judgments Act"), *Rule* 57 (Declaratory Relief) and *Rule* 65 (Injunctions) of the *Federal Rules of Civil Procedure,* by *L.Cv.R.* 65.1 of the *Rules of the United States District Court for the District of New Jersey* and by general legal and equitable powers of this Court. Cumulatively and   / or alternatively, Plaintiffs' claims for declaratory and injunctive relief against the New Jersey State Actor Defendants is conferred pursuant to 28 *U.S.C.* §1367 and *N.J.S.A.* 2A:16-50 to -62 ("New Jersey Declaratory Judgments Act").

**B.**   **Venue:**

2. Venue is proper in the District of New Jersey, Trenton Vicinage, pursuant to 28 *U.S.C.* §1391.

## II. THE PARTIES:

3. Plaintiff David M. Greco ("Plaintiff"), individually and on behalf of others similarly situated, is a citizen of the United States and a resident of the Township of Gloucester in the County of Camden and State of New Jersey. Plaintiff's specific address is 246 Orchard Avenue, Gloucester Township, New Jersey  08012. Plaintiff is now or in the past was the lawful holder and owner of (1) a firearms purchaser identification card issued by the State of New Jersey, (2) a permit to purchase a handgun issued by the State of New Jersey, and (3) the owner or possessor of a firearm and handgun.

4. Defendant Gurbir S. Grewal (hereinafter "Defendant Grewal") is sued in his official capacity as the New Jersey Attorney General. In his capacity as the New Jersey Attorney General, under New Jersey State law Defendant Grewal is the chief law enforcement officer of the State of New Jersey and is responsible for and charged with primary authority for implantation and administration of all criminal laws and all civil laws generally, and therefore is specifically primarily responsible for the implementation and administration of the *"New Jersey Extreme Risk Protective Order Act of 2018"* (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, which was passed into law by the New Jersey State Legislature, and signed into law by the New Jersey Governor, on June 13, 2018, which went into effect fifteen months later on September 1, 2019. This Defendant is a "… *person …*" who was at all times relevant acting "… *under color of State Law …*" and in accordance with and furtherance of an "…*ordinance, regulation, custom, or usage …*" all

within the meaning of 42 *U.S.C.* §1983.  This Defendant's address and / or principle place of business is located at R.J. Hughes Justice Complex, Trenton, New Jersey 08611.

5.     Defendant Jared M. Maples (hereinafter "Defendant Maples") is sued in his official capacity as the Director of the "New Jersey Office of Homeland Security and Preparedness".  This Defendant is a "… *person* …" who was at all times relevant acting "… *under color of State Law* …" and in accordance with and furtherance of an "…*ordinance, regulation, custom, or usage* …" all within the meaning of 42 *U.S.C.* §1983.  This Defendant's address and / or principle place of business is located at 1200 Negron Drive, Hamilton, New Jersey 08691.

6.     Defendant New Jersey Office of Homeland Security and Preparedness (hereinafter "Defendant NJ Homeland Security") is a Cabinet Level Department of the State of New Jersey created by Executive Order #5 (2006) on March 16, 2006.  Defendant NJ Homeland Security is empowered to administer, coordinate, lead, and supervise New Jersey's counter-terrorism and preparedness efforts with all other Federal and State Law Enforcement Authorities.  This Defendant is a "… *person* …" who was at all times relevant acting "… *under color of State Law* …" and in accordance with and furtherance of an "…*ordinance, regulation, custom, or usage* …" all within the meaning of 42 *U.S.C.* §1983.  This Defendant's address and / or principle place of business is located at 1200 Negron Drive, Hamilton, New Jersey 08691.

7.     Defendant Camden County Prosecutor's Office (hereinafter Defendant Camden Prosecutor's Office) is a municipal entity of the State of New Jersey and is charged as the chief law enforcement agency in the County of Camden, State of New Jersey, which operates under the supervision of and in consultation with Defendants Grewal, Maples and NJ Homeland Security.  In such capacity this Defendant is designated by law, within

the County of Camden, with authority for implantation and administration of the "*New Jersey Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, which was passed into law by the New Jersey State Legislature, and signed into law by the New Jersey Governor, on June 13, 2018, which went into effect fifteen months later on September 1, 2019. This Defendant is a "... *person* ..." who was at all times relevant acting "... *under color of State Law* ..." and in accordance with and furtherance of an "...*ordinance, regulation, custom, or usage* ..." all within the meaning of 42 *U.S.C.* §1983. This Defendant's address and / or principle place of business is located at 200 Federal Street, Camden, New Jersey 08103.

8.    Defendant Jill S. Mayerm, Acting Camden County Prosecutor (hereinafter "Defendant Mayrem") is the head of the Camden County Prosecutor's Office. Defendant Mayrem is the chief law enforcement officer in the County of Camden, State of New Jersey, who operates under the supervision of and in consultation with Defendants Grewal, Maples and NJ Homeland Security. In such capacity this Defendant is designated by law, within the County of Camden, with authority for implantation and administration of the "*New Jersey Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, which was passed into law by the New Jersey State Legislature, and signed into law by the New Jersey Governor, on June 13, 2018, which went into effect fifteen months later on September 1, 2019. This Defendant is a "... *person* ..." who was at all times relevant acting "... *under color of State Law* ..." and in accordance with and furtherance of an "...*ordinance, regulation, custom, or usage* ..." all within the meaning of 42 *U.S.C.*

§1983.  This Defendant's address and / or principle place of business is located at 200 Federal Street, Camden, New Jersey  08103.

9.      Defendant Nevan Soumails, Assistant Camden County Prosecuter (hereinafter "Defendant Soumails") is an Assistant Prosecutor in the Camden County Prosecutor's Office.  At all times relevant Defendant Soumails was ostensibly taking official action in furtherance of the "*New Jersey Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, which was passed into law by the New Jersey State Legislature, and signed into law by the New Jersey Governor, on June 13, 2018, which went into effect fifteen months later on September 1, 2019.  This Defendant is a "… *person* …" who was at all times relevant acting "… *under color of State Law* …" and in accordance with and furtherance of an "…*ordinance, regulation, custom, or usage* …" all within the meaning of 42 *U.S.C.* §1983.  This Defendant's address and / or principle place of business is located at 200 Federal Street, Camden, New Jersey  08103.

10.     Gloucester Township Police Department (hereinafter "Defendant Gloucester Township Police Department") is a municipal entity of the State of New Jersey is charged as the chief law enforcement agency in the Township of Gloucester, County of Camden, and State of New Jersey.  Defendant Gloucester Police Department operates under the supervision of and in consultation with Defendants Grewal, Maples, NJ Homeland Security, Camden Prosecutors Officer, Mayerm, and Soumails.  In such capacity this Defendant is designated by law, within the Township of Gloucester, with authority for implantation and administration of the "*New Jersey Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, which was passed into law by the New Jersey State

Legislature, and signed into law by the New Jersey Governor, on June 13, 2018, which went into effect fifteen months later on September 1, 2019. This Defendant is a "... *person* ..." who was at all times relevant acting "... *under color of State Law* ..." and in accordance with and furtherance of an "...*ordinance, regulation, custom, or usage* ..." all within the meaning of 42 *U.S.C.* §1983. This Defendant's address and / or principle place of business is located at 1261 Chews Landing Road, Clementon, New Jersey 08021.

11.  Defendant Bernard John Dougherty (hereinafter "Defendant Dougherty") is a Detective with the Defendant Gloucester Township Police Department. At all times relevant Defendant Dougherty was ostensibly taking official action in furtherance of the "*New Jersey Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, which was passed into law by the New Jersey State Legislature, and signed into law by the New Jersey Governor, on June 13, 2018, which went into effect fifteen months later on September 1, 2019. This Defendant is a "... *person* ..." who was at all times relevant acting "... *under color of State Law* ..." and in accordance with and furtherance of an "...*ordinance, regulation, custom, or usage* ..." all within the meaning of 42 *U.S.C.* §1983. This Defendant's address and / or principle place of business is located at 1261 Chews Landing Road, Clementon, New Jersey 08021.

12.  Defendant Nicholas C. Aumendo (hereinafter "Defendant Aumendo") is a Patrolman with Defendant Gloucester Township Police Department. At all times relevant Defendant Aumendo was ostensibly taking official action in furtherance of the "*New Jersey Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32,

which was passed into law by the New Jersey State Legislature, and signed into law by the New Jersey Governor, on June 13, 2018, which went into effect fifteen months later on September 1, 2019.  This Defendant is a "… *person* …" who was at all times relevant acting "… *under color of State Law* …" and in accordance with and furtherance of an "…*ordinance, regulation, custom, or usage* …" all within the meaning of 42 *U.S.C.* §1983.  This Defendant's address and / or principle place of business is located at 1261 Chews Landing Road, Clementon, New Jersey  08021.

13.     Defendant Donald B. Gansky (hereinafter "Defendant Gansky") is a Detective Sergeant with the Defendant Gloucester Township Police Department.  At all times relevant Defendant Gansky was ostensibly taking official action in furtherance of the "*New Jersey Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, which was passed into law by the New Jersey State Legislature, and signed into law by the New Jersey Governor, on June 13, 2018, which went into effect fifteen months later on September 1, 2019.  This Defendant is a "… *person* …" who was at all times relevant acting "… *under color of State Law* …" and in accordance with and furtherance of an "…*ordinance, regulation, custom, or usage* …" all within the meaning of 42 *U.S.C.* §1983.  This Defendant's address and / or principle place of business is located at 1261 Chews Landing Road, Clementon, New Jersey  08021.

14.     Defendant William Daniel Rapp (hereinafter "Defendant Rapp") is a Detective with Defendant Gloucester Township Police Department.  At all times relevant Defendant Rapp was ostensibly taking official action in furtherance of the "*New Jersey Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, which was passed into

law by the New Jersey State Legislature, and signed into law by the New Jersey Governor, on June 13, 2018, which went into effect fifteen months later on September 1, 2019. This Defendant is a "... *person* ..." who was at all times relevant acting "... *under color of State Law* ..." and in accordance with and furtherance of an "...*ordinance, regulation, custom, or usage* ..." all within the meaning of 42 *U.S.C.* §1983. This Defendant's address and / or principle place of business is located at 1261 Chews Landing Road, Clementon, New Jersey 08021.

15.    Defendant Brian Anthony Turchi (hereinafter "Defendant Turchi") is a Patrolman with Defendant Gloucester Township Police Department. At all times relevant Defendant Turchi was ostensibly taking official action in furtherance of the "*New Jersey Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, which was passed into law by the New Jersey State Legislature, and signed into law by the New Jersey Governor, on June 13, 2018, which went into effect fifteen months later on September 1, 2019. This Defendant is a "... *person* ..." who was at all times relevant acting "... *under color of State Law* ..." and in accordance with and furtherance of an "...*ordinance, regulation, custom, or usage* ..." all within the meaning of 42 *U.S.C.* §1983. This Defendant's address and / or principle place of business is located at 1261 Chews Landing Road, Clementon, New Jersey 08021.

16.    Defendant "JOHN DOE #1" (a fictitious name) is a name for the yet to be identified person(s) who anonymously identified themselves on September 5, 2019 only with the pseudonym(s) "*NEW JERSEY HOMELAND SECURITY*" and "*PDPACE2*" as the official applicant on the "Petition for Temporary Extreme Risk Protective Order" submitted to the Municipal Court of the Township of Gloucester in the County of Camden, on

September 6, 2019 at 3:30 p.m., Petition Number 045XTR2019000001 (true copy attached hereto at "Exhibit D").

17. Defendant "JOHN DOES 2 -10" (fictitious names) are fictitious names for yet to be identified persons or entities that participated and / or conspired with the other named Defendants to violate Plaintiffs Federal Constitutional Rights.

### III. THE PROPOSED *RULE* 23(b)(3) CLASS:

18. Plaintiff individually, and on behalf of others similarly situated, hereby proposes a *F.R.Civ.P.* 23(b)(3) "Class" defined as follows: "*Any resident of the State of New Jersey, or any person within the jurisdiction of the laws of the State of New Jersey, who is now presently or in the past was either the lawful holder and owner of (1) a firearms purchaser identification card issued by the State of New Jersey, (2) a permit to purchase a handgun issued by the State of New Jersey, (3) a permit to carry a handgun issued by the State of New Jersey; (4) an active duty or retired law enforcement officer who is otherwise authorized to carry a handgun by the laws of the State of New Jersey, or (5) the lawful owner or lawful possessor of a firearm and / or handgun within the jurisdiction of the laws of the State of New Jersey.*"

### IV. THE FACTS:

**A.    Facts Common to the Proposed Class:  The "*New Jersey Extreme Risk Protective Order Act of 2018*" and the Mandatory Requirement that a Search Warrant be Issued by a State Court if the Legal Standard of "Good Cause" is Satisfied:**

19. On June 13, 2018 the "*New Jersey Extreme Risk Protective Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, was passed into law by the New Jersey State Legislature, and signed into law by the New Jersey Governor.  By literal terms, the EPRO Act was to go into effect fifteen months later on September 1, 2019.

20.     The EPRO Act, specifically *N.J.S.A.* 2C:58-21, defines "Petitioner" as follows: *"'Petitioner' means <u>a family or household member or law enforcement officer.</u>"* (emphasis added), *Id.* The ERPO Act also defines Law enforcement officer specifically as follows: *"'Law enforcement officer' means a person whose public duties include the power to act as an officer for the detection, apprehension, arrest, and conviction of offenders against the laws of this State."* *Id.* Similarly the ERPO Act defines Law enforcement agency as follows: *"'Law enforcement agency' means a department, division, bureau, commission, board or other authority of the State or of any political subdivision thereof which employs law enforcement officers."* *Id.*

21.     By simple statutory definitions, a "Petitioner" may be either (1) a "family member" of the respondent, or (2) a "household member" of the respondent, or (3) a "law enforcement ***officer***." (Emphasis added). There is no authority for a law enforcement ***agency*** to file a "Petition" under the ERPO Act.

22.     The EPRO Act, specifically *N.J.S.A.* 2C:58-23, authorizes, under certain circumstances, the issuance of a "Temporary Extreme Risk Protection Order" ("TERPO") on application of a "Petitioner". As a matter of procedure, a TERPO is sought using the following procedures and legal standards:

> \*\*\*
> A petitioner may apply for relief under this section in accordance with the Rules of Court.
> **b.**     A petition for a temporary extreme risk protective order ***shall include an affidavit*** setting forth the facts tending to establish the grounds of the petition, or the reason for believing that they exist, and, to the extent available, the number, types, physical description, and locations of any firearms and ammunition currently believed by the petitioner to be controlled or possessed by the respondent.
> **c.**     The court shall not charge a fee to file the petition.

> **d.** The court, before issuing a temporary extreme risk protective order, ***shall examine under oath the petitioner and any witnesses the petitioner may produce. The court, in lieu of examining the petitioner and any witnesses, may rely upon an affidavit submitted in support of the petition.*** (Emphasis added).

[*N.J.S.A.* 2C:58-23b, c & d].

23.    Pursuant to the cited law, when seeking a TERPO, a ***petitioner*** may submit an ***affidavit*** to a court, which shall not charge a filing fee, and the court shall then "*...examine under oath the petitioner and any witnesses the petitioner may produce.*" *Id.* Alternatively, the ***petitioner*** need not personally appear, and instead the court may "*... rely upon an affidavit submitted in support of the petition...*" when deciding whether to issue the TERPO.

24.    The EPRO Act itself does not define "Affidavit", but the *New Jersey Court Rules* quite specifically identify what is required in an "Affidavit", and provides as follows:

> **1:4-4.  Affidavits**
> **(a)**  Form.  Every affidavit shall run in the first person and be divided into numbered paragraphs as in pleadings.  The caption shall include a designation of the particular proceeding the affidavit supports or opposes and the original date, if any, fixed for hearing.  Ex parte affidavits may be taken outside the State by a person authorized to take depositions under *R.* 4:12-2 and *R.* 4:12-3.
> **(b)**  Certification in Lieu of Oath.  In lieu of the affidavit, oath or verification required by these rules, the affiant may submit the following certification which shall be dated and immediately precede the affiant's signature:  "I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment."
> **(c)**  Requirement for Original Signature.  Every affidavit or certification shall be filed with an original signature, except that a copy of an affidavit or certification may be filed instead, provided that the affiant signs a document that is sent by facsimile or in Portable Document Format (PDF), or similar format, by the affiant and provided that the attorney or party filing the copy of the affidavit or certification filed the original document if requested by the court or a party.

[*R.* 1:4-4(a), (b) & (c)].

25.   Quite clearly, as a threshold matter, an affidavit must be prepared over the name of an actual person who is certifying and attesting to the truth of the facts contained therein. *R.* 1:4-4(a), (b) & (c).   And for purposes of any "Petition" filed in accordance with the EPRO Act, by simple statutory definitions, the "Petitioner" must be either (1) a "family member" of the respondent, or (2) a "household member" of the respondent, or (3) a "law enforcement ***officer***." (Emphasis added).

26.   Moreover, *New Jersey Court Rule R.* 1:4-5 specifically provides that all pleadings (which clearly includes an "EPRO Petition" filed with the court) must be:

> … signed by the attorney of record or the attorney's associate or by a pro se party.  Signatures of a firm may be typed, followed by the signature of an attorney of the firm.  Signatures on any duplicate original or carbon copy required to be filed may be typed.  Every paper to be filed shall bear the date on which it was signed.

[*R.* 1:4-5].

27.   Once a "Petitioner" signs a "Petition" and submits an accompanying Affidavit or Certification, the court must then consider the application without giving any advanced notice to the Respondent and without affording the Respondent any opportunity to be heard at the hearing where the court determines whether to issue a TERPO.  At this point in the process, the court is by statute required to employ a "good cause" legal standard when determining whether to issue a TERPO as per *N.J.S.A.* 2C:58-23(e) which provides as follows:

> \*\*\*
>
> **e.**  A judge shall issue the order ***if the court finds good cause*** to believe that the respondent poses an immediate and present danger of causing bodily injury to the respondent or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm.  (Emphasis added).

[*N.J.S.A.* 2C:58-23(e)].

28.    In determining whether the Petitioner has met the legal "… *good cause* …" standard, the court considers the information provided by the Petitioner in the Petition by way of Affidavit or Certification and may consider additional sworn testimony, all in the context of the factors enumerated in *N.J.S.A.* 2C:58-23(f). If the court finds that there is legal "… *good cause to believe that the respondent poses an immediate and present danger of causing bodily injury to the respondent or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm* …" (emphasis added), the court "shall" issue a TERPO Order.

29.    Significantly, if the court finds "… *good cause* …" and issues the TERPO Order, and the Petition

> "… indicates that the respondent owns or possesses any firearms or ammunition, **the court shall issue a search warrant** with the temporary or final extreme risk protective order and the law enforcement officer who serves the order shall request that all firearms and ammunition immediately be surrendered. (Emphasis added).

[*N.J.S.A.* 2C:58-26(b)].

30.    Moreover, in addition to the mandatory requirement in *N.J.S.A.* 2C:58-26(b) that the court issue a "shall" issue a search warrant in conjunction with any TERPO if the respondent owns or possesses any firearms or ammunition, subsection (c) provides a cumulative and additionally - in theory discretionary and perhaps redundant - authorization for the issuance of a search warrant along with the issuance of any TERPO. That section of the statute provides as follows:

> The court which issued the protective order *may issue a search warrant* for a firearm or ammunition that is in the custody or control of, owned, or possessed by a respondent who is subject to a temporary or final protective order issued pursuant to section 4 or 5 of P.L. 2018, c. 35 (C.

> 2C:58-23 or C. 2C:58-24) if the respondent has lawfully been served with that order and has failed to surrender the firearm or ammunition as required by this section. (emphasis added).

[*N.J.S.A.* 2C:58-26(c)].

31.     While it is mandatory that if a TERPO - a civil order - is issued that a Search Warrant also shall automatically be issued, the EPRO itself does not itself anywhere specifically authorize the issuance of a so called "No-Knock" Search Warrant under any circumstances for this civil Search Warrant.  In *State v. Johnson*, 168 *N.J.* 608 (2001), and in the context of a criminal Search Warrant, the New Jersey Supreme Court held that (1) the imminent destruction of evidence, (2) the officer's peril, or (3) the frustration of the arrest, all remain viable possible exceptions to the "Knock and Announce Rule", the affidavit in support of the (there, criminal) Search Warrant must specifically and sufficiently articulate the basis to support a reasonable belief that one or more of these three exceptions applies to the circumstances.  *Id.* at 619 and 623.

32.     By operation of the "good cause" legal standard for the issuance of a TERPO found in *N.J.S.A.* 2C:58-23(f) considered in consort with the mandatory issuance of a "civil" Search Warrant required by *N.J.S.A.* 2C:58-26(b) and the discretionary right to issue a "civil" Search Warrant found in *N.J.S.A.* 2C:58-26(c), the statutory framework of the ERPO Act requires the issuance of a "civil" Search Warrant on a "good cause" legal standard.

33.     Both the Fourth Amendment to the *United States Constitution* made applicable to the States by virtue of the Fourteenth Amendment to the *United States Constitution*, and Article I, Paragraph 7 of the *New Jersey State Constitution* (1947), *as amended*, specifically require that for the State to issue any Search Warrant, that among other mandatory procedures and factors, the legal standard for determining whether to issue a

Search Warrant is the heightened legal standard of "Probable Cause" which is a much more strict legal standard that the much lesser mere "Good Cause" legal standard in the ERPO Act. Otherwise stated, on its face, the ERPO Act quite clearly violates the Fourth Amendment to the *United States Constitution* and Article I, Paragraph 7 of the *New Jersey State Constitution* (1947), *as amended.*

34.   In *Camera v. Municipal Court,* 387 *U.S.* 523, 538-539 (1967) the United States Supreme Court made it clear that the "probable cause" legal standard and requirement of the *United States Constitution's* Fourth Amendment applies not only to criminal searches but equally applies to civil and administrative searches conducted under the authority of a State. As such, the law was and is "clearly established" within the meaning of 42 *U.S.C.* §1983 that a (ostensible) "Civil" Search Warrant may not be issued by a State on a mere "good cause" legal standard which in the ERPO Act is literally mandated by the "good cause" standard for issuance of a TERPO in *N.J.S.A.* 2C:58-23(f) in consort with the mandatory issuance of a "civil" Search Warrant required by *N.J.S.A.* 2C:58-26(b) whenever a TERPO is issued.

35.   After the ERPO Act was enacted but before it went into effect, on July 24, 2019 the New Jersey Supreme Court issued their unrelated decision in *State v. Hemenway,* ___ *N.J.* ____ (2019) which addressing the Search Warrant provision in the New Jersey Domestic Violence Act, *N.J.S.A.* 2C:25-29(j) and reaffirmed the mandatory requirement of meeting the "probable cause" standard as Constitutionally required by both the Federal and State Constitution before any civil Search Warrant can be issued.

36.   On August 12, 2019 the New Jersey Administrative Office of the Courts issued "Directive #19-19" where at page 6 it was admitted that the mandatory Search Warrant Provisions in the ERPO Act (*N.J.S.A.* 2C:58-26(b)) that effectively requires a Search

Warrant to be issued on the much lesser "Good Cause" legal standard violated the Fourth Amendment to the *United States Constitution* and Article I, Paragraph 7 of the *New Jersey State Constitution* (1947), *as amended.* (*See* **True Copy of AOC "Directive #19-19 - MEMO on "Guidelines for Extreme Risk Protective Orders" at "Exhibit B" at page 6).**

37.     On August 15, 2015, Defendant Gurbir S. Grewal, New Jersey Attorney General, issued a formal MEMO entitled "Attorney General Directive Pursuant to the Extreme Risk Protective Order Act of 2018" where, acknowledging AOC "Directive #19-19 and agreeing that the ERPO Act was unconstitutional. (*See* **True Copy of August 15, 2015 "Attorney General Directive Pursuant to the Extreme Risk Protective Order Act of 2018" at "Exhibit C" at page2 17-18)**

38.     Rather than take action to delay implementation of the ERPO Act for the legislature to correct the admittedly unconstitutional provisions, the AOC and Defendant Attorney General issued ways to "construe" and "implement" the Act so as to make actions of State officials comport with required Constitutional Legal Standards.  However, such prophylactic measures are little more than changing the words and phrases in pre-printed forms from the unconstitutional "Good Cause" to the constitutional "Probable Cause" without any measures to actually assure, and to accurately document, that it is the separate heightened "Probable Cause" standard that is being met before the issuance of any Search Warrant in conjunction with a TERPO Order.

39.     The ERPO Act as written, specifically *N.J.S.A.* 2C:58-26(b), is facially unconstitutional. The AOC agrees, and the Defendant Attorney General agree - in writing. (*See* **Exhibit B" and "Exhibit C").**

40.   The ERPO Act,  as applied, even with the so called prophylactic measures where law enforcement and judges are advised to disregard what the ERPO Act says, is unconstitutional as being applied.

**B.   Facts Specific as to Plaintiff David M. Greco:**

41.   On September 5, 2019, 5 days after the EPRO Act went into effect, a "Petition for Temporary Extreme Risk Protective Order" was filed against Plaintiff (named in the Petition as the "Respondent") in the Gloucester Township, Camden County, New Jeseey Municipal Court by an unknown and yet to be identified person, Defendant "John Doe #1", who anonymously identified themselves on the Petition only with the pseudonym(s) *"NEW JERSEY HOMELAND SECURITY"* and *"PDPACE2"*.  **(A true copy of that Petition is attached hereto at "Exhibit D").**

42.   The actual form of Petition that was used was a new standard 3 page form issued by the New Jersey Administrative Office of the Courts pursuant to their "Directive #19-19".

43.   The Petitioner was listed only as "NEW JERSEY HOMELAND SECURITY" with an address of "1200 Negron Drive, Hamilton, New Jersey  08691", and with no Home Phone Number listed and a Work Phone Number listed of (609) 584-5051.  The only relationship to the Respondent listed was "PEPD-PETITIONER LAW ENFORCEMENT OFFICER".

44.   No name on any actual person was listed anywhere on the Petition, nor was any signature of any person included.  All information was typed in.  On page 2 under the "Certification" section where there was a place for the petitioner to sign their name and certify to the truth of the contents of the Petition, the name "NEW JERSEY HOMELAND SECURITY" was typed in.  On page 3 where the petitioner was also

required to sign their name, no signature is found and rather someont typed in

"PAPACE2". *(See* **"Exhibit D" at pages 2 and 3).**

45.   The Petition was captioned "In the Matter of, DAVID M. GRECO, Respondent", and

was assigned "Petition Number 0415 XTR 2019 000001, and stated verbatim on the first

page as follows:

> I am the Petitioner named below.  I believe Respondent poses an
> immediate and present danger of causing bodily injury to the
> Petitioner, the Respondent, or others by owning, possessing,
> purchasing or receiving firearms and/or ammunition.  I ask the
> court to grant a Temporary Extreme Risk Protective Order to
> prohibit Respondent from owning, possessing, or acquiring
> firearms and/or ammunition, and to order surrender of firearms
> and/or ammunition to a law enforcement agency.

*[See* **"Exhibit D" at pages 1].**

46.   On Page 2 of the Petition there is a short list of several (irrelevant) prior low level arrests

and/or charges and/or convictions, followed by a section where the petitioner was

directed to specifically "List any other information that may be relevant", where the

Petition contains the following information - *by its terms all apparently hearsay*

*information obtained from an unidentified person in the FBI* - added by the petitioner to

the Petition as follows:

> **INFORMATION   WAS   RECENTLY   OBTAINED,**
> **THROUGH  FBI  CONTACTS,  THAT  DAVID  GRECO  IS**
> **INVOLVED IN ONLINE ANTI-SEMITISM.  GRECO WAS**
> **FOUND  TO  BE  IN  CONTACT  WITH  THE  PITSBURGH**
> **SYNAGOGUE   SHOOTER,   BEFORE   THE   MASS**
> **SHOOTINGS   IN   BOTH   OHIO   AND   EL   PASO.**
> **PRECAUTIONS  WERE  TAKEN  AND  CONTACT  WAS**
> **MADE  WITH  GRECO  IN  COORDINATION  WITH  THE**
> **FBI.   OFFICERS   REACHED   OUT   TO   GRECO   IN**
> **REGARDS TO RECENT POSTS IN THE SOCIAL MEDIA**
> **SIGE  GAB.COM.    ALL  PREVIOUS  SOCIAL  MEDIA**
> **ACCOUNTS WERE BLOCKED DUE TO THE NATURE OF**
> **CONTENT.    WHILE   TALKING   TO   GRECO,   HE**
> **APPEARED  EXTREMELY  INTELLIGNET  TO  OFFICER**
> **AND  DID  NOT  MENTION  ACTING  ON  ANY  VIOLENT**

**BEHAVIOR TOWARDS JEWS.   HIS BEHAVIOR WAS METHODICAL    AND    FOCUSED    ON    FACTS, SPECIFICALLY   FROM   NAZI   GERMANY.   GRECO BELIEVES THAT FORCE OR VIOLENCE IS NECESSARY TO   REALIGN   SOCIETY.   GRECO   FREQUENTLY MENTIONED HIS DISDAINED (_sic_) FOR THE JEWISH TALMUD AND HOW HE BELIEVES THAT JEWS ARE RAPING OUR WOMEN AND CHILDREN.**

[_See_ **"Exhibit D" at pages 2**].

47.   Apparently some photocopies on information somehow claimed to have been "posted" by Plaintiff on the internet were included, and it was alleged that Plaintiff possessed a lawful handgun (identified as "H&K USP .40 - SERIAL #22070650), a rifle (identified as "NORINCO SKS 7.62 - SERIAL #22002894) and a valid New Jersey Firearms Purchaser ID Card. (_See_ **"Exhibit D" at pages 2**).

48.   The "Certification" to the truth of the information contained in the Petition was not signed by anyone and rather the name "NEW JERSEY HOMELAND SECURITY" was simply typed in by Defendant "JOHN DOE #1". (_See_ **"Exhibit D" at pages 2**).   On Page 3 where the petitioner was supposed to sign again, Defendant "JOHN DOE #1" merely typed in "PDPACE2" (whatever that may mean). (_See_ **"Exhibit D" at pages 3**).

49.   No effort was made by any of the Defendants to give, or to try to give, Plaintiff any advance notice of the fact that this "Petition for Temporary Extreme Risk Protective Order" was being filed against him so that he could appear and be heard.  Rather, this unsigned uncertified document was submitted _ex parte_ by "JOHN DOE #1" to the Gloucester Township Municipal Court at some unspecified time on the date of Thursday September 5, 2019.

50.   At some time the next day Friday September 6, 2019, the Petition was presented to the Honorable Edward McBride, J.S.C. of the Superior Court of New Jersey, Law Division, Criminal Part (despite this ostensibly being a "Civil Proceeding") at the Camden County

Court House in Camden, New Jersey for consideration. No effort was made during the day of September 6 by any of the Defendants or the State Court to give, or to try to give, Plaintiff any advance notice of the fact that this "Petition for Temporary Extreme Risk Protective Order" was being filed against him so that he could appear and be heard. Rather, the Petition was presented by Defendants Camden County Prosecutor's Office, Jill S. Mayer and Nevan Soumails with no notice to Plaintiff in an *ex parte* manner.

51. There appears to be no actual record of any proceedings in open court before Judge McBride, and what ever occurred before him apparently occurred off the record "in Chambers". At approximately 4:06 p.m. on September 6, 2019, Judge McBride "found "good cause" under 2C:58-23(f) and issued a "Temporary Extreme Risk Protective Order" ("TERPO") and, as required by *N.J.S.A.* 2C:58-26(b) also issued a "No Knock Search Warrant" using the new standard 5 page form for TERPO and required accompanying Search Warrant issued by the New Jersey Administrative Office of the Courts pursuant to their "Directive #19-19". **(*See* True Copy of TERPO and SEARCH WARRANT attached hereto at "Exhibit E").**

52. The pre-printed AOC form inserted the pre-printed words "probable cause" on page 4 of the form, but there was no express finding of probable cause, nor is there sufficient evidence in the record to anywhere approach meeting the legal standard of "probable cause". (*See* "Exhibit E" at page 4). Quite simply, Judge McBride applied the "good cause" legal standard, issued the TERPO and simply automatically issued the SEARCH WARRANT as part of completing out the AOC form and as expressly required by *N.J.S.A.* 2C:58-26(b) if "good cause" was found for the issuance of a TERPO. Moreover, Judge McBride typed in "REQUEST FOR NO-KNOCK APPROVED" with no specific or additional findings required as a pre-condition for a "No-Knock Search Warrant".

*(See* **"Exhibit E" at page 4).**   Page 1 of the TERPO stated that the TERPO and (NO-KNOCK) SEARCH WARRANT were issued based upon the certified petition and sworn testimony of "NEW JERSEY HOMELAND SECURITY". *(See* **"Exhibit E" at page 1).**

53.   Immediately thereafter the 5 page TERPO and (NO-KNOCK) SEARCH WARRANT form was faxed to Defendants Gloucester Township Police Department, Bernard John Dougherty, Nicholas C. Aumendo, Donald B. Gansky, William Daniel Rapp, and Brian Anthony Turchi, and such Defendants then detained Plaintiff, served him with the TERPO and (NO-KNOCK) SEARCH WARRANT, and then executed the (NO-KNOCK) SEARCH WARRANT on Plaintiff's home.

54.   During the search the Defendants recovered (1) Plaintiffs valid New Jersey Firearms Purchaser ID Card, (2) Plaintiff's legal rifle (identified as "NORINCO SKS 7.62 - SERIAL #22002894), and (3) legal ammunition for the legal rifle.

55.   The handgun listed in the TERPO and (NO-KNOCK) SEARCH (identified as "H&K USP .40 - SERIAL #22070650) was not recovered as Plaintiff lawfully sold this handgun to a gun dealer / sportsman's shop in Glassboro, New Jersey many (approximately 14) years ago.

## V. <u>LEGAL CLAIMS:</u>

### <u>FIRST COUNT:</u>
### (42 *U.S.C.* §1983 - Fourth Amendment)

56.   Plaintiff hereby repeats and re-alleges all factual allegations as contained in the previous paragraphs as if set forth fully at length herein.

57.   42 *U.S.C.* §1983 was enacted by Congress to provide citizens with a remedy for State action that deprives or is aimed at depriving a person of their rights as secured and guaranteed by the United States Constitution and laws.

58.   42 *U.S.C.* §1983 provides as follow:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person in the jurisdiction thereof to be deprived of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purpose of this section any act of Congress applicable exclusively to the District of Columbia shall be considered a statute of the District of Columbia.

[42. *U.S.C.* §1983].

59.    42 *U.S.C.* §1983 provides a remedy for state action aimed at depriving persons of their rights as protected and guaranteed by the Constitution and laws.  42 *U.S.C.* §1983, in addition to other remedies, authorizes declaratory relief, injunctive relief, nominal damages, compensatory damages, punitive damages and attorneys' fees.

60.    For a party to prevail in an action under 42 *U.S.C.* §1983, it must be shown that [1] there has been /is/ will be a violation of that party's rights as guaranteed and secured by the Constitution or laws, and [2] that such violation was caused either directly or by a pattern, practice, usage or custom, by a "person" acting under the color of state law.

61.    In the present case the defendants have knowingly and intentionally and with deliberate indifference violated Plaintiff's rights as clearly established by the First, Fourth and Fourteenth Amendments to the United States Constitution, and Plaintiff has been proximately damaged thereby.

62.    Fourth Amendment to the *United States Constitution* applied to the States by virtue of the Fourteenth Amendment, and Article I paragraph 7 of the *New Jersey State Constitution* (1947), as amended, prohibit the State from conducting unreasonable searches and seizures, and to ensure reasonableness such provisions both require a Warrant granting permission to conduct the search that is issued by a neutral and detached magistrate, ***and***

*require  that a Warrant may only issue upon a finding that satisfies the legal standard of "probable cause.".*

63.     In this case, the EPRO Act not only permits the State to obtain but actually requires and mandates that a Court issue a Search Warrant based upon on the much lesser "good cause" legal standard.   Such renders the EPRO Act facially unconstitutional.

64.     For the reasons expressed herein, the EPRO Act is facially unconstitutional and unconstitutional "as applied" as violating the Fourth and Fourteenth Amendments of the Plaintiff and others similarly situated.

### SECOND COUNT:
### (42 *U.S.C.* §1983 - Second Amendment and Fourteenth Amendment)

65.     Plaintiff hereby repeats and re-alleges all factual allegations as contained in the previous paragraphs as if set forth fully at length herein.

66.     In *Heller v. District of Columbia*, 554 *U.S.* 570 (2008) the United States Supreme Court ruled that the Second Amendment to the *United States Constitution*, made applicable to the States by virtue of the Fourteenth Amendment, protects an individual's fundamental right to possess a firearm unconnected with service in a militia, and to use that firearm for traditionally lawful purposes such as self defense within the home.

67.     In this case Plaintiff lawfully possessed a valid Firearms Purchaser card, lawfully possessed in his home a rifle, and lawfully possessed in his home ammunition for that rifle.  And it was and is Plaintiff's Second Amendment fundamental right to do so, as it is for all others similarly situated.

68.     Defendants interfered with and violated that that fundamental right when (1) they entered his home with a Search Warrant that was issued by a Judge on a legal standard of "good cause" which is substantially less that the legal standard of "probable cause" required by

the Fourth Amendment, and (2) as what is at issue is a fundamental Second Amendment Constitutional Right and a "property interest" in the items civilly seized by the State within the meaning of the Fourteenth Amendment, the due process clause of the Fourteenth Amendment  additionally entitled Plaintiff to a advance notice and a pre-deprivation hearing to challenge the State's intentions BEFORE any Search Warrant was issued and his property seized.   Plaintiff was wrongfully deprived of his property without due process of law.

## THIRD COUNT:
### (42 *U.S.C.* §1983 - First Amendment)

69.     Plaintiff hereby repeats and re-alleges all factual allegations as contained in the previous paragraphs as if set forth fully at length herein.

70.     Plaintiff has a First Amendment right to exercise his right to freedom of opinion and speech without interference or retaliation from the State due to his constitutionally protected views and opinions and statements.

71.     In this case, the EPRO Act and the actions of the Defendants, as applied, violated and continue to violate Plaintiff's fundamental First Amendment rights.

## THIRD COUNT:
### (Right to Jury Trial)

72.     Plaintiff hereby repeats and re-alleges all factual allegations as contained in the previous paragraphs as if set forth fully at length herein.

73.     Plaintiff and others similarly situated have a fundamental Second Amendment right to possess weapons, and the EPRO Act, by operation, interferes with and may actually terminate the right of Plaintiff and others similarly situated to exercise that fundamental right after the FEPRO hearing before a single judge as fact finder.

**74.** Such actions constitute a "consequence of magnitude" within the meaning of the United States Supreme Court's decision in *Blanton v. City of North Las Vegas,* 489 *U.S.* 538 (1989) and as such Plaintiff and others similarly situated are constitutionally entitled to have a jury sit as the finder of facts at the FERPO hearing.                   .

## VI.     <u>REQUEST FOR RELIEF:</u>

**WHEREFORE,** Plaintiff hereby demands judgment against Defendants individually, jointly or severally as follows:

**A.)**     An Order certifying this matter as a Class Action pursuant to *F.R.Civ.P.* 23 and defining the proposed Class as requested herein;

**B.)**     An Order appointing Plaintiff as "Class Representative" and designating Albert J. Rescinio, Esq. at attorney for the Class;

**C.)**     An Order pursuant to 42 *U.S.C.* §1983, 28 *U.S.C.* §2201 and 28 *U.S.C.* §2202 ("Federal Declaratory Judgments Act") and *Rule* 57 and *Rule* 65 of the *Federal Rules of Civil Procedure* and cumulatively or alternatively 42 *U.S.C.* §1367 and *N.J.S.A.* 2A:16-50 to -62 ("New Jersey Declaratory Judgments Act") Declaring that portions of the *"New Jersey Extreme Risk Protective Order Act of 2018"* (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, specifically *N.J.S.A.* 2C:58-23(e) (fixing a "good cause" legal standard for issuance of a TEPRO) and *N.J.S.A.* 2C:26(b) (mandating if an TEPRO is issued that a Search Warrant also "shall" be issued) by operation together and *im pari materia*, are *per se* facially unconstitutional and violate the rights of Plaintiff and others similarly situated as guaranteed and secured by the Fourth Amendment to the United States

Constitution and Article I, Paragraph 7 of the New Jersey Constitution (1947), as amended, both of which Constitutional provisions bar Search Warrants from being issued absent the State satisfying the heightened legal standard of "Probable Cause"; and

**D.)**   An Order Declaring that the unconstitutional portions of the EPRO Act are not severable within the standards of *Alaska Airlines, Inc. v. Brock*, 480 *U.S.* 678 (1987), and as such that the entirety of the EPRO Act is therefore also *per se* unconstitutional in its entirety, violates the rights of Plaintiff and others similarly situated, and may not be implemented and enforced by Defendants;

**E.)**   An Order Declaring that the EPRO Act facially and as applied violates the Constitutional Rights of Plaintiff and others similarly situated as otherwise described herein and permanently enjoining Defendants from enforcing or proceeding under the authority of that unconstitutional statues;

**F.)**   An Order Declaring that seizing, taking away, and preventing Plaitniff and others similarly situated at a FERPO hearing constitute a "consequence of magnitude" within the meaning of the United States Supreme Court's decision in *Blanton v. City of North Las Vegas*, 489 *U.S.* 538 (1989) thereby entitling Plaintiff and others similarly situated to have a jury sit as the finder of facts at any FERPO hearing that may occur;

**G.)**   An Order specifically restraining and enjoining Defendants from in the future proceeding anonymously under agency names and / or pseudonyms;

**H.)**   An Order declaring that Defendants did not comply with the basis mandatory (albeit unconstitutional) procedures in *N.J.S.A.* 2C:58-20 through -32 and declaring the Search Warrant invalid and a legal nullity;

**I.)**     An Order directing that Defendants shall immediately, and within five (5) days of the entry of any Order, unconditionally return to Plaintiff (1) his valid New Jersey Firearms Purchaser ID Card, (2) his legal rifle (identified as "NORINCO SKS 7.62 - SERIAL #22002894), and (3) his legal ammunition for the legal rifle; and

**J.)**     An Order pursuant to 42 *U.S.C.* §1983 awarding Plaintiff "Nominal Damages";

**K.)**     An Order pursuant to 42 *U.S.C.* §1983 awarding Plaintiff "Compensatory Damages";

**L.)**     An Order pursuant to 42 *U.S.C.* §1983 awarding Plaintiff "Punitive Damages";

**M.)**     Judgment pursuant to 42 *U.S.C.* §1988 awarding interest, costs of suit, and reasonable attorneys fees; and

**N.)**     Judgment awarding such further relief as the Court deems fair, just and equitable.

**DATED:  October 18, 2019**             **ALBERT J. RESCINIO, ESQ.**

## JURY DEMAND:

Plaintiff hereby demands a trial by jury on all contested material issues of fact.

**DATED:  October 18, 2019**             **ALBERT J. RESCINIO, ESQ.**

## <u>VERIFICATION AND DECLARATION:</u>

Plaintiff David M. Greco hereby certifies, verifies and declares as follows:

1.   I am the named Plaintiff in this matter.

2.   I have read all of the factual allegations of this Class Action Verified Complaint and Jury Demand and have reviewed all exhibits attached thereto.

3.   All factual allegations are true and all exhibits are true copies of the originals.

**I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

**EXECUTED THIS 18th DAY OF OCTOBER 2019.**

_____
DAVID M. GRECO

**"Exhibit A"**

## CHAPTER 35
## (CORRECTED COPY)

AN ACT concerning extreme risk protective orders and supplementing and amending various parts of the statutory law.

BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey:*

C.2C:58-20  Short title.

1.  This act shall be known and may be cited as the "Extreme Risk Protective Order Act of 2018."

C.2C:58-21  Definitions relative to extreme risk protective orders.

2.  As used in P.L.2018, c.35 (C.2C:58-20 et al.):

"Ammunition" means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm, but does not include any shotgun shot or pellet not designed for use as the single, complete projectile load for one shotgun hull or casing or any unloaded, non-metallic shotgun hull or casing not having a primer.

"Deadly weapon" shall have the same meaning as in subsection c. of N.J.S.2C:11-1.

"Family or household member" means a spouse, domestic partner as defined in section 3 of P.L.2003, c.246 (C.26:8A-3), partner in a civil union couple as defined in section 2 of P.L.2006, c.103 (C.37:1-29), or former spouse, former domestic partner, or former partner in a civil union couple, or any other person who is a present household member or was at any time a household member; a person with whom the respondent has a child in common, or with whom the respondent anticipates having a child in common if one of the parties is pregnant; or a current or former dating partner.

"Firearm" shall have the same meaning as in N.J.S.2C:39-1.

"Law enforcement agency" means a department, division, bureau, commission, board or other authority of the State or of any political subdivision thereof which employs law enforcement officers.

"Law enforcement officer" means a person whose public duties include the power to act as an officer for the detection, apprehension, arrest, and conviction of offenders against the laws of this State.

"Petitioner" means a family or household member or law enforcement officer.

"Recent" means within six months prior to the date the petition was filed.

C.2C:58-22  Immunity from liability for law enforcement.

3. a.  A law enforcement officer who, in good faith, does not file a petition for an extreme risk protective order or temporary extreme risk protective order shall be immune from criminal or civil liability.

b.  A law enforcement agency shall be immune from civil or criminal liability for any damage or deterioration of firearms or ammunition stored or transported pursuant to section 7 or 8 of P.L.2018, c.35 (C.2C:58-26 or C.2C:58-27) unless the damage or deterioration resulted from recklessness, gross negligence, or intentional misconduct by the law enforcement agency.

c.  The immunity provided in subsections a. and b. of this section shall be in addition to any privileges or immunities provided pursuant to any other law.

C.2C:58-23  Filing of temporary extreme risk protection order.

4. a.  Except as provided in subsection l. of this section, a petitioner may file a petition, as prescribed by the Administrative Director of the Courts, for a temporary extreme risk protective order in the court in accordance with the Rules of Court alleging that the respondent poses a

P.L.2018, CHAPTER 35

2

significant danger of bodily injury to self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm.  The petition shall be heard by the court in an expedited manner.

Petition forms shall be readily available at the courts, and at State, county, and municipal law enforcement agencies.

Prior to filing a petition with the court, a family or household member may request assistance from a State, county, or municipal law enforcement agency which shall advise the petitioner of the procedure for completing and signing a petition for a temporary extreme risk protective order. A law enforcement officer from the agency may assist the family or household member in preparing or filing the petition.  This assistance may include, but not be limited to, providing information related to the factors set forth in subsection f. of this section, joining in the petition, referring the matter to another law enforcement agency for additional assistance, or filing the officer's own petition with the court.

Filing a petition pursuant to this section shall not prevent a petitioner from filing a criminal complaint or applying for a restraining order pursuant to the "Prevention of Domestic Violence Act of 1991," P.L. 1991, c. 261 (C.2C:25-17 et seq.) or prevent any person from taking any action authorized pursuant to P.L.1987, c.116 (C.30:4-27.1 et seq.) based on the circumstances forming the basis of the petition.

A petitioner may apply for relief under this section in accordance with the Rules of Court.

b.  A petition for a temporary extreme risk protective order shall include an affidavit setting forth the facts tending to establish the grounds of the petition, or the reason for believing that they exist, and, to the extent available, the number, types, physical description, and locations of any firearms and ammunition currently believed by the petitioner to be controlled or possessed by the respondent.

c.  The court shall not charge a fee to file the petition.

d.  The court, before issuing a temporary extreme risk protective order, shall examine under oath the petitioner and any witness the petitioner may produce.  The court, in lieu of examining the petitioner and any witness, may rely on an affidavit submitted in support of the petition.

e.  A judge shall issue the order if the court finds good cause to believe that the respondent poses an immediate and present danger of causing bodily injury to the respondent or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm.

f.  The county prosecutor or a designee of the county prosecutor shall produce in an expedited manner any available evidence including, but not limited to, available evidence related to the factors set forth in this section, and the court shall consider whether the respondent:

(1) has any history of threats or acts of violence by the respondent directed toward self or others;

(2) has any history of use, attempted use, or threatened use of physical force by the respondent against another person;

(3) is the subject of a temporary or final restraining order or has violated a temporary or final restraining order issued pursuant to the "Prevention of Domestic Violence Act of 1991," P.L.1991, c.261 (C.2C:25-17 et seq.);

(4) is the subject of a temporary or final protective order or has violated a temporary or final protective order issued pursuant to the "Sexual Assault Survivor Protection Act of 2015," P.L.2015, c.147 (C.2C:14-13 et al.);

(5) has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to section 1 of P.L.1992, c.209 (C.2C:12-10), or domestic violence offense enumerated in section 3 of P.L.1991, c.261 (C.2C:25-19);

P.L.2018, CHAPTER 35

3

(6) has any prior arrests, pending charges, or convictions for any offense involving cruelty to animals or any history of acts involving cruelty to animals;

(7) has any history of drug or alcohol abuse and recovery from this abuse; or

(8) has recently acquired a firearm, ammunition, or other deadly weapon.

g.  The temporary extreme risk protective order shall prohibit the respondent from having custody or control of, owning, purchasing, possessing, or receiving firearms or ammunition, and from securing or holding a firearms purchaser identification card or permit to purchase a handgun pursuant to N.J.S.2C:58-3, or a permit to carry a handgun pursuant to N.J.S.2C:58-4 during the period the protective order is in effect and shall order the respondent to surrender firearms and ammunition in the respondent's custody or control, or which the respondent possesses or owns, and any firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun held by the respondent in accordance with section 7 of P.L.2018, c.35 (C.2C:58-26). Any card or permit issued to the respondent shall be immediately revoked pursuant to subsection f. of N.J.S.2C:58-3.

h.  A temporary extreme risk protective order issued under this section shall remain in effect until a court issues a further order.

i.  The court that issues the temporary extreme risk protective order shall immediately forward:

(1) a copy of the order to the petitioner and county prosecutor in the county in which the respondent resides; and

(2) a copy of the order and the petition to the appropriate law enforcement agency in the municipality in which the respondent resides, which shall immediately, or as soon as practicable, serve it on the respondent.

If personal service cannot be effected upon the respondent, the court may order other appropriate substituted service. At no time shall a petitioner who is a family or household member be asked or required to serve any order on the respondent. The law enforcement agency serving the order shall not charge a fee or seek reimbursement from the petitioner for service of the order.

j.  Notice of temporary extreme risk protective orders issued pursuant to this section shall be sent by the county prosecutor to the appropriate chiefs of police, members of the State Police, and any other appropriate law enforcement agency or court.

k.  Any temporary extreme risk protective order issued pursuant to this section shall be in effect throughout the State, and shall be enforced by all law enforcement officers.

l. (1) A petition for a temporary extreme risk protective order filed against a law enforcement officer shall be filed in the law enforcement agency in which the officer is employed. The law enforcement officer or employee receiving the petition shall advise the petitioner of the procedure for completing and signing a petition.

(2) Upon receipt of the petition, the law enforcement officer's employer shall immediately initiate an internal affairs investigation.

(3) The disposition of the internal affairs investigation shall immediately be served upon the county prosecutor who shall make a determination whether to refer the matter to the courts.

(4) The law enforcement officer's employer shall take appropriate steps to implement any findings set forth in the disposition of the internal affairs investigation.

The law enforcement officer shall not be terminated during the pendency of the internal affairs investigation.

C.2C:58-24  Final extreme risk protective order.

P.L.2018, CHAPTER 35
4

5. a. A hearing for a final extreme risk protective order shall be held in the Superior Court in accordance with the Rules of Court within 10 days of the filing of a petition pursuant to subsection a. of section 4 of P.L.2018, c.35 (C.2C:58-23). A copy of the petition shall be served on the respondent in accordance with the Rules of Court.

b. The county prosecutor shall produce in an expedited manner any available evidence including, but not limited to, evidence related to the factors enumerated in subsection f. of section 4 of P.L.2018, c.35 (C.2C:58-23). If the court finds by a preponderance of the evidence at the hearing that the respondent poses a significant danger of bodily injury to the respondent's self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm, the court shall issue an extreme risk protective order.

c. When deciding whether to issue the order, the court shall consider the factors enumerated in subsection f. of section 4 of P.L.2018, c.35 (C.2C:58-23), as well as any other relevant evidence.

d. An extreme risk protective order issued pursuant to this section shall prohibit the respondent from having custody or control of, owning, purchasing, possessing, or receiving a firearm. A respondent who is a law enforcement officer shall be subject to the provisions of subsection l. of section 4 of P.L.2018, c.35 (C.2C:58-23).

C.2C:58-25  Termination of final extreme risk protective order.

6. Upon request of the petitioner or respondent, in a form prescribed by the Administrative Office of the Courts, the court may terminate a final extreme risk protective order issued pursuant to section 5 of P.L.2018, c.35 (C.2C:58-24) if:

a. the petitioner or respondent, as the case may be, has received notice in accordance with the Rules of Court;

b. the appropriate law enforcement agency and the county prosecutor have been notified; and

c. a hearing has been held by the court.

The petition for termination of the order may be filed at any time following the issuance of the order. During the hearing, the court shall consider the factors enumerated in subsection f. of section 4 of P.L.2018, c.35 (C.2C:58-23), as well as any other relevant evidence including, but not limited to, whether the respondent has received, or is receiving, mental health treatment.

If the respondent petitioned for termination, the respondent shall bear the burden at the hearing of proving by a preponderance of the evidence that the respondent no longer poses a significant danger of causing bodily injury to the respondent's self or to other persons by having custody or control of, owning, possessing, purchasing, or receiving a firearm.

C.2C:58-26  Surrender of firearms upon issuance of order.

7. a. When a temporary or final extreme risk protective order is issued pursuant to section 4 or 5 of P.L.2018, c.35 (C.2C:58-23 or C.2C:58-24), the court shall order the respondent to surrender to the local law enforcement agency all firearms and ammunition in the respondent's custody or control, or which the respondent owns or possesses, and any firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun held by the respondent. The court also shall notify the respondent that the respondent is prohibited from purchasing firearms or ammunition or applying for a firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun.

b. If the petition for the temporary extreme risk protective order indicates that the respondent owns or possesses any firearms or ammunition, the court shall issue a search warrant

P.L.2018, CHAPTER 35

5

with the temporary or final extreme risk protective order and the law enforcement officer who serves the order shall request that all firearms and ammunition immediately be surrendered.

(1) The respondent immediately shall surrender, in a safe manner, all firearms and ammunition in the respondent's custody or control, or which the respondent owns or possesses, and any firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun held by the respondent to the control of the law enforcement officer.

(2) The respondent may request that the law enforcement agency sell all firearms and ammunition in a safe manner to a federally licensed firearms dealer pursuant to section 8 of P.L.2018, c.35 (C.2C:58-27).

(3) The law enforcement officer or licensed firearms dealer taking possession of any firearms or ammunition pursuant to this subsection shall issue a receipt identifying all firearms and ammunition that have been surrendered by the respondent. The officer or dealer shall provide a copy of the receipt to the respondent at the time of surrender.

(4) If the respondent surrenders firearms and ammunition to a law enforcement officer pursuant to paragraph (1) of this subsection or surrenders or sells firearms and ammunition to a licensed dealer pursuant to paragraph (2) of this subsection, the respondent shall, within 48 hours after being served with the order, file the receipt with the county prosecutor. Failure to timely file the receipt or copy of the receipt shall constitute contempt of the order.

c. The court which issued the protective order may issue a search warrant for a firearm or ammunition that is in the custody or control of, owned, or possessed by a respondent who is subject to a temporary or final protective order issued pursuant to section 4 or 5 of P.L.2018, c.35 (C.2C:58-23 or C.2C:58-24) if the respondent has lawfully been served with that order and has failed to surrender the firearm or ammunition as required by this section.

d. The respondent may petition the agency for the return of any surrendered firearms or ammunition upon termination of an order pursuant to section 6 of P.L.2018, c.35 (C.2C:58-25). Within 30 days of receiving a petition for the return of surrendered firearms or ammunition and after the termination of the order, the agency shall return the firearm or ammunition unless:

(1) the firearm has been reported as stolen; or

(2) the respondent is prohibited from possessing a firearm under State or federal law.

Nothing in this act shall prohibit revocation and seizure of a person's firearms purchaser identification card, permit to purchase a handgun, permit to carry a handgun, and weapons as authorized pursuant to applicable law.

e. If a person other than the respondent claims title to any firearm or ammunition surrendered pursuant to this section, and the law enforcement agency determines that the person is the lawful owner of the firearm or ammunition, the firearm or ammunition shall be returned to that person.

f. If the respondent has surrendered a firearm or ammunition to a federally licensed firearms dealer, after termination of the order, the respondent may request the law enforcement agency, in writing, to authorize the return of the firearm or ammunition from the dealer. The dealer shall transfer the firearm or ammunition to the respondent in accordance with procedures required when a firearm or ammunition is being sold from the dealer's inventory in accordance with N.J.S.2C:58-2.

C.2C:58-27 Transfer, sale of surrendered firearms.

8. A respondent who has surrendered any firearm or ammunition to a law enforcement agency pursuant to P.L.2018, c.35 (C.2C:58-20 et al.) who does not want the firearm or ammunition returned or is no longer eligible to own or possess a firearm or ammunition may sell or transfer title of the firearm or ammunition to a federally licensed firearms dealer. The

agency shall transfer possession of the firearm or ammunition to a licensed dealer only after the dealer has displayed written proof of transfer of the firearm or ammunition from the respondent to the dealer and the agency has verified the transfer with the respondent.

C.2C:58-28  Destruction of firearms permitted.

9.  A law enforcement agency holding any firearm or ammunition surrendered pursuant to P.L.2018, c.35 (C.2C:58-20 et al.) for more than one year after the termination of the extreme risk protective order may destroy the firearm or ammunition in accordance with the policies and procedures of the agency for destruction of firearms or ammunition.

C.2C:58-29  Violations considered offense; contempt proceedings.

10.  A violation by the respondent of an order issued pursuant to section 4 or 5 of P.L.2018, c.35 (C.2C:58-23 or C.2C:58-24) shall constitute an offense under subsection e. of N.J.S.2C:29-9 and each order shall so state. All contempt proceedings conducted pursuant to N.J.S.2C:29-9 involving an extreme risk protective order shall be heard by the Superior Court. All contempt proceedings brought pursuant to P.L.2018, c.35 (C.2C:58-20 et al.) shall be made in accordance with the Rules of Court.

C.2C:58-30  Electronic central registry.

11. a. The Administrative Office of the Courts shall include all persons who have had a final extreme risk protective order entered against them pursuant to section 5 of P.L.2018, c.35 (C.2C:58-24), and all persons who have been charged with a violation of a temporary or final extreme risk protective order issued pursuant to section 4 or 5 of P.L.2018, c.35 (C.2C:58-23 or C.2C:58-24), in an electronic central registry created and maintained by the Administrative Office of the Courts.  All records made pursuant to this section shall be kept confidential and shall be released only to a police or other law enforcement agency investigating a report of a crime, offense, or act of domestic violence, or conducting a background investigation involving a person's application for a firearms purchaser identification card or permit to purchase a handgun or employment as a police or law enforcement officer, or for any other purpose authorized by law or the Supreme Court of the State of New Jersey.  A respondent's information, other than information related to a violation of a temporary or final order issued pursuant to section 4 or 5 of P.L.2018, c.35 (C.2C:58-23 or C.2C:58-24), shall be removed from the registry upon the termination of the extreme risk protective order.

b.  Any person who disseminates or discloses a record or report of the central registry for a purpose other than the purposes authorized in this section or as otherwise authorized by law or the Supreme Court of the State of New Jersey is guilty of a crime of the fourth degree.

12.  N.J.S.2C:29-9 is amended to read as follows:

Contempt.

2C:29-9. Contempt. a.  A person is guilty of a crime of the fourth degree if the person purposely or knowingly disobeys a judicial order or protective order, pursuant to section 1 of P.L.1985, c.250 (C.2C:28-5.1), or hinders, obstructs, or impedes the effectuation of a judicial order or the exercise of jurisdiction over any person, thing, or controversy by a court, administrative body, or investigative entity.

b. (1) Except as provided in paragraph (2) of this subsection, a person is guilty of a crime of the fourth degree if that person purposely or knowingly violates any provision in an order entered under the provisions of the "Prevention of Domestic Violence Act of 1991," P.L.1991,

c.261 (C.2C:25-17 et al.) or an order entered under the provisions of a substantially similar statute under the laws of another state or the United States when the conduct which constitutes the violation could also constitute a crime or a disorderly persons offense.

Orders entered pursuant to paragraphs (3), (4), (5), (8), and (9) of subsection b. of section 13 of P.L.1991, c.261 (C.2C:25-29) or substantially similar orders entered under the laws of another state or the United States shall be excluded from the provisions of this paragraph.

(2) In all other cases a person is guilty of a disorderly persons offense if that person purposely or knowingly violates an order entered under the provisions of the "Prevention of Domestic Violence Act of 1991," P.L.1991, c.261 (C.2C:25-17 et al.) or an order entered under the provisions of a substantially similar statute under the laws of another state or the United States.

Orders entered pursuant to paragraphs (3), (4), (5), (8), and (9) of subsection b. of section 13 of P.L.1991, c.261 (C.2C:25-29) or substantially similar orders entered under the laws of another state or the United States shall be excluded from the provisions of this paragraph.

c.  A person is guilty of a crime of the third degree if that person purposely or knowingly violates any provision in an order entered under the provisions of section 3 of P.L.1996, c.39 (C.2C:12-10.1) or section 2 of P.L.1999, c.47 (C.2C:12-10.2) or an order entered under the provisions of a substantially similar statute under the laws of another state or the United States when the conduct which constitutes the violation could also constitute a crime or a disorderly persons offense.

d. (1) Except as provided in paragraph (2) of this subsection, a person is guilty of a crime of the fourth degree if that person purposely or knowingly violates any provision in an order entered under the provisions of P.L.2015, c.147 (C.2C:14-13 et al.) or an order entered under the provisions of a substantially similar statute under the laws of another state or the United States when the conduct which constitutes the violation could also constitute a crime or a disorderly persons offense.

(2) In all other cases a person is guilty of a disorderly persons offense if that person purposely or knowingly violates an order entered under the provisions of P.L.2015, c.147 (C.2C:14-13 et al.) or an order entered under the provisions of a substantially similar statute under the laws of another state or the United States.

e.  A person is guilty of a crime of the fourth degree if the person purposely or knowingly violates any provision of an order entered under the provisions of the "Extreme Risk Protective Order Act of 2018," P.L.2018, c.35 (C.2C:58-20 et al.) or an order entered under the provisions of a substantially similar statute under the laws of another state or the United States.

As used in this section, "state" means a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States. The term includes an Indian tribe or band, or Alaskan native village, which is recognized by a federal law or formally acknowledged by a state.

13.   Section 6 of P.L.1979, c.179 (C.2C:39-7) is amended to read as follows:

C.2C:39-7  Certain persons not to have weapons.

6.   Certain Persons Not to Have Weapons.

a.   Except as provided in subsection b. of this section, any person, having been convicted in this State or elsewhere of the crime of aggravated assault, arson, burglary, escape, extortion, homicide, kidnapping, robbery, aggravated sexual assault, sexual assault, bias intimidation in violation of N.J.S.2C:16-1 or endangering the welfare of a child pursuant to N.J.S.2C:24-4, whether or not armed with or having in his possession any weapon

P.L.2018, CHAPTER 35
8

enumerated in subsection r. of N.J.S.2C:39-1, or any person convicted of a crime pursuant to the provisions of N.J.S.2C:39-3, N.J.S.2C:39-4 or N.J.S.2C:39-9, or any person who has ever been committed for a mental disorder to any hospital, mental institution or sanitarium unless he possesses a certificate of a medical doctor or psychiatrist licensed to practice in New Jersey or other satisfactory proof that he is no longer suffering from a mental disorder which interferes with or handicaps him in the handling of a firearm, or any person who has been convicted of other than a disorderly persons or petty disorderly persons offense for the unlawful use, possession or sale of a controlled dangerous substance as defined in N.J.S.2C:35-2 who purchases, owns, possesses or controls any of the said weapons is guilty of a crime of the fourth degree.

   b. (1) A person having been convicted in this State or elsewhere of the crime of aggravated assault, arson, burglary, escape, extortion, homicide, kidnapping, robbery, aggravated sexual assault, sexual assault, bias intimidation in violation of N.J.S.2C:16-1, endangering the welfare of a child pursuant to N.J.S.2C:24-4, stalking pursuant to P.L.1992, c.209 (C.2C:12-10) or a crime involving domestic violence as defined in section 3 of P.L.1991, c.261 (C.2C:25-19), whether or not armed with or having in his possession a weapon enumerated in subsection r. of N.J.S.2C:39-1, or a person having been convicted of a crime pursuant to the provisions of N.J.S.2C:35-3 through N.J.S.2C:35-6, inclusive; section 1 of P.L.1987, c.101 (C.2C:35-7); N.J.S.2C:35-11; N.J.S.2C:39-3; N.J.S.2C:39-4; or N.J.S.2C:39-9 who purchases, owns, possesses or controls a firearm is guilty of a crime of the second degree and upon conviction thereof, the person shall be sentenced to a term of imprisonment by the court.  The term of imprisonment shall include the imposition of a minimum term, which shall be fixed at five years, during which the defendant shall be ineligible for parole.  If the defendant is sentenced to an extended term of imprisonment pursuant to N.J.S.2C:43-7, the extended term of imprisonment shall include the imposition of a minimum term, which shall be fixed at, or between, one-third and one-half of the sentence imposed by the court or five years, whichever is greater, during which the defendant shall be ineligible for parole.

   (2) A person having been convicted in this State or elsewhere of a disorderly persons offense involving domestic violence, whether or not armed with or having in his possession a weapon enumerated in subsection r. of N.J.S.2C:39-1, who purchases, owns, possesses or controls a firearm is guilty of a crime of the third degree.

   (3) A person whose firearm is seized pursuant to the "Prevention of Domestic Violence Act of 1991," P.L.1991, c.261 (C.2C:25-17 et seq.) and whose firearm has not been returned, or who is subject to a court order prohibiting the possession of firearms issued pursuant to the "Prevention of Domestic Violence Act of 1991," P.L.1991, c.261 (C.2C:25-17 et seq.) who purchases, owns, possesses or controls a firearm is guilty of a crime of the third degree, except that the provisions of this paragraph shall not apply to any law enforcement officer while actually on duty, or to any member of the Armed Forces of the United States or member of the National Guard while actually on duty or traveling to or from an authorized place of duty.

   (4) A person who is subject to a court order prohibiting the custody, control, ownership, purchase, possession, or receipt of a firearm or ammunition issued pursuant to the "Extreme Risk Protective Order Act of 2018," P.L.2018, c.35 (C.2C:58-20 et al.) who purchases, acquires, owns, possesses, or controls a firearm or ammunition is guilty of a crime of the third degree.

   c.  Whenever any person shall have been convicted in another state, territory, commonwealth or other jurisdiction of the United States, or any country in the world, in a

P.L.2018, CHAPTER 35

9

court of competent jurisdiction, of a crime which in said other jurisdiction or country is comparable to one of the crimes enumerated in subsection a. or b. of this section, then that person shall be subject to the provisions of this section.

14. N.J.S.2C:58-3 is amended to read as follows:

Purchase of firearms.

2C:58-3. a. Permit to purchase a handgun. No person shall sell, give, transfer, assign or otherwise dispose of, nor receive, purchase, or otherwise acquire a handgun unless the purchaser, assignee, donee, receiver or holder is licensed as a dealer under this chapter or has first secured a permit to purchase a handgun as provided by this section.

b. Firearms purchaser identification card. No person shall sell, give, transfer, assign or otherwise dispose of nor receive, purchase or otherwise acquire an antique cannon or a rifle or shotgun, other than an antique rifle or shotgun, unless the purchaser, assignee, donee, receiver or holder is licensed as a dealer under this chapter or possesses a valid firearms purchaser identification card, and first exhibits the card to the seller, donor, transferor or assignor, and unless the purchaser, assignee, donee, receiver or holder signs a written certification, on a form prescribed by the superintendent, which shall indicate that he presently complies with the requirements of subsection c. of this section and shall contain his name, address and firearms purchaser identification card number or dealer's registration number. The certification shall be retained by the seller, as provided in paragraph (4) of subsection a. of N.J.S.2C:58-2, or, in the case of a person who is not a dealer, it may be filed with the chief of police of the municipality in which he resides or with the superintendent.

c. Who may obtain. No person of good character and good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in this section or other sections of this chapter, shall be denied a permit to purchase a handgun or a firearms purchaser identification card, except as hereinafter set forth. No handgun purchase permit or firearms purchaser identification card shall be issued:

(1) To any person who has been convicted of any crime, or a disorderly persons offense involving an act of domestic violence as defined in section 3 of P.L.1991, c.261 (C.2C:25-19), whether or not armed with or possessing a weapon at the time of the offense;

(2) To any drug dependent person as defined in section 2 of P.L.1970, c.226 (C.24:21-2), to any person who is confined for a mental disorder to a hospital, mental institution or sanitarium, or to any person who is presently an habitual drunkard;

(3) To any person who suffers from a physical defect or disease which would make it unsafe for him to handle firearms, to any person who has ever been confined for a mental disorder, or to any alcoholic unless any of the foregoing persons produces a certificate of a medical doctor or psychiatrist licensed in New Jersey, or other satisfactory proof, that he is no longer suffering from that particular disability in a manner that would interfere with or handicap him in the handling of firearms; to any person who knowingly falsifies any information on the application form for a handgun purchase permit or firearms purchaser identification card;

(4) To any person under the age of 18 years for a firearms purchaser identification card and to any person under the age of 21 years for a permit to purchase a handgun;

(5) To any person where the issuance would not be in the interest of the public health, safety or welfare;

P.L.2018, CHAPTER 35

10

(6)  To any person who is subject to a restraining order issued pursuant to the "Prevention of Domestic Violence Act of 1991," P.L.1991, c.261 (C.2C:25-17 et seq.) prohibiting the person from possessing any firearm;

(7)  To any person who as a juvenile was adjudicated delinquent for an offense which, if committed by an adult, would constitute a crime and the offense involved the unlawful use or possession of a weapon, explosive or destructive device or is enumerated in subsection d. of section 2 of P.L.1997, c.117 (C.2C:43-7.2);

(8)  To any person whose firearm is seized pursuant to the "Prevention of Domestic Violence Act of 1991," P.L.1991, c.261 (C.2C:25-17 et seq.) and whose firearm has not been returned;

(9)  To any person named on the consolidated Terrorist Watchlist maintained by the Terrorist Screening Center administered by the Federal Bureau of Investigation; or

(10)  To any person who is subject to a court order prohibiting the custody, control, ownership, purchase, possession, or receipt of a firearm or ammunition issued pursuant to the "Extreme Risk Protective Order Act of 2018," P.L.2018, c.35 (C.2C:58-20 et al.).

d.  Issuance.  The chief of police of an organized full-time police department of the municipality where the applicant resides or the superintendent, in all other cases, shall upon application, issue to any person qualified under the provisions of subsection c. of this section a permit to purchase a handgun or a firearms purchaser identification card.

Any person aggrieved by the denial of a permit or identification card may request a hearing in the Superior Court of the county in which he resides if he is a resident of New Jersey or in the Superior Court of the county in which his application was filed if he is a nonresident.  The request for a hearing shall be made in writing within 30 days of the denial of the application for a permit or identification card.  The applicant shall serve a copy of his request for a hearing upon the chief of police of the municipality in which he resides, if he is a resident of New Jersey, and upon the superintendent in all cases.  The hearing shall be held and a record made thereof within 30 days of the receipt of the application for a hearing by the judge of the Superior Court.  No formal pleading and no filing fee shall be required as a preliminary to a hearing.  Appeals from the results of a hearing shall be in accordance with law.

e.  Applications.  Applications for permits to purchase a handgun and for firearms purchaser identification cards shall be in the form prescribed by the superintendent and shall set forth the name, residence, place of business, age, date of birth, occupation, sex and physical description, including distinguishing physical characteristics, if any, of the applicant, and shall state whether the applicant is a citizen, whether he is an alcoholic, habitual drunkard, drug dependent person as defined in section 2 of P.L.1970, c.226 (C.24:21-2), whether he has ever been confined or committed to a mental institution or hospital for treatment or observation of a mental or psychiatric condition on a temporary, interim or permanent basis, giving the name and location of the institution or hospital and the dates of confinement or commitment, whether he has been attended, treated or observed by any doctor or psychiatrist or at any hospital or mental institution on an inpatient or outpatient basis for any mental or psychiatric condition, giving the name and location of the doctor, psychiatrist, hospital or institution and the dates of the occurrence, whether he presently or ever has been a member of any organization which advocates or approves the commission of acts of force and violence to overthrow the Government of the United States or of this State, or which seeks to deny others their rights under the Constitution of either the United States or the State of New Jersey, whether he has ever been convicted of a crime or disorderly persons offense, whether the person is subject to a restraining order issued pursuant to the

P.L.2018, CHAPTER 35

11

"Prevention of Domestic Violence Act of 1991," P.L.1991, c.261 (C.2C:25-17 et seq.) prohibiting the person from possessing any firearm, whether the person is subject to a protective order issued pursuant to the "Extreme Risk Protective Order Act of 2018," P.L.2018, c.35 (C.2C:58-20 et al.) prohibiting the person from possessing any firearm, and other information as the superintendent shall deem necessary for the proper enforcement of this chapter.  For the purpose of complying with this subsection, the applicant shall waive any statutory or other right of confidentiality relating to institutional confinement.  The application shall be signed by the applicant and shall contain as references the names and addresses of two reputable citizens personally acquainted with him.

Application blanks shall be obtainable from the superintendent, from any other officer authorized to grant a permit or identification card, and from licensed retail dealers.

The chief police officer or the superintendent shall obtain the fingerprints of the applicant and shall have them compared with any and all records of fingerprints in the municipality and county in which the applicant resides and also the records of the State Bureau of Identification and the Federal Bureau of Investigation, provided that an applicant for a handgun purchase permit who possesses a valid firearms purchaser identification card, or who has previously obtained a handgun purchase permit from the same licensing authority for which he was previously fingerprinted, and who provides other reasonably satisfactory proof of his identity, need not be fingerprinted again; however, the chief police officer or the superintendent shall proceed to investigate the application to determine whether or not the applicant has become subject to any of the disabilities set forth in this chapter.

f.   Granting of permit or identification card; fee; term; renewal; revocation.   The application for the permit to purchase a handgun together with a fee of $2, or the application for the firearms purchaser identification card together with a fee of $5, shall be delivered or forwarded to the licensing authority who shall investigate the same and, unless good cause for the denial thereof appears, shall grant the permit or the identification card, or both, if application has been made therefor, within 30 days from the date of receipt of the application for residents of this State and within 45 days for nonresident applicants.  A permit to purchase a handgun shall be valid for a period of 90 days from the date of issuance and may be renewed by the issuing authority for good cause for an additional 90 days.  A firearms purchaser identification card shall be valid until such time as the holder becomes subject to any of the disabilities set forth in subsection c. of this section, whereupon the card shall be void and shall be returned within five days by the holder to the superintendent, who shall then advise the licensing authority.  Failure of the holder to return the firearms purchaser identification card to the superintendent within the five days shall be an offense under subsection a. of N.J.S.2C:39-10.  Any firearms purchaser identification card may be revoked by the Superior Court of the county wherein the card was issued, after hearing upon notice, upon a finding that the holder thereof no longer qualifies for the issuance of the permit.  The county prosecutor of any county, the chief police officer of any municipality or any citizen may apply to the court at any time for the revocation of the card.

There shall be no conditions or requirements added to the form or content of the application, or required by the licensing authority for the issuance of a permit or identification card, other than those that are specifically set forth in this chapter.

g.   Disposition of fees.   All fees for permits shall be paid to the State Treasury if the permit is issued by the superintendent, to the municipality if issued by the chief of police, and to the county treasurer if issued by the judge of the Superior Court.

h.   Form of permit; quadruplicate; disposition of copies. The permit shall be in the form prescribed by the superintendent and shall be issued to the applicant in quadruplicate.  Prior

P.L.2018, CHAPTER 35

12

to the time he receives the handgun from the seller, the applicant shall deliver to the seller the permit in quadruplicate and the seller shall complete all of the information required on the form. Within five days of the date of the sale, the seller shall forward the original copy to the superintendent and the second copy to the chief of police of the municipality in which the purchaser resides, except that in a municipality having no chief of police, the copy shall be forwarded to the superintendent. The third copy shall then be returned to the purchaser with the pistol or revolver and the fourth copy shall be kept by the seller as a permanent record.

i.  Restriction on number of firearms person may purchase. Only one handgun shall be purchased or delivered on each permit and no more than one handgun shall be purchased within any 30-day period, but this limitation shall not apply to:

(1) a federal, State, or local law enforcement officer or agency purchasing handguns for use by officers in the actual performance of their law enforcement duties;

(2) a collector of handguns as curios or relics as defined in Title 18, United States Code, section 921 (a) (13) who has in his possession a valid Collector of Curios and Relics License issued by the federal Bureau of Alcohol, Tobacco, Firearms and Explosives;

(3) transfers of handguns among licensed retail dealers, registered wholesale dealers and registered manufacturers;

(4) transfers of handguns from any person to a licensed retail dealer or a registered wholesale dealer or registered manufacturer;

(5) any transaction where the person has purchased a handgun from a licensed retail dealer and has returned that handgun to the dealer in exchange for another handgun within 30 days of the original transaction, provided the retail dealer reports the exchange transaction to the superintendent; or

(6) any transaction where the superintendent issues an exemption from the prohibition in this subsection pursuant to the provisions of section 4 of P.L.2009, c.186 (C.2C:58-3.4).

The provisions of this subsection shall not be construed to afford or authorize any other exemption from the regulatory provisions governing firearms set forth in chapter 39 and chapter 58 of Title 2C of the New Jersey Statutes;

A person shall not be restricted as to the number of rifles or shotguns he may purchase, provided he possesses a valid firearms purchaser identification card and provided further that he signs the certification required in subsection b. of this section for each transaction.

j.  Firearms passing to heirs or legatees. Notwithstanding any other provision of this section concerning the transfer, receipt or acquisition of a firearm, a permit to purchase or a firearms purchaser identification card shall not be required for the passing of a firearm upon the death of an owner thereof to his heir or legatee, whether the same be by testamentary bequest or by the laws of intestacy. The person who shall so receive, or acquire the firearm shall, however, be subject to all other provisions of this chapter. If the heir or legatee of the firearm does not qualify to possess or carry it, he may retain ownership of the firearm for the purpose of sale for a period not exceeding 180 days, or for a further limited period as may be approved by the chief law enforcement officer of the municipality in which the heir or legatee resides or the superintendent, provided that the firearm is in the custody of the chief law enforcement officer of the municipality or the superintendent during that period.

k.  Sawed-off shotguns. Nothing in this section shall be construed to authorize the purchase or possession of any sawed-off shotgun.

l.  Nothing in this section and in N.J.S.2C:58-2 shall apply to the sale or purchase of a visual distress signalling device approved by the United States Coast Guard, solely for possession on a private or commercial aircraft or any boat; provided, however, that no person

P.L.2018, CHAPTER 35

13

under the age of 18 years shall purchase nor shall any person sell to a person under the age of 18 years a visual distress signalling device.

m.  The provisions of subsections a. and b. of this section and paragraphs (4) and (5) of subsection a. of N.J.S.2C:58-2 shall not apply to the purchase of firearms by a law enforcement agency for use by law enforcement officers in the actual performance of the officers' official duties, which purchase may be made directly from a manufacturer or from a licensed dealer located in this State or any other state.

C.2C:58-31  Rules of Court.

15. The Supreme Court may promulgate Rules of Court to effectuate the purposes of the "Extreme Risk Protective Order Act of 2018," P.L.2018, c.35 (C.2C:58-20 et al.).

C.2C:58-32  Rules, regulations.

16. The Attorney General may adopt, pursuant to the "Administrative Procedure Act," P.L.1968, c. 410 (C.52:14B-1 et seq.), rules and regulations necessary to implement the provisions of the "Extreme Risk Protective Order Act of 2018," P.L.2018, c.35 (C.2C:58-20 et al.).

17. This act shall take effect on the first day of the fifteenth month next following enactment, but the Attorney General and the Administrative Director of the Courts may take any anticipatory action as shall be necessary to effectuate the purposes of this act.

Approved June 13, 2018.

"Exhibit B"



# New Jersey Courts
Independence · Integrity · Fairness · Quality Service

Administrative Office of the Courts

GLENN A. GRANT, J.A.D.
Acting Administrative Director of the Courts

www.njcourts.gov · Phone: 609-376-3000 · Fax: 609-376-3002

| | | |
|---|---|---|
| **TO:** | **Assignment Judges** | **Directive # 19-19** |
| | **Criminal Presiding Judges** | |
| | **Municipal Court Presiding Judges** | |
| **FROM:** | **Glenn A. Grant, J.A.D.** | |
| **SUBJ:** | **Guidelines for Extreme Risk Protective Orders** | |
| **DATE:** | **August 12, 2019** | |

This Directive promulgates the attached Guidelines for Extreme Risk Protective Orders, effective September 1, 2019, in accordance with the "Extreme Risk Protective Order Act of 2018," codified at N.J.S.A. 2C:58-20 to -32 (hereafter the Act). The legislative history indicates that the Act was modeled on the process for a victim of domestic violence to obtain a restraining order under the "Prevention of Domestic Violence Act of 1991" (N.J.S.A. 2C:25-17 et seq.), as well as similar laws in other states. Accordingly, the procedures for extreme risk protective orders are similar to the procedures for domestic violence proceedings. I have approved these Guidelines based on the recommendations in the "Response of the Supreme Court Criminal Practice Committee to Proposed Rule 3:5B 'Extreme Risk Protective Orders' (May 28, 2019)," with input from the Working Group on Extreme Risk Protective Orders.

The Guidelines establish a civil process and procedures for a "petitioner" (defined as a family or household member[1] or a law enforcement officer) to seek an extreme risk protective order. Specifically, an extreme risk protective order prohibits a person (hereafter respondent) from owning, purchasing, possessing, or receiving firearms or ammunition, or from securing or holding a firearms purchaser identification card, a permit to purchase a handgun pursuant to N.J.S.A. 2C:58-3, or a permit to carry a handgun pursuant to N.J.S.A. 2C:58-4.

Because the relief provided under an extreme risk protective order is limited to prohibiting the respondent from having firearms and or ammunition, such an order does not offer the range of relief provided by restraining orders issued pursuant to the "Prevention of Domestic Violence

---

[1] A "family or household member" is defined as a spouse, domestic partner, partner in a civil union couple, or former spouse, former domestic partner, or former partner in a civil union couple, or any other person who is a present household member or was at any time a household member; a person with whom the respondent has a child in common, or with whom the respondent anticipates having a child in common if one of the parties is pregnant; or a current or former dating partner. N.J.S.A. 2C:58-21.

Directive #19-19 – "Guidelines for Extreme Risk Protective Orders"
August 12, 2019
Page 2

Act of 1991." For example, a plaintiff or person protected under that statute[2] who has been subjected to an act of domestic violence[3] can apply for a temporary restraining order that not only authorizes the seizure of the defendant's firearms but also prohibits the defendant from returning to the scene of the domestic violence. A final domestic violence restraining order provides additional types of relief, such as exclusive possession of the residence or household, or prohibiting the defendant from entering the residence, property, school or place of employment of the victim. See N.J.S.A. 2C:25-29(b) for the specific reliefs that are available for restraining orders under the Prevention of Domestic Violence Act.

Therefore, based on the circumstances, it may be appropriate for a person seeking an extreme risk protective order to consider instead applying for a restraining order under the Prevention of Domestic Violence Act. The Family Division of the Superior Court at any county courthouse can be contacted for information on domestic violence restraining orders.

## Petition for a Temporary Extreme Risk Protective Order

There are four types of civil petitions for temporary extreme risk protective orders, as set forth in Guideline 2 ("Petition for Temporary Extreme Risk Protective Order"). Specifically, the types of petitions are as follows:

(1) a family or household member can file a petition at the Criminal Division of the Superior Court, except for a petition against a law enforcement officer respondent, which must be filed as noted in (4) below, or may request a petition at a law enforcement agency for filing with the court;

(2) a law enforcement officer petitioner may file a petition with the court;

(3) other persons who are neither family or household members nor law enforcement officers may request at a law enforcement agency that a law enforcement officer file a petition with the court; and

(4) a petition against a law enforcement officer respondent must be filed at the law enforcement agency where the respondent officer is employed.

---

[2] A "victim of domestic violence" means a person protected under the Prevention of Domestic Violence Act and shall include any person who is 18 years of age or older or who is an emancipated minor and who has been subjected to domestic violence by a spouse, former spouse, or any other person who is a present household member or was at any time a household member. "Victim of domestic violence" also includes any person, regardless of age, who has been subjected to domestic violence by a person with whom the victim has a child in common, or with whom the victim anticipates having a child in common, if one of the parties is pregnant. "Victim of domestic violence" also includes any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship. See N.J.S.A. 2C:25-19(d).

[3] An act of domestic violence means the occurrence of one or more of the enumerated acts inflicted upon a person protected under the Prevention of Domestic Violence Act by an adult or an emancipated minor pursuant to N.J.S.A. 2C:25-19(a).

Richard J. Hughes Justice Complex • PO Box 037 • Trenton, New Jersey 08625-0037

There is no fee for applying for an extreme risk protective order pursuant to N.J.S.A. 2C:58-23(c).

## Filing a Petition for a Temporary Extreme Risk Protective Order

Except for a petition against a law enforcement officer respondent, petitions can be filed by family or household members at the Criminal Division of the Superior Court during regular court business hours – between 8:30 a.m. and 4:30 p.m., Monday through Friday. Staff will interview these individuals and will enter the responses in the electronic petition contained in the Judiciary's computerized system entitled Protective Restraining Order System (PROS).

A family or household member can also request a petition at any State, county, or municipal law enforcement agency. The Act provides that the assistance by law enforcement may include, but is not limited to, providing information related to the factors that are considered by the court, joining in the petition, referring the matter to another law enforcement agency for additional assistance, or filing the officer's own petition with the court. N.J.S.A. 2C:58-23(a).

Persons who do not fall under the definition of a family or household member in Guideline 1 ("Definitions") must go to a law enforcement agency to request that a law enforcement officer file a petition with the court. However, the filing of these petitions is at the discretion of law enforcement as the petitioner. See "Attorney General Directive Pursuant to the Extreme Risk Protective Order Act of 2018" for the guidelines to law enforcement agencies and prosecutors' offices on the implementation of this Act at https://www.nj.gov/oag/dcj/directiv.htm.

When the respondent is a law enforcement officer, the Act provides an alternative procedure that does not permit the petition to be filed with the court until the conclusion of an internal affairs investigation and a determination by the county prosecutor to file a petition with the court.

Specifically, N.J.S.A. 2C:58-23(l) provides in part:

(1) A petition for a temporary extreme risk protective order filed against a law enforcement officer shall be filed in the law enforcement agency in which the officer is employed. The law enforcement officer or employee receiving the petition shall advise the petitioner of the procedure for completing and signing a petition.

(2) Upon receipt of the petition, the law enforcement officer's employer shall immediately initiate an internal affairs investigation.

(3) The disposition of the internal affairs investigation shall immediately be served upon the county prosecutor who shall make a determination whether to refer the matter to the courts.

As such, if a family or household member comes to the Superior Court to file a petition against a law enforcement officer, staff cannot file that petition. However, staff will provide the

Directive #19-19 – "Guidelines for Extreme Risk Protective Orders"
August 12, 2019
Page 4

person with the petition form and an information sheet on the statutory process for filing a petition against a law enforcement officer. See Attachment 2 for the Information Sheet for Filing a Petition Against a Law Enforcement Officer. That information sheet also will be available on the Judiciary's website at https://www.njcourts.gov/forms/12471_erpo_law_ofcr.pdf. The petition form can also be obtained as of September 1 at the Criminal Division or on the Judiciary's website at https://www.njcourts.gov/forms/12430_erpo_petition.pdf

Consequently, court staff will not have, and therefore will not be able to provide, any information on the status of the petition. Therefore, any questions concerning these petitions should be directed to the county prosecutor's office.

**Contents of the Petition for a Temporary Extreme Risk Protective Order**

As noted in Guideline 2(e), the petitioner must allege the facts that tend to establish whether the respondent poses an immediate and present danger of bodily injury to self or others by possessing, purchasing, owning, or receiving a firearm. Accordingly, the petition form contains questions based on the fifteen factors enumerated in Guideline 3(d) for the court to consider, along with other relevant evidence, to determine whether to issue a temporary or final extreme risk protective order.

Specifically, the questions on the fifteen factors address whether the respondent:

(1) has any history of threats or acts of violence by the respondent directed toward self or others;

(2) has any history of use, attempted use, or threatened use of physical force by the respondent against another person;

(3) is the subject of a temporary or final restraining order or has violated a temporary or final restraining order issued pursuant to the "Prevention of Domestic Violence Act of 1991" (N.J.S.A. 2C:25-17 et seq.);

(4) is the subject of a temporary or final protective order or has violated a temporary or final protective order issued pursuant to the "Sexual Assault Survivor Protection Act of 2015" (N.J.S.A. 2C:14-13 et al.);

(5) has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to N.J.S.A. 2C:12-10, or domestic violence offense enumerated in N.J.S.A. 2C:25-19;

(6) has any prior arrests, pending charges, or convictions for any offense involving cruelty to animals or any history of acts involving cruelty to animals;

(7) has any history of drug or alcohol abuse and recovery from this abuse;

(8) has recently acquired a firearm, ammunition, or other deadly weapon;

(9) has recklessly used, displayed, or brandished a firearm;

(10) has an existing or previous extreme risk protective order issued against him or her;

(11) has previously violated an extreme risk protective order issued against him or her.

(12) has any prior involuntary commitment in a hospital or treatment facility for persons with psychiatric disabilities;

(13) has received or is receiving mental health treatment;

(14) has complied or has failed to comply with any mental health treatment; and

(15) has received a diagnosis of a mental health disorder.

It is important to note that the Act lists eight factors for the court to consider when making the determination for an extreme risk protective order. These are the first eight factors listed above and in Guideline 3(d). However, because N.J.S.A. 2C:58-23(f) contains non-exclusive language regarding the information to be submitted to the court by the prosecutor or designee ("including, but not limited to…"), and N.J.S.A. 2C:58-24 requires the court to consider the eight factors as well as "any other relevant evidence" for the final extreme risk protective order, Guideline 3(d) includes additional factors (factors 9 through 11) to provide guidance both to prosecutors (as to the information to be provided to the court) and to the court. Moreover, Guideline 3(d) permits the court to consider additional factors relating to the respondent's mental health (factors 12 through 15), but only <u>after</u> the court finds one or more of the behavioral factors (factors (1) through (11)).

The petition also includes questions concerning the firearms and ammunition possessed by the respondent, including the number, types, physical description, and the present location(s) of any firearm(s) and ammunition. <u>See</u> N.J.S.A. 2C:58-23(b). The petitioner may also provide relevant documentation to support the petition. Prior to the petition being filed or completed in the PROS system, the petitioner will be asked to certify that the statements in the petition are true and that, if any of the statements are willfully false, he or she is subject to punishment.

The Act requires county prosecutors or designees to provide certain information for the court to consider in determining whether to issue a temporary extreme risk protective order as set forth in Guideline 3(e). <u>See</u> N.J.S.A. 2C:58-23(f). As such, the county prosecutor and law enforcement agency where the respondent lives will be notified when the petition has been filed.

Directive #19-19 – "Guidelines for Extreme Risk Protective Orders"
August 12, 2019
Page 6

## Overview of the Proceedings for a Temporary Extreme Risk Protective Order

The court will hear the petition for a temporary order in an expedited manner in the respondent's county of residence pursuant to Guideline 3(a) and (b). If the petitioner files in a Criminal Division that is not in the respondent's county of residence, staff will contact the appropriate county to process the petition. Similarly, if the petitioner applies at a law enforcement agency in another county, that agency will contact the appropriate county or municipal law enforcement agency. However, if the respondent resides out-of-state, the hearing will be in the county where the petitioner resides.

Superior Court judges will hear petitions for temporary extreme risk protective orders filed at the Criminal Division during standard court business hours. Municipal Court judges will hear petitions requested on weekdays after standard court hours, weekends, holidays or any other special circumstance when the Superior Court is not in session. However, emergent duty Superior Court judges also will be available to hear temporary petitions requested after regular court hours, where appropriate. See Guideline 3(a).

The standard for the court to issue the temporary extreme risk protective order is if the petitioner establishes "good cause" to believe that the respondent poses an immediate and present danger of bodily injury to self or others by possessing, purchasing, owning, or receiving a firearm. See N.J.S.A. 2C:58-23(e). If the court orders the temporary order and the petition "indicates" that the respondent owns or possesses any firearms, then the Act mandates that the court shall issue a search warrant, N.J.S.A. 2C:58-26(b).

In light of the Supreme Court's decision in State v. Hemenway, ___ N.J. ___ (2019), decided July 24, 2019, Guideline 4(e) sets forth a different standard for issuance of a search warrant in conjunction with a temporary extreme risk protective order than the standard set forth in the Act. In Hemenway, the Supreme Court addressed the search warrant provision within the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-28(j). Specifically, the Supreme Court required that "before issuing a warrant to search for weapons under the Act, a court must find that there is (1) probable cause to believe that an act of domestic violence has been committed by the defendant, (2) probable cause to believe that a search for and seizure of weapons is 'necessary to protect the life, health or well being of a victim on whose behalf the relief is sought,' see N.J.S.A. 2C:25-28(f); and (3) probable cause to believe that the weapons are located in the place to be searched." Slip op. at 3-4. The Supreme Court further clarified that "The probable cause requirement for warrants is adaptable to civil and administrative search warrants to ensure that only reasonable searches are conducted under our Federal and State Constitutions, as the United States Supreme Court made clear" in Camera v. Mun. Court, 387 U.S. 523, 538-39 (1967). Slip op. at 24.

Accordingly, a search warrant for any firearms and ammunition which the respondent possesses or owns can only be issued in conjunction with a temporary extreme risk protective order when the court determines that probable cause exists to believe that (1) the respondent owns or possesses any firearms or ammunition, (2) the respondent poses an immediate and present danger of bodily injury to self or others by owning or possessing any such firearms or ammunition, and (3) such firearms or ammunition are presently at a specifically described location. See Guideline 4(e).

Directive #19-19 – "Guidelines for Extreme Risk Protective Orders"
August 12, 2019
Page 7

If ordered by the court, a temporary extreme risk protective order shall prohibit the respondent from possessing, purchasing, owning, or receiving firearms or ammunition, or from securing or holding a firearms purchaser identification card or permit to purchase a handgun pursuant to N.J.S.A. 2C:58-3, or a permit to carry a handgun pursuant to N.J.S.A. 2C:58-4 during the period the order is in effect. Additionally, the respondent will be ordered to surrender to law enforcement any firearms and any ammunition that the respondent possesses or owns, and any firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun held by the respondent. Any such card or permit issued to the respondent shall be immediately revoked pursuant to N.J.S.A. 2C:58-3(f). See Guideline 4(b).

The temporary extreme risk protective order shall remain in effect until further order of the court. The temporary order will include the date for the hearing for a final extreme risk protective order, which must be scheduled to be held within 10 days after the petition is filed. There is no interim review of the decision to grant a temporary order. However, the respondent could request that the hearing for the final order be expedited.

**Denials of a Temporary Extreme Risk Protective Order**

Unlike the Prevention of Domestic Violence Act, which explicitly provides for emergent hearings on applications for temporary restraining orders and emergent de novo review by the Superior Court of denials of such orders (N.J.S.A. 2C:25-28(a) and -28(i)), the Extreme Risk Protective Order Act does not explicitly provide for emergent hearings on petitions for temporary extreme risk protective orders. Rather, the Act simply provides that hearings be conducted "in an expedited manner." N.J.S.A. 2C:58-23(a).

In light of the nature of the Act and its stated purpose to address "extreme" risks, procedures have been developed to address petitions for a temporary extreme risk protective order that are denied by a Municipal Court judge. The procedures were modeled on the recently established procedures, effective October 1, 2019, for a de novo review of denials of emergent applications for temporary domestic violence restraining orders promulgated by Directive #13-19 ("Municipal/Family – Immediate De Novo Hearing for the Municipal Court Denial of a Domestic Violence Temporary Restraining Order").

Specifically, effective October 1, 2019, if a Municipal Court judge denies the petition for a temporary extreme risk protective order, the petitioner can request an immediate de novo hearing by an emergent duty Superior Court judge. Similar to the process for denials for temporary restraining orders, the Municipal Court judge must advise the petitioner, on the record, of the right to an immediate review of the denial to an on-call Superior Court judge. If the person wishes to exercise this right, law enforcement shall contact an on-call Superior Court judge. That Superior Court judge will review the petition and conduct a hearing telephonically to determine whether to grant or deny the temporary extreme risk protective order. If the person does not want to have an immediate review hearing, the order denying the petition will reflect this decision. To address denials of a petition for a temporary extreme risk protective order by a Municipal Court judge prior to October 1, the petitioner will be advised of the ability to go to the Criminal Division of the

Directive #19-19 – "Guidelines for Extreme Risk Protective Orders"
August 12, 2019
Page 8

Superior Court the next business day and request a de novo review by a Superior Court judge.  A Superior Court judge will make a determination to grant or deny the petition that same day.

If a Superior Court judge denies the temporary extreme risk protective order, the petitioner can file an appeal to the Appellate Division as of right within 45 days of the entry of that order pursuant to R. 2:2-3(a)(1).  To obtain information on filing an appeal, a pro se packet entitled "How to Appeal a Trial Court, Tax Court, or State Agency Decision" is available at https://www.njcourts.gov/forms/10837_appl_prose_kit.pdf.

**Overview of Proceedings for a Final Extreme Risk Protective Order**

Guideline 5(a) provides that the hearing for a final extreme risk protective order will be scheduled to be held in the Superior Court within 10 days after the petition is filed.  The actual hearing date could be adjusted to allow sufficient time for the respondent to be served with the petition and temporary order or to prepare for the hearing. At the hearing, the respondent shall be afforded the right to testify, to present witnesses, to submit documents, to cross-examine any witnesses who may appear at the hearing, and to present information. See Guideline 5(c). The court will consider all relevant information, including the factors listed in Guideline 3(d), as well as any information provided by the county prosecutor or designee pursuant to Guideline 5(e).

A final extreme risk protective order will be ordered by the court upon a finding by a preponderance of evidence that the respondent poses a significant danger of bodily injury to self or others by owning, possessing, purchasing, or receiving a firearm. Specifically, the final extreme risk protective order shall prohibit the respondent from owning, purchasing, possessing, or receiving firearms or ammunition, or from securing or holding a firearms purchaser identification card or permit to purchase a handgun pursuant to N.J.S.A. 2C:58-3, or a permit to carry a handgun pursuant to N.J.S.A. 2C:58-4 during the period that the order is in effect.  Additionally, the respondent will be ordered to surrender to law enforcement any firearms or ammunition that the respondent possesses or owns, and any firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun held by the respondent.  Any such card or permit issued to the respondent shall be immediately revoked pursuant to N.J.S.A. 2C:58-3(f).

As noted above, in accordance with the Supreme Court's decision in Hemenway, the standard for issuance of a search warrant in conjunction with a final extreme risk protective order departs from the statutory language by requiring the court to find probable cause.  Specifically, a search warrant will be issued for any firearms and ammunition that the respondent possesses or owns if the court determines that probable cause exists to believe that (1) the respondent owns or possesses any firearms or ammunition, (2) the respondent poses a significant danger of bodily injury to self or others by owning or possessing any such firearms or ammunition, and (3) such firearms or ammunition are presently at a specifically described location. See Guideline 6(d).

If the petitioner or the respondent wishes to appeal the decision by a Superior Court judge to grant or to deny the final extreme risk protective order, their appeal must be filed within 45 days of the entry of that decision pursuant to R. 2:2-3(a)(1).

**Termination of a Final Extreme Risk Protective Order**

In accordance with the Act, Guideline 7 provides that the petitioner or the respondent may apply for termination of a final extreme risk protective order at any time following issuance of the order. See N.J.S.A. 2C:58-25. The court, on notice to the petitioner and the respondent, the appropriate law enforcement agency, and the county prosecutor, may terminate the final extreme risk protective order after a hearing.

In making the determination to terminate a final extreme risk protective order, the court shall consider the factors or information enumerated in Guideline 3(d), as well as any other relevant evidence, including, but not limited to, whether the respondent has received, or is receiving, mental health treatment. If the respondent filed the petition for termination, he or she must establish by a preponderance of the evidence that he or she no longer poses a significant danger of causing bodily injury to self or to other persons by owning, possessing, purchasing, or receiving a firearm.

The forms to file for termination of a final extreme risk protective order can be obtained, effective September 1, 2019, at the Criminal Division or on the Judiciary's website at https://www.njcourts.gov/forms/12433_erpo_petition_for_term.pdf

**Confidentiality of Records for Extreme Risk Protective Orders**

All records related to proceedings for extreme risk protective orders are confidential and may not be disclosed to anyone other than the respondent for use in proceedings under the Act, except if good cause is found by the court to release such records. See Guideline 8(a). However, the petitioner will receive copies of the court orders in accordance with N.J.S.A. 2C:58-23(i).

Pursuant to the Act, the Administrative Office of the Courts is required to create and maintain an electronic central registry for extreme risk protective orders. Therefore, the registry will include all persons who have had a temporary or final extreme risk protective order entered against them and all persons who have been charged with a violation of a temporary or final extreme risk protective order. See Guideline 8(b). All records in the registry are confidential and subject to release only to a police or other law enforcement agency investigating a report of a crime, offense, or act of domestic violence, or conducting a background investigation involving a person's application for a firearms purchaser identification card or permit to purchase a handgun or employment as a police or law enforcement officer, or for purposes of an extreme risk protective order proceeding, or for any other purpose authorized by law or the Supreme Court pursuant to N.J.S.A. 2C:58-30. A respondent's information, other than information related to a violation of a temporary or final extreme risk protective order, will be removed from the registry upon the termination of the extreme risk protective order. See Guideline 8(b).

Any questions regarding Directive # 19-19 may be directed to Assistant Director Sue Callaghan (Criminal Practice Division) via email at sue.callaghan@njcourts.gov or by phone at

Directive #19-19 – "Guidelines for Extreme Risk Protective Orders"
August 12, 2019
Page 10

609-815-2900 ext. 55300 or Assistant Director Steven A. Somogyi (Municipal Court Services Division) via email at steven.somogyi@njcourts.gov or via phone at 609-815-2900 ext. 54850.


G.A.G.


Attachments – (1) Guidelines for Extreme Risk Protective Orders
　　　　　　　(2) Information Sheet for a Petition for an Extreme Risk Protective Order Against a Law
　　　　　　　　　Enforcement Officer

cc:　　Chief Justice Stuart Rabner　　　　　　　　　Trial Court Administrators
　　　　Attorney General Gurbir S. Grewal　　　　　　Special Assistants to the Administrative Director
　　　　Public Defender Joseph E. Krakora　　　　　　Criminal Division Managers and Assistants
　　　　Criminal Division Judges　　　　　　　　　　Family Division Managers
　　　　Family Division Judges　　　　　　　　　　　Municipal Division Managers
　　　　Municipal Court Judges　　　　　　　　　　　Vance Hagins, Chief
　　　　Veronica Allende, Director, DCJ　　　　　　　Rhonda Crimi, Chief
　　　　Steven D. Bonville, Chief of Staff　　　　　　Julie Higgs, Chief
　　　　AOC Directors and Assistant Directors　　　　Amelia Wachter-Smith, Chief
　　　　Clerks of Courts　　　　　　　　　　　　　　Maria Pogue, Assistant Chief

ATTACHMENT 1

GUIDELINES FOR EXTREME RISK PROTECTIVE ORDERS

## Guidelines for Extreme Risk Protective Orders
## Promulgated by Directive #19-19

### Guideline 1.  Definitions

"Ammunition" means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm, but does not include any shotgun shot or pellet not designed for use as the single, complete projectile load for one shotgun hull or casing or any unloaded, non-metallic shotgun hull or casing not having a primer.

"Deadly weapon" shall have the same meaning as in subsection c. of N.J.S.A. 2C:11-1.

"Family or Household Member" means a spouse, domestic partner, partner in a civil union couple, or former spouse, former domestic partner, or former partner in a civil union couple, or any other person who is a present household member or was at any time a household member; a person with whom the respondent has a child in common, or with whom the respondent anticipates having a child in common if one of the parties is pregnant; or a current or former dating partner.

"Firearm" shall have the same meaning as in N.J.S.A. 2C:39-1.

"Law Enforcement Officer" means a person whose public duties include the power to act as an officer for the detection apprehension, arrest, and conviction of offenders against the laws of this State.

"Law Enforcement Agency" means a department, division, bureau, commission, board or other authority of the State or of any political subdivision thereof which employs law enforcement officers.

"Petitioner" means a family or household member or law enforcement officer who seeks an order.

"Recent" means within six months prior to the date the petition was filed.

"Respondent" means a person against whom an order is sought.

**Guideline 2.**     **Petition for Temporary Extreme Risk Protective Order**

(a) Family or Household Member Petitioners.  Except for a petition filed against a law enforcement officer respondent, a family or household member petitioner may file a petition for a temporary extreme risk protective order in the Superior Court or may request a petition at a law enforcement agency for filing with the court.

(b)  Law Enforcement Officer Petitioners.  A law enforcement officer may file a petition for a temporary extreme risk protective order with the court.

(c)  Other Persons.  Other persons who are neither family or household members nor law enforcement officers may request at a law enforcement agency that a law enforcement officer file a petition for a temporary extreme risk protective order with the court.

(d) Petition Against a Law Enforcement Officer Respondent. A petition for a temporary extreme risk protective order against a law enforcement respondent may be filed in the law enforcement agency in which the officer is employed as provided in N.J.S.A. 2C:58-23(l).

(e) Contents of Petition. This petition shall contain an allegation that the respondent poses an immediate and present danger of bodily injury to self or others by possessing, purchasing, owning, or receiving a firearm; and an affidavit setting forth the facts tending to establish that the respondent poses an immediate and present danger of bodily injury to self or others by possessing, purchasing, owning, or receiving a firearm and the number, types, physical description, and locations of any firearms and ammunition that the petitioner believes to be currently possessed by the respondent.

This affidavit shall set forth the affiant's basis of knowledge for these alleged facts and may reference or attach documents relevant to the petition.  This affidavit shall be sworn and under oath, subject to punishment if any statements are willfully false.

## Guideline 3.  Hearing on Petition for Temporary Extreme Risk Protective Order

(a)　　Timing.  The court shall hear the petition in an expedited manner.  For emergent relief requested on weekdays after standard court hours, weekends, holidays or any other special circumstance when the Superior Court is not in session, Municipal Court judges or emergent duty Superior Court judges shall hear the petition.

(b)　　Venue.  Venue shall be in the county where the respondent resides, unless the respondent resides out of state then venue shall be in the county where the petitioner resides.

(c)　　Evidence.  In determining whether to issue a temporary extreme risk protective order, the court may examine under oath the petitioner and any witnesses the petitioner may produce.  The court may consider the sworn oral testimony of a petitioner or witness who, although not physically present in court, identifies himself or herself, specifies the purpose of the request, and disclose the basis of the petition.   Such sworn oral testimony may be communicated to the court by telephone, radio or other means of electronic communication.  The court officer or law enforcement officer assisting the petitioner shall contemporaneously record such sworn oral testimony by means of a recording device, if available; otherwise, adequate notes summarizing what is said shall be made by the judge.   This sworn testimony shall be deemed to be an affidavit for the purposes of issuance of an order.  In lieu of examining the petitioner or any witnesses in court or by electronic communication, the court may rely on an affidavit submitted pursuant to Guideline 2 in support of the petition and may also rely upon any

information provided by the county prosecutor or designee pursuant to paragraph (e) of this Guideline.

(d)   Factors.   In determining whether to issue a temporary extreme risk protective order, the court shall consider all relevant evidence including whether the respondent:

(1) has any history of threats or acts of violence by the respondent directed toward self or others;

(2) has any history of use, attempted use, or threatened use of physical force by the respondent against another person;

(3) is the subject of a temporary or final restraining order or has violated a temporary or final restraining order issued pursuant to the "Prevention of Domestic Violence Act of 1991," (N.J.S.A. 2C:25-17 et seq.);

(4) is the subject of a temporary or final protective order or has violated a temporary or final protective order issued pursuant to the "Sexual Assault Survivor Protection Act of 2015," (N.J.S.A. 2C:14-13 et al.);

(5) has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to N.J.S.A. 2C:12-10, or domestic violence offense enumerated in N.J.S.A. 2C:25-19;

(6) has any prior arrests, pending charges, or convictions for any offense involving cruelty to animals or any history of acts involving cruelty to animals;

(7) has any history of drug or alcohol abuse and recovery from this abuse;

(8) has recently acquired a firearm, ammunition, or other deadly weapon;

(9)   has recklessly used, displayed, or brandished a firearm;

(10) has an existing or previous extreme risk protective order issued against him or her; and

(11) has previously violated an extreme risk protective order issued against him or her.

If the court finds one or more of the factors listed in paragraph (d)(1) to (11) of this Guideline, then the court may consider factors including whether the respondent:

(12) has any prior involuntary commitment in a hospital or treatment facility for persons with psychiatric disabilities;

(13) has received or is receiving mental health treatment;

(14) has complied or has failed to comply with any mental health treatment; and

(15) has received a diagnosis of a mental health disorder.

Records provided to the court concerning any of the factors listed in paragraph (d) of this Guideline are confidential and may not be disclosed except as provided in Guideline 8(a).

(e)    Information from Prosecutor.  If the petitioner is a family or household member, the county prosecutor or designee shall produce for the court's consideration any readily available information or evidence pertaining to the factors listed in paragraph (d) of this Guideline. If the petitioner is a law enforcement officer, then the county prosecutor or designee shall produce for the court's consideration any statements or reports pertaining to the factors listed in paragraph (d) of this Guideline upon which the officer relies in the petition.

**Guideline 4.  Temporary Relief**

(a)  Court's Determination.  If the court determines that the petitioner established good cause to believe that the respondent poses an immediate and present danger of bodily injury to self or others by possessing, purchasing, owning, or receiving a firearm, the court shall order ex parte emergency relief in the form of a temporary extreme risk protective order. The court shall place on the record the reasons supporting its decision to grant or deny the order.

(b)  Contents of Order.  If ordered by the court, a temporary extreme risk protective order (1) shall prohibit the respondent from possessing, purchasing, owning, or receiving firearms or ammunition, or from securing or holding a firearms purchaser identification card or permit to purchase a handgun pursuant to N.J.S.A. 2C:58-3, or a permit to carry a handgun pursuant to N.J.S.A. 2C:58-4 during the period the order is in effect, and (2) shall order the respondent to surrender to law enforcement any firearms and any ammunition which the respondent possesses or owns, and any firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun held by the respondent.  Any such card or permit issued to the respondent shall be immediately revoked pursuant to N.J.S.A. 2C:58-3(f). The order shall state the time, date, and place of the hearing for a final extreme risk protective order.

(c)  Service of Order. The court issuing the temporary extreme risk protective order shall immediately forward a copy of the order and the petition to the county prosecutor in the county in which the respondent resides for service by the appropriate law enforcement agency upon the respondent.  At no time shall the family or household

member petitioner be asked to serve any temporary extreme risk protective order on the respondent.  Service by the county prosecutor or law enforcement petitioner upon the respondent shall be immediate or as soon as practicable.

(d)  Duration of Order. The temporary extreme risk protective order shall remain in effect until a court issues a further order.

(e)   Search Warrant.  If the court determines, based upon consideration of information provided in the temporary extreme risk protective order petition, and during the temporary extreme risk protective order hearing, that probable cause exists to believe that (1) the respondent owns or possesses any firearms or ammunition, (2) the respondent poses an immediate and present danger of bodily injury to self or others by owning or possessing any such firearms or ammunition, and (3) such firearms or ammunition are presently at a specifically described location, then the court, in conjunction with the temporary extreme risk protective order, shall issue a search warrant for any firearms and ammunition which the respondent  possesses or owns at that specified location.

**Guideline 5. <u>Final Extreme Risk Protective Order Hearing</u>**

<u>(a)</u>     <u>Timing.</u>  A final extreme risk protective order hearing shall be scheduled to be held in the Superior Court within 10 days after the petition is filed pursuant to Guideline 2.

<u>(b)</u>     <u>Venue.</u>  Venue shall be in the county where the temporary extreme risk protective order was issued, unless good cause is shown for the hearing to be held elsewhere.

<u>(c)</u>     <u>Evidence.</u>  In determining whether to issue a final extreme risk protective order, the court may examine under oath the petitioner and any witnesses the petitioner may produce, may consider an affidavit and documents submitted in support of the petition, and may consider any information provided by the county prosecutor or designee pursuant to Guideline 3(e) and paragraph (e) of this Guideline. The respondent shall be afforded the right to testify, to present witnesses, to submit documents, to cross-examine any witnesses who may appear at the hearing, and to otherwise present information.  The respondent shall have the right to be present at the hearing.  The rules governing admissibility of evidence at trial shall not apply to the presentation and consideration of information at the hearing.

<u>(d)</u>     <u>Factors.</u> In determining whether to issue a final extreme risk protective order, the court shall consider all relevant evidence, including the factors referenced in Guideline 3(d)(1) to (11). If the court finds one or more of those factors, then the court may consider the factors referenced in Guideline 3(d)(12) to (15). Records provided to

the court concerning any of the factors listed in Guideline 3(d) are confidential and may not be disclosed except as provided in Guideline 8(a).

     (e)    <u>Information from Prosecutor</u>.  In addition to information referenced in Guideline 3(e), the county prosecutor or designee shall produce for the court's consideration information obtained through sources including the execution of any search warrant and any additional information obtained through the performance of its responsibilities under N.J.S.A. 2C:58-20 et seq.

**Guideline 6.   Final Relief.**

(a)   Court's Determination.  The court shall issue a final extreme risk protective order if it finds by a preponderance of evidence at the hearing that the respondent poses a significant danger of bodily injury to self or others by owning, possessing, purchasing, or receiving a firearm.  The court shall place on the record the reasons supporting its decision to grant or deny the order.

(b)   Contents of Order.  If ordered by the court, the final extreme risk protective order (1) shall prohibit the respondent from owning, purchasing, possessing, or receiving firearms or ammunition, or from securing or holding a firearms purchaser identification card or permit to purchase a handgun pursuant to N.J.S.A. 2C:58-3, or a permit to carry a handgun pursuant to N.J.S.A. 2C:58-4 during the period that the order is in effect, and (2) shall order the respondent to surrender to law enforcement any firearms or ammunition which the respondent possesses or owns, and any firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun held by the respondent.  Any such card or permit issued to the respondent shall be immediately revoked pursuant to N.J.S.A. 2C:58-3(f).

(c)   Duration of Order.  The final extreme risk protective order shall remain in effect until a court issues a further order.

(d)   Search Warrant.  If the court determines, based upon consideration of all information pursuant to N.J.S.A. 2C:58-20 et seq., such as the petition filed pursuant to Guideline 2, information presented during the hearings conducted pursuant to Guideline 3 and Guideline 5, and any other information presented that probable cause exists to

believe that (1) the respondent owns or possesses any firearms or ammunition, (2) the respondent poses a significant danger of bodily injury to self or others by owning or possessing any such firearms or ammunition, and (3) such firearms or ammunition are presently at a specifically described location, then the court, in conjunction with the final extreme risk protective order, shall issue a search warrant for any firearms and ammunition which the respondent possesses or owns at that specified location.

**Guideline 7. Termination of Final Extreme Risk Protective Order**

  The petitioner or respondent may file a petition for termination of a final extreme risk protective order at any time following issuance of the order.  The court, on notice to the petitioner and the respondent, the appropriate law enforcement agency, and the county prosecutor, may terminate the final extreme risk protective order after a hearing. During the termination hearing, the court shall consider the factors enumerated in Guideline 3(d), as well as any other relevant evidence, including, but not limited to, whether the respondent has received, or is receiving, mental health treatment.  If the respondent petitioned for termination, the respondent shall bear the burden at the hearing of proving by a preponderance of the evidence that the respondent no longer poses a significant danger of causing bodily injury to self or to other persons by owning, possessing, purchasing, or receiving a firearm.

**Guideline 8.  Confidentiality of Records**

(a) Records.   Any records related to proceedings for extreme risk protective orders are confidential and may not be disclosed, by subpoena or otherwise, to anyone other than the respondent for use in the extreme risk protective order proceeding, except by order of the court on good cause shown.  However, the petitioner will receive copies of the orders.

(b) Electronic Central Registry.   The Administrative Office of the Courts shall maintain a registry of all persons who have had a temporary or final extreme risk protective order entered against them and all persons who have been charged with a violation of a temporary or final extreme risk protective order.

All records made pursuant to this section shall be kept confidential and shall be released only to a police or other law enforcement agency investigating a report of a crime, offense, or act of domestic violence, or conducting a background investigation involving a person's application for a firearms purchaser identification card or permit to purchase a handgun or employment as a police or law enforcement officer, or for purposes of an extreme risk protective order proceeding, or for any other purpose authorized by law or the Supreme Court of the State of New Jersey.

A respondent's information, other than information related to a violation of a temporary or final order issued pursuant to this law, shall be removed from the registry upon the termination of the extreme risk protective order.

ATTACHMENT 2

INFORMATION SHEET FOR A PETITION
FOR AN EXTREME RISK PROTECTIVE ORDER AGAINST A
LAW ENFORCEMENT OFFICER



**Information Sheet for a**

**Petition for an Extreme Risk Protective Order
Against a Law Enforcement Officer**

The Extreme Risk Protective Order Act (*N.J.S.A.* 2C:58-20 to -32) requires that when the respondent is a law enforcement officer, the petition cannot be filed with the court until the conclusion of an internal affairs investigation, and a determination by the county prosecutor to file a petition with the court.

Specifically, *N.J.S.A.* 2C:58-23(l) provides:

    (1) A petition for a temporary extreme risk protective order filed against a law enforcement officer **shall be filed** in the law enforcement agency in which the officer is employed. The law enforcement officer or employee receiving the petition shall advise the petitioner of the procedure for completing and signing a petition.

    (2) Upon receipt of the petition, the law enforcement officer's employer shall immediately initiate an internal affairs investigation.

    (3) The disposition of the internal affairs investigation shall immediately be served upon the county prosecutor who shall make a determination **whether to refer the matter to the courts.**

Attached is the petition form if you want to file a petition for an extreme risk protective order against a law enforcement officer. To file the petition, you must complete the form and provide it to the law enforcement agency where the law enforcement officer is employed. If you have any questions, you can contact that law enforcement agency or the county prosecutor's office. The contact information for the county prosecutor's office is listed below:

**(To be completed by staff)**

_____

_____

_____

"Exhibit C"



## State of New Jersey

PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
PO BOX 080
TRENTON, NJ 08625-0080

GURBIR S. GREWAL
*Attorney General*

### ATTORNEY GENERAL LAW ENFORCEMENT DIRECTIVE NO. 2019-2

**TO:**      All Law Enforcement Chief Executives

**FROM:**    Gurbir S. Grewal, Attorney General

**DATE:**    August 15, 2019

**SUBJECT:** **Attorney General Directive Pursuant to the Extreme Risk Protective Order Act of 2018**

## 1.   INTRODUCTION AND OVERVIEW

### 1.1   The Statute and its Purpose.

This Directive provides guidelines to law enforcement agencies and prosecutors' offices on the implementation of the Extreme Risk Protective Order Act of 2018 ("ERPO Act" or "Act"), N.J.S.A. 2C:58-20 to -32. The Act provides procedures through which select people (the "petitioner") may apply for an Extreme Risk Protective Order ("ERPO") against a person (the "respondent") who poses a danger of causing bodily injury to self or others by possessing or purchasing a firearm. Those procedures govern both the temporary risk protective order (TERPO) and the final risk protective order (FERPO). An ERPO prohibits the respondent from possessing or purchasing a firearm or ammunition and from holding a firearms purchaser identification card, permit to purchase a handgun, and permit to carry a handgun.

The ERPO Act is based on the framework and procedure of domestic-violence protection orders in the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. An ERPO is a civil court order that is issued by a judge upon consideration of the evidence related to a number of factors, prompted by a petition by a family or household member or law enforcement officer. Under the Act, a court would consider evidence presented whether the respondent: has a history of threats or acts of violence; has a history of use (including attempted and threatened use) of physical force; is subject to or violated any protective orders; has been arrested, charged, or convicted of any violent indictable crime or disorderly-persons offense, stalking offense, or domestic violence offense; has been charged with crimes of animal cruelty; has a history of substance abuse; or has recently acquired a firearm or ammunition.

The Office of the Attorney General is committed to the full and fair implementation of all of the Act's provisions. These ERPO procedures are a mechanism for law enforcement to seek



*New Jersey Is An Equal Opportunity Employer • Printed on Recycled Paper and is Recyclable*

the temporary suspension of firearms access for at-risk individuals who, during periods of crisis, pose an elevated risk of endangering themselves or others.[1]  The Act's goal is to save lives in New Jersey, including the lives of the respondents and those around them.  Law enforcement is committed to enforcing this law to protect the safety of respondents and the community, while respecting the rights of all respondents.

### 1.2    Applicability of Directive.

This Directive applies to the filing and execution of ERPOs by law enforcement officers and prosecutors.  This Directive does not apply to protective orders filed under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -3, or the Sexual Assault Survivor Protection Act, N.J.S.A. 2C:14-13 to -21.  Nor does it limit civilians' or law enforcement's other avenues to address moments of crisis, including through the Prevention of Domestic Violence Act, the Sexual Assault Survivor Protection Act, a mental-evaluation referral, a civil commitment, or criminal complaints, investigations, or charges.  Indeed, the statute itself provides that "[f]iling a petition pursuant to this section shall not prevent a petitioner from filing a criminal complaint or applying for a restraining order pursuant to the [Prevention of Domestic Violence Act of 1991] or prevent any person from taking any action authorized pursuant to [the involuntary commitment statute] based on the circumstances forming the basis of the petition."  N.J.S.A. 2C:58-23(a).

### 1.3    Non-Enforceability of Rights by Third Parties.

This Directive is issued pursuant to the Attorney General's authority to ensure the uniform and efficient enforcement of the laws and the administration of criminal justice throughout the State.  Nothing in this Directive shall be construed in any way to create any rights to anyone, including ERPO respondents, beyond those established under the Constitutions of the United States and the State of New Jersey, or under any New Jersey statute or court rule.  The provisions of this Directive are intended to be implemented and enforced by law enforcement agencies, the New Jersey State Police, County Prosecutors, the Office of the Insurance Fraud Prosecutor, the Office of Public Integrity and Accountability, and the Division of Criminal Justice, and these provisions do not create any promises or rights that may be enforced by any other persons or entities.

### 1.4    Attorney General Order Issuing Directive.

Pursuant to the authority granted to me under the New Jersey Constitution and the Criminal Justice Act of 1970, N.J.S.A. 52:17B-97 to -117, which provides for the general supervision of criminal justice by the Attorney General as chief law enforcement officer of the State in order to secure the benefits of a uniform and efficient enforcement of the criminal law and the administration of criminal justice throughout the State, and under the Extreme Risk Protective Order Act of 2018, N.J.S.A. 2C:58-20 to -32, which takes take effect on September 1, 2019, I, Gurbir S. Grewal, hereby DIRECT all law enforcement and prosecuting agencies operating under the authority of the laws of the State of New Jersey to implement and comply with the following policies, procedures, standards, and practices.

---

[1] Statement of Bill Introduced A.1217 at 7.

## 2.   DEFINITIONS

As used in this Directive, and in accordance with the ERPO Act, N.J.S.A. 2C:58-21 and Administrative Office of the Courts Directive # 19-19, "Guidelines for Extreme Risk Protective Orders," Guideline 1 (2019) [hereinafter AOC Guideline]:

1.   "Ammunition" means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm, but does not include any shotgun shot or pellet not designed for use as the single, complete projectile load for one shotgun hull or casing or any unloaded, non-metallic shotgun hull or casing not having a primer.

2.   "Deadly weapon" shall have the same meaning as in N.J.S.A. 2C:11-1(c).

3.   "Family or household member" means a spouse, domestic partner as defined in N.J.S.A. 26:8A-3, partner in a civil union couple as defined in N.J.S.A. 37:1-29, or former spouse, former domestic partner, or former partner in a civil union couple, or any other person who is a present household member or was at any time a household member; a person with whom the respondent has a child in common, or with whom the respondent anticipates having a child in common if one of the parties is pregnant; or a current or former dating partner.

4.   "Firearm" shall have the same meaning as in N.J.S.A. 2C:39-1.

5.   "Law enforcement agency" means a department, division, bureau, commission, board or other authority of the State or of any political subdivision thereof which employs law enforcement officers.

6.   "Law enforcement officer" means a person whose public duties include the power to act as an officer for the detection, apprehension, arrest, and conviction of offenders against the laws of this State.

7.   "Petitioner" means a family or household member or law enforcement officer.

8.   "Recent" means within six months prior to the date the petition was filed.

9.   "Respondent" means a person against whom an order is sought.

**3.     FILING FOR AN ERPO**

3.1     Who May File for an ERPO.

The ERPO Act specifies that only a "petitioner" defined as a family or household member of the respondent, or a law enforcement officer acting in their official capacity, may file a petition for an ERPO.  N.J.S.A. 2C:58-21, -23(a); see Section 2 (defining family or household member).

The definition of a "family or household member" covers the identical universe of those individuals who can be considered a "victim of domestic violence" and may file for a temporary restraining order (TRO) under the Prevention of Domestic Violence Act.  See N.J.S.A. 2C:25-19(d).  Although many people who file for a TERPO may also be eligible to file for a TRO, the difference is that the ERPO Act does not require an act of domestic violence to have occurred, nor does it require a need to protect the petitioner's well-being.  Compare N.J.S.A. 2C:25-28 and N.J.S.A. 2C:58-23.  In other words, for example, it may be that a mother or dating partner of a respondent/defendant can file for both a TRO and a TERPO, but while a TRO requires protection for the mother or dating partner, the TERPO could be sought to protect the respondent or a third party from danger.  And, of course, while a law enforcement officer may not file for a TRO on behalf of a domestic violence victim, the ERPO Act expressly allows a law enforcement officer to file a TERPO on behalf of anyone.  N.J.S.A. 2C:58-21, -23(a).  See Section 3.5 for more information on the filing of TERPO by a law enforcement officer.

3.2     Informing Individuals of ERPOs and Other Options.

One way to ensure the success of ERPOs is for law enforcement to educate people they encounter on the availability of ERPO petitions.  Thus, if an individual expresses to a law enforcement officer the belief that another person poses an immediate and present danger of causing bodily injury to self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm, the officer shall inform the person of the ERPO Act and its procedures, including who qualifies as a petitioner.

Scenarios may arise where an individual presents to law enforcement with the request to file an ERPO, but the individual would qualify for a restraining or protective order pursuant to the Prevention of Domestic Violence Act, or the Sexual Assault Survivor Protection Act.  In that case, the officer should inform the individual of these other options to ensure the individual is making an informed decision, where they can be afforded the maximum protection under our laws.  Likewise, if an individual presents to law enforcement with information or a request that could be addressed by an ERPO, the officer should inform the individual of the ERPO procedures in accordance with this Directive.

As stated above in Section 1.2, nothing in this Directive or the ERPO Act limits civilians' or law enforcement's other avenues to address moments of crisis, including through the Prevention of Domestic Violence Act, the Sexual Assault Survivor Protection Act, a mental-evaluation referral, civil commitment, and/or criminal complaints, investigations, or charges.

### 3.3    The Standard for Obtaining an ERPO.

To ensure the constitutionality of any search warrants issued under the ERPO Act pursuant to State v. James Hemenway, (A-19-18) (July 24, 2019), and in line with the instruction provided by AOC Guideline 4(e), law enforcement and prosecutors shall establish and request that the search warrant associated with an ERPO application be issued by the court under the standard of probable cause.  In other words, a search warrant for any firearms and ammunition which the respondent possesses or owns can only be issued in conjunction with an ERPO when the court determines that probable cause exists to believe that (1) the respondent owns or possesses any firearms or ammunition, (2) the respondent poses an immediate and present danger of bodily injury to self or others by owning or possessing any such firearms or ammunition, and (3) such firearms or ammunition are presently at a specifically described location.  AOC Guideline 4(e).  In this context, as under the Prevention of Domestic Violence Act, probable cause requires that the issuing court only have a well-grounded suspicion.  See State v. Hemenway.

In cases where law enforcement and prosecutors have only good cause—not probable cause—that the respondent poses an immediate and present danger of causing bodily injury to self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm, they may still seek a TERPO petition and order, but not a search warrant.

### 3.4    The Process of Filing for a TERPO by a Family or Household Member.

Except when filing for a TERPO against a law enforcement officer, see Section 5 of this Directive, a family or household member may file a petition for a TERPO at the Superior Court, or at a State, county, or municipal law enforcement agency.  N.J.S.A. 2C:58-23(a).  The petitioner shall not be charged a fee to file the petition.  N.J.S.A. 2C:58-23(c).

The statute provides that the agency "shall advise the petitioner of the procedure for completing and signing a petition" for a TERPO and "may assist the family or household member in preparing or filing the petition." N.J.S.A. 2C:58-23(a) (emphasis added).  The statute explains that "[t]his assistance may include, but not be limited to, providing information related to the factors set forth in [the ERPO Act], joining in the petition, referring the matter to another law enforcement agency for additional assistance, or filing the officer's own petition with the court." Ibid.

The petition will be in an electronic format on the Judiciary's Electronic Court Disposition Reporting (eCDR) system[2].  Thus, if a petitioner seeks to file a petition with a State, county, or municipal law enforcement agency, and no decision has been made for a law enforcement officer to "takeover" or "join" the filing and become the petitioner, see infra Section 3.5, the agency must help the petitioner in entering their petition in the eCDR system.

The TERPO petition must be filed in a law enforcement agency or court vicinage located in the same county where the respondent resides.  If the respondent resides out of state, it must be filed in a law enforcement agency or court vicinage in the same county where the petitioner

---

[2] The AOC Guidelines refer to it as the Protective Restraining Order System Environment (PROSE).

resides. If an individual attempts to file a TERPO at a law enforcement agency located in a different county than where the respondent resides, or than where the petitioner resides if the respondent resides out of state, the agency shall assist the petitioner in calling the local law enforcement agency where the respondent resides, or where the petitioner resides if the respondent resides out of state, and have that agency file the petition on the eCDR system under the petitioner's direction on the phone.

Although a member of the appropriate law enforcement agency must enter the petition in the eCDR system for the petitioner, it is in the agency's discretion as to what further assistance will be given, such as providing information related to the factors in N.J.S.A. 2C:58-23(f). As to whether the law enforcement officer should join in the petition or file their own petition, see infra Section 3.5.

3.5     Filing for a TERPO by a Law Enforcement Officer.

The Act provides that a law enforcement officer may file a petition for a TERPO. N.J.S.A. 2C:58-21, -23(a). If an officer, in the course of their own investigation and policing, or from information received from a non-family or household member, has probable cause to believe that the respondent poses an immediate and present danger of causing bodily injury to self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm, the officer shall file a petition for a TERPO.

If a family or household member presents at a law enforcement agency to file a TERPO petition, a law enforcement officer shall "takeover"[3] the petition if (a) the officer has probable cause to believe that the respondent poses an immediate and present danger of causing bodily injury to the respondent or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm; and (b) the officer believes that there is some reason that the petition would be best filed by a law enforcement officer and not the family or household member, e.g., the petitioner is fragile or unable to proceed, or the family or household unit would be best served by having law enforcement file the petition.

A law enforcement officer may otherwise file, "takeover," or "join"[4] a petition for a TERPO under any other circumstances in the officer's discretion as long as the officer has good cause to believe that the respondent poses an immediate and present danger of causing bodily injury to the respondent or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm. If an officer has only good cause, not probable cause, that the respondent poses an immediate and present danger of causing bodily injury to self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm, the officer may seek a TERPO petition and order, but not a search warrant. See Section 3.3.

---

[3] When a law enforcement officer "takes over" a petition, they become the sole petitioner, and shall designate themselves as the petitioner in the eCDR system.

[4] When a law enforcement officer "joins" a petition, they become a petitioner along with the original family or household-member petitioner, and shall designate both petitioners in the eCDR system.

A law enforcement officer may file a TERPO at the courthouse or at their law enforcement agency by using the eCDR system.  In the eCDR petition, the officer shall designate if they are the petitioner, or if they are "joining" the petition of a family or household member.

3.6     Duty to Warn and ERPOs.

The "duty to warn" statute, N.J.S.A. 2A:62A-16 to -17, provides that when a licensed health-care practitioner learns of a threat of imminent, serious physical violence from a patient against themselves or another, and a reasonable professional would believe the patient intended to carry out the threat, the practitioner must notify the chief of police of the municipality in which the patient resides.  If the chief determines, from that information, that the patient suffers from any one of the "disabilities" set forth in N.J.S.A. 2C:58-3(c), the chief may apply for the revocation of any firearms purchaser identification card or permit to purchase or possess a firearm granted to the patient by the Superior Court in accordance with N.J.S.A. 2C:58-3(f).  N.J.S.A. 2A:62A-16(e).  The court may also order the patient to surrender to the county prosecutor any firearm owned or accessible to the patient, and if the patient fails to surrender them, the court may order a search and removal of the items where the judge has reasonable cause to believe the items are located, and states with specificity the reasons and scope of the search and seizure.  Ibid.

The ERPO Act provides an additional avenue for law enforcement to use once they have been alerted that a health-care practitioner duty-to-warn has been triggered.  So in addition to the remedies in N.J.S.A. 2A:62A-16, if a chief law enforcement officer receives information from a practitioner of a threat pursuant to N.J.S.A. 2A:62A-16, the chief law enforcement officer may file (or designate another officer in the agency to file) a petition for a TERPO as long as the officer has probable cause to believe that the respondent poses an immediate and present danger of causing bodily injury to the respondent or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm.  But see Section 3.3 (explaining that standard for TERPO is probable cause, and if only good cause exists, law enforcement may still seek TERPO but without search warrant).  The TERPO then shall proceed as a regular TERPO petition.

3.7     The Contents of the Petition.

The AOC Guidelines instruct that the TERPO petition shall allege that the respondent poses an immediate and present danger of bodily injury to self or others by possessing, purchasing, owning, or receiving a firearm.  AOC Guideline 2(e).  It shall also set forth the facts, and the basis of knowledge for these alleged facts, tending to establish that the respondent poses an immediate and present danger of bodily injury to self or others by possessing, purchasing, owning, or receiving a firearm and the number, types, physical description, and locations of any firearms and ammunition that the petitioner believes to be currently possessed by the respondent.  Ibid.  The petition may reference documents relevant to the petition.  Ibid.  The petition shall be sworn and under oath, subject to punishment if any statements are willfully false.  Ibid.  This all shall be done on the eCDR system.

7

## 4.    ERPO PROCEEDINGS: THE ROLE OF THE COUNTY PROSECUTOR

### 4.1    Overview of the TERPO and FERPO Proceedings.

When a petitioner files a petition for a TERPO, except when it is filed against a law enforcement officer respondent, see Section 5, it shall be heard by the court "in an expedited manner." N.J.S.A. 2C:58-23(a).  The venue shall be in the county where the respondent lives, unless the respondent lives out of state, in which case the venue shall be in the county where the petitioner lives.  AOC Guideline 3(b).  At the TERPO hearing, the court may examine under oath the petitioner and any witness the petitioner produces, or the court may rely on an affidavit submitted by the petitioner in lieu of oral testimony or the information provided by the county prosecutor[5] or designee, see Sections 4.3, 4.4, and 4.5.  AOC Guideline 3(c).  The court officer or law enforcement officer assisting the petitioner shall contemporaneously record such sworn oral testimony by means of a recording device, if available; otherwise, adequate notes summarizing what is said shall be made by the judge.  AOC Guideline 3(c).  This sworn testimony shall be deemed to be an affidavit for the purposes of issuance of an order.  Ibid.  This will be the same procedure that currently occurs for domestic violence temporary restraining orders.  See R. 5:7A(b).

If the TERPO is granted by the court, the FERPO hearing shall be scheduled to be held in the Superior Court within 10 days after the TERPO petition is filed.  AOC Guideline 5(a).  Venue for the FERPO shall be in the county where the TERPO was issued, unless good cause is shown for it to be elsewhere.  AOC Guideline 5(b).  At the FERPO hearing, the court may examine under oath the petitioner and any witness the petitioner produces, and consider any information provided, including from the prosecutor or designee, see Sections 4.3, 4.4, and 4.5.  AOC Guideline 5(c).  The respondent shall have the right to be present at the hearing, testify, present witnesses, submit documents or information, and cross-examine witnesses who appear.  Ibid.  The rules of evidence do not apply at the hearing.  Ibid.

In determining whether to issue a TERPO or a FERPO, the court may consider all relevant evidence, including whether the respondent:

(1) has any history of threats or acts of violence by the respondent directed toward self or others;

(2) has any history of use, attempted use, or threatened use of physical force by the respondent against another person;

(3) is the subject of a temporary or final restraining order or has violated a temporary or final restraining order issued pursuant to the "Prevention of Domestic Violence Act of 1991," (N.J.S.A. 2C:25-17 et seq.);

---

[5] For purposes of the statute and this Directive, the term "county prosecutor" shall also include: Attorney General, Assistant Attorney General, Deputy Attorney General, and Assistant Prosecutor.

(4) is the subject of a temporary or final protective order or has violated a temporary or final protective order issued pursuant to the "Sexual Assault Survivor Protection Act of 2015," (N.J.S.A. 2C:14-13 et al.);

(5) has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to section 1 of N.J.S.A. 2C:12-10, or domestic violence offense enumerated in section 3 of N.J.S.A. 2C:25-19;

(6) has any prior arrests, pending charges, or convictions for any offense involving cruelty to animals or any history of acts involving cruelty to animals;

(7) has any history of drug or alcohol abuse and recovery from this abuse;

(8) has recently acquired a firearm, ammunition, or other deadly weapon;

(9) has recklessly used, displayed, or brandished a firearm;

(10) has an existing or previous extreme risk protective order issued against him or her; and

(11) has previously violated an extreme risk protective order issued against him or her.

[N.J.S.A. 2C:58-23(f); AOC Guideline 3(d)(1) to (11).]

If the court finds one or more of the factors listed in N.J.S.A. 2C:58-23(f) and  AOC Guideline 3(d)(1) to (11), then the court may consider additional factors including whether the respondent:

(12) has any prior involuntary commitment in a hospital or treatment facility for persons with psychiatric disabilities;

(13) has received or is receiving mental health treatment;

(14) has complied or has failed to comply with any mental health treatment; and

(15) has received a diagnosis of a mental health disorder.

[AOC Guideline 3(d)(12) to (15).]

This total list of factors a court may consider according to AOC Guideline 3(d)(1) to (15) will be known as the "ERPO factors."

4.2     Role of the Prosecutor in an ERPO Proceeding.

If the petitioner is a law enforcement officer acting in their official capacity, as either the original petitioner or after having "taken over" the petition, or if law enforcement has joined in the petition, the prosecutor shall appear at the FERPO, and at the TERPO if practical, to present and argue the petition.

9

Even where law enforcement is not a party to the proceeding, the Act sets forth duties for the prosecutor. The statute provides that the prosecutor or a designee shall produce to the court in an expedited manner any available evidence, including evidence related to the factors in N.J.S.A. 2C:58-23(f). The court will consider this evidence at the TERPO hearing, so the expedited production must occur prior to the TERPO hearing. The prosecutor or a designee also has this obligation for the FERPO hearing. N.J.S.A. 2C:58-24(b). As to exactly what kind of evidence should be produced for a TERPO and a FERPO hearing, see Section 4.4.

When law enforcement is not the petitioner, the prosecutor is not required to appear at either the TERPO or the FERPO hearing. The prosecutor may see their role as a "friend of the court" in providing information for the court to consider but they are not an advocate or a party to the litigation. This does not preclude, of course, the prosecutor from taking a more active role in hearings, or requiring law enforcement to join in or takeover the petition

Unless the respondent is a law enforcement officer, see Section 5.5, the county prosecutor's office that is responsible to provide the information relevant to N.J.S.A. 2C:58-23(f) factors is the office of the county where the ERPO is venued, in other words, where the respondent resides, or if the respondent resides out of state, then where the petitioner resides. But because most of the information that the prosecutor or designee is required to provide will have to come from law enforcement, unless the county prosecutor's office notifies the law enforcement agency that the county prosecutor's office will provide the information itself, the law enforcement agency where respondent resides (or if the respondent lives out of the state, then the law enforcement agency where the petitioner resides) is herein designated to produce to the court the information for the ERPO hearings.

## 4.3    Information That Must Be Provided for a Family- or Household-Member Petition.

### 4.3.1  *Information at the TERPO Stage.*

The prosecutor or a designee must produce to the court in an expedited manner any "readily available information or evidence" pertaining to all of the ERPO factors. AOC Guideline 3(e). Given the need for expeditious production of such information, so that a court can consider it at the TERPO hearing, the Supreme Court Committee on Criminal Practice made clear that prosecutors or law enforcement are not required to perform a new investigation prior to the TERPO hearing, but rather must conduct a records search of "information or evidence to which the prosecutor or designee has reasonable, ready access." Response of the Supreme Court Committee on Criminal Practice to Proposed Rule 3:5B "Extreme Risk Protective Orders ("CPC Report") (May 28, 2019)[6] at 19. The Criminal Practice Committee was equally concerned that the statutory obligation to provide information "could be interpreted to impose an obligation on the prosecutor to 'dig' for information or records that are not in their control." Ibid. The

---

[6] The AOC Directive explains that its Guidelines were approved based on the recommendations in the Supreme Court Committee on Criminal Practice Report.

Committee concluded that the "expediency requirement would appear to preclude any obligation to search for records not in the prosecutor's possession or control." Ibid.[7]

Thus, the law enforcement agency where respondent resides (or if the respondent lives out of the state, then the law enforcement agency where the petitioner resides) shall provide directly to the court, either in a document or verbally, the following information at or prior to the TERPO hearing:

- the respondent's criminal history[8], if existing;
- the results of a motor vehicle inquiry;
- any positive results of a Domestic Violence Central Registry inquiry;
- any positive results of a Sexual Assault Survivor Protection Act Central Registry inquiry;
- any existing juvenile records from the Juvenile Central Registry;
- any existing records in the ERPO electronic central registry; and
- any additional information the law enforcement agency or prosecutor has readily available and relevant to the ERPO factors.

If the law enforcement agency does not have any available information to produce to the court, it shall inform the court of such.

If the law enforcement agency where the petitioner filed the TERPO petition has any of the above information, and the respondent lives in the state, the agency shall forward it to the law enforcement agency where the respondent resides.

### 4.3.2   *Information at the FERPO Stage.*

In the cases where the TERPO is granted, this expedited-information obligation from the county prosecutor or designee is repeated at the FERPO stage. N.J.S.A. 2C:58-24(b). The AOC Guidelines explain that for the FERPO, "[i]n addition to information referenced Guideline 3(e) [the information that shall be provided for the TERPO hearing], the county prosecutor or designee shall produce for the court's consideration information obtained through sources including the execution of any search warrant and any additional information obtained through the performance of its responsibilities under [the Act]." AOC Guideline 5(e). This appears to expand the information obligation by the county prosecutor or designee, but in no way requires or dictates the scope of any prosecutor's or law enforcement agency's investigation, as the statute still only requires "available evidence" to be provided at the FERPO stage. N.J.S.A. 2C:58-24(b).

---

[7] The AOC Guidelines make clear that only the respondent has the automatic right to see the information provided by law enforcement. The petitioner does not have an automatic right to see this information, and can only request that the court order that he or she may see it, on good cause shown. AOC Guideline 8(a); see also CPC Report at 16–17.

[8] All law enforcement officers and prosecutors shall comply with all federal and state statutes, regulations, and privileges as to the confidentiality of criminal and all other records.

Accordingly, prior to the FERPO hearing, the law enforcement agency where respondent resides (or if the respondent lives out of the state, then the law enforcement agency where the petitioner resides) is herein designated to produce to the court the following information:

- any additions or changes to the information listed as required to be produced according to this Directive in section 4.3.1;
- any information obtained through the execution of any search warrant pursuant to N.J.S.A. 2C:58-26(b) relevant to the ERPO factors; and
- any additional information the law enforcement agency or prosecutor has readily available and relevant to the ERPO factors.

4.4    Information That Must Be Provided for a Law-Enforcement Petition.

When law enforcement is the petitioner or has joined in the ERPO petition, the AOC Guidelines contemplate a broader obligation by the county prosecutor or designee to produce information to the court. This is because law enforcement is now the petitioner, and a party to the litigation. The Guidelines state that the county prosecutor or designee shall produce "any statements or reports pertaining to the factors listed in paragraph (d) of this Guideline upon which the officer relies in the petition." AOC Guideline 3(e). This is true at the TERPO and FERPO hearing. AOC Guideline 6(e). So if the county prosecutor or law enforcement officer is going to refer to any ERPO factor at the TERPO or FERPO proceeding, any statements or reports pertaining to that factor available to the county prosecutor or law enforcement officer shall be produced to the court prior to the proceeding. Statements or reports do not include video or audio files. State v. Robinson, 229 N.J. 44, 71 (2017).

4.5    Appeals of a TERPO or a FERPO.

4.5.1   *Expedited Appeals of a TERPO Denial.*

Effective October 1, 2019, if a municipal court judge denies the petition for a TERPO, the petitioner, whether a household or family member or a law enforcement officer, can request an immediate de novo hearing by an emergent duty Superior Court judge. AOC Guidelines. The municipal court judge must advise the petitioner, on the record, of the right to an immediate review of the denial to an on-call Superior Court judge. Ibid. If the petitioner, whether a household or family member or a law enforcement officer, wishes to exercise this right, the law enforcement officer shall contact an on-call Superior Court judge. Ibid. That Superior Court judge will review the petition and conduct a hearing telephonically to determine whether to grant or deny the TERPO. Ibid.

If a petitioner requests a review of a denial of a petition for a TERPO by a municipal court judge prior to October 1, 2019, the petitioner shall be advised of the ability to go to the Criminal Division of the Superior Court the next business day and request a de novo review by a Superior Court judge. Ibid. A Superior Court judge will make a determination to grant or deny the petition that same day. Ibid.

If a Superior Court judge denies the TERPO, the petitioner can file an appeal to the Appellate Division as of right within 45 days of the entry of that order pursuant to <u>R.</u> 2:2-3(a)(1). <u>Ibid.</u>

### 4.5.2   *Appeals of a FERPO.*

If the petitioner or respondent wishes to appeal the decision by a Superior Court judge to grant or deny the FERPO, an appeal must be filed within 45 days of the entry of that decision pursuant to <u>R.</u> 2:2-3(a)(1).  <u>AOC Guidelines</u>.

## 5.   WHEN AN ERPO PETITION IS FILED AGAINST A LAW ENFORCEMENT OFFICER

### 5.1   <u>Venue.</u>

The ERPO Act provides that when a petitioner seeks a TERPO against a New Jersey law-enforcement officer[9] respondent, a different procedure must take place.  First, the petition shall be submitted to the law enforcement agency in which the respondent-officer is employed. N.J.S.A. 2C:58-23(*l*)(1).  Like an ordinary TERPO, the agency shall advise the petitioner of the procedure for completing and signing a petition.  <u>Ibid.</u>

If an individual presents at a law enforcement agency in New Jersey requesting to file a petition against a law enforcement officer as a respondent, the agency shall have the individual fill out a paper Petition for an Extreme Risk Protective Order.  As soon as the agency receives this or any application for a petition for an ERPO against a law enforcement officer, it shall immediately send a copy of the application to the county prosecutor of the county in which the agency is located—except all state agencies, including New Jersey State Police and Department of Corrections, shall send a copy to the Division of Criminal Justice.  <u>The agency shall not enter or file a petition in the eCDR system at this time.</u>  If the law enforcement agency determines that the petitioner submitted the application to the incorrect agency, in other words, the respondent-officer is not employed by that agency, the agency shall contact the petitioner to determine the correct agency, and then forward the application to the correct agency.

### 5.2   <u>The ERPO Internal Affairs Investigation.</u>

The Act mandates that upon receipt of the application for a petition, the law enforcement employer agency "shall immediately initiate an internal affairs investigation." N.J.S.A. 2C:58-23(*l*)(2).  To fulfill this statutory obligation in good faith, the agency must immediately, or as soon as possible, initiate an "ERPO internal affairs investigation," which must be completed in 48 hours.  An "ERPO internal affairs investigation" shall be an expedited process that requires,

---

[9] The Act and AOC Guidelines define a "law enforcement officer" as "a person whose public duties include the power to act as an officer for the detection, apprehension, arrest, and conviction of offenders <u>against the laws of this State</u>."  N.J.S.A. 2C:58-21 (emphasis added); <u>AOC Guideline</u> 1 (emphasis added).  They also define a "law enforcement agency" as "a department, division, bureau, commission, board or other authority <u>of the State</u> or of any political subdivision thereof which employs law enforcement officers."  N.J.S.A. 2C:58-21 (emphasis added); <u>AOC Guideline</u> 1 (emphasis added).  Thus, the special procedures for filing a TERPO against a law enforcement officer, set forth in N.J.S.A. 2C:58-23(*l*), do not apply to law enforcement officers who are employed by federal, out-of-state, or other outside agencies.

but is not limited to, a review of the application for a petition, an in-person or telephone interview of the petitioner, a review of any internal agency files on the respondent-officer, and a consideration of the ERPO factors, see Section 4.1. The ERPO internal affairs investigation can also consist of any other action the agency deems appropriate, including an interview of the respondent-officer, as long as it is completed in 48 hours. The law enforcement employer agency may request from the county prosecutor's office or the Division of Criminal Justice an extension of time to complete the ERPO internal affairs investigation, which may be granted upon a showing of good cause. The ERPO internal affairs investigation must follow all confidentiality rules and procedures set forth in the Attorney General Internal Affairs and Procedures Guidelines, revised November 2017.

This ERPO internal affairs investigation does not replace any other internal affairs investigation the agency deems appropriate based on any information that is learned prior to, during, or after the course of the investigation, and those investigations shall be conducted according to their regular procedures and timeframe and in accordance with the Attorney General Internal Affairs and Procedures Guidelines. Likewise, these ERPO procedures do not replace law enforcement agencies' policies regarding domestic violence incidents involving law enforcement officers.

If a law enforcement agency is too small or otherwise unable to conduct an ERPO internal affairs investigation, the agency may request on a case-by-case basis that the county prosecutor of the county in which the agency is located, or the Division of Criminal Justice for state agencies, conduct the ERPO internal affairs investigation. The request shall be made immediately upon receiving the application for a petition.

5.3     Seizure and Storage of the Respondent-Officer's Weapons.

If the first law enforcement officer responding to or handling the ERPO internal affairs investigation has probable cause to believe that the presence of weapons would expose the respondent or others to a risk of bodily injury, the employer agency shall immediately seize all weapons the respondent-officer possesses—both department issued and personal. See Attorney General Directive Law Enforcement Directive No. 2000-3, Implementing Procedures for the Seizure of Weapons from Municipal and County Law Enforcement Officers Involved in Domestic Violence Incidents, Issued August 1995, Revised September 2000. If there are extenuating or exigent circumstances rendering a law enforcement agency unable to seize the respondent-officer's firearms and ammunition, the agency may request that the local law enforcement agency where the respondent-officer resides, if a different agency, assist.

Any department-issued weapon that is seized or surrendered in connection with an ERPO is to be returned to the custody and control of the department that issued that weapon. See ibid. All other weapons owned, possessed, or controlled by the respondent-officer that are seized or surrendered are to be promptly forwarded to the county prosecutor's office of the county in which the law enforcement agency conducting the ERPO internal affairs investigation is located, or for State agencies, where the respondent resides, in accordance with the county prosecutor's procedures for the seizure and transportation of weapons. See ibid.

14

5.4     Providing the ERPO Internal Affairs Investigation to the County Prosecutor.

       The Act requires that the disposition of the internal affairs investigation "shall
immediately be served upon the county prosecutor who shall make a determination whether to
refer the matter to the courts." N.J.S.A. 2C:58-23(*l*)(3).  So at the conclusion of the ERPO
internal affairs investigation, the agency shall immediately forward its findings and any
conclusions to the county prosecutor of the county in which the agency is located—except all
state agencies, including New Jersey State Police and Department of Corrections, shall send it to
the Division of Criminal Justice.  In making its findings to the county prosecutor's office or the
Division of Criminal Justice, the agency shall consider the ERPO factors, see Section 4.1, and
whether there is probable cause to believe that the respondent-officer poses an immediate and
present danger of causing bodily injury to self or others by having custody or control of, owning,
possessing, purchasing, or receiving a firearm.

5.5     Prosecutor Review of the ERPO Internal Affairs Investigation.

       Upon receipt of the ERPO internal affairs investigation from the law enforcement
employer agency, the prosecutor shall make a determination within one business day whether to
file the TERPO petition in the Superior Court.  The standard for this determination is,
considering the ERPO factors, see Section 4.1, whether the prosecutor has probable cause to
believe that the respondent-officer poses an immediate and present danger of causing bodily
injury to self or others by having custody or control of, owning, possessing, purchasing, or
receiving a firearm.

       If the prosecutor determines to file the petition in the court, the prosecutor shall be the
petitioner—entered in eCDR by a law enforcement officer employed by their agency, see Section
3.5—and shall be responsible for providing the information to the court required under AOC
Guidelines 3(e) and 5(e), and N.J.S.A. 2C:58-3(f).  The prosecutor shall also notify immediately
the family- or household-member petitioner that originally filed the ERPO petition in the agency,
in order for the family or household-member to be able to be present at the TERPO hearing.

       If the prosecutor determines not to file the TERPO petition in the court, the prosecutor
immediately shall send a notice in writing to the family- or household-member petitioner that
originally filed the application for an ERPO petition in the agency, detailing the conclusion and
summary of reasoning.  A copy of the notice shall also be sent to the employer agency, which
shall return any firearms seized from the respondent as soon as practicable, unless there is
another pending investigation or other compelling safety interests that would warrant the
employer agency not returning the weapon.  No weapons are to be returned to the respondent-
officer without written notice of the prosecutor or a court order.  All county prosecutors' offices
and the Division of Criminal Justice shall keep track of all applications for ERPO petitions
received, those petitions filed with the court, and those declined to be filed, and shall make these
statistics available to the Attorney General upon request.

6. **THE ISSUANCE OF THE TERPO AND FERPO, SERVING THE TERPO, AND EXECUTING THE SEARCH WARRANT**

6.1   Issuance of the TERPO or the FERPO.

The Act and the AOC Guidelines provide that if at the TERPO hearing the court finds good cause to believe that the respondent poses an immediate and present danger of bodily injury to self or others by possessing, purchasing, owning, or receiving a firearm, the court shall order the TERPO. N.J.S.A. 2C:58-23(e); AOC Guideline 4(a). But see Section 3.3 (discussing that search warrant shall be issued under standard of probable cause).

And if at the FERPO hearing the court finds by a preponderance of evidence that the respondent poses a significant danger of bodily injury to self or others by owning, possessing, purchasing, or receiving a firearm, the court shall order the FERPO. N.J.S.A. 2C:58-24(b); AOC Guideline 6. But see Section 3.3 (discussing that search warrant shall be issued under standard of probable cause).

The TERPO or the FERPO shall (1) prohibit the respondent from possessing, purchasing, owning, or receiving firearms or ammunition, or from securing or holding a firearms purchaser identification card or permit to purchase a handgun pursuant to N.J.S.A. 2C:58-3, or a permit to carry a handgun pursuant to N.J.S.A. 2C:58-4 during the period the order is in effect; and (2) order the respondent to surrender to law enforcement any firearms, ammunition, firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun possessed, owned, or held by the respondent. AOC Guideline 4(b). Any such card or permit issued to the respondent shall be immediately revoked pursuant to N.J.S.A. 2C:58-3(f). Ibid. The TERPO (or the FERPO) also classifies the respondent as a "certain person" under N.J.S.A. 2C:39-7(b)(4), and is prohibited from purchasing, acquiring, owning, possessing, or controlling a firearm or ammunition, subject to a third-degree crime. N.J.S.A. 2C:39-7(b)(4).

The TERPO order will also state the time, date, and place of the hearing for the FERPO. AOC Guideline 4(b).

6.2   Service of the TERPO.

Once issued, the court will immediately forward a copy of the TERPO to both the county prosecutor and the appropriate law enforcement agency in the county and municipality, respectively, in which the respondent resides. This copy shall be served by the appropriate law enforcement agency upon the respondent. N.J.S.A. 2C:58-23(i); AOC Guideline 4(c).

The law enforcement agency shall serve the TERPO upon the respondent immediately or as soon as practicable. Ibid. At no time shall the family- or household-member petitioner be asked to serve any TERPO upon the respondent. Ibid. The law enforcement agency serving the order shall not charge a fee or seek reimbursement from the petitioner for service of the order. N.J.S.A. 2C:58-23(i).

16

The county prosecutor shall send notice of TERPOs issued to the appropriate chiefs of police, members of the State Police, and any other appropriate law enforcement agency or court. N.J.S.A. 2C:58-23(j).

Any TERPO issued shall remain in effect throughout the State until a court issues a further order, and shall be enforced by all law enforcement officers. N.J.S.A. 2C:58-23(h) and (k).

6.3     Search Warrant Execution.

According to the AOC Guidelines, in addition to issuing the TERPO or the FERPO, if the court determines, based upon consideration of information provided in the TERPO petition and during the TERPO or FERPO hearing, that probable cause exists to believe that (1) the respondent owns or possesses any firearms or ammunition, (2) the respondent poses an immediate and present danger of bodily injury to self or others by owning or possessing any such firearms or ammunition, and (3) such firearms or ammunition are presently at a specifically described location, then the court, in conjunction with the TERPO or the FERPO, shall issue a search warrant for any firearms and ammunition which the respondent possesses or owns at that specified location. AOC Guidelines 4(e) and 6(c). The agency shall execute the search warrant immediately or as soon as possible and seize all firearms and ammunition within the possession, custody, or control of the respondent, or that could be in the respondent's possession.

The Act also states, in addition to a search warrant being issued, that the respondent immediately shall surrender in a safe manner all firearms and ammunition in the respondent's custody or control, or which the respondent owns or possesses, and any firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun held by the respondent to the control of the law enforcement officer. N.J.S.A. 2C:58-26(b)(1). Allowing a respondent to surrender a firearm to law enforcement presents a number of safety concerns. The respondent, at this point in the process, is an individual who has been determined by a court as presenting an "immediate and present danger of causing bodily injury" to self or others by having custody or control of a firearm. Thus, officers have at least reasonable and articulable suspicion to believe that their safety is in danger. And if the surrender occurs at a respondent's home, business, or other property, officers face a greater "risk of danger" because they are "at the disadvantage of being on [their] adversary's 'turf.'" State v. Cope, 224 N.J. 530, 546–47 (2016) (quoting Maryland v. Buie, 494 U.S. 325, 333 (1990)).

Accordingly, if a law enforcement officer has a search warrant to seize a respondent's firearms or ammunition, it shall be within the highest ranking officer's discretion on the scene to determine whether a respondent can surrender the firearms or ammunition, and how they may do so. Similar to executing arrests, officers need to ensure their own safety and the safety of others—as well as the integrity of the search and seizure. See Washington v. Chrisman, 455 U.S. 1, 7 (1982). Thus, officers have the right to remain literally at the respondent's elbow at all times and such action is reasonable under the Fourth Amendment of the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution. See State v. Bruzzese, 94 N.J. 210, 230 (1983).

17

Nothing in this Directive or in the ERPO Act shall be interpreted as limiting any other lawful procedure done by law enforcement to ensure officer safety, the safety of others, or the integrity of the process. See, e.g., State v. Davila, 203 N.J. 97, 116–17 (2010) (upholding protective sweeps in cases involving in-home arrests and in non-arrest cases in which police officers are legitimately in a home and have reasonable and articulable suspicion to believe that their safety is in danger); State v. Robinson, 200 N.J. 1, 17 (2009) (finding that factors to determine reasonableness of delay between knocking and announcing and forcible entry include, but not limited to, suspect's violent criminal history, information that weapons will be present, and risks to officers' lives and safety); State v. Diloreto, 180 N.J. 264, 276 (2004) (permitting officer to pat down citizen's outer clothing during community-caretaking investigation where officer has reason to believe that he is dealing with armed and dangerous individual); State v. Johnson, 168 N.J. 608, 619 (2001) (explaining that police officer may apply for no-knock warrant if there is reasonable, particularized suspicion that no-knock entry is required to protect officer's safety).

6.4     Weapons Belonging to Someone Other Than the Respondent.

During the execution of the search warrant, law enforcement shall seize all firearms and ammunition within the possession, custody, or control of the respondent. Such firearms include any that the respondent could access or possess. If a person other than the respondent claims title to any firearm or ammunition, law enforcement shall direct the person claiming title to request a return of the weapons to the law enforcement agency pursuant to N.J.S.A. 2C:58-26(e). If the agency determines that the person claiming title is the lawful owner of the firearm or ammunition, the firearm or ammunition shall be returned to that person. See N.J.S.A. 2C:58-26(e). Nothing herein, however, shall affect the authority of the prosecutor or the law enforcement agency to maintain possession of any firearm as otherwise authorized by law.

6.5     Discovery of Criminal Evidence.

If, during the execution of the search warrant, law enforcement finds evidence of criminality in accordance with the plain view exception, or any other legally permissible basis under the Fourth Amendment of the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution, the evidence is admissible in a future criminal proceeding. See State v. Harris, 211 N.J. 566, 587 (2012).

7.     STORING, SELLING, AND TRANSFER OF FIREARMS

Upon surrender or seizure of any and all firearms and ammunition, a law enforcement agency shall store the firearms or ammunition. See N.J.S.A. 2C:58-22, -26(d), -27, and -28.

Unless the respondent is a law enforcement officer, see Section 5.3, all firearms and ammunition in the respondent's custody or control, or which the respondent owns or possesses, and any firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun that are seized by or surrendered to law enforcement are to be promptly forwarded to the county prosecutor's office of the county in which the ERPO is venued. Nonetheless, nothing in this Directive shall prohibit the county prosecutor from issuing a separate directive or policy requiring local law enforcement, except State Police, to store the seized firearms if necessary for

adequate firearm storage and with consideration to the storage capabilities of each individual local department. All weapons seized by State Police shall be forwarded to the county prosecutor's office of the county in which the ERPO is venued.

If a person other than the respondent claims title to any firearm or ammunition surrendered, and the law enforcement agency confirms that the person is the lawful owner of the firearm or ammunition, the firearm or ammunition shall be returned to that person. N.J.S.A. 2C:58-26(e). The respondent can also request that the firearm or ammunition be sold or the title of the firearm or ammunition be transferred to a federally licensed firearms dealer, even if they no longer are eligible to own or possess a firearm or ammunition. N.J.S.A. 2C:58-27.

Neither the ERPO Act nor the AOC Guidelines require the law enforcement agency to store the firearm or ammunition indefinitely. It does not affect the authority of a prosecutor to file an action to forfeit a respondent's firearm as authorized by law or prevent a respondent that owned a firearm prior to the issuance of an ERPO from entering into an agreement, as approved by the prosecutor, to sell that firearm to a licensed dealer or transfer the firearm to a third party authorized to own or possess a firearm. See N.J.S.A. 2C:58-23(d) (confirming that nothing in the ERPO Act "shall prohibit revocation and seizure of a person's firearms purchaser identification card, permit to purchase a handgun, permit to carry a handgun, and weapons as authorized pursuant to applicable law"); CPC Report at 47 (noting that this legal regime does "not affect the ability of the State to file an action to forfeit a respondent's firearm, or the respondent to enter into an approved agreement, prior to issuance of the extreme risk protective order, to sell that firearm to a licensed dealer or transfer the firearm to an authorized third party").

## 8.   RELEASE OF ERPO RECORDS TO NON-LAW ENFORCEMENT PERSONS OR AGENCIES

ERPO petitions, supporting documentation, and ERPO internal affairs records contain sensitive and confidential information, including criminal and mental health records, that raise privacy concerns. In response to this concern, the AOC Guidelines on the handling of this information clarify that the information provided by law enforcement for the ERPO is only for the court's consideration, not other parties' inspection, and only the respondent has the right to this information. AOC Guideline 8(a). Even the petitioner does not have an automatic right to see the information provided by the prosecutor or designee, and can only request that the court order that they may see it, on good cause shown. Ibid.; see also CPC Report at 16–17. Thus, any records created or submitted pursuant to the ERPO Act and this Directive are confidential and not subject to public disclosure.

Moreover, when the respondent is a law enforcement officer, the ERPO internal affairs investigation and any other internal affairs or personnel records are confidential and not subject to public disclosure because they consist of long-recognized privileged information and are individualized personnel records. See N.J.S.A. 2A:84A-27; N.J.S.A. 47:1A-10; N.J.R.E. 515; N.J.A.C. 13:1E-3.2(a)(4); Loigman v. Kimmelman, 102 N.J. 98, 107–08 (1986). Pursuant to the Attorney General Guidelines for Internal Affairs Policy & Procedures, the nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials are

restricted and deemed confidential information. Attorney General Internal Affairs and Procedures Guidelines, revised November 2017 at 42.

Also, any ERPO records that pertain to an event or encounter that involves an investigation of a criminal offense shall be considered a "criminal investigatory record" exempt from disclosure under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. See Paff v. Ocean County Prosecutor's Office, 235 N.J. 1, 20–21 (2018). Thus, except as otherwise provided in this Directive, ERPO records or documents shall not be shared with or provided or shown to any person, entity, or government agency, other than a law enforcement agency or officer or authorized civilian employee of such agency, unless such disclosure is required by the Rules of Court governing discovery in prosecutions, the United States or New Jersey Constitutions or statutes, or by a court order.

Neither this Directive, nor the release of any document or information pursuant to this Directive, shall constitute a waiver of any privilege to maintain the confidentiality of a record that a law enforcement agency may have under OPRA, any other statute, or the common law right of access. Nothing in this Directive shall be construed to create any promises or any rights beyond those established under the Constitution, statutes, regulations, and decisional law of New Jersey. This Directive creates no promises or rights that other persons or entities may enforce.

## 9.    TERMINATION OF FERPOS

The Act and the AOC Guidelines state that a petition for termination of a FERPO can be filed at any time by either the petitioner or the respondent. N.J.S.A. 2C:58-25; AOC Guideline 7. A court may terminate a FERPO if the opposing party has received notice, if the appropriate law enforcement agency and county prosecutor have been notified, and if a hearing has been held by the court. Ibid. It shall be in the prosecutor's discretion whether to object to a termination of a FERPO. If the prosecutor is not involved, than it is in the law enforcement agency's discretion. In determining whether to object, the law enforcement agency or county prosecutor should consider the ERPO factors, as well as any other relevant evidence including, but not limited to, whether the respondent has received, or is receiving, mental health treatment, and the petitioner's opinion as to termination. If the respondent petitioned for termination, the respondent shall bear the burden at the termination hearing of proving by a preponderance of the evidence that they no longer poses a significant danger of causing bodily injury to the self or to other by having custody or control of, owning, possessing, purchasing, or receiving a firearm. Ibid.

Upon the termination of an ERPO, the respondent may petition the agency to return their firearms or ammunition. N.J.S.A. 2C:58-26(d). This shall be done within 30 days unless the firearm or ammunition has been reported as stolen or the respondent is prohibited from possessing a firearm or ammunition under State or federal law. Ibid. The Act also provides that after one year after the ERPO is terminated, the law enforcement agency may destroy the firearm or ammunition in accordance with the policies and procedures of the agency for destruction of firearms or ammunition. N.J.S.A. 2C:58-28. The agency or prosecutor shall give notice to the former respondent prior to destruction of the firearms or ammunition.

10. **COMMUNITY RELATIONS AND OUTREACH PROGRAMS**

To protect both public safety and law enforcement safety in New Jersey, all law enforcement agencies—including the Division of Criminal Justice, county prosecutors' offices, and local police departments—must help educate the public on the ability to file ERPOs and on the procedures for doing so. To further this objective, each county prosecutor shall engage in public education efforts, community outreach events, social media awareness, and publicity on their office website.

11. **QUESTIONS**

All questions concerning the meaning or implementation of this Directive should be addressed to the Director of the Division of Criminal Justice, or their designee.

12. **EFFECTIVE DATE**

This Directive shall take effect on September 1, 2019, the day the ERPO Act goes into effect. Once effective, this Directive shall remain in force and effect unless and until it is repealed, amended, or superseded by Directive of the Attorney General.

Gurbir S. Grewal
Attorney General

ATTEST:

Veronica Allende
Director, Division of Criminal Justice
Dated: August 15, 2019

**In the Matter of,**

DAVID M GRECO _____, Respondent

SBI Number _____

Date of Birth _____ 03/12/1968

☑ Municipal Court of   GLOUCESTER TWP MUNICIPAL COURT

County   CAMDEN

Petition Number   0415 XTR 2019 000001

Complaint/Ind Number _____

## Petition for Temporary Extreme Risk Protective Order

I am the Petitioner named below. I believe Respondent poses an immediate and present danger of causing bodily injury to the Petitioner, the Respondent, or others by owning, possessing, purchasing or receiving firearms and/or ammunition. I ask the court to grant a Temporary Extreme Risk Protective Order to prohibit Respondent from owning, possessing, or acquiring firearms and/or ammunition, and to order surrender of firearms and/or ammunition to a law enforcement agency.

## Petitioner's Information

| Name | | | |
|---|---|---|---|
| NEW JERSEY HOMELAND SECURITY | | | |

| Street Address | City | State | Zip |
|---|---|---|---|
| 1200 NEGRON DRIVE | HAMILTON | NJ | 08691 |

| Home Phone Number | Work Phone Number | Relationship to Respondent |
|---|---|---|
| | (609) 584-5051 | PEPD - PETITIONER LAW-ENFORCEMENT OFFICER |

## Respondent's Information (to the extent the information is known)

| First Name | MI | Last Name | Date of Birth | SSN | Sex |
|---|---|---|---|---|---|
| DAVID | M | GRECO | 03/12/1968 | XXX-XX-9812 | MALE |

| Street Address | City | State | Zip |
|---|---|---|---|
| 246 ORCHARD AVENUE | SOMERDALE | NJ | 08083 |

| Home Phone Number | Work Phone Number | Email Address |
|---|---|---|
| (856) 627-7145 | | |

| Aliases First Name | | MI | Last Name |
|---|---|---|---|
| | | | |

| Employer's Name |
|---|
| |

| Employer's Address | City | State | Zip |
|---|---|---|---|
| | | | |

| Height | Weight | Hair Color | Eye Color | Race/Ethnic | Distinguishing Features (Scars, facial hair, etc.) |
|---|---|---|---|---|---|
| ft   in | | BROWN | BLACK | WHITE | |

| Military Status | Driver's License Number | State | Expiration Date |
|---|---|---|---|
| NO | G72931560003682 | NJ | 03 / 2021 |



EXHIBIT
S-16

**"Exhibit D"**

I believe Respondent poses an immediate and present danger of causing bodily injury to self or others by owning, possessing, purchasing or receiving firearms and/or ammunition because Respondent:

has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to section 1 of P.L.1992, c.209 (C.2C:12-10), or domestic violence offense enumerated in section 3 of P.L.1991, c.261 (C.2C:25-19). Explain.
2C:39-3 CARRYING PROHIBITED WEAPON, 24:21-19A(1) DRUG OFFENSE, 24:21-20A(4) MARIJUANA POSSESSION - NJ0080200 4/19/1987 - PTI 2C:35-10A(4) POSS. <50GRAMS, 2C:36-2, POSS. PARAPHERNALIA - NJ 004121J 7/20/2015 - LO

has any history of drug or alcohol abuse and recovery from this abuse. Explain.
2 NARCOTICS ARREST - LISTED ABOVE

List any other information that may be relevant.
INFORMATION WAS RECENTLY OBTAINED, THROUGH FBI CONTACTS, THAT DAVID GRECO IS INVOLVED IN ONLINE ANTI-SEMITISM. GRECO WAS FOUND TO BE IN CONTACT WITH THE PITTSBURGH SYNAGOGUE SHOOTER, BEFORE THE MASS SHOOTING TOOK PLACE IN OCTOBER 2018. AFTER THE RECENT AUGUST 2019 MASS SHOOTINGS IN BOTH OHIO AND EL PASO, PRECAUTIONS WERE TAKEN AND CONTACT WAS MADE WITH GRECO. IN COORDINATION WITH THE FBI, OFFICERS REACHED OUT TO GRECO IN REGARDS TO RECENT POSTS ON THE SOCIAL MEDIA SITE GAB.COM. ALL PREVIOUS SOCIAL MEDIA ACCOUNTS WERE BLOCKED DUE TO THE NATURE OF CONTENT. WHILE TALKING TO GRECO, HE APPEARED EXTREMELY INTELLIGENT TO OFFICERS AND DID NOT MENTION ACTING ON ANY VIOLENT BEHAVIOR TOWARDS JEWS. HIS BEHAVIOR WAS METHODICAL AND FOCUSED ON FACTS, SPECIFICALLY FROM NAZI GERMANY. GRECO BELIEVES THAT FORCE OR VIOLENCE IS NECESSARY TO REALIGN SOCIETY. GRECO FREQUENTLY MENTIONED HIS DISDAINED FOR THE JEWISH TALMUD AND HOW HE BELIEVES THAT JEWS ARE RAPING OUR WOMEN AND CHILDREN.

Supporting documentation provided. Explain.
COPIES OF SOCIAL MEDIA POSTS FROM "GAB.COM". VIDEO FROM OFFICER'S BWC DURING INTERVIEW ON 8/5/2019. REPORTS FROM FBI AND GTPD.

The respondent currently possesses the following firearm(s) and/or ammunition:

| Type | Description | Number | Location |
|------|-------------|--------|----------|
| HG - HANDGUNS | H&K USP .40 - SERIAL # 22070650 | 1 | 246 ORCHARD AVENUE |
| RI - RIFLES | NORINCO SKS 7.62 - SERIAL # 22002894 | 1 | 246 ORCHARD AVENUE |

Does the Respondent possess a:
a. Firearms Purchaser ID Card?      YES
b. Permit to Purchase a Handgun?    NO
c. Permit to Carry a Handgun?       NO

### CERTIFICATION

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

09/05/2019                                          NEW JERSEY HOMELAND SECURITY
Date                                                Signature of Petitioner

09/05/2019
Date

PDPACE2
Signature

"Exhibit E"

0415-XTR-2019-1 09/06/2019 4:06:12 PM   Page 1 of 5   Trans ID: PET201961

In the Matter of DAVID M GRECO

Page 1 of 5
SBI Number:

# Temporary Extreme Risk Protective Order

☒ Superior Court of New Jersey                     ☐ Municipal Court of

| County | Petition Number | Complaint/Ind Number | SBI Number |
|---|---|---|---|
| CAMDEN | 0415 XTR 2019 000001 | | |

**In the Matter of,**

DAVID M GRECO _____, Respondent

| Height | | Weight | Hair Color | Eye Color |
|---|---|---|---|---|
| ft | in | | BROWN | BLACK |
| Race WHITE | Date of Birth 03/12/1968 | Sex MALE | | |
| SSN xxx-xx-9812 | Driver's License Number G72931560003682 | State NJ | Expiration Date 03 / 2021 | |

## Findings

The Petitioner having filed a petition for an Extreme Risk Protective Order, and the court having conducted an *ex parte* hearing and having considered:

the certified petition, AND/OR

the testimony of NEW JERSEY HOMELAND SECURITY , AND/OR

any document(s) provided to the court (list exhibits) COPIES OF SOCIAL MEDIA POSTS FROM "GAB.COM", REPORTS FROM FBI AND GTPD. S-1 THROUGH S-15 (PRINTOUTS OF SOCIAL MEDIA POSTS BY RESPONDENT) , AND

Also having considered whether the Respondent:

has any history of threats or acts of violence by the respondent directed toward self or others;
IN THE NUMEROUS PUBLIC SOCIAL MEDIA POSTS THAT HAVE BEEN MONITORED FOR MONTHS BY LAW ENFORCEMENT, RESPONDENT HAS THREATENED, ADVOCATED, AND CELEBRATED THE KILLING OF JEWISH PEOPLE AND HAS CELEBRATED THE MASS SHOOTINGS IN PITTSBURGH AND NEW ZEALAND: THE PETITIONER AND THE OTHER WITNESS PRESENTED CREDIBLE EVIDENCE, THROUGH BOTH RECORDS CHECKS AND CONFIRMATION WITH A MEMBER OF RESPONDENT'S HOUSEHOLD, THAT RESPONDENT POSSESS FIREARMS AT HIS RESIDENCE, CONSISTING OF AT LEAST ONE HANDGUN AND ONE RIFLE: RESPONDENT REFUSED TO ANSWER THE DOOR WHEN LAW ENFORCEMENT OFFICERS WENT TO THE HOME TO SPEAK WITH RESPONDENT, AND THE OFFICERS WERE ABLE TO SPEAK WITH RESPONDENT ONLY AFTER HIS PARENTS ARRIVED AT THE HOME AND ALLOWED THE OFFICERS INSIDE AND SUMMONED THE RESPONDENT UPSTAIRS: RESPONDENT WAS EXTREMELY AGITATED AND ANGRY DURING THE ENCOUNTER WITH LAW ENFORCEMENT: RESPONDENT HAS BEEN THE SUBJECT OF COMPLAINTS OF AGGRESSIVE DRIVING AND HOSTILE DEMEANOR IN CONNECTION WITH HIS EMPLOYMENT AS A DRIVER OF SCHOOL MINI-BUSES: CONTINUED BELOW

has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to section 1 of P.L.1992, c.209 (C.2C:12-10), or domestic violence offense enumerated in section 3 of P.L.1991, c.261 (C.2C:25-19);
2C:39-3 CARRYING PROHIBITED WEAPON. 24:21-19A(1) DRUG OFFENSE. 24:21-20A(4) MARIJUANA POSSESSION - NJ0080200 4/19/1987 - PTI 2C:35-10A(4) POSS. <50GRAMS. 2C:36-2. POSS. PARAPHERNALIA - NJ 004121J 7/20/2015 - LO SBI# 400429B

New Jersey Temporary Extreme Risk Protective Order (TERPO)                     Form Promulgated by Directive #19-19 (effective 09/01/2019), CN 12431

0415-XTR-2019-1 09/06/2019 4:06:12 PM   Page 2 of 5   Trans ID: PET201961

In the Matter of **DAVID M GRECO**                                                    Page 2 of 5
                                                                                       SBI Number:

has any history of drug or alcohol abuse and recovery from this abuse;
2 NARCOTICS ARREST – LISTED ABOVE

any other relevant factor(s) (specify)
RESPONDENT'S ATTEMPTS TO AVOID CONTACT WITH LAW ENFORCEMENT ON 8/5/19 AND
CONTINUATION OF POSTING TO SOCIAL MEDIA THREADS AND GLORIFICATION OF EXTREME
VIOLENCE AGAINST JEWISH PEOPLE EVEN AFTER ENCOUNTER WITH INVESTIGATORS:
CONTINUED FROM HAS A HISTORY OF THREATS OR ACTS OF VIOLENCE DIRECTED TOWARDS
SELF OR OTHERS. THERE ARE MULTIPLE POINTS OF INGRESS/EGRESS AT RESPONDENT'S HOME
AND NUMEROUS WINDOWS THAT WOULD ALLOW RESPONDENT TO EASILY SEE AND EVADE
EXECUTION OF A PROTECTION ORDER AND SEARCH WARRANT AND/OR RESPOND VIOLENTLY
TO THE PRESENCE OF LAW ENFORCEMENT OFFICERS IF THE OFFICERS WERE REQUIRED TO
ANNOUNCE THEIR PRESENCE.

**AND**

Having found at least one of the factors listed above, the court also having considered whether the
Respondent:

**THEREFORE, IT IS HEREBY ORDERED** on this date **09/06/2019** , THAT:

**THE PETITION FOR A TEMPORARY EXTREME RISK PROTECTIVE ORDER IS
GRANTED.**
The court finds good cause that the Respondent will pose/poses an immediate and present danger of
causing bodily injury to himself/herself or others by owning, possessing, purchasing or receiving
firearms and/or ammunition.

**IT IS FURTHER ORDERED THAT:**

1. The Respondent is prohibited from owning, purchasing, possessing, or receiving firearms and/or
   ammunition, and from securing or holding a firearms purchaser identification card or permit to
   purchase a handgun pursuant to *N.J.S.A. 2C:58-3*, or a permit to carry a handgun pursuant to
   *N.J.S.A. 2C:58-4*; **AND**

2. The Respondent shall surrender to law enforcement any firearms and ammunition in the
   Respondent's custody or control, or which the Respondent possesses or owns; **AND**

3. The Respondent shall surrender to law enforcement any firearms purchaser identification card,
   permit to purchase a handgun, or permit to carry a handgun held by the Respondent; **AND**

4. Any firearms purchaser identification card, permit to purchase a handgun, or permit to carry a
   handgun held by the Respondent is hereby immediately revoked; **AND**

5. The County Prosecutor is to immediately notify the New Jersey State Police that the Respondent is
   disqualified from owning, purchasing, possessing, or receiving firearms and/or ammunition
   pursuant to *N.J.S.A. 2C:58-3(c)(10)*.

0415-XTR-2019-1 09/06/2019 4:08:12 PM   Page 3 of 5   Trans ID: PET201961

In the Matter of  DAVID M GRECO

Page 3 of 5
SBI Number:

## Additional Reasons Set Forth on the Record and Herein

0415-XTR-2019-1 09/06/2019 4:06:12 PM   Page 4 of 5   Trans ID: PET201961

In the Matter of DAVID M GRECO

Page 4 of 5
SBI Number

## Search Warrant

The court finds that probable cause exists to believe that (1) the respondent owns or possesses firearms or ammunition as described below, (2) the respondent poses an immediate and present danger of bodily injury to self or others by owning or possessing any such firearms or ammunition, and (3) such firearms or ammunition are presently at the location described below.

**TO ANY LAW ENFORCEMENT OFFICER HAVING JURISDICTION** - this order shall serve as a warrant to search for and seize any issued permit to carry a handgun, permit to purchase a handgun and firearms purchaser identification card issued to the Respondent and the following firearm(s) and/or ammunition. Describe the firearms and ammunition to be seized:

<u>H&K USP .40 SERIAL # 22070650 NORINCO SKS 7.62 SERIAL # 22002894 ANY OTHER
UNREGISTERED WEAPONS, AMMUNITION, AND/OR SHOTGUNS</u>

| Type | Description | Number | Location |
|------|-------------|--------|----------|
| HG - HANDGUNS | <u>H&K USP .40 - SERIAL # 22070650</u> | 1 | 246 ORCHARD AVENUE |
| RI - RIFLES | <u>NORINCO SKS 7.62 - SERIAL # 22002894</u> | 1 | 246 ORCHARD AVENUE |

1. **You are hereby commanded to search** for the above described firearms and/or ammunition, and/or permit to carry a handgun, permit to purchase a handgun and firearms purchaser identification card and to serve a copy of this Order upon the person at the premises or location described as: <u>246 ORCHARD AVENUE, SOMERDALE, NJ 08083; REQUEST FOR NO-KNOCK APPROVED.</u>

2. **You are hereby ordered** in the event you seize any of the above described items, to give a receipt for the property so seized to the person from whom they were taken or in whose possession they were found, or in the absence of such person to have a copy of this Order together with such receipt in or upon said structure from which the property was taken.

3. **You are authorized to execute this Order immediately** or as soon thereafter as is practicable: Anytime

4. **You are further ordered,** after the execution of this Order, to promptly provide the Court with a written inventory of the property seized per this Order.

| 09/06/2019 04:06:11 PM | /S EDWARD MCBRIDE | GLOUCESTER TWP MUNICIPAL COURT | CAMDEN |
|------------------------|-------------------|-------------------------------|--------|
| Date / Time | Honorable | Court | County |

### All Law Enforcement Officers will serve and fully enforce this order.
This order shall remain in effect until further order of the court.

### Notice to Appear to Petitioner and Respondent

Both the Petitioner and Respondent are ordered to appear for a final hearing on (date) <u>09/11/2019</u> at (time) <u>1:30 PM</u> at the Superior Court, Criminal Part, <u>CAMDEN</u>   County, Room <u>56</u> located at (address)
<u>CAMDEN HALL OF JUSTICE, 101 SOUTH 5TH STREET, , CAMDEN, NJ 08103-0000</u>

Interpreter not needed.

0415-XTR-2019-1 09/06/2019 4:06:12 PM   Page 5 of 5   Trans ID: PEI201961

In the Matter of  DAVID M GRECO

Page 5 of 5
SBI Number:

## Notice to Respondent

**Failure to comply with the directive to surrender to law enforcement any firearms and ammunition in the Respondent's custody or control, or which the Respondent possesses or owns, and any firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun held by the Respondent, may constitute criminal contempt pursuant to *N.J.S.A. 2C:29-9(e)* and may also constitute violations of other state and federal laws which may result in your arrest and/or criminal prosecution. This may result in a jail sentence.**

**Only a court can modify any of the terms or conditions of this court order.**

**Note that the hearing for a final order will be held in your absence if you have been served with this temporary order but do not appear in court at the time and place listed above for the final hearing.**

## Return of Service

☐ Petitioner was given a copy of the Petition/TERPO by: .

_____     _____     _____
Print Name                         Time and Date                    Signature /Badge Number / Department

☒ I hereby certify that I served the Petition/TERPO by delivering a copy to the Respondent personally:

Det William Rapp   17:56  9/6/19   Det Ra Pe   145  Gloucester Twp.
_____     _____     _____
Print Name                         Time and Date                    Signature /Badge Number / Department

☐ I hereby certify that I served the Petition/TERPO by use of substituted service as follows:

_____     _____     _____
Print Name                         Time and Date                    Signature /Badge Number / Department

☐ Respondent could not be served (explain)

_____     _____     _____
Print Name                         Time and Date                    Signature /Badge Number / Department