Law Offices of Albert J. Rescinio, L.L.C.
1500 Allaire Avenue - Unit #101
Ocean Township, New Jersey  07712
Telephone:  (732) 531-2005
Telefax:      (732) 531-8009
By:   Albert J. Rescinio, Esq. (ID#034331989)
Attorneys for Plaintiff David M. Greco, *individually and on behalf of others similarly situated*

## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| David M. Greco, *individually and on behalf of others similarly situated,*<br><br>*Plaintiff,*<br><br>vs.<br><br>Gurbir S. Grewal, *New Jersey Attorney General, et al.,*<br><br>*Defendants.* | Civil Action No. _____ |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS APPLICATION FOR A PRELIMINARY INJUNCTION (*F.R.Civ.P.* 65 and *Local Rule* 65.1)

### STATEMENT OF FACTS:

For purposes of this Memorandum of Law Plaintiff shall rely upon the facts as contained in the Verified Class Action Complaint and Jury Demand with Exhibits submitted herewith.

1

## LEGAL ARGUMENT:

### POINT I:
### PLAINTIFF HAS ARTICLE III STANDING TO PURSUE THESE LEGAL CLAIMS:

As a threshold matter Plaintiff has been punished by the State for exercising his fundamental First Amendment Constitutional rights, has had his fundamental Second Amendment rights violated by having his weapons (also "property" fpr Fourteenth Amendment purposes) taken without notice or a pre-deprivation hearing first, and all of this was carried out by the State using a new statute that clearly violates the literal text of the Fourth Amendment on its fact and violates clearly established interpretation of that Amendment. Such injury clearly constitutes a concrete, ascertainable "injury in fact" and therefore "standing" to pursue those claims within the meaning of the *Constitution's* Article III as interpreted by the United States Supreme Court in *Lujan v. Defenders of Wildlife*, 504 *U.S.* 555 (1992).

### POINT II:
### PLAINTIFF HAS DEMONSTRATED HIS RIGHT TO AN ORDER GRANTING THE REQUESTED PRELMINARY INJUNCTIVE RELIEF:

Plaintiff moves before this Court seeking a Preliminary Injunction under *F.R.Civ.P.* 65 barring further implementation and enforcement by the Defendants of the "*New Jersey Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32,

> When deciding whether to issue a preliminary injunction, a district court must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting the preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

2

[*McTernan v. City of New York*, 577 *F.3d* 521, 526 (3d Cir. 2009) (internal quotation marks omitted)].

    **A.**    **Plaintiff has demonstrated a "reasonable probability of success on the merits":**

There are many separate - but related - fundamental Constitutional Rights at issue in this case. First, in *Heller v. District of Columbia*, 554 *U.S.* 570 (2008) the United States Supreme Court ruled that the Second Amendment to the *United States Constitution*, made applicable to the States by virtue of the Fourteenth Amendment, protects an individual's fundamental right to possess a firearm unconnected with service in a militia, and to use that firearm for traditionally lawful purposes such as self defense within the home. In this case Plaintiff lawfully possessed a valid Firearms Purchaser card, lawfully possessed in his home a rifle, and lawfully possessed in his home ammunition for that rifle. And it was and is his Second Amendment fundamental right to do so, something the State of New Jersey may not lightly or casually interfere with. Secondly, separate from this fundamental Second Amendment right to possess a gun in his own home is Plaintiff's fundamental First Amendment right to freely express his opinions and views without retaliation or persecution. As misguided as Plaintiffs opinions and views may seem to some, and as repugnant as Plaintiff's opinions and views may seem to others, they are nonetheless opinions and views subject to and within the express protection of the First Amendment. The First Amendment contains no exemptions or exceptions from its protections that permit the State to prohibit or punish "… *the expression of extremely unpopular and wrong-headed views.*" *Heller v. District of Columbia, supra*, 554 *U.S.* at 635; *see also National Socialists Party of America v. Skokie*, 432 *U.S.* 43 (1977) (per curium). The First Amendment is not needed to protect the expression of opinions and views that most people agree with: It is needed precisely to protect unpopular views. Thirdly, and dispositive of this application for a Preliminary Injunction in

3

Plaintiff's favor, is the fundamental Constitutional right to privacy and safety in one's own home that is guaranteed by the Fourth and Fourteenth Amendments to the *United States Constitution*. The Fourth Amendment's literal text specifically requires that any and all searches of an individual's home must be both (1) reasonable and (2) conducted pursuant to a Warrant that is issued by a neutral and detached magistrate **_based upon a "probable cause" legal standard._** (Emphasis added). And in *Camera v. Municipal Court*, 387 U.S. 523, 538-539 (1967) the United States Supreme Court made it clear that the "probable cause" legal standard and requirement of the *United States Constitution's* Fourth Amendment applies not only to criminal searches but equally applies to civil and administrative searches conducted under the authority of a State. This is a legal principle that has been "clearly established" for more than 50 years. Yet here, a civil "No Knock Search Warrant" was issued permitting the State to enter Plaintiff's home and to seize his guns and ammunition and other property based on a mere "good cause" legal standard as in the ERPO Act the standard for issuance of a TERPO in *N.J.S.A.* 2C:58-23(f) is "good cause", and *N.J.S.A.* 2C:58-26(b) states that whenever a TERPO is issued and the respondent has weapons that the Court "shall" issue a "civil" Search Warrant permitting entry into the respondent's residence to seize weapons, ammunition and Firearms Purchaser card. The Statute on its fact is clearly unconstitutional as by operation Search Warrants "shall" be issued on a lesser and unconstitutional legal standard of "good cause". This alone entitles Plaintiff to the requested Preliminary injunctive relief. But there is more.

After the ERPO Act was enacted but before it went into effect, on July 24, 2019 the New Jersey Supreme Court issued their unrelated decision in *State v. Hemenway*, ___ N.J. ___ (2019) which addressing the Search Warrant provision in the New Jersey Domestic Violence Act, *N.J.S.A.* 2C:25-29(j) and reaffirmed the mandatory requirement of meeting the "probable

4

cause" standard as Constitutionally required by both the Federal and State Constitution before any civil Search Warrant can be issued. On August 12, 2019 the New Jersey Administrative Office of the Courts, aware of the recent decision in *State v. Hemenway*, issued "Directive #19-19" where at page 6 it was admitted that the mandatory Search Warrant Provisions in the ERPO Act (*N.J.S.A.* 2C:58-26(b)) that effectively required a Search Warrant to be issued on the much lesser "Good Cause" legal standard violated the Fourth Amendment to the *United States Constitution* and Article I, Paragraph 7 of the *New Jersey State Constitution* (1947), *as amended.* **(*See* "Exhibit B" to Verified Class Action Complaint and Jury Demand at page 6).** On August 15, 2015, Defendant Gurbir S. Grewal, New Jersey Attorney General, issued a formal MEMO entitled "Attorney General Directive Pursuant to the Extreme Risk Protective Order Act of 2018" where, acknowledging AOC "Directive #19-19, he too agreed that the ERPO Act was unconstitutional. **(*See* "Exhibit C" to Verified Class Action Complaint and Jury Demand at page2 17-18).**

Rather than take action to delay implementation of the ERPO Act for the legislature to correct the admittedly unconstitutional statute provisions if they chose to do so, the AOC and Defendant Attorney General issued instructions on ways to "construe" and "implement" the Act so as to make actions of State officials comport with required Constitutional Legal Standards. However, such prophylactic measures are little more than changing the words and phrases in pre-printed forms from the unconstitutional "Good Cause" to the constitutional "Probable Cause" legal standard without any measures to actually assure, and to accurately document, that it is the separate heightened "Probable Cause" standard that is being met before the issuance of any Search Warrant is issued n conjunction with a TERPO Order. The ERPO Act as written, specifically *N.J.S.A.* 2C:58-26(b), is facially unconstitutional. The AOC agrees, and the

5

Defendant Attorney General agrees - both doing so in writing. (*See* **Exhibit B" and "Exhibit C" to Verified Class Action Complaint and Jury Demand** ). The ERPO Act, as applied, even with the so called prophylactic measures where law enforcement and judges are advised to disregard what the ERPO Act says, is unconstitutional as being applied and was so in this case. There is no evidence that the Court actually considered the application based upon a "Probable Cause" legal standard, the facts do not support probable cause, and what appears is that the Court merely signed the forms put before it with little to no thought. Indeed, there was no actual named human applicant, and still a "No Knock" provision was added with no statutory authority to do so, and no separate legal analysis to justify this additional invasion of privacy. While Plaintiff raises many Constitutional issues, the Fourth Amendment issue is dispositive and the Court need not necessarily ever reach the other issues as the statute is unconstitutional on its face as not comporting with the Fourth Amendment. As such, Plaintiff has, for purposes of this application, demonstrated a "reasonable probability of success on the merits."

    **B.**    <u>**Plaintiff will be "irreparably injured" by denial of the relief:**</u>

The law is well settled that for injunctive relief purposes a Plaintiff satisfies the "irreparable harm" prong of the inquiry if they can demonstrate a constitutional injury. *See Elrod v. Burns*, 427 *U.S.* 347, 373 (1976). ('[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). Here, Plaintiff clearly alleged and proves violations of the First, Second and Fourth Amendments, and thus satisfies the "irreparable injury" prong as a matter of law.

    **C.**    <u>**Granting the Preliminary relief requested will not result in even greater harm to the non-moving parties:**</u>

Plaintiff cannot envision or fathom any legitimate argument that could be made that the non-moving parties

**D.    It is in the Public's Interest to Grant the Preliminary relief requested:**

Quite clearly it is in the Public's Interest to ensure that the State be stopped from enforcing laws and policies that violate the Federal and State Constitution.

**CONCLUSION:**

For the foregoing reasons and authorities cited in support thereof, it is respectfully requested that the Court grant the Preliminary Injunctive relief requested without necessity of posting any bond.

Respectfully submitted,

ALBERT J. RESCINIO, ESQ.