UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

Civil Action No. 3:19-cv-19145-BRM-TJB
Honorable Brian R. Martinotti, U.S.D.J.
Honorable Tonianne J. Bongiovanni, U.S.M.J.

David M. Greco,
*individually and on behalf of others similarly situated*,

*Plaintiff*,

vs.

Gurbir S. Grewal,
*New Jersey Attorney General, et al.*,

*Defendants.*

---

**PLAINTIFF'S BRIEF IN REPLY TO THE SEVERAL BRIEFS OF THE COLLECTIVE DEFENDANTS IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF**

---

Albert J. Rescinio, Esq.
On the Brief

Erik W. Muller, Esq.
On the Brief

Law Offices of Albert J. Rescinio, L.L.C.
1500 Allaire Avenue - Unit #101
Ocean Township, New Jersey 07712
Telephone:     (732) 531-2005
Telefax:        (732) 531-8009
By:    Albert J. Rescinio, Esq. (ID#034331989)
Attorneys for Plaintiff David M. Greco, *individually and on behalf of others similarly situated*

# **TABLE OF CONTENTS:**

**Page:**

INTRODUCTION:  .............................................................   1

SUMMARY OF DEFENDANT'S ARGUMENTS:  .......................   3

REPLY ARGUMENT:

I:.      *YOUNGER* ABSTENTION DOES NOT APPLY:  ...............................   4

II.      PLAINTIFF HAS ARTICLE III STANDING:  ....................................   8

     A.)   The Portions of AOC DIRECTIVE #19-19 that Defendants
           seek to rely upon as a "Remedy" do not cure the Constitutional
           Deficiency in the ERPO Act as they themselves violate the
           "Separation of Powers Doctrine" and ARTICLE VI, Section II,
           paragraph 3 of the *New Jersey State Constitution* (1947):  ..............   9

     B.)   Cumulatively, the TRPO was issued by the State Court
           Disregarding or Misinterpreting the Attempted Prophylactic
           Measures of AOC Directive #19-19 Anyway:  ...........................   17

     C.)   The "Peculiar Position" of the Defendant Attorney General
           and Plaintiff's Reply to the Defendants' Arguments in their
           POINT II:  ..............................................................................   19

CONCLUSION:  ..............................................................................   26

i

# TABLE OF AUTHORITIES:

**Page:**

**Cases:**

*ACRA Turf Club v. Zanzuccki,* 748 *F.3d* 127 (3d. Cir. 2014) .........................     7

*Brady v. New Jersey Redistricting Commission* 131 *N.J.* 160 (1992)
(Emergent Order) and 131 *N.J.* 594 (1992) (Court Opinion) ..........................     22

*Camara v. Municipal Court,* 387 *U.S.* 523 (1967) ......................................     15

*Cohens v. Virginia,* 6 *Wheat.* 264  (1821) .................................................     6

*Colorado River Water Conservation District v. United States,*
424 *U.S.* 800 (1976) ........................................................................     6

*Crowe v. DeGioia,* 90 *N.J.* 126 (1982) ...................................................     25

*District of Columbia v. Heller,* 554 *U.S.* 570 (2007) .................................     8

*Elrod v. Burns,* 427 *U.S.* 347 (1976) .....................................................     8

*Gonzalez. v. Waterfront Commission of New York Harbor,* 755 *F.3d*
176 (3d. Cir. 2014) .........................................................................     7

*Huffman v. Purse, Ltd.,* 420 *U.S.* 592 (1975) ............................................     7

*Humanik v. Beyer,* 871 *F.2d* 432 (3d. Cir.), *cert.* denied 493 *U.S.* 812
(1989) .........................................................................................     12, 22

*McDonald v. City of Chicago,* 561 *U.S.* 742 (2010) ...................................     8

*Middlesex County Ethics Committee v. Garden State Bar Association,*
457 *U.S.* 423 (1982) ........................................................................     7.8

*Planned Parenthood of Central New Jersey v. Verniero,* 41 *F.Supp.2d*
478 (D.N.J. 1998), *aff'd sub nom Planned Parenthood of Central New
Jersey v. Farmer,* 220 *F.3d* 127 (2000) .................................................     21

*R.K. v. D.L.,* 434  *N.J.Super.* 113 (App. Div. 2014) ......................................     12.13

*Save Our Shore District v. New Jersey Redistricting Commission,*
131 *N.J.* 159 (1992) (Emergent Order) and 131 *N.J.* 594 (1992) (Court
Opinion)  .....................................................................................     22

*S.M. v. K.M.,* 433 *N.J.Super.* 553 (App. Div. 2014) ........................................ 14

*Sprint Communications, Inc. v. Jacob,* 571 *U.S.* ___ (slip opinion),
134 *S.Ct.* 584 (2013) ........................................ 6,7,8

*State v. Breakiron,* 108 *N.J.* 591 (1987) ........................................ 20

*State v. Hemenway,* ___ *N.J.* ___ (2019 (decided July 24, 2019) .................... 22

*State v. Linares*, 192 *N.J. Super.* 391 (Law Div. 1983) ............................ 13

*State v. Morales,* 390 *N.J.Super.* 470 (App. Div. 2007) ............................ 13

*Winberry v. Salisbury,* 5 *N.J.* 240 (1950), *cert. denied* 340 *U.S.* 877 (1950) ...... 10,11,14,16,17

*Younger v. Harris*, 401 *U.S.* 37 (1971) ........................................ 3,4,5,6,8

## Statutes:

1 *Stat.* Ch. 1 (June 1, 1789) ........................................ 20

*Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"),
New Jersey Public Law 2018, Chapter 35 ........................................ 1

Law 1990, Chapter 63, sec. 1 ........................................ 22

Law 1991, Chapter 510 ........................................ 22

*"New Jersey Domestic Violence Act"* ........................................ 23

"New Jersey Partial-Birth Abortion Ban Act of 1997" ........................................ 21

*N.J.S.A.* 2A:16-50 to -63 ........................................ 23

*N.J.S.A.* 2A:16-53 ........................................ 23

*N.J.S.A.* 2C:3-7(e) ........................................ 24

*N.J.S.A.* 2C:4-2 ........................................ 22

*N.J.S.A.* 2C:39-4(a)(1) ........................................ 24,25

*N.J.S.A.* 2C:58-20 through -32 ........................................ 1

*N.J.S.A.* 2C:58-23(e) ................................................................ 9,15,16,17,19,24

*N.J.S.A.* 2C:58-26(b) ................................................................ 9,15,18

*N.J.S.A.* 2A:65A-6(e) ................................................................ 21

*N.J.S.A.* 19:46-6 to -14 ................................................................ 22


**Court Rules:**

*F.R.Civ.P.* 11 ................................................................ 22.

*R.* 3:5-1 *et seq.* ................................................................ 23


**<u>Other Authorities:</u>**

*AOC Directive #19-19* ................................................................ *passim*

"Court Asks Legislature to Review Refuted Law," 124 *N.J.L.J.* 1133
(November 2, 1989) ................................................................ 22

*New Jersey State Constitution* (1947), ARTICLE I, Paragraph 7 ................................................................ 15

*New Jersey State Constitution*, Article II, Section II ................................................................ 22

*New Jersey State Constitution* (1947), ARTICLE III ................................................................ 9

*New Jersey State Constitution* (1947), ARTICLE IV ................................................................ 10

*New Jersey State Constitution* (1947), ARTICLE V ................................................................ 10,23

*New Jersey State Constitution* (1947), ARTICLE VI ................................................................ 10,12,16,23

*New Jersey State Constitution* (1947), ARTICLE VI,
Section II, paragraph 3 ................................................................ *passim*

*Rules Governing the Courts of the State of New Jersey,*
(with Comments and Annotations by Sylvia B. Pressler
(1969-2010) and Peter G. Verniero), Gann Law Books,
Newark, New Jersey (2019) ................................................................ 11,12

*The Public Statutes at Large of the United States of America,*
BOSTON:  Charles C. Little and James Brown (1845) ................................................................ 20

*United States Constitution*, Article VII …………………………………………… 19

*United States Constitution*, Fourth Amendment …………………………………….. 12

*United States Constitution*, Fourteenth Amendment …………………..…………….. 12

## **TABLE OF APPENDIX:**

"Exhibit A":          Un-Redacted Portion of September 6, 2019
                      State Court *ex parte* TERPO Hearing
                      (*Judge Speaking on the Record regarding
                      legal burdens to apply) …………………………………… Pa1

**INTRODUCTION:**

This Brief is Plaintiff's formal written reply to the several written briefs filed in opposition

to the relief being sought in the Order to Show Cause signed by this Court on October 22, 2019

where on the new adjourned return date of November 20, 2019 the Plaintiff will be seeking an

Order granting Preliminary Injunctive Relief as follows:

- An Order Preliminary Enjoining Defendant Gurbir S. Grewal, New Jersey Attorney General, and any law enforcement agencies and law enforcement officers under his control and supervision, from taking any enforcement or prosecution action whatsoever pursuant to the authority of the "*New Jersey Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, which was passed into law by the New Jersey State Legislature, and signed into law by the New Jersey Governor, on June 13, 2018, and which went into effect on September 1, 2019, until further Order of this Court[.]

**[ECF Document No. 3 - Order to Show Cause at page 2].**

So the record is clear, initially in support of the Order to Show Cause application the

Plaintiff filed and relied upon (1) a Verified Class Action Complaint and Jury Demand with

Exhibits **(ECF Document No. 1)** and (2) a Memorandum of Law. **(ECF Document No. 1-3).**

After reviewing Plaintiff's submission the Court signed and entered the Order to Show Cause,

directed expedited service of the papers, set a briefing schedule, and fixed an initial return date of

November 13, 2019. **(ECF Document No. 3).**

Thereafter, as directed, and in full compliance with the Court's directive in the Order to

Show Cause, expedited service was timely made on all defendants in accordance with the *Federal*

*Rules of Civil Procedure* by 9:30 a.m. on the morning of October 24, 2019. **(*See* "Proof of**

**Service" at ECF Document No. 8).**

Thereafter, at the request of DAG Lucas the return date was moved back one week, and all

of the briefing deadlines were also moved back one week, now making the Defendant's Opposition

1

due on Friday November 8. 2019, and Plaintiff's Reply due on Friday November 15, 2019.[1]   (*See* **ECF Document No. 7).**

  Defendants Gurbir S. Grewall, Jared M. Maples, New Jersey Office of Homeland Security and Preparedness, Camden County Prosecutor's Office, Jill S. Mayer and Nevan Soumalis filed a formal (over-length) Brief  in opposition through their attorney of record Deputy New Jersey Attorney General Bryan Lucas. **(ECF Document No. 32).**   Defendants Gloucester Township Police Department, Bernard Dougherty, Nicholas C. Aumendo, Donald B. Gansky, William Daniel Rapp and Brian Anthony Turchi filed a letter in lieu of brief in opposition through their attorney of record Daniel J. DeFiglio, Esq. which essentially adopts and joins in with the formal (over-length) Brief filed by DAG Lucas.  **(ECF Document 33).**

  Plaintiff now in this one submission formally Replies to the several collective Defendants' Brief and Letter in opposition.

---

[1]  So that the record is clear, the need for adjournment was in no way attributable to Plaintiff failing to comply with the expedited service provisions of the Order to Show Cause as there was full and timely compliance.  However, after counsel for Plaintiff had already verbally consented to DAG Lucas' request for a brief adjournment, it was later discovered that by letter to the Court dated October 28, 2019 wherein he was actually seeking the brief adjournment of the initial November 13, 2019 return date DAG Lucas represented to the Court that the Attorney General's "… *office was first served with the complaint and related documents on October 25, 2019.*" **(See October 28, 2019 letter of DAG Lucas , ECF Document No. 7, at page 1 (un-paginated) and at page 2).**  This is simply not true, as all papers were in fact timely served on all parties - including Defendant Grewal - well before the deadline of October 24, 2019 at great effort and expense. Specifically the New Jersey Attorney General's Office was specifically served with all papers on Thursday October 24, 2019 at 9:30 a.m. - before the end of business which was the "deadline" - when the Receptionist at the Attorney General's Office at the R.J. Hughes Justice Complex in Trenton, Ms. Ellen Seitz, received and acknowledged service of process of all papers pursuant to the *Federal Rules of Civil Procedure*.  **(See "Proof of Service of Summons and Complaint" dated October 24, 2019 by Process Server and filed October 29, 2019 as ECF Document No. 8 at page 4, paragraph 5 and at "Exhibit J", "Exhibit K" & "Exhibit L").**

## SUMMARY OF DEFENDANT'S ARGUMENTS:

Defendants argue that (they say) Plaintiff cannot demonstrate a likelihood of success on the merits.  However, their arguments are made without ever at any time disputing that New Jersey's ERPO Act, as drafted, violates the Fourth and Fourteenth Amendments to the United States Constitution.  Instead, the Defendants assert and seek to primarily rely upon two (inapplicable) procedural arguments.  First, Defendants argue that this Federal Court should abstain under the principles announced by the Supreme Court in *Younger v. Harris*, 401 *U.S.* 37 (1971) ("*Younger* Abstention").  **(*See* ECF Document 32, Defendant's Brief at POINT IA, pages 17 to 24).**  Second, Defendants argue that this Federal Court should not reach the *undisputed issue* that the New Jersey ERPO Act is facially unconstitutional in violation of the Fourth and Fourteenth Amendments because Plaintiff does not have Article III Standing **(when clearly he does)** because the they claim that AOC Directive fixed everything **(when it clearly does not)** and because they claim that in Plaintiff's case the record shows that the State Court ignored the statute at the TERPO hearing, instead followed the AOC Directive, and issued a TERPO against Plaintiff using a "probable cause" instead of a "good cause" legal standard.  **(it did not).  (*See* ECF Document 32, Defendant's Brief at POINT IB, pages 24 to 30).**  Next, the Defendants spend a full 9 pages making one sided policy arguments that are irrelevant and have nothing whatsoever to do with the rather simple legal questions at hand, and in so doing completely misstate what is otherwise well settled law on fundamental Second Amendment constitutional rights.  **(*See* ECF Document 32, Defendant's Brief at POINT IC, pages 30 to 39).**  Lastly, while fully and directly conceding the actual text of the ERPO Act is facially unconstitutional, the Defendants nevertheless argue - with a proverbial "straight face" no less - that "… *the balance of equities and public interest also cut strongly against invalidating a democratically-enacted law* …" and that entering the

3

Preliminary Injunction sought by Plaintiff would somehow "… *bar courts and law enforcement officers from relying upon this important law to disarm dangerous individuals, and would bar courts and law enforcement officers from relying on this important law to disarm dangerous individuals …*" **(See ECF Document 32, Defendant's Brief at POINT II, pages 39 to 41)** when in reality there are laws in place in New Jersey already that have been effect for years that allow law enforcement to do exactly what the ERPO Act seeks to do, but in a legal and Constitutional way.

## REPLY ARGUMENT:

### I.   *YOUNGER* ABSTENTION DOES NOT APPLY:

Defendants first argue that "*This Court should abstain from hearing this case*" arguing specifically that "*Younger* abstention applies to this case …", and adding (inaccurately) "… *it is undeniable that Plaintiffs can argue in the state courts that the Act in unconstitutional, at the FERPO hearing and on appeal.*"

**[*See* ECF Document 32, Brief at page 17m page 18 and at page 23].**

Defendants argument is in many respects is only a partially accurate exposition on the current state of the correct law of so called "*Younger* Abstention".  Plaintiff's point being that details matter.

In *Younger v. Harris,* 401 *U.S.* 37 (1971), the Supreme Court specifically ruled that, absent extraordinary circumstances, Federal Courts should "abstain" from exercising jurisdiction and deciding civil cases otherwise properly brought before them to decide when there is an ongoing parallel and pending State Court **criminal prosecution.**  The Supreme Court majority opinion in *Younger v. Harris*, written by Justice Black,  specifically held that when there were ongoing criminal proceedings that "… the ***possible unconstitutionality*** of a statute 'on its face' does not, in itself, justify an injunction against [a State's] good faith attempts to enforce it." *Id.* at 54 Justice

4

Black recognized and held that a statute that is "…. *flagrantly and patently violative of express constitutional prohibitions…*" would qualify as an "… extraordinary circumstance …" that would be exempt from the rule of abstention when there is a parallel ongoing state court criminal case. *Id.* at 53-54

First, there is no ongoing state criminal case. Further, as a preliminary threshold matter this case is also fits within the exception and qualifies as an "extraordinary circumstance" because here the litigants are not dealing with the "*possible*" unconstitutionality of a challenged State statute on its face, nor is the Plaintiffs dealing with the Defendant's "good faith attempts" to enforce the unconstitutional statute. This is because here and now in this Federal case we are dealing with the "*factually admitted*" and "*conceded certainty*" that the challenged portions of the civil ERPO Act - being enforced in an ongoing parallel civil case in New Jersey State Court - are in fact *per se* facially unconstitutional. Indeed, in what can only be described as "extraordinary circumstances" in a legal sense, Defendant Attorney General has literally agreed that the challenged portions of the ERPO Act were and are unconstitutional, doing so in writing even before Plaintiffs filed the instant case. **[*See* "Exhibit C" at ECF Document 1, Sec. 3.3, at page 78 of 104].** Moreover, in their opposition to the pending Order to Show Cause the Defendants do not attempt to even attempt to argue that the challenged portions of the ERPO Act are not *per se* facially unconstitutional as Plaintiff contends, and rather, having conceded the point (as they must), instead argue alternatively that this admittedly unconstitutional statute was not applied against Plaintiff unconstitutionally here, arguing this by referencing a "remedy" proposed by *AOC Directive* #19-19 which is itself unconstitutional, *see* Argument at POINT II(A), *infra.*, and which unconstitutional "remedy" was not implemented by the State Court when entering the TERPO anyway! *See* Argument at POINT II(B), *infra.* So as a threshold matter, this case is that rare case

5

that fits squarely within the "extraordinary circumstance" exception to application of the *"Younger* Abstention" doctrine in the first instance. This *should* end the inquiry on the question of possible applicability of the *"Younger* Abstention" doctrine.

To be thorough, next, and cumulatively, Plaintiff acknowledges that in the years after *Younger v. Harris* was decided in 1971 and for some time thereafter that the doctrine was extended beyond circumstances limited to ongoing parallel State *criminal* proceedings to now, in certain circumstances to also include application where there was or were ongoing parallel State *civil* proceedings as well. However, the Supreme Court's somewhat recent decision in *Sprint Communications, Inc. v. Jacob,* 571 *U.S.* ___ (slip opinion), 134 *S.Ct.* 584 (2013) changed all that, henceforth once and for all severely limiting applicability of the *Younger* doctrine in civil cases, and *Sprint* is controlling and governing precedent in this case.

The Court in *Sprint* started by noting the following:

> Federal courts, it was early and famously said, have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia,* 6 *Wheat.* 264, 404 (1821). Jurisdiction existing, this Court has cautioned, a federal court's "obligation" to hear and decide a case is "virtually unflagging." *Colorado River Water Conservation District v. United States,* 424 *U.S.* 800, 817 (1976). Parallel state-court proceedings do not detract from that obligation. *See Ibid.*

**[*Sprint, supra,* 571 *U.S.* at ___ (slip opinion), 134 *S.Ct.* at 591].**

Specifically, the Court in *Sprint Communications, Inc.* expressly rejected the earlier notion that might be read from some earlier cases that *Younger* abstention is the rule rather than the exception. The Supreme Court specifically unequivocally declaring that *Younger* Abstention is an "exceptional remedy" to be invoked in only a narrow range of cases. *Sprint, supra,* 571 *U.S.* at ___ (slip opinion), 134 *S.Ct.* at 588. The Court then defined that narrow range of cases as possibly including only three kinds of cases: (1) "ongoing state criminal prosecutions" (as in *Younger* itself); (2) "certain civil enforcement proceedings" (such as the nuisance action in *Huffman v.*

6

*Purse, Ltd.,* 420 *U.S.* 592 (1975)), and (3) "civil proceedings involving certain orders ... uniquely in furtherance of the state court's ability to perform their judicial functions" (such as state court civil contempt proceedings). *Sprint, supra,* 571 *U.S.* at ___ (slip opinion), 134 *S.Ct.* at 591. These three specifically enumerated categories define the full extent of *Younger's* scope. *Id.*

Certainly #1 and #3 above simply cannot and do not apply to this case. Defendants argue that this case implicates #2 above. While Plaintiffs disputes this - and notes this further inquiry should not even be occurring because of the "extraordinary circumstance" exception to application of the *"Younger* Abstention" doctrine in the first instance is dispositive - if the Court disagrees and continues, then the Court must then next consider the three factors announced in *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 *U.S.* 423 (1982): whether "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the *state proceedings afford an adequate opportunity to raise federal claims."* *Sprint, supra,* 571 *U.S.* at ___ (slip opinion), 134 *S.Ct.* at 591; *see also Gonzalez. v. Waterfront Commission of New York Harbor,* 755 *F.3d* 176 (3d. Cir. 2014); *ACRA Turf Club v. Zanzuccki,* 748 *F.3d* 127 (3d. Cir. 2014).

Cumulative to the "extraordinary circumstance" exception, standing alone *Middlesex County* factor #3 confirms that *Younger* Abstention should not be invoked, because the *ex parte* unconstitutional TERPO proceeding has already taken place without notice and a right to be heard, the time when the issue of the unconstitutionality of the Statute should have been raised. Not only was there not an "adequate opportunity", there literally was NO opportunity to challenge the constitutionality before Plaintiffs gun was seized. Plaintiff has (and other similarly situated have) a recognized fundamental Second Amendment Constitutional right to own and lawfully possess a gun inside a private home. *See District of Columbia v. Heller,* 554 *U.S.* 570 (2007); *McDonald v.*

*City of Chicago,* 561 *U.S.* 742 (2010). The *ex parte* nature of the TERPO hearing process ensures that no constitutional argument can be raised until after the constitutional violation and deprivation of rights has already occurred, if ever. Moreover, it is literally the unconstitutional legal standard used in this initial illegal *ex parte* TERPO process itself that is being challenged, leaving only at best the possibility of trying to raise the constitutional issues after the fact at a the post-deprivation stage. As the Supreme Court has well noted, a constitutional violation itself is an irreparable injury. *Elrod v. Burns,* 427 *U.S.* 347, 373 (1976). Therefore as at best the State Court procedure might perhaps allow the constitutional issue to somehow be raised at the post deprivation phase, in context there really is no "… *adequate opportunity to raise federal claims.*" *Sprint, supra,* 571 *U.S.* at ___ (slip opinion), 134 *S.Ct.* at 591. Therefore, if for some reason (which reason Plaintiff frankly cannot even imagine) the Court does not find the "extraordinary circumstance" exception applies and automatically bar application of the *"Younger* Abstention" doctrine in the first instance, cumulatively in context and on balance, the State Court procedure's failure to satisfy *Middlesex County* Factor 3 should additionally automatically bar application of the *"Younger* Abstention" doctrine, the application of which is the exception, not the rule.

## II.   PLAINTIFF HAS ARTICLE III STANDING:

Defendants argue that Plaintiff has no Article III Standing to bring this claim as (they claim) he has suffered no "harm" because:

> "… *the relief that Plaintiff seeks - i.e., that search warrants for weapons under ERPO will only be issues and executed where there is probable cause - has already been provided.*" … *** … Plaintiff's entire Fourth Amendment claim is that ERPO warrants are defective because they are issued on a finding of good cause, not probable cause, under the plain text of the statute. … *** … Plaintiff himself says a warrant should be based on probable cause, **and because that is what happened here under the only evidence before this court**, it is clear that no actual harm took place.*

8

[*See* ECF Document 32, Brief at page 24 and at page 26].

The State's Argument is that "... *under the only evidence before this court* ..." the Plaintiff's Fourth and Fourteenth Amendment Rights were not violated because despite the literal text of the ERPO Act. Specifically the Defendants claim that the admittedly facially *per se* unconstitutional "*good cause*" legal standard in *N.J.S.A.* 2C:58-23(e) and *N.J.S.A.* 2C:58-26(b) is somehow mystically and globally "fixed" by the AOC Directive. However, that is simply not true (*See* Point III(A), *infra.*) and in any event, on September 6, 2019 when entering the *ex parte* TERPO the State Court disregarded AOC Directive #19-19 and instead applied the literal text of *N.J.S.A.* 2C:58-23(e) when deciding whether to issue the TERPO, **_only_** attempting to apply the otherwise constitutional "probable cause" legal standard to the second inquiry - that being whether there was reason to believe that there were guns at the residence, which was never subject to dispute.

### A.) The Portions of AOC DIRECTIVE #19-19 that Defendants seek to rely upon as a "Remedy" do not cure the Constitutional Deficiency in the ERPO Act as they themselves violate the "Separation of Powers Doctrine" and ARTICLE VI, Section II, paragraph 3 of the *New Jersey State Constitution* (1947):

The concept of separation of powers within New Jersey State government is one of the most important principles underlying the structures of the *New Jersey State Constitution* (1947). Indeed, to reconfirm this bedrock principle, ARTICLE III of the *New Jersey State Constitution* (1947) specifically provides as follows:

**ARTICLE III**
**DISTRIBUTION OF THE POWERS OF GOVERNMENT**

1. The powers of the government shall be divided among three distinct branches, the legislative, executive and juridical. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution.

[*New Jersey State Constitution* (1947), Article III, paragraph 1].

9

ARTICLE IV of the *New Jersey State Constitution* (1947) outlines the Legislative Branch of State government and the powers conferred upon the Legislative Branch, dividing such Legislative powers between a General Assembly of 80 elected Members and a State Senate of 40 elected members who work together in the statutory law making process.  ARTICLE V of the *New Jersey State Constitution* (1947) outlines the Executive Branch of State government and the Executive powers conferred therein, which are exercised by a Governor and a Lieutenant Governor, which participate in the law making process and are charged with enforcement of laws. Anyone reading this Brief should certainly understand the basics of the Legislative lawmaking authority, power and process in New Jersey.  Separate from this, ARTICLE VI of the *New Jersey State Constitution* (1947) outlines the Judicial Branch of New Jersey State government and the powers conferred, creating a Supreme Court and a Superior Court who are both primarily charged with interpreting laws that are made by the other branches.  The actual and literal substantive lawmaking power is clearly and specifically reserved to the Legislative and Executive Branches, completely excluding the Article VI Judicial Branch from this process with only one very limited exception, that being found in the text of ARTICLE VI, Section II, paragraph 3 as interpreted by the so called "*Winberry* Doctrine".  Specifically, …

> 3. The Supreme Court shall make rules governing the administration of all courts in the State and, ***subject to law***, the practice and procedure in all such courts.  The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted. (Emphasis added).

[*New Jersey State Constitution* (1947), ARTICLE VI, Section II, paragraph 3].

In *Winberry v. Salisbury,* 5 *N.J.* 240 (1950), *cert. denied* 340 *U.S.* 877 (1950), the New Jersey Supreme Court, relying upon the "… *subject to law* …" text in ARTICLE VII, Section II, paragraph 3, ruled that they, not the Legislature and Governor, had (and to this day still have)

ultimate responsibility for the establishment of the *procedural rules* that governed the New Jersey

Courts. *Id.* at 255. But while making such pronouncement, the Supreme Court, speaking through

first Chief Justice Arthur Vanderbilt, was careful to acknowledge the very limited scope of the

Supreme Court's rulemaking authority, noting that the rulemaking power was "… confined to

practice, procedure and administration as such …", *Id.* at 248, and asserting that "…[w]hile the

Courts necessarily make new substantive laws through the decision of specific cases ***they are not***

***to make substantive law wholesale through the rulemaking process***.", *Id.* (Emphasis added).

It is the so called "*Winberry* Doctrine" that explains the source and strict limits on the

Supreme Court's New Jersey State Constitutional authority and exclusive power to make all

"*procedural law*" governing the practice and procedure in the New Jersey State Court System,

which includes the admission to practice and regulation of all Attorneys in the New Jersey State

Court System. Indeed, any attorney who practices in the New Jersey State Court system is familiar

with the *New Jersey Court Rules* which are created and adopted as "law" governing the procedures

in the New Jersey State Court System by the Supreme Court under the authority of ARTICLE VI,

Section II, paragraph 3. Moreover, almost all attorneys and Judges involved with the New Jersey

Court System on a daily basis rely on the privately and commercially published version, *Rules*

*Governing the Courts of the State of New Jersey*, (with Comments and Annotations by Sylvia B.

Pressler (1969-2010) and Peter G. Verniero), Gann Law Books, Newark, New Jersey (2019),

published each year for the last 50 years, being first published in 1969. The standard "Forward"

for each of the 50 versions was first written in 1969 by Joseph Weintraub, then Chief Justice of

the New Jersey Supreme Court at the time when the *Pressler's Court Rules* were first published.

Chief Justice Weintraub's Forward, published in identical form at the beginning of each of the 50

versions (revised each year)  explained the authority for and history of the *New Jersey Court Rules*

as follows:

> Article VI, Section II, paragraph 3 of the New Jersey Constitution of 1947 charges the Supreme Court with the responsibility for making rules governing the practice and procedure in and the administration of the courts in the State.  In the exercise of this obligation comprehensive rules were promulgated effective September 15, 1948 coincidental with the effective date of the Judicial Article of the Constitution.
> To aid it in the rule-making process, the Supreme Court has appointed committees to study and make recommendations, and has solicited the assistance of the bench and bar generally.  It has also provided for an annual Judicial Conference …[.]
> ***
> [In 1961] … on the recommendation of its committee on rules, the Supreme Court initiated a program for the critical and comprehensive review and reappraisal of all the rules of court.
> ***
> … The proposed revision was subsequently discussed at a Judicial Conference and was then redrafted by the coordinating committee.
> This 1969 revision thus represents the end product of literally years of work by dozens of court and bar association committees and hundreds of individual lawyers, judges and law school professors. …

[*Pressler, supra,* FORWARD at page viii].

Today in year 2019, …

> …[t]he Judicial Council is the body of the judiciary chaired by and ultimately answerable to the Chief Justice.  The council consists of the Assignment Judges from all the vicinages, the Presiding Judge for Administration of the Appellate Division, the Administrative Director of the Courts, and the Chairs of the Conferences of Presiding Judges for the Civil, Criminal, Family and General Equity Divisions.

[*R.K. v. D.L.,* 434 *N.J.Super.* 113, 130 n. 8 (App. Div. 2014)].

Here, the Defendants seek to rely upon an Administrative Office of the Courts ("AOC")

Directive, specifically AOC Directive #19-19, which they claim operates to in total cure the patent

*per se* facial unconstitutionality of the ERPO Act.

The official Article VI judicial pronouncement / announcement here that the ERPO Act

was indeed clearly unconstitutional as violating the Fourth and Fourteenth Amendments to the

United States Constitution did not come about as the byproduct of an Article VI judicial decision

from the Superior Court or the Supreme Court in a case and controversy challenging the

Constitutionality of the ERPO Act there.  Nor was the issue addressed through the New Jersey Supreme Court's traditional ARTICLE VI, Section II, paragraph 3 constitutional authority to enact "procedural law" governing Rules of practice and procedure in the State Courts by enacting or modifying a *Court Rule*.  Rather, through use of the Supreme Court's own extension of its own existing ARTICLE VI, Section II, paragraph 3 authority to enact "procedural law" governing Rules of practice and procedure, the Supreme Court from time to time, and acting through the Administrative Office of the Courts ("AOC"), the administrative arm of the Article VI Judiciary, issues "Administrative Directives".  The AOC Administrative Directives are prepared by the Judicial Council and seek to ensure that similar types of cases are treated procedurally in a uniform manner throughout the State court system from vicinage to vicinage, often doing so by issuing uniform rules of "Guidance" along with accompanying pre-printed uniform forms to be used by Courts and Court personnel.  So to be clear AOC Directives are issued pursuant to the unilateral extension by the Supreme Court itself of its own "Winberry Doctrine" so that over time the doctrine, in addition to practice and procedure, now (they say) also includes power to unilaterally implement *rules of administration.  See State v. Morales,* 390 *N.J.Super.* 470, 472 (App. Div. 2007) (AOC Directives are "… promulgated by the Supreme Court which 'has the power to promulgate rules of administration as well as practice and procedure' pursuant to the New Jersey Constitution." (citing *State v. Linares*, 192 *N.J. Super.* 391, 397 (Law Div. 1983)).  For this reason, on occasion lower State Courts have stated as fact AOC Directives have ***the force*** of law. (emphasis added).  *See Id., see also R.K. v. D.L.,* 434 *N.J.Super.* 113, 130 n. 7 (App. Div. 2014) (confirming AOC Directive #08-11 ***fixing uniform statewide procedures*** for processing Family Court cases that fall under the purview of the "non-dissolution docket", also known as the "FD Docket", has the "***force*** of law".); *S.M. v. K.M.,* 433 N.J.Super. 553, 554 (App. Div. 2014)

13

(confirming AOC Directive #08-11 *fixing uniform statewide **procedures*** for processing Family Court cases regarding claims of abuse and neglect when the parent has criminal charges pending has the "***force*** of law".).   Plaintiff need not challenge that extension of administrative lawmaking authority here beyond noting that while AOC Directives may "have ***the force*** of law", they are not "law" in a traditional constitutional sense, and rather are merely rules of uniform statewide administration - often accompanied by "Guidance" and uniform forms for use by Court and Court personnel - for procedurally processing similar types of cases in the New Jersey Court System. Whatever "force of law" (as opposed to law) may mean, at most under *Winberry v. Salsbury, supra.* and the "*Winberry* Doctrine" as extended, any actual literal "lawmaking" authority delegated by the Supreme Court to the unelected officials in the Judicial Council and the AOC cannot exceed the legal authority the Supreme Court itself has within the limits of the New Jersey State Constitution.  Otherwise stated, Article VI Judicial Branch "law making" is limited only to *Court procedures*, and maybe also to *Court administration procedures*, but certainly does not include or extend to the wholesale unilateral re-writing of existing substantive statutory law that has already been enacted by the New Jersey Legislature and Governor pursuant to the Article IV and V State New Jersey State statutory law making process.  Or to again quote former Chief Justice Arthur Vanderbilt in *Winberry,* **the Article VI Judicial Branch of New Jersey State government has no constitutional authority "*… to make substantive law wholesale through the rule making process.*"** (Emphasis added).  *Winberry v. Salsbury, supra* at 248.

Nevertheless, at some point during the time the ERPO Act was signed into law in June 2018 and when it went into effect on September 1, 2019, the AOC reviewed the ERPO Act for procedural implementation and in so doing "someone" quickly recognized the blatant and obvious legal fact that the "automatic search warrant provisions" in the statutory ERPO Act,  which by

14

operation statutorily required that a search warrant automatically be issued based upon a "good cause" legal standard, violated the clearly established and plain wording of the Federal Constitutionally mandated "Probable Cause" legal standard for the issuance of any search warrant (criminal or civil) found in the literal text of the Fourth Amendment made applicable to the State of New Jersey by the Fourteenth Amendment and as confirmed by long existing United States Supreme Court precedent (specifically *Camara v. Municipal Court,* 387 *U.S.* 523, 538-539 (1967)) and also violated the collateral provisions of ARTICLE I, Paragraph 7 of the *New Jersey State Constitution* (1947).

As a threshold matter, New Jersey *AOC Directive #19-19* (August 12, 2019) - which itself is not "law" but "has the force of law" (such "force" being limited by the *New Jersey Constitution* to only enacting *Court procedures* and *Court administration procedures*) still nevertheless acknowledges the obvious (as do Defendants herein). That being that the ERPO Act's statutory text which permits issuance of a TERPO upon a Court's finding of "good cause" as per *N.J.S.A.* 2C:58-23(e) then by operation of law automatically mandates that the same Court automatically issue without any further inquiry a Search Warrant to enter a home and seize weapons as per *N.J.S.A.* 2C:58-26(b), is a facial *per se* violation of the "probable cause" standard for the issuance of any search warrant required by both the Federal and New Jersey State Constitutions. As stated in *AOC Directive #19-19*:

> The standard for the court to issue the temporary extreme risk protective order is if the petitioner established "good cause" to believe that the respondent poses an immediate and present danger of bodily injury to self or others by possessing, purchasing, owning, or receiving a firearm. *See N.J.S.A.* 2C:58-23(e). If the court orders the temporary order and the petition "indicates" that the respondent owns or possesses any firearms, then the Act mandates that the court shall issue a search warrant, *N.J.S.A.* 2C:58-26(b).
> In light of the Supreme Court's decision in *State v. Hemenway,* ___ *N.J.* ___ (2019), decided July 24, 2019, Guideline 4(e) sets forth a different standard for issuance of a search warrant in conjunction with a temporary extreme protective order than the standard set forth in the Act. ... *** ... [In *Hemenway*] ... [t]he Supreme Court further clarified that "The probable cause requirement for warrants is adaptable to civil and administrative search warrants to ensure that

15

only reasonable searches are conducted under our Federal and State Constitutions, as the United States Supreme Court made clear" in *Camera v. Municipal Court*, 387 *U.S.* 523, 538-39 (1967). Slip op. at 24.

Accordingly, a search warrant for any firearms and ammunition which the respondent possesses or owns can only be issued in conjunction with a temporary extreme risk protective order ***when the court determines that probable cause exists to believe that*** (1) the respondent owns or possesses any firearms or ammunition, (2) the respondent poses an immediate and present danger or bodily injury to self or others by owning or possessing any such firearms or ammunition, and ***(3) such firearms or ammunition are presently at a specifically described location.*** *See* Guideline 4(e).

**[*See AOC Directive #19-19* (August 12, 2019) at ECF Document 1, Exhibit B, page 50 of 104].**

The Article VI State Judicial Branch's attempt to correct the clear substantive constitutional deficiency in the ERPO Act by AOC Directive #19-19 is clearly invalid. Administratively re-writing the unambiguous literal text and substantive law of the ERPO Act by "administratively directing" that the words "good cause" be supplanted with "probable cause" in *N.J.S.A.* 2C:58-23(e) is a violation of the Separation of Powers Doctrine and is simply beyond the limited procedural law making authority permitted by ARTICLE VI, Section II, paragraph 3 of the *New Jersey State Constitution* (1947) and the "*Winberry* Doctrine". Simply stated, there is literally no constitutional authority whatsoever for the Article VI Judicial Branch of New Jersey State government, while exercising the limited power of law making authority under the "*Winberry* Doctrine", to re-write and correct - and in so doing thereby literally create new substantive law. This clear principle of law, though seldom needed to be invoked, is not complicated or ambiguous. Or, yet again to quote former Chief Justice Arthur Vanderbilt in *Winberry*, **the Article VI Judicial Branch of New Jersey State government has no constitutional authority "*... to make substantive law wholesale through the rule making process*."** (Emphasis added). *Winberry v. Salsbury, supra* at 248. That is exactly what occurred here. The Article VI Judicial Branch of New Jersey State Government may not, through exercise of the very limited ARTICLE VI, Section II, paragraph 3 procedural law making power. Or in layman's terms, the AOC has no authority

16

whatsoever to administratively and unilaterally remedy an unconstitutional statute duly enacted by the Legislature and Governor with an unconstitutional judicial administrative act.

**B.)**   **Cumulatively, the TRPO was issued by the State Court Disregarding or Misinterpreting the Attempted Prophylactic Measures of AOC Directive #19-19 Anyway:**

The Court's comments on the record at the conclusion of the September 6, 2019 *ex parte* TERPO hearing makes it absolutely clear that the Court did not supplant and apply the constitutional legal standard of "probable cause" in place of the unconstitutional legal standard of "good cause" in the text of *N.J.S.A.* 2C:58-23(e) when making the threshold determination of whether there was legal basis "… *to believe that the respondent poses an immediate and present danger of causing bodily injury to others by having custody or control of, owning, possessing, purchasing, or receiving a firearm.*" *Id.*   Otherwise stated, cumulative to the fact that the attempted "remedy" portions of AOC Directive #19-19 were unconstitutional and invalid themselves, that issue is merely cumulatively and of no moment as the existing record is clear that the State Court disregarded and / or misapplied the attempted "fix" of AOC Directive #19-19 anyway!  The actual record is clear that ***the only time that the Court ever discussed*** the need to use "probable cause" - a legal standard not contained anywhere in the statute itself - was when deciding the second issue, that being the specific issuance of a search warrant.  The actual record of what the Court decided and ruled on (what little there is to review) shows the Court's misunderstanding of the "probable cause" issue and confirms that literally the only time the phrase and standard of "probable cause" was stated and discussed by the Court on the record is in the context of the secondary inquiry only of, if having decided to issue a TERPO, whether there was "probable cause" to issue a warrant under *N.J.S.A.* 2C:58-26(b).  However, the Court mistakenly stated that the "probable cause" determination required to be made by the AOC Directive was when the Court was determining

whether to issue the search warrant (under *N.J.S.A.* 2C:58-23(g)) ***which merely required a finding that there was "probable cause" to believe that there were firearms located at Plaintiff's house!***[2] (Emphasis added).   That is not where the constitutional deficiency lies!   The question was not whether there was "probable cause" to believe that "… there are firearms located at …" Plaintiff's house as that was always undisputed as the firearms were listed in the Petition!   The question was whether there was "… [*"probable cause"*] to believe that the respondent poses an immediate and present danger of causing bodily injury to the respondent or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm." *N.J.S.A.* 2C:58-23(e) (supplanting "probable cause" in place of "good cause").   That explicit and specific legal finding, and that

---

[2]       Plaintiff hereby submits at "Exhibit A" the portion of the certified Transcript of the September 6, 2019 *ex parte* TERPO Proceedings in New Jersey State Court, all portions redacted except for the Court's findings on the record at the end of the TERPO hearing, which were in full as follows:

***

THE COURT:  Okay.  All right.  The Court's ruling on this application and the reasons for its ruling one way or the other, either granting it or denying it, will be reflected in the order itself, because the form of order accounts for a denial.  It also accounts for a granting.   ***If the Court decided to grant the application, the form of order will also reflect the Court's decision as to whether grant or not the application for a search warrant.***

If it is granted, and if the order - - if the order is granted, the order, by statute, covers both firearms and ammunition.  ***The search warrant also authorizes a search and seizure of both firearms and ammunition and related - - firearms - related items.***  If - -

MS. SOUMILAS:  I'm sorry to interrupt, judge.  We are requesting anything else that they might find.  So perhaps he has weapons that are not required to be registered to him, but are, in fact, located in the home.  Under the statute, I think it permits the seizue of all weapons in the home.

THE COURT:  The statute permits the seizure of firearms.

MS. SOUMILAS:  I'm sorry.  All firearms.

THE COURT: Correct.

MS. SOUMILAS:  Not just the ones we are listering to him.

THE COURT:  Correct.  ***There has to be a finding of probable cause that there are firearms located at the specified location***.  The authorization to search for firearms is not limited to the search and seizure of only the specified firearms.

And finally, if the Court grants the request for the issuance of a search warrant, the order will include the Court's decision as to whether or not to grant the request that that - - officers be authorized to execute that warrant without knocking and announcing beforehand.  So that will all be reflected about - - everything should be available and notified about an hour and a half from now. *** (Emphasis added).

[*See* "Exhibit A"]

18

explicit and specific legal finding only, in the only way that the State constitutionally gains warranted permission for entry into Plaintiff's residence.  And clearly the Court never made any such finding in the transcript, indicating the only "probable cause" finding required to be make was "… *__a finding of probable cause that there are firearms located at the specified location__*." (Emphasis added).  **(See 'Exhibit A" attached hereto or footnote 2, *supra*).**  Contrary to the arguments of the Defendants, to be clear, the warrant that gave the State permission to enter Plaintiff's residence - *with outrageously included a "no knock provision"* - was issued by the State Court on a mere "*good cause*" standard.  And that is clearly a violation of Plaintiff's clearly established constitutional rights.

C.     **The "Peculiar Position" of the Defendant Attorney General[3]  and Plaintiff's Reply to the Defendants' Arguments in their POINT II:**

At the onset, it is noted that the Fourth Amendment principles held by the Plaintiff that he fights to vindicate and have honored in this case now and today are *almost* as old as the *United States Constitution* itself.  The *United States Constitution* became positive law on June 21, 1788 when the State Convention of New Hampshire became the ninth state to ratify, satisfying the *Constitution's* Article VII threshold and automatically consummating the *United States Constitution* as the organic law of the land.  What today is called the "Fourth Amendment" was in actuality originally proposed as "*Article the Sixth*", part of a package of twelve (not ten) amendments proposed by Congress to the (then only eleven) State Legislatures in the Union on September 24, 1789 in the waning days of the First Session of the First Congress, then meeting in New York City.  A bit younger than the *United States Constitution* itself, but still older than the

---

[3]     Plaintiff will not address the Defendants 9 pages of "policy arguments" which are completely irrelevant to this case.  As a matter of law these subjective policy arguments may not override the objective fact that the ERPO Act, in its present form, is facially *per se* unconstitutional.  It is noted, however, that of the "Red Flag Laws" from other States referenced by Defendants, none have the same or even similar "good cause" mandatory search and confiscatory requirements like the New Jersey ERPO Act.

"Fourth Amendment", is the first ever Federal Statutory Law passed by Congress under the "new" Federal Constitution.  Specifically, on June 1, 1789, President Washington signed into law the first ever Federal Statutory Law, which established the oath of allegiance required to be taken by all Federal and State Officials:  "… *"I, A.B. do solemnly swear or affirm (as the case may be) that I will support the Constitution of the United States".  See* 1 *Stat.* Ch. 1 (June 1, 1789) in *The Public Statutes at Large of the United States of America,* BOSTON:  Charles C. Little and James Brown (1845) at page 23.  Plaintiff politely brings this up in the context of the peculiar position that the Defendant Attorney General has and is taking in this case here and now.  The Defendant Attorney General, as a State Official, and as a condition of taking office, has certainly taken this very same 230 year old oath.  The oath is to the Constitution, not to momentary political considerations.

That being said, the Defendant Attorney General openly admits, and does not dispute, that the portions of the ERPO Act challenged in this Order to Show Cause, are facially and *per se* unconstitutional for the very reasons that Plaintiff says they are unconstitutional.  The AOC agrees in writing, and the Defendant Attorney General also agrees in writing.  So as a threshold matter Defendant Attorney General knows that the ERPO Act is facially *per se* unconstitutional.  They admit as much.  In defense, Defendant Attorney General relies on the unconstitutional AOC Directive #19-19 as his only substantive "defense", which frankly is no substantive defense at all as the Article VI Judicial Branch AOC merely proposes an unconstitutional "fix" to an admittedly unconstitutional statute.  The Article V Executive Branch, in writing, oddly endorses such action, and opposed Plaintiff's application.  Which in totality of context of the oath noted Plaintiff submits is an odd reaction and response to an admittedly facially *per se* unconstitutional statute.

The ERPO Act is hardly the first New Jersey state legislation that was passed into law during a moment of emotion that sought to legislatively address a perceived problem, but did so

in a way that was unconstitutional and simply not permissible.  Indeed, there is historical precedent

for the Attorney General to refuse and decline to "defend" a *per se* facially unconstitutional statute.

*See Planned Parenthood of Central New Jersey v. Verniero,* 41 *F.Supp.2d* 478 (D.N.J. 1998)

(Thompson), *aff'd sub nom Planned Parenthood of Central New Jersey v. Farmer,* 220 *F.3d* 127

(2000) (Alito, Barry & Garth) (where the Attorney General declined to defend a Federal Court

challenge to the constitutionality of the "New Jersey Partial-Birth Abortion Ban Act of 1997",

*N.J.S.A.* 2A:65A-6(e)) because it was clearly unconstitutional.).[4]   That path was not chosen here.

There is also historical and legal precedent in New Jersey jurisprudence on how to *properly*

*"fix"* an unconstitutional statute or a questionably constitutional statute, which simply requires

either 1) the State Legislature and Governor to enact completely new amending and revising or

repealing statutory law, *see* and compare *State v. Breakiron,* 108 *N.J.* 591 (1987) with *Humanik v.*

*Beyer,* 871 *F.2d* 432 (3d. Cir.), cert denied 493 *U.S.* 812 (1989) (resulting in the curative enactment

of Law 1990, Chapter 63, sec. 1)[5] or 2) requires the State Legislature to propose a State

Constitutional Amendment to the People.  *See* Emergent Orders in *Save Our Shore District v. New*

*Jersey Redistricting Commission,* 131 *N.J.* 159 (1992) and *Brady v. New Jersey Redistricting*

*Commission* 131 *N.J.* 160 (1992) (Supreme Court agreeing with *Save our Shore District* and

---

[4]      The *1997 Act* had been vetoed by then New Jersey Governor Whitman because it was clearly unconstitutional but her veto was thereafter overridden and the proposed 1997 Act became law by virtue of a 2/3 vote in each house of the State Legislature.  A Federal Court challenge was immediately brought.  The Attorney General, a named defendant, declined to defend the unconstitutional law.  The State Legislature was permitted to intervene, hired private counsel to defend the law, which was declared unconstitutional by the Federal District Court and which ruling was later unanimously affirmed by the Third Circuit.  This was after the Legislature spent almost $500,000.00 in taxpayer money on their private counsel.

[5]      Indeed, after the Third Circuit declared *N.J.S.A.* 2C:4-2 (the "Diminished Capacity Defense Statute") unconstitutional in *Humanik v. Beyer,* then Chief Justice Wilentz immediately took prophylactic measures by issuing a *temporary* directive instructing trial courts that, going forward, they were no longer to follow the literal wording of the statute and require a defendant raising the diminished capacity defense to prove the asserted disease or defect by a preponderance of the evidence.  Chief Justice Wilentz simultaneously officially requested that the Governor and State Legislature take action to repeal the unconstitutional portion of that statute.  *See* "Court Asks Legislature to Review Refuted Law," 124 *N.J.L.J.* 1133 (November 2, 1989), which was promptly done in Law 1990, Chapter 63, sec. 1, bringing *N.J.S.A.* 2C:4-2 into compliance with the Federal Constitution.

declaring portion of Law 1991, Chapter 510, *N.J.S.A.* 19:46-6 to -14 unconstitutional, but then severing the unconstitutional portion), later full Court Opinion at 131 *N.J.* 594 (1992)) (resulting in State Constitutional Amendment now found at Article II, Section II (Added effective December 7, 1995)).

Research reveals no time before in history where the New Jersey Attorney General, aware that a New Jersey State Statute enacted by the Governor and State Legislature that was obviously facially *per se* unconstitutional, actually took affirmative action to prevent the law from being corrected, which is of course directly counter to the 230 year old oath noted above. *See also F.R.Civ.P.* 11. But sadly that quite clearly appears to be the situation here and now in this case.

To be blunt, the ERPO Act was signed into law in June 2018, and did not go into effect until 15 months later on September 1, 2019. Certainly the Attorney General *should have* easily seen that the ERPO Act was facially *per se* unconstitutional during this 15 month period of time. Certainly during that time, or at the very least at the time or immediately after the New Jersey Supreme Court issued its decision in *State v. Hemenway* ___ *N.J.* ___, (No. A-19-18, July 24, 2019) the Attorney General knew there was a problem. Because of Article III Standing issues no challenge could be brought in Federal Court until after September 1, 2019 and only by someone such as Plaintiff who has had an *ex parte* TERPO already entered against them. As the ERPO Act had been enacted as law, but had not gone into effect, the Attorney General certainly could have brought an action in New Jersey State Court under the New Jersey Declaratory Judgments Act, *N.J.S.A.* 2A:16-50 to -63 (specifically *N.J.S.A.* 2A:16-53) to have a New Jersey Superior Court Judge try to do legally and Judicially what the AOC Directive has sought to do administratively and unconstitutionally. In the alternative Article V Attorney General or the Article VI Chief

Justice could have formally brought the issue to the attention of the State Legislature requesting

that they take action.  But nothing was done.  By anyone.  Except by Plaintiff and his lawyer.

The Defendants in their POINT II make a silly and well overstated dramatic and false plea,

argue as follows:

> *Granting Plaintiff's motion at the most preliminary state of this case*
> *would bar courts and law enforcement officers from relying upon*
> *this important law to disarm dangerous individuals, and would call*
> *into question the TERPOs and FERPOs issued in New Jersey to date*
> *that are, right now, protecting individuals from harm.  This Court*
> *should not do so.*

**[*See* ECF Document 32, Brief at page 41].**

Nothing could be further from the truth. First, plaintiff is not asking this Court at this

juncture to undo or set aside any action of any law enforcement agency at this juncture. All the

Plaintiff is asking the Court to do is stay all the current actions and prevent any further harm by

use of this unconstitutional statute pending a full and final decision. All those TERPOs and any

FERPOs already entered and currently in effect will remain in effect, including the Plaintiff's,

pending the Court's ultimate resolution of the matter. Further, the State's position that the State

would not be able to "disarm dangerous individuals" is illogical, inexplicable, false and is

contrary to the reality of both fact and law. The truth is, that irrespective of the ERPO act the

State has both criminal and civil avenues with which they can pursue any individuals who they

believe are a danger to themselves or others with firearms. See argument, *Infra*.

Contrary to this argument, the fact remains that the "Civil" "*New Jersey Domestic Violence*

*Act"* only results in a TRO after a finding is made by a Court that there is "probable cause" to

believe that one of the enumerated predicate criminal offenses has occurred.  That same "probable

cause" finding of wrongdoing is required here as a threshold matter before a search warrant may

23

be issued to kick in a citizen's front door, search their house, and confiscate their otherwise lawfully owned and possessed guns.

Moreover, Plaintiff notes that *N.J.S.A.* 2C:39-4(a)(1) ("Possession of a Gun for an Unlawful Purpose") provides that "(1) Any person who has in his possession any firearm ***with a purpose to use it unlawfully*** against the person or property of another is guilty of a crime of the second degree." (Emphasis added)  One may lawfully own a gun, but if a lawfully owned gun is possessed "with a purpose to use it unlawfully", this long existing criminal statute ***already permits*** the State to achieve the exact same result as the ERPO Act "construed" constitutionally by supplanting the legal standard of "good cause" with the required and necessary constitutional standard of "probable cause" in *N.J.S.A.* 2C:58-23(e) seeks to achieve.   One may lawfully own a gun, but if that lawfully owned and obtained gun is taken into a bank to commit a robbery, then that gun if possessed for an ***unlawful purpose*** is already a crime.  If there is indeed at any time legitimate "probable cause" "… to believe that the respondent possesses an immediate and present danger of causing bodily injury to the respondent or others by having custody or control of, owning, possessing, purchasing or receiving a firearm…" within the meaning of the *civil* ERPO Act's *N.J.S.A.* 2C:58-23(e), then there is equally "probable cause" to charge that same person with a *criminal* violation of *N.J.S.A.* 2C:39-4(a)(1) as they are in possession of a firearm "… *with a purpose to use it unlawfully against the person or property of another* …" .[6]  *See R.* 3:5-1 *et seq.* (Search Warrants).  So to bring the unconstitutional portions of the ERPO Act into compliance with the Federal and State Constitution would require a new "civil statute" that essentially satisfies

---

[6]      It is acknowledged that "suicide" is not at present an independent criminal act in New Jersey.  However, there is already a level of legal assistance and protection because when there is "probable cause" to believe someone may commit suicide the law under such circumstances expressly grants permission to use "… *force to prevent suicide* …".  *See N.J.S.A.* 2C:3-7(e).

the same exact "probable cause" standard of an already long existing second degree "Possession
of a Gun for an Unlawful Purpose" criminal charge!  Perhaps to be constitutional the *civil* ERPO
Act could be amended to simply read that a "civil" TERPO and accompanying search warrant
"shall" be issued when there is "probable cause" to believe that a person is in possession of a
firearm "… *with a purpose to use it unlawfully against the person or property of another …*" ,
which is already an existing  "criminal"  offense (*N.J.S.A.* 2C:39-4(a)(1)) which would allow arrest
and issuance of a search warrant to seize weapons in the criminal system.  As the Attorney General
already has the existing law in *N.J.S.A.* 2C:39-4(a)(1) and the accompanying criminal process to
use, the "civil" TERPO would be at best cumulative and useless.  Or irrespective of the ERPO Act
the Attorney General, with "probable cause" to believe that a person is in possession of a firearm
"… *with a purpose to use it unlawfully against the person or property of another …*" could also
go to New Jersey Civil Court State Court seeking a Civil Order granting Civil Injunctive Relief
under existing law also.  *See Crowe v. DeGioia,* 90 *N.J.* 126 (1982).  This procedure would be also
be available in cases of suspected planning of a suicide.  But similarly, in most cases (which do
not involve suicide) why would the Attorney General do so when they can use the long existing
"criminal" offense (*N.J.S.A.* 2C:39-4(a)(1)) which would allow arrest and issuance of a search
warrant to seize weapons under existing clearly established procedures in accordance with long
existing criminal laws in the criminal system.  So the true fact is that entering the Preliminary
Injunctive relief as requested does no violence and in no way interferes with the ***lawful ability*** of
the State to protect people within the confines of what government action the Constitution permits.
There are already several systems in the existing civil and criminal legal structure that have long

permitted the exact same remedies the ERPO Act seeks to address, just doing so in compliance with Constitutional limitations in the existing structure of the existing criminal system.[7]

That all being said, it is not Plaintiff's burden or obligation to tell or recommend to the State how and under what factual circumstances they can perhaps properly and constitutionally obtain some seizure order to take away and confiscate a citizen's lawfully held and owned guns, with an accompanying search warrant permitting the State to kick in the front door and search the house to seize and confiscate a person's lawfully owned guns. Plaintiffs only burden in this application is to show that the challenged portions of the ERPO Act are not constitutional and may not be relied upon by the State as a basis for such highly invasive and offensive action. While the State may pass stupid and illogical laws - and often does - the Constitution only prohibits enactment and enforcement of unconstitutional laws. It is submitted that this is exactly what is occurring here.

## CONCLUSION:

For the reasons previously stated and for the foregoing reasons, it is requested that this Federal Court enter the Preliminary Restraints as requested.

Respectfully submitted,

ALBERT J. RESCINIO, ESQ.

---

[7] This would resolve the reality that any time a "civil" *ex parte* TERPO is entered using the constitutionally required "probable cause" standard the Court will have made a simultaneous - though not necessarily intended - *de facto* equal "criminal" finding that there is also probable cause to charge the subject of the "civil" TERPO with second degree "criminal" "Possession of a Weapon for an Unlawful Purpose" in violation of *N.J.S.A.* 2C:39-4(a)(1).

# "Exhibit A"

```
                              SUPERIOR COURT OF NEW JERSEY
                              LAW DIVISION, CRIMINAL PART
                              CAMDEN COUNTY, NEW JERSEY
                              PETITION NO. 0415XTR2019000001
                              APP. DIV. NO. _____
```

| | | |
|---|---|---|
| **STATE OF NEW JERSEY,** | : | |
| | : | |
| Plaintiff, | : | TRANSCRIPT |
| | : | |
| v. | : | OF |
| | : | |
| **DAVID GRECO,** | : | CIVIL HEARING |
| | : | |
| Defendant. | : | |
| | : | |

```
                   PLACE:  Camden County Hall
                           of Justice
                           101 S. 5th Street
                           Camden, New Jersey  08103

                   DATE:   September 6, 2019
```

**BEFORE:**

    THE HONORABLE EDWARD McBRIDE, J.S.C.

**TRANSCRIPT ORDERED BY:**

    DAVID GRECO (246 Orchard Ave., Somerdale, NJ
08083)

**APPEARANCES:**

    NEVAN SOUMILAS, ESQUIRE (Assistant Prosecutor)
Attorney for the State of New Jersey

*KAREN D. KEEBLER*
*AUTOMATED TRANSCRIPTION SERVICES*
*P.O. Box 1582*
*Laurel Springs, New Jersey*
*(856) 784-4276*
*autotranscripts@comcast.net*

58



```
23                    (Witness excused)
24          MS. SOUMILAS:  Thank you, Your Honor.  The
25  State would rest.
```

59

```
1               THE COURT:  All right.
2          MS. SOUMILAS:  And we are asking for -- in
3   addition to the search warrant for weapons, we're
4   asking that the -- he be required to turn over his
5   firearms identification card and his permit to
6   purchase.
7          THE COURT:  Uh-huh.
8          MS. SOUMILAS:  As Your Honor could see on
9   page 2 of S-16, he does have a firearms identification
10  card.  I do believe he does have a permit to purchase.
11  If he has one, if he -- and I would indicate that if he
12  has one, we would be requesting that he be required to
13  turn it over.  And it's my understanding he does not
14  have a permit to carry.
15         THE COURT:  All right.  The standard for the
16  issuance of an order under this statute --
17         MS. SOUMILAS:  Your Honor, may I just
18  approach briefly?
19         THE COURT:  Sure.  Off record.
20             (Off the record - on the record)
21         THE COURT:  All right.  We are back on the
22  record momentarily in connection with the civil matter
23  involving the application by Detective Laielli of New
24  Jersey Office of Homeland Security, supported by the
25  Prosecutor's Office for a temporary extreme risk
```

60

```
1    protective order petition -- or order.
2              Ms. Soumilas, you said you needed to -- you
3    wanted to add to the record.
4              MS. SOUMILAS:  Yes, Your Honor.  In addition
5    to all weapons, we would ask for all ammunition, all
6    weapon-related items, and identification -- purchasers
7    identification card and firearms ID card as well.  I
8    neglected to mention all ammunition as well.
9              THE COURT:  Okay.  All right.  The Court's
10   ruling on this application and the reasons for its
11   ruling one way or the other, either granting it or
12   denying it, will be reflected in the order itself,
13   because the form of order accounts for a denial.  It
14   also accounts for a granting.
15             If the Court decides to grant the
16   application, the form of order will also reflect the
17   Court's decision as to whether grant or not the
18   application for a search warrant.
19             If it is granted, and if the order -- if the
20   order is granted, the order, by statute, covers both
21   firearms and ammunition.  The search warrant also
22   authorizes a search and seizure of both firearms and
23   ammunition and related -- firearms-related items.
24   If --
25             MS. SOUMILAS:  I'm sorry to interrupt, Judge.
```

61

```
1    We are requesting anything else that they might find.
2    So perhaps he has weapons that are not required to be
3    registered to him, but are, in fact, located in the
4    home.  Under the statute, I think it permits the
5    seizure of all weapons in the home.
6              THE COURT:  The statute permits the seizure
7    of firearms.
8              MS. SOUMILAS:  I'm sorry.  All firearms.
9              THE COURT:  Correct.
10             MS. SOUMILAS:  Not just ones that we know are
11   registered to him.
12             THE COURT:  Correct.  There has to be a
13   finding of probable cause that there are firearms
14   located at the specified location.  The authorization
15   to search for firearms is not limited to the search and
16   seizure of only the specified firearms.
17             And then finally, if the Court grants the
18   request for the issuance of a search warrant, the order
19   will include the Court's decision as to whether or not
20   to grant the request that that -- officers be
21   authorized to execute that warrant without knocking and
22   announcing beforehand.  So that will all be reflected
23   about -- everything should be available and notified
24   about an hour and a half from now.
25             MS. SOUMILAS:  Thank you, Your Honor.  With
```

64

```
1                    C E R T I F I C A T I O N
2
3
4           I, Karen D. Keebler, the assigned
5    transcriber, do hereby certify that the foregoing
6    transcript of proceedings in the matter of State of New
7    Jersey vs. David Greco, heard in the Camden County
8    Superior Court, Law Division, Criminal Part, 9/6/19,
9    Court Smart, Index No. 10:07:28 to 11:00:02, 11:33:39
10   to 11:38:37, is prepared in full compliance with the
11   current Transcript Format for Judicial Proceedings and
12   is a true and accurate compressed transcript of the
13   proceedings as recorded.
14
15   **Karen D. Keebler**                      AD/T
16   Karen D. Keebler                       AOC No. 384
17
18   AUTOMATED TRANSCRIPTION SERVICES         10/18/19
19   Agency                                 Date
20
21
22
23
24
```