**Law Offices of Albert J. Rescinio, L.L.C.**
**1500 Allaire Avenue - Unit #101**
**Ocean Township, New Jersey  07712**
**Telephone:     (732) 531-2005**
**Telefax:          (732) 531-8009**
**By:     Albert J. Rescinio, Esq. (ID#034331989)**
**Attorneys for Plaintiff David M. Greco,** *individually and on behalf of others similarly situated*

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| **David M. Greco,**<br>*individually and on behalf of others similarly situated,*<br><br>*Plaintiff,*<br><br>vs.<br><br>**Gurbir S. Grewal,**<br>*New Jersey Attorney General, et al.,*<br><br>*Defendants.* | **Civil Action No. 3:19-cv-19145-BRM-TJB**<br>**Honorable Brian R. Martinotti, U.S.D.J.**<br>**Honorable Tonianne J. Bongiovanni, U.S.M.J.** |

**SUPPLEMENTAL MEMORANDUM OF LAW**

**INTRODUCTION:**

On January 17, 2020 the Court Ordered the parties "… *to submit additional briefing, limited to 8 pages, on Plaintiff's standing to bring a facial challenge to the ERPO Act* …" and granted Plaintiff an additional 8 pages if he wanted (a total 16 pages) to address Plaintiff's Article III Standing to bring an "as applied challenge" to the EROP Act. (*See* ECF No. 51, Order at page 2).   This is a straightforward case in which Plaintiff Greco suffered a clearly definable

and redressable injury at the hands of the named Defendants. From September 1, 2019 to November 22, 2019 this substantially same injury has been unconstitutionally inflicted upon and sustained by well more than 108+ other similarly situated New Jersey citizens. Quite simply the specific and plainly and clearly articulated claims of Plaintiff Greco in this matter satisfy even the most strict interpretation of the Constitution's Article III standing criteria and requirements as articulated by the Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) such that in point of truth Article III standing is a non-issue here in this case.[1] Nevertheless, it is at all

---

[1] Defendants' articulated argument on the "standing issue" to date, when fairly and objectively evaluated, is not even an actual Article III standing argument. Instead, Defendants simply bring forward vague generalities and non-applicable stock phrases not even proffered in the context of what is factually and legally alleged in this case. Either the State does not understand the elementary principles of standing doctrine, or they do and this as a clear attempt to created a sideshow of sorts to try to divert the Court's attention from the simple reality of the situation. For example, in the State's Brief opposing the Preliminary Injunction filed November 8, 2019 (ECF No. 32) the "standing" argument is found at pages 24 through 30. The State argues that "… *the Fourth Amendment harm [plaintiff] alleges is neither actual nor imminent, and thus he has no standing to pursue it. …*", then the State in the same breath admits in the literal next line of text that "… *[t]o be sure, a search warrant was issued under the ERPO Act against the Plaintiff, and the warrant was executed by New Jersey law enforcement officers ...*" (*See* ECF No. 32, page 25). Further, the State concedes as they must that "… *it is true that the ERPO Act's text allows for issuance of search warrants on good cause …*[.]" (*See* ECF No. 32, page 27). It is indisputable that the Fourth Amendment and Article I, paragraph 7 of the *New Jersey Constitution* 91947) mandate "… *probable cause …*".  What the State really is arguing is that they have solved the entire problem of an admittedly facially unconstitutional statute with a MEMO telling State officials to disregard the actual unconstitutional text of the ERPO Act. Of course this is no defense whatsoever to a legal challenge to an otherwise facially unconstitutional State statute. *See* argument *infra*. Later at oral argument the State advanced no real understandable standing arguments other than suggesting their odd argument that the entire problem **was somehow Plaintiff's fault** because he did not sue before September 1, 2019 - at a time before the ERPO Act went into effect, at a time before the TERPO was issued against him, and at a time when Plaintiff would not have had standing to pursue any claims (prior to September 1, 2019 only the Attorney General had standing to challenge the law in State Court). And now most recently in their two page January 15, 2020 letter (ECF No. 49) the State wants to delay consideration of Class Certification arguing in part regarding standing that:

> "…[t]his Court has not yet resolved the threshold question of whether Plaintiff has standing to assert his claims. Before a class action can be certified, the potential class representative must

times the affirmative burden of Plaintiff to demonstrate jurisdiction to proceed in an Article III Court (including demonstrating Article III Standing) and as such, to specifically demonstrate beyond any reasonable question that in point of truth Article III standing is a non-issue here in this case, and to comply with the Court's January 17, 2020 Order, Plaintiff Greco hereby submits the following Supplemental Memorandum of Law.

---

demonstrate standing to pursue the representative's own claims. (citations omitted) … Here, if this Court determines that Plaintiff lacks standing to assert the claims contained in his Complaint … the absence of a live case or controversy will require not only dismissal of Plaintiff's claim, but dismissal of the putative class claims as well.

[*See* ECF No. 49 at page 1 - 2].

Again, nothing whatsoever specific is argued as to how Plaintiff does not have standing. While the State's so called Article III standing arguments - or rather what actual cogent argument(s) that can be reasonably gleaned from what little they present - are not clear and indeed boarder on a *Rule* 11 violation, the fact remains that Plaintiff nevertheless has the affirmative burden of demonstrating jurisdiction at all times. So the State's deficiencies, while annoying, are of no moment. Plaintiff will therefore demonstrate his standing to proceed.

## PLAITNIFF'S CLAIMS:

- The Second Amendment to the United States Constitution provides as follows:

  > A well regulated Militia, being necessary to the security of a free state, ***the right of the people to keep and bear Arms, shall not be infringed.*** (Emphasis added).

  [United States Constitution, Second Amendment].

- In *District of Columbia v. Heller,* 554 *U.S.* 570 (2008) the United States Supreme Court held that the Second Amendment protects an individual's fundamental right to keep and bear arms for the purposes of self defense. Two years later, in *McDonald v. City of Chicago, Illinois,* 561 *U.S.* 742 (2010), a plurality of the Supreme Court ruled that the Fourteenth Amendment[2] applies to make the right to keep and bear arms as set forth in the Second Amendment fully applicable to the States.

- In accordance with his fundamental Federal Constitutional Right guaranteed by the Second Amendment as interpreted by the United States Supreme Court in *District of Columbia v. Heller* and *McDonald v. City of Chicago, Illinois*, Plaintiff Greco lawfully owned and lawfully possessed a rifle and a valid New Jersey "Firearms Purchaser Identification Card" issued in accordance with New Jersey State Law.[3]

---

[2]   Four Justices (Roberts, C.J. and Alito, J, Scalia, J. and Kennedy, J.) agreed that the Fourteenth Amendment's "Due Process Clause" incorporates the fundamental Second Amendment rights recognized in *Heller* to the States, whereas a fifth Justice (Thomas, J.) held that it was the Fourteenth Amendment's "Privileges and Immunities Clause" that was the vehicle that operated to incorporate the fundamental Second Amendment rights recognized in *Heller* to the States. This 5 Justice Plurality agreed that the fundamental Second Amendment rights recognized in *Heller* apply fully to the States.

[3]   *New Jersey Administrative Code* Chapter 54 (Firearms and Weapons) contains the New Jersey State administrative regulations pertaining to the initial issuance, maintenance, and revocation of a "Firearms Purchaser Identification Card". Contained therein is *N.J.A.C.* 13:54-1.5(b) which lists and enumerates eight (8) specific circumstances, any one of which if present, immediately and automatically disqualifies a person from obtaining a "Firearms Purchaser Identification Card" issued to them. Disqualifying factor #8 reads as follows: "*8. Where the issuance would otherwise not be in the interest of the public health, safety and welfare*." *N.J.A.C.* 13:54-1.5(b) (8). And once a person is issued a "Firearms Purchaser Identification Card", that card is still regulated and subject to revocation at any time if the person's status changes and one of the 8 disqualifying factors is applicable by some change in circumstances. If there are changed circumstances rendering one of the 8 disqualifying criteria applicable, "… *[a] firearms purchaser identification card may be revoked by a judge of the Superior Court of the county wherein the card was issued, **after a hearing**, and upon a finding that the holder no longer qualifies for the issuance of such a card*." (Emphasis added). *N.J.A.C.* 13:54-1.10(a). Moreover, an application for a hearing to revoke a person's "Firearms Purchaser Identification

- The Fourth Amendment to the United States Constitution provides as follows:

  > The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and **_no Warrants shall issue, but upon probable cause_**, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. (Emphasis added)

  [United States Constitution, Second Amendment].

- Article I, paragraph 7 of the New Jersey State Constitution (1947) also specifically provides that no warrants shall issue except upon a finding of "probable cause".

- Plaintiff Greco had and has an absolute fundamental constitutional right guaranteed by the Second Amendment to the Constitution to own a gun. At all times relevant Plaintiff Greco complied with all relevant New Jersey state statutes and administrative regulations and lawfully owned and possessed his gun in full compliance with New Jersey State law.

- Moreover, plaintiff Greco had and has an absolute fundamental constitutional right guaranteed by the Fourth Amendment to the United States Constitution to be free from unreasonable searches by the government of his home to be free from unreasonable seizures by the government of his property and a specific guarantee that any warrant issued to the government to conduct a search of his home and he seizure of his property could only be issued if based upon a heightened "probable cause" legal standard.

- In *Camera v. Municipal Court,* 387 *U.S.* 523, 538-539 (1967) the United States Supreme Court made it clear that the "probable cause" legal standard and requirement of the *United States Constitution's* Fourth Amendment applies not only to criminal searches but equally applies to civil and administrative searches conducted under the authority of a State.

- On June 13, 2018 the "*New Jersey Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, was passed into law by the New Jersey State Legislature, and signed into law by the New Jersey Governor.

- By literal terms, the EPRO Act was to go (and did go) into lawful effect fifteen months later on September 1, 2019.

---

Card" for such reason may be brought by "… *[t]he county prosecutor, any law enforcement officer or any citizen…[.]*" *N.J.A.C.* 13:54-1.10(b).

- Under the ERPO Act, once a "Petitioner" signs a "Petition" and submits an accompanying Affidavit or Certification, the Court must then consider the application without giving any advanced notice to the Respondent and without affording the Respondent any opportunity to be heard or represented at the hearing where the court determines whether to issue a TERPO. At this point in the process, the court is by statute required to employ a "good cause" legal standard when determining whether to issue a TERPO as per *N.J.S.A.* 2C:58-23(e) which provides as follows:

  \*\*\*
  > **e.** A judge shall issue the order ***if the court finds good cause*** to believe that the respondent poses an immediate and present danger of causing bodily injury to the respondent or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm. (Emphasis added).

  [*N.J.S.A.* 2C:58-23(e)].

- In determining whether the Petitioner has met the legal "… ***good cause*** …" standard, the court considers the information provided by the Petitioner in the Petition by way of Affidavit or Certification and may consider additional sworn testimony, all in the context of the factors enumerated in *N.J.S.A.* 2C:58-23(f). If the court finds that there is legal "… ***good cause*** *to believe that the respondent poses an immediate and present danger of causing bodily injury to the respondent or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm* …" (emphasis added), the court "shall" issue a TERPO Order.

- Significantly, if the court finds "… ***good cause*** …" and issues the TERPO Order, and the Petition …
  > "… indicates that the respondent owns or possesses any firearms or ammunition, ***the court shall issue a search warrant*** with the temporary or final extreme risk protective order and the law enforcement officer who serves the order shall request that all firearms and ammunition immediately be surrendered. (Emphasis added).

  [*N.J.S.A.* 2C:58-26(b)].

- The ERPO Act, by its clear and unambiguous terms, mandates that a search warrant be issued on a "*good cause*" legal standard when both the Federal and New Jersey State Constitutions mandate, without exception, a heightened "*probable cause*" legal standard. As such, the ERPO Act is facially unconstitutional (As conceded by both the AOC Memo and the Attorney General Memo) as it not only permits but literally mandates the **AUTOMATIC** issuance of search warrant and commands seizure of property (guns, ammunition and "Firearms Purchaser Identification Card") which property a citizen has a separate fundamental constitutional right to own and possess without interference from the government, all on a "good cause" legal standard".

- On September 5, 2019, 5 days after the EPRO Act went into effect, an *ex parte* "Petition for Temporary Extreme Risk Protective Order" was secretly filed against Plaintiff Greco.

- On September 6, 2019 a State Court then issued an *ex parte* TERPO and the automatically issued the accompanying Search Warrant directing and permitting the State to search Plaintiff's home and directing and permitting the State to seize Plaintiff's gun, ammunition and "Firearms Purchaser Identification Card". The Search Warrant was issued on a "good cause" legal standard, and also had a "no nock" proviso.

- On September 6, 2019, the State of New Jersey executed the "no nock" Search Warrant, intruded into Plaintiff's Greco's home without Greco's permission, and the State in fact seized Greco's gun, ammunition and "Firearms Purchaser Identification Card".

- The **AUTOMATIC** Search Warrant was issued based upon the *"good cause"* standard in *N.J.S.A.* 2C:58-23(e) and *N.J.S.A.* 2C:58-26(b) which is a *per se* and facial violation of Plaintiff Greco's rights as guaranteed and secured by the Fourth Amendment and the accompanying "probable cause" standard.

## ARTICLE III STANDING:

Article III of the Constitution limits the authority of the Federal Courts to only decide "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). For a dispute to be within the power (the subject-matter jurisdiction) of a Federal Court, the Plaintiff must have "standing"—that is, the Plaintiff must have alleged a sufficient interest in the dispute. This "irreducible constitutional minimum" of standing has three elements: (1) that the plaintiff has suffered a concrete injury; (2) that injury is fairly traceable to actions of the defendant; and (3) it must be likely—not merely speculative—that the injury will be redressed by a favorable decision. *Id.* at 560–61. The Plaintiff bears the burden to establish standing with the appropriate degree of evidence at each successive stage of litigation. *Id.* at 561. At the pleading stage, general factual allegations of injury resulting from the Defendant's conduct may suffice. *Id.* If the matter reaches the summary-judgment stage, the Plaintiff cannot rest on mere allegations but must set forth specific facts (assumed to be true at that stage) establishing injury. *Id.* And,

finally, those facts of injury—if they are controverted—must be supported adequately by evidence adduced at trial. *Id.*

In the typical case (such as this one), where the Plaintiff was the specific object of the Defendant's alleged actionable conduct, standing is easy to establish—it is essentially a non-issue. In a federal-question case such as this, a Plaintiff might allege that a Defendant's action(s) directly harmed the Plaintiff in violation of a Federal Right. In these straightforward contexts, there is no question that the Plaintiff has alleged a concrete injury at the hands of the Defendants, so there is no question that the plaintiff has standing (and that this Federal Court has the power to hear the matter). *See Lujan*, 504 U.S. at 561–62 (noting that if the "*… plaintiff is himself an object of the action (or forgone action) at issue …*" then "*… there is ordinarily little question that the action or inaction has caused him injury . . . .*").

> 1. **PLAINTIFF GRECO HAS SUFFERED "INJURY" WITHIN THE MEANING OF THE CONSTITUTION'S ARTICLE III AND THE SUPREME COURT'S HOLDING IN** *Lujan v. Defenders of Wildlife***:**

In this case the State of New Jersey, acting under the authority of the ERPO Act and a Search Warrant that was issued automatically in accordance with that law based upon an unconstitutional "good cause" legal standard, came to Plaintiff's home, kicked in the front door, searched Plaintiff's home, and seized Plaintiff's gun, ammunition, and "Firearms Purchaser Identification Card". The foregoing was all done in clear and *per se* violation of Plaintiff's constitutional rights as guaranteed by the Fourth Amendment and the "probable cause" legal standard contained therein. Plaintiff submits that there can be no reasonable dispute that this constitutes concrete, substantial, and specific "injury" within the meaning of the Supreme Court's holding in *Lujan v. Defenders of Wildlife* and related cases.

### 2. THE INJURY SUFFERED BY PLAINTIFF GRECO IS "FAIRLY TRACEABLE" TO THE ACTIONS OF THE DEFENDANTS:

The claimant "injury" in this case as just described was specifically inflicted by the State Defendants and therefore the injury sustained is most certainly "fairly traceable" to the actions of the Defendants.

### 3. THE INJURY SUFFERED BY PLAINTIFF GRECO WILL BE REDRESSED BY A FAVORABLE DECISION FROM THIS ARTICLE III CRT:

The injury suffered by plaintiff Greco can and will be redressed by a favorable decision from this Article III Court which has authority to issue declaratory and injunctive relief, as well as nominal damages, compensatory damages, and punitive damages.

In sum, though in hind sight this all seems somewhat elementary and obvious, it is nevertheless clear, and this Court should expressly acknowledge, that Plaintiff Greco has Article 3 standing to pursue the claims at issue in this case.

### THE ERPO ACT IS UNCONSTITUTIONAL:

Plaintiff politely suggests that the Court not overly complicate what is at base a very simple case by getting caught up in trying to choose which classification - "facial" or "as applied" - that the legal challenge falls into. Plaintiff's Complaint and Jury Demand argues that the ERPO Act is unconstitutional as violating the Federal and State Constitution in many and various ways. However, in the pending preliminary injunction application Plaintiff claimed (and claims) that the ERPO Act so clearly violates the plain mandatory and literal text of the Fourth Amendment to the United States Constitution and equally violates the literal text of Article I, paragraph 7 of the New Jersey State Constitution (1947) that the Court need go no further as the ERPO Act is quite clearly facially unconstitutional and must be struck down. And if this happens and the ERPO Act is declared unconstitutional and an injunction is entered by this Court enjoining future enforcement, all of the other arguments Plaintiff brings forward are essentially

9

mooted and there is no need for the Court to further inquire or discuss the many and various other ways that the ERPO Act is or could be constitutionally deficient.  Here the literal text of the ERPO Act - which not only allows, but literally mandates issuance of an **<u>AUTOMATIC</u>** Search Warrant on a *"good cause"* legal standard - easily leads the informed mind to this inescapable conclusion, and the factual and analysis really is, or should be that simple.  Indeed, this is a rare case where the analysis *really is* that simple.  This is because here both the Federal and State Constitutions have specific and identical literal text that ***<u>requires in all circumstances without exception</u>*** that before any valid search warrant of a citizen's home may be issued by the government (in this case the State of New Jersey) that there must be a specific finding that the facts alleged satisfy a heightened legal standard of *"probable cause".*  The literal text of the Federal and State Constitutions mandates use of a "probable cause" legal standard, with the wording "probable cause" is specifically contained in both constitutions.  There is no ambiguity on this issue or constitutional requirement.

But while the argument itself is easy to articulate, and maybe even easier still to understand, there is apparently some confusion or question as to whether this clearly articulated argument is best or more properly viewed and pigeonholed by the Court as an argument that the challenged statute is generally "facially unconstitutional", or whether best viewed by the Court as an argument that the challenged statute is unconstitutional specifically in the manner that it is being "applied" to the Plaintiff Greco and to others similarly situated.  Both of the terms "facially unconstitutional" or "unconstitutional as applied" are themselves somewhat ambiguous and are often in context not easily distinguishable from one another.  Indeed, the United States Supreme Court recently acknowledged this reality in *Citizen's United v. Federal Election Commission,* 558 *U.S.* 310 (2010) where the Court stated that "… *the distinction between facial*

*and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge.*" *Id.* at 331. Generally speaking, a "facial challenge" to a statute seeks to invalidate the statute in its entirety because every possible application of the statute is unconstitutional, whereas an "as applied" challenge seeks to invalidate only a particular portion of a statute because under certain circumstances it is applied in an unconstitutional manner. Here Plaintiff Greco is indeed *technically* arguing both. However, Plaintiff Greco's argument is that the text of the ERPO Act, taken alone, is at all times and under all circumstances unconstitutional, which is a claim of "per se unconstitutionality", or otherwise stated, "facial unconstitutionality". The State does not (nor can they) really dispute this reality, and indeed the AOC Memo and Attorney General Memo literally acknowledge this fact.

So instead, the State responds by asserting a "defense" of sorts, that being that they claim that they have taken it upon themselves to impose "affirmative prophylactic measures" to cure the constitutional deficiency. More specifically, the State claims that - under the guise of "prosecutorial discretion" - they are ignoring and not following the literal unconstitutional text of the ERPO Act and instead follow guidance from a State *administrative* judicial memo and an Attorney General (executive branch) memo. It is only if this Court, as a threshold matter, somehow permits the State's unlawful "affirmative prophylactic measures" - ie. permits the executive branch State to ignore the text of a duly passed state law, with reliance on an *administratively issued* State judicial branch memo - that the Court then continues the analysis as to whether these further (Plaintiff maintains lawless) actions of the State, as applied to Plaintiff Greco and others similarly situated, still violate the Fourth Amendment to the United States Constitution and Article I, paragraph 7 of the *New Jersey State Constitution (1947)*.

Otherwise stated, Question 1: **Is the ERPO Act *per se* and facially unconstitutional as violating the mandatory *"probable cause"* standard of the Federal and New Jersey State Constitutions?** For the reasons argued, Plaintiff maintains "YES". And the New Jersey *Administrative* Office of the Courts (an "Administrative" memo from the State Judicial Branch) and the Defendant New Jersey Attorney General AOC (in an Executive Branch memo) agree in writing with this obvious proposition, despite the bizarre refusal of the Attorney General to admit same at oral argument on the preliminary injunction application. This ends the Court's inquiry, leaving only the issue of the ultimate permanent remedy to be afforded to Plaintiff and others similarly situated at the appropriate time.[4]

The State argues in response to this, quite literally: *"Not so fast, despite the reality that the literal text of the ERPO Act is indeed unconstitutional, we are not in practice actually violating the Federal and State Constitutional rights of Defendant Greco and others similarly situated because we are, on our own, IGNORING the unconstitutional portions of the literal text of the law, and instead we have taken it upon ourselves to implement the (admittedly unconstitutional) ERPO Act throughout the State of New Jersey by making efforts to ensure that*

---

[4] The question next to be addressed by the Court is the issue of "severance", *ie.* must the entire statute be struck down or may the offending unconstitutional portion be judicially "severed" with the remaining unoffending portions remaining in full force and effect? In this case, the ERPO Act itself ***does not*** contain a "severance clause" in the legislation itself. Generally speaking, under "severance doctrine", the standard for determining severability of an unconstitutional portion in a statute is that, unless it is evident that the legislature would not have enacted the provisions which are within its power independently of the provisions which are not, the invalid portion may be dropped off if what is left is fully operational as law. *See Alaska Airlines, Inc. v. Brock,* 480 *U.S.* 678 (1987). This question of remedy is viewed by Plaintiff as beyond the scope of the Court's January 17, 2020 Order and therefore will not be commented on more here, especially since the time for such considerations is well premature as what is pending is an application of a ***preliminary*** injunction. The time for the parties to discuss and for the Court to consider final severance is at the time of entering a final remedy and permanent injunction.

*where the unconstitutional **"good cause"** standard is to be used, that law enforcement, prosecutors and judges instead use the constitutional **"probable cause"** standard in its place."*

Plaintiff Greco responds in kind: *"While you may think that is a good idea, the reality is that you have no lawful power to do so, and what you - the Defendant State - is proposing as a "remedy" is not a "remedy" this Court may allow."*

To support this counter argument, Plaintiff Greco argues the following. **Firstly:** The United States Supreme Court, relying upon the clear separation and limitation of powers in a State *law making* and State *law enforcement* process, has **expressly rejected this identical argument**, that an unconstitutional law may somehow be "saved" if it is constitutionally implemented by the State executive branch simply unilaterally ignoring the actual literal text of a statute. In this regard, Plaintiff directs the Court to the following passage from the United States Supreme Court's decision in *United States v. Stevens*, 559 U.S. 460 (2010) which summarily rejected this literally identical argument in a similar set of circumstances, and which holding should be dispositive here causing this Court to reject the State's "peculiar" argument out of hand:

> Not to worry, the Government says: The Executive Branch construes § 48 to reach only "extreme" cruelty, Brief for United States 8, and it "neither has brought nor will bring a prosecution for anything less," Reply Brief 6–7. The Government hits this theme hard, invoking its prosecutorial discretion several times. See *id.,* at 6–7, 10, and n. 6, 19, 22. *But the First Amendment protects against the Government; it does not leave us at the mercy of **noblesse oblige**.*[5] *We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.* Cf. Whitman v. American Trucking Assns., Inc., 531

---

[5] French, literal translation is "nobility obligates". The common meaning attributed to this phrase refers to the unwritten obligation of people from noble ancestry to act honorable and charitably and generously to others.

>> U.S. 457, 473, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). (Emphasis added).

[*United States v. Stevens*, 559 U.S. at 479].

To state again, as the Supreme Court unequivocally stated: *"We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." United States v. Stevens*, *supra*. From the foregoing it is equally clear that this Federal District Court cannot avoid its duty and decline to strike down a clearly facially unconstitutional State Statute merely because the State "promises" to ignore and disregard the actual literal unconstitutional text and instead "use it responsibly". *United States v. Stevens*, *supra*; *see also McDonnell v. United States*, 579 U.S. ___ (slip. op at page 23), 136 S. Ct. 2355, 2373–74 (2016) (noting that "we cannot construe a criminal statute on the assumption that the Government will 'use it responsibly'") (quoting *United States v. Stevens*, 559 U.S. 460, 480 (2010)) and *Lewis v. Alexander*, 685 *F.3d* 325, 341 (3d Cir. 2012) ("[T]o the extent the agency is pleading for a chance to interpret the statute more leniently than the statute's text might suggest, we question whether we can credit such an interpretation"). Unilateral "Executive Branch" discretion is not a defense.

***Second,*** to the extent that the Defendant State is relying upon the cumulative authority of a New Jersey State Judiciary *Administrative Directive,* Plaintiff Greco had already addressed this issue in detail and argues and demonstrates that this "Administrative Judicial Memo" is not a judicial opinion or decision rendered during consideration of a case or controversy before it, but rather is an Administrative memo that both violates the *"Winberry Doctrine",* an argument already fully briefed that need not be expanded upon here. Moreover, upon reflection, also violates the separate of powers in the *New Jersey State Constitution (1947)* by the State Judicial Branch improperly intruding not only intruding into the Legislative Branch's exclusive authority

to enact substantive law, but also into the Executive Branch's function to carry out and implement the laws, administratively directing the Executive Branch how to implement the laws, with absolutely no ADMINISTRATIVE authority to do so, and in context (as this is not a case properly brought before the State Court) absolutely no JUDICIAL authority to act either. Lastly, as the Court pointed out at oral argument and as Plaintiff Greco briefed and argued, MEMOS are not binding and may be changed or rescinded at any time, for any reason, not to mention ignored (which arguably the State has already done here, violating Plaintiff Grecos rights to privacy by allegedly sharing ostensible private documents with third parties).

## CONCLUSION:

For the foregoing reasons and authorities cited in support thereof, it is respectfully requested that the Court Grand Plaintiff Greco's pending motion and enter the Preliminary Injunction as requested.

**Respectfully submitted,**

**s/** *Albert Rescinio*

**ALBERT J. RESCIONO, ESQ.**