# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# TRENTON VICINAGE

| | |
|---|---|
| DAVID M. GRECO, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>GURBIR S. GREWAL, New Jersey Attorney General; JARED M. MAPLES, Director, New Jersey Office of Homeland Security and Preparedness; NEW JERSEY OFFICE OF HOMELAND SECURITY AND PREPAREDNESS, a Cabinet Level Department of the State of New Jersey; CAMDEN COUNTY PROSECUTOR'S OFFICE, a municipal entity of the state of New Jersey; JILL S. MAYER, Acting Camden County Prosecutor; NEVAN SOUMILAS, Assistant Camden County Prosecutor; GLOUCESTER TOWNSHIP POLICE DEPARTMENT, a Municipal Entity of the State of New Jersey; BERNARD JOHN DOUGHERTY, Detective, Gloucester Township Police Department; NICHOLAS C. AUMENDO, Patrolman, Gloucester Township Police Department; DONALD B. GANSKY, Detective Sergeant, Gloucester Township Police Department; WILLIAM DANIEL RAPP, Detective, Gloucester Township Police Department; BRIAN ANTHONY TURCHI, Patrolman, Gloucester Township Police Department; "JOHN DOE #1" (a fictitious name); and "JOHN DOES 2-10" (fictitious names),<br><br>    Defendants. | Hon. Brian R. Martinotti, U.S.D.J.<br>Hon. Tonianne J. Bongiovanni, U.S.M.J.<br><br>Docket No. 3:19-cv-19145<br><br>**<u>CIVIL ACTION</u>**<br><br>**(ELECTRONICALLY FILED)** |

SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION ON BEHALF OF DEFENDANTS GURBIR S. GREWAL, JARED M. MAPLES, NEW JERSEY OFFICE OF HOMELAND SECURITY AND PREPAREDNESS, CAMDEN COUNTY PROSECUTOR'S OFFICE, JILL S. MAYER, AND NEVAN SOUMALIS

Joseph C. Fanaroff
Assistant Attorney General
  Of Counsel and On the Brief

Jeremy Feigenbaum
Assistant Attorney General
  Of Counsel and On the Brief

Rachel Simone Frey
Deputy Attorney General
  On the Brief

Bryan Edward Lucas
Deputy Attorney General
  On the Brief

Robert McGuire
Deputy Attorney General
  On the Brief

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, NJ 07101
Attorney for Defendants Gurbir S. Grewal, Jared M. Maples, New Jersey Office of Homeland Security and Preparedness, Camden County Prosecutor's Office, Jill S. Mayer, and Nevan Soumalis
973-648-7811
Bryan.Lucas@law.njoag.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... i

PRELIMINARY STATEMENT ............................................................................1

LEGAL STANDARD..............................................................................................2

ARGUMENT ..........................................................................................................4

    A. Actual Injury ...............................................................................................4

    B. Imminent Injury .........................................................................................6

CONCLUSION .....................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                                        **Page**

*Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413 (3d Cir. 2012) .............................................................2

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973).........................................................3

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)....................................... 2, 3, 6

*Erga v. Chalmers*,
   A-2632-12T4, 2014 WL 3437401 (App. Div. 2014) ............................................8

*Ernst v. Child & Youth Servs.*, 108 F.3d 486 (3d Cir. 1997)....................................2

*Finkelman v. Nat'l Football League*, 810 F.3d 187 (3d Cir. 2016)..........................2

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
   528 U.S. 167 (2000)................................................................................................2

*In Re Application For Permit To Carry A Handgun of Calvin Carlstrom*,
   __ A.3d __, Slip Op. (N.J. Jan. 28, 2020)..............................................................8

*Lewis v. Alexander*, 685 F.3d 325 (3d Cir. 2012) ........................................................ 9

*New Directions Treatment Services v. City of Reading*,
  490 F.3d 293 (3d Cir. 2007) ...................................................................................... 3

*Paff v. Ocean County Prosecutor's Office*,
  192 A.3d 975 (N.J. 2018) ........................................................................................... 8

*S.M. v. K.M.*,
  433 N.J. Super. 552 (App. Div. 2013) ....................................................................... 8

*State v. Hemenway*,
  216 A.3d 118 (N.J. 2019) ........................................................................................... 7

*State v. Morales*, 390 N.J. Super. 470 (App. Div. 2007) ............................................. 8

*United States v. Stevens*, 559 U.S. 460 (2010) ........................................................ 8, 9

**PRELIMINARY STATEMENT**

Plaintiff, David Greco, urges this Court to enjoin the State of New Jersey from enforcing its Extreme Risk Protective Order Act ("ERPO Act") in light of alleged violations of the Fourth Amendment. To obtain relief, Plaintiff must have standing to pursue his claim, no matter whether he is bringing his challenge against the entire statute or based only on how the law was applied to him. Yet at no point in his action has Plaintiff shown that he was injured by the alleged Fourth Amendment violation, nor has he shown that such an injury is likely to occur in the future.

Plaintiff's theory, at its core, is that the Act enables law enforcement to search for firearms after a court finds "good cause" to believe a gun owner is an immediate threat to himself or to others, rather than the required "probable cause." But Plaintiff has not shown that the warrant issued in his case was approved on a showing of good cause, and the evidence reveals the opposite—that the state court required probable cause before it allowed officers to seize Plaintiff's weapons. Nor can he show that a warrant for his weapons will likely issue in the future upon a showing of good cause either, because directives from both the Administrative Office of the Courts (AOC) and the Attorney General require the use of the probable-cause standard in an ERPO case. Because the former binds the state court judges who issue ERPO warrants, and the latter binds the officers who seek and execute them, there is no reason to believe

that Plaintiff remains at risk of being subjected to a search warrant based on a good-cause standard. Absent an injury, Plaintiff lacks standing to pursue his claim.

## LEGAL STANDARD

To establish standing, a plaintiff must demonstrate "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016). The burden to establish standing rests squarely on the plaintiff's shoulders, *see Askew v. Trs. of Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F.3d 413, 418 (3d Cir. 2012), and the plaintiff must meet that burden for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185 (2000). To establish the injury-in-fact prong of the standing test, the plaintiff needs to "allege a distinct and palpable injury to himself," *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 499 (3d Cir. 1997), and that harm must be either "actual or imminent," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Simply put, Plaintiff must establish to this Court's satisfaction either that a search warrant was "actually" issued against him only on a showing of good cause or that such a search warrant will issue "imminently." Otherwise, there is no injury that the federal court would be able to redress with a favorable decision.

2

Importantly, Plaintiff bears the burden to satisfy that irreducible minimum for standing no matter whether Plaintiff is pursuing a facial or as-applied challenge to the ERPO Act. Although Plaintiff's most recent submission to this Court equivocates about whether Plaintiff is only pursuing a facial challenge or also an as-applied one, *see* ECF 52 at 10, it makes little difference. Either way, the party pursuing the lawsuit still has to show that he suffered harm, and cannot rely on a risk of injury to others. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973) ("Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court."); *New Directions Treatment Services v. City of Reading*, 490 F.3d 293, 308 n.11 (3d Cir. 2007) (explaining that in facial challenges "a single party asserts that a law is invalid *not only* as applied to them, but as applied to all parties that might come before the court" (emphasis added)); *Clapper*, 568 U.S. 409 (applying traditional standing requirements to facial challenge). That is no surprise: standing is the mechanism to decide whether a suit really presents the kind of concrete case that Article III courts can resolve—a concern that must be addressed whether the litigation concerns a single application of a law or its entire scope.

## **ARGUMENT**

For the reasons given in the State's Brief in Opposition to Plaintiff's Motion for a Preliminary Injunction, and for the reasons that follow, Plaintiff has not shown an actual or imminent injury sufficient to pursue his Fourth Amendment claim. As a result, Plaintiff's Complaint must be dismissed.

A.   Actual Injury.

Under Plaintiff's own constitutional theory, Plaintiff cannot show any Fourth Amendment injury. As laid out above, Plaintiff contends that the ERPO Act violates the Fourth Amendment because it allows courts to issue search warrants for firearms on a showing of "good cause." Therefore, to show actual injury, Plaintiff must prove that *he* was subjected to a warrant supported only by good cause. He cannot do so. As the State has already explained, while a state court did issue a warrant authorizing law enforcement to seize Plaintiff's weapons under the ERPO Act, that warrant was explicitly supported by probable cause. There is little room for debate on this point: the warrant that Judge Edward McBride signed says he "determine[d] that *probable cause* exists to believe that" the statutory prerequisites were satisfied. ECF 1, Ex. E (emphasis added). That is the only evidence before this Court as to what happened in Plaintiff's case, and it undermines his claims. Because Plaintiff was not subject to the legal violation he alleges, he lacks standing to pursue this claim.

4

Plaintiff's response is passing strange. In his supplemental brief, Plaintiff does not address—or even acknowledge—that this warrant was based on probable cause, not good cause. Instead, Plaintiff's one-paragraph discussion about injury contends that he was injured by a "Search Warrant that was issued automatically in accordance with that law based upon an unconstitutional 'good cause' legal standard." ECF 52 at 8. But that sleight of hand is not enough for standing. While it is true that Plaintiff was subjected to a search warrant, and while it is true that the text of the Act refers to good cause, there is a missing link—*i.e.,* Plaintiff failed to show that the *warrant* was based on good cause. That is critical, because the tangible Fourth Amendment injury about which Plaintiff complains is the warrant-approved search and seizure. And that missing link is critical for another, related reason—it prevents this Court from fashioning effective relief for Plaintiff. Said another way, even were Plaintiff to obtain the injunction he seeks—an order that courts may issue warrants only on a showing of probable cause—nothing in his state proceedings would change. That is the very definition of an abstract dispute that federal courts cannot resolve.

The only other argument available to Plaintiff, which he has suggested in the past but not in his supplemental brief, is that Judge McBride did not really mean that he was using the probable-cause standard. But Plaintiff offers no evidence to support that claim. Instead, as explained above, the only relevant document Plaintiff included as part of his facial challenge is one that recites the probable-cause standard. Insofar

5

as this Court wishes to entertain the argument that Judge McBride did not mean what he said, the State must be able to rebut it with evidence from that state proceeding—something Plaintiff has to date prevented the State from doing.

Based on this record, the answer is clear—the warrant issued for Plaintiff's firearms relied on a probable-cause finding, which eviscerates his standing.

B.     Imminent Injury.

Plaintiff also cannot demonstrate the other type of injury sufficient to support standing—"imminent" harm. To show imminent harm, Plaintiff must show "that the threatened injury is certainly impending." *Clapper*, 568 U.S. at 401. As applied here, that means Plaintiff has to establish that it is "certainly impending" that a court will issue, and law enforcement will execute, a warrant to search and seize his firearms based only on a showing of good cause. But he cannot meet this test either. For one, there is no basis to think that Plaintiff will soon be subject to another search warrant for his firearms, because law enforcement already searched and seized his weapons pursuant to a warrant supported by probable cause. In any event, even were a future warrant likely to issue, there is no reason to think it would issue based on good cause. That is because the AOC and the Attorney General have made clear to state courts and law enforcement, respectively, that the proper standard for any search warrants under the ERPO Act is probable cause.

There is no dispute that the AOC and the Attorney General have announced the need for probable cause in this context. Although the plain language of the ERPO Act allowed for warrants to issue on a showing of good cause only, the state Supreme Court issued a subsequent decision—after passage of the ERPO Act but before that law's effective date—making clear (in the context of an analogous law) that any civil warrants issued to seize firearms had to be supported by probable cause. *See State v. Hemenway*, 216 A.3d 118, 131-32 (N.J. 2019). After *Hemenway*, the AOC released Directive 19-19, which provides that ERPO warrants "can only be issued" after the judge finds "that probable cause exists." ECF 1, Ex. B, Guideline 4(e). And relying on both *Hemenway* and AOC Directive 19-19, the Attorney General issued Directive 19-2 to mandate that officers "shall establish and request that the search warrant … be issued by the court under the standard of probable cause," and in fact may not ask for an ERPO warrant if they "have only good cause." ECF 1 Ex. C, Section 3.3.

The only dispute between the parties is whether these directives are binding. Although Plaintiff argues that these rules reflect nothing more than "guidance" from an "administrative judicial memo" and an Attorney General memo that state courts will ignore, ECF 52 at 11, Plaintiff is mistaken. The effect of both AOC and Attorney General directives are a matter of state law, and New Jersey law is clear that these directives bind state courts and law enforcement, respectively. Indeed, just two days ago, the state Supreme Court confirmed that AOC directives flow from the Supreme

7

Court's "constitutionally granted rule-making authority over all state courts," and that their "mandate[s]" are "controlling" for state judges. *See In Re Application For Permit To Carry A Handgun of Calvin Carlstrom*, __ A.3d __, Slip Op. at 13 (N.J. Jan. 28, 2020) (Exhibit A). Nor was that the first time courts have recognized the need for judges to comply with AOC directives. *See S.M. v. K.M.*, 433 N.J. Super. 552, 554 n.2 (App. Div. 2013) (holding that AOC directives have "the force of law"); *State v. Morales*, 390 N.J. Super. 470, 472 (App. Div. 2007) (same); *Erga v. Chalmers*, A-2632-12T4, 2014 WL 3437401, *3 (App. Div. 2014) (agreeing that directives "are binding on all trial courts"). The same is true for Attorney General directives, which "bind police departments statewide," and "have the force of law for police entities." *Paff v. Ocean County Prosecutor's Office*, 192 A.3d 975, 985 (N.J. 2018). Plaintiff does not even mention, let alone grapple with, this significant body of case law.[1]

Plaintiff's only substantive response, relying on *United States v. Stevens*, 559 U.S. 460 (2010), is that a prosecutor's "promise" that a law will not be enforced in a certain way is insufficient to save that law. *See* ECF 52 at 14. But the analogy, and therefore Plaintiff's response, bears two fatal flaws. *Stevens* involved the resolution

---

[1] Plaintiff does, however, argue that insofar as this AOC Directive is binding, it must "violate[] the separate (*sic*) of powers in the *New Jersey State Constitution (1947)*." ECF 52 at 14. But such a challenge to the validity of a state judiciary's directive on state-law grounds belongs in state court—as does this entire case.

8

of a First Amendment overbreadth challenge to a law that criminalized the creation, sale, or possession of depictions of animal cruelty. The U.S. Department of Justice had said in its brief that it would not enforce that law in ways that violated the First Amendment, a promise the Supreme Court naturally found insufficient. *See Stevens*, 559 U.S. at 480. Here, of course, the State is not asking this Court to rely on a mere "promise" made in a brief; to the contrary, the State has pointed to legally-binding directives with the force of law for courts and law enforcement officers. Moreover, the legal question is completely different. The question is not whether the text of the law is overbroad, but whether Plaintiff has done enough to show the injury he fears is "certainly impending."[2] Given that law enforcement may not seek ERPO warrants based on good cause, and that state courts are instructed not to issue ERPO warrants absent probable cause, no such warrants are "certainly impending."

---

[2] Plaintiff's reference to *Lewis v. Alexander*, 685 F.3d 325 (3d Cir. 2012), is easily distinguished on the same two bases.

## **CONCLUSION**

For these reasons, Plaintiff cannot establish Article III standing to pursue his Fourth Amendment challenge to the ERPO Act.[3]


Dated: January 21, 2020              Respectfully Submitted,

                                     GURBIR S. GREWAL
                                     ATTORNEY GENERAL OF NEW JERSEY

                                     By:  /s/ Bryan Edward Lucas

                                     Joseph Fanaroff
                                     Jeremy Feigenbaum
                                     Assistant Attorneys General
                                        Of Counsel and On the Brief

                                     Rachel Simone Frey
                                     Bryan Edward Lucas
                                     Robert McGuire
                                     Deputy Attorneys General
                                        On the Brief

---

[3] The State, of course, maintains its position that there are other obstacles to hearing this case in federal court, including the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971). *See* ECF 32 at 17-24.