**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DAVID M. GRECO,<br><br>                    Plaintiff,<br><br>          v.<br><br>GURBIR S. GREWAL, *et al.*,<br><br>          Defendants. | Case No. 3:19-cv-19145 (BRM) (TJB)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff David M. Greco's ("Plaintiff") Motion for a Preliminary Injunction Pursuant to Federal Rule[1] of Civil Procedure 65. (ECF No. 1.) Defendants New Jersey Attorney General Gubir S. Grewal ("Attorney General Grewal"), Jared M. Maples, and the New Jersey Office of Homeland Security and Preparedness ("New Jersey OHSP") (collectively, the "State Defendants"), and the Camden County Prosecutor's Office, Jill S. Mayer, and Nevan Soumails (collectively, the "County Defendants") opposed the Motion. (ECF No. 32.) Defendants Gloucester Township Police Department, Bernard John Dougherty, Nicholas C. Aumendo, Donald B. Gansky, William Daniel Rapp, and Brian Anthony Turchi (collectively, the "Township

---

[1] Hereinafter, all references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

Defendants" and with State and County Defendants, "Defendants")² filed correspondence joining and adopting the legal arguments advanced by the State and County Defendants but declining to provide any briefing of their own. (ECF No. 33.)

The Court held oral argument on November 20, 2019. (ECF No. 39.) On December 5, 2019, Plaintiff submitted a supplemental letter brief. (ECF No. 44.) On January 10, 2020, Plaintiff filed a Motion for Class Certification ("Class Certification Motion") pursuant to Rule 23(b). (ECF No. 48.) State and County Defendants submitted joint correspondence opposing the Class Certification Motion (ECF No. 49), and Plaintiff replied (ECF No. 50). On January 17, 2020, the Court entered an Order granting the State and County Defendants' request, administratively terminating Plaintiff's Class Certification Motion without prejudice, and requesting further briefing from the parties on the issue of standing. (ECF No. 51.) On January 24, 2020, Plaintiff submitted his initial brief (ECF No. 52) to which the State and County Defendants responded (ECF No. 53.) On January 31, 2020, the Township Defendants submitted correspondence joining and adopting the legal arguments advanced by the State and County Defendants but declining to provide any briefing of their own. (ECF No. 54.) On February 3, 2020, Plaintiff filed his reply brief. (ECF No. 55.) Having reviewed the submissions filed in connection with the Motion and having considered the arguments raised at the preliminary hearing, for the reasons set forth below and for good cause appearing, Plaintiff's Motion for a Preliminary Injunction is **DENIED**.

---

² Plaintiff also names John Doe Nos. 1–10 as Defendants. (ECF No. 1 at 2.) John Doe No. 1 is described as, "a name for the yet to be identified person(s) who anonymously identified themselves on September 5, 2019 only with the pseudonym(s) 'NEW JERSEY HOMELAND SECURITY' and 'PDPACE2.'" (*Id.* at 9) (capitalization in original). John Does Nos. 2–10 are identified as, "fictious names for yet to be identified persons or entities that participated and/or conspired with the other named Defendants to violate Plaintiff[']s Federal Constitutional Rights." (*Id.* at 10.)

# I.   BACKGROUND

## A.   Factual Background

The New Jersey Extreme Risk Protective Order Act of 2018 (the "ERPO Act"), N.J. Stat. Ann. §§ 2C:58-20 *et seq.*, was signed into law on June 13, 2018. (ECF No. 1 at 10.) The ERPO Act allows a qualified petitioner to request that a state court issue a Temporary Extreme Risk Protection Order ("TERPO") preventing a respondent from, *inter alia*, possessing firearms and ammunition for a limited period of time. § 2C:58-23(g). In their filing with the court, a petitioner must allege "the respondent poses a significant danger of bodily injury to self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm." *Id.* § 2C:58-23(a). Under the statute, a family member, household member, or law enforcement officer are the only individuals qualified to petition for the entry of a TERPO. *Id.* § 2C:58-21. A TERPO shall be issued if the court finds "*good cause* to believe that the respondent poses an immediate and present danger of causing bodily injury to [themselves] or others" because they own or possess a firearm. *Id.* § 2C:58-23(e) (emphasis added). A TERPO prohibits the respondent from "having custody or control of, owning, purchasing, possessing, or receiving firearms or ammunition" for the duration of the order. *Id.* § 2C:58-23(g). It further requires a respondent to surrender any firearms and ammunition they own or otherwise possess to law enforcement officers. *Id.* If a TERPO is entered, the issuing court forwards a copy of the order to the appropriate law enforcement agency which serves it upon the respondent "immediately, or as soon as practicable." *Id.* § 2C:58-23(i)(2). If the petition indicated the respondent owns or possesses firearms, "the court shall issue a search warrant" contemporaneously with the TERPO. *Id.* § 2C:58-26(b). Within 10 days of the filing of the petition, the court will hold a hearing to decide whether to issue a Final Extreme Risk Protective Order ("FERPO"). *Id.* § 2C:58-24(a). After its issuance, a FERPO may be terminated at any time

if the respondent shows by a preponderance of the evidence that they "no longer pose[] a significant danger of causing bodily injury" to themselves or others. *Id.* § 2C:58-25.

On August 12, 2019, the New Jersey Administrative Office of the Courts issued "Directive #19-19" (the "AOC Directive"),[3] promulgating guidelines for the issuance of TERPOs. (ECF No. 1, Ex. B.) The AOC Directive noted that while the statutory language of the ERPO Act uses the phrase "good cause," a TERPO can only be issued upon a showing of probable cause. (*Id.* at 6.) Similarly, on August 15, 2019, Attorney General Grewal issued "Law Enforcement Directive No. 2019-2" (the "AG Directive")[4] which reiterated that the probable cause standard determines whether a search warrant can be issued in conjunction with a TERPO. (ECF No. 1, Ex. C.)[5, 6]

---

[3] Directives from the New Jersey Administrative Office of the Courts have the force of law. *See S.M. v. K.M.*, 81 A.3d 723, 728 n.2 (N.J. Super. Ct. App. Div. 2013); *see also State v. Morales*, 915 A.2d 1090, 1091 (App. Div. 2007); *see also* N.J. Ct. R. 1:33-3.

[4] Directives from the Attorney General have "the force of law for police entities" and are "binding and enforceable on local law enforcement agencies." *O'Shea v. Twp. of W. Milford*, 982 A.2d 459, 465–466 (N.J. Super. Ct. App. Div. 2009); *see also Seidle v. Neptune Twp.*, No. 17-4428, 2019 WL 5685731, at *18 (D.N.J. Oct. 31, 2019)

[5] The AG Directive further states that in instances where law enforcement officers only have good cause to believe that the respondent poses an immediate risk of causing bodily injury, they "may still seek a TERPO petition and order, but *not* a search warrant." (ECF No. 1, Ex. C at 5) (emphasis added).

[6] The AOC Directive and AG Directive were issued in response to the New Jersey State Supreme Court's holding in *State v. Hemenway*. 216 A.3d 118 (N.J. 2019). In *Hemenway*, law enforcement officers executed a search warrant on Hemenway's home stemming from a temporary restraining order issued under the Prevention of Domestic Violence Act ("PDVA"), N.J. Stat. Ann. §§ 2C:25-17 *et seq*. *Id*. at 121. The PDVA "empowers a judge . . . to enter an order authorizing the police to search for and seize . . . weapons that may pose a threat to the victim." *Id.* at 120. Much like the ERPO Act, the statutory text of the PDVA allows a search warrant to be issued upon a showing of "good cause." *Id*. at 128. During their search of Hemenway's home, law enforcement officers recovered various quantities of illegal narcotics and Hemenway was subsequently charged with drug offenses. *Id.* The New Jersey Supreme Court reversed the Superior Court's denial of Hemenway's motion to suppress the fruits of the search. *Id.* at 121. The court held the "good cause" standard upon which the search warrant was issued was impermissibly lesser than the constitutionally required standard of "probable cause." *Id.*

By the plain language of the statute, the ERPO Act was effective as of September 1, 2019.

*Id.* § 2C:58-20. On September 5, 2019, a petition for a TERPO (the "Petition") was filed against

Plaintiff. (ECF No. 1 ¶ 41.) The Petition identified "New Jersey Department of Homeland

Security" as the petitioner. (ECF No. 1, Ex. D at 1.) No named individual was listed under the

heading "Petitioner's Information" and the field under "Relationship to Respondent" was filled in

with, "PEPD – PETITIONER LAW-ENFORCEMENT OFFICER."[7] (*Id.*) On the petitioner's

signature line, "NEW JERSEY HOMELAND SECURITY" was typed in. (*Id.* at 2.) The Petition

referenced several of Plaintiff's previous arrests and included the following:

> Information was recently obtained, through FBI contacts, that David
> Greco is involved in online anti-Semitism. Greco was found to be in
> contact with the Pittsburgh synagogue shooter, before the mass
> shooting that took place in October 2018. After the recent August
> 2019 mass shootings in both Ohio and El Paso, precautions were
> taken and contact was made with Greco. In coordination with the
> FBI, officers reached out to Greco in regards to recent posts on the
> social media site Gab.com. All previous social media accounts were
> blocked due to the nature of the content. While talking to Greco, he
> appeared extremely intelligent to officers and did not mention acting
> on any violent behavior toward Jews. His behavior was methodical
> and focused on facts, specifically from Nazi Germany. Greco
> believes that force or violence is necessary to realign society. Greco
> frequently mentioned his disdained [sic] for the Jewish Talmud and
> how he believes that Jews are raping our women and children.

(*Id.*)[8]

An *ex parte* TERPO hearing was held before the Hon. Edward McBride, J.S.C., on

September 6, 2019. (ECF No. 1 ¶ 50.) In addition to the Petition, Judge McBride considered the

---

[7] State Defendants identify the petitioner as "a law enforcement officer with the New Jersey OHSP." (ECF No. 32 at 10.)

[8] The Petition and several other relevant exhibits contain fields where text has been typed in all caps. For ease of reading, the Court has converted the text to sentence case when quoting from these exhibits. For brevity, future alterations of the same kind are not noted.

live testimony of an New Jersey OHSP Agent, "copies of social media posts from 'Gab.com,' reports from [the] FBI and GTPD" printouts of other social media posts made by Plaintiff. (ECF No. 1, Ex. E at 1.) The court found Plaintiff had previously "threatened, advocated, and celebrated the killing of Jewish people and has celebrated the mass shootings in Pittsburgh and New Zealand" in public social media posts. (*Id.*) The court further noted Plaintiff was "extremely agitated and angry" when law enforcement officers went to speak with him about the posts and that he had a history of "threats or acts of violence directed towards self or others." (*Id.* at 3.) On this record, the court granted the Petition and issued a "no-knock" search warrant for Plaintiff's residence. (*Id.* at 3–4.) Later that day, Township Defendants served Plaintiff with a TERPO and executed the search warrant, seizing: (1) Plaintiff's New Jersey Firearms Purchaser ID Card, (2) Plaintiff's rifle, and (3) ammunition for the rifle. (ECF No. 1 ¶¶ 53–54.) Plaintiff's FERPO hearing was initially scheduled for September 11, 2019 but was later moved to December 9, 2019. (ECF No. 32 at 13.) The FERPO hearing was subsequently adjourned until January 27, 2020, "in part to allow the State to respond to several motions" filed by Plaintiff in his State Court proceeding. (ECF No. 44 at 1.)

### B.   Procedural History

Plaintiff filed a three-count class action Complaint in this Court on October 21, 2019, challenging the constitutionality of the ERPO Act, alleging a cause of action pursuant to 42 U.S.C. § 1983 for violations of the First, Second, Fourth, and Fourteenth Amendments, and moving for preliminary injunctive relief. (*See generally* ECF No. 1.) On November 8, 2019, the State and County Defendants jointly opposed Plaintiff's Motion. (ECF No. 32.) On the same day, the Township Defendants filed correspondence joining and adopting the legal arguments advanced by State and County Defendants but declining to provide any additional briefing of their own. (ECF No. 33.) The Court heard oral argument on the Motion on November 20, 2019. (ECF No. 39.) Per

the Court's Order, (ECF No. 51), the parties submitted dueling briefs on the issue of standing. (ECF Nos. 52, 53, 55.)

## II.   LEGAL STANDARD

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). The primary purpose of preliminary injunctive relief is to maintain "the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994). In order to obtain a temporary restraining order or preliminary injunction, the moving party must show:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)). The movant bears the burden of "meet[ing] the threshold for the first two 'most critical' factors: . . . that [they] can win on the merits . . . and that it is more likely than not [they will] suffer irreparable harm in the absence of preliminary relief." *Id.* at 179. "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

A party asserting a statute is facially unconstitutional "must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno,* 481 U.S. 739, 745 (1987). A facial attack, therefore, is the "most difficult challenge to mount successfully."

*Id.* Alternatively, "[a]n as-applied attack . . . does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Marcavage,* 609 F.3d 264, 273 (3d Cir. 2010).

## III.   DECISION

### A.   Standing

As a threshold matter, the Court addresses whether Plaintiff has standing to pursue his claims. Standing is a justiciability doctrine that limits a court's "jurisdiction to cases and controversies in which a plaintiff has a concrete stake." *Freedom from Religion Found. Inc v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016). To establish standing:

> [A] plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). The Plaintiff bears the burden of establishing standing. *Id.* When a plaintiff asserts multiple claims, standing must be established separately for each claim. *Friends of the Earth, Inc.*, 528 U.S. at 185.

Section 1983 creates a civil remedy for individuals who are "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and its laws" by a state actor. 42 U.S.C § 1983; *see also McFadden v. Apple Inc.*, 785 F. App'x 86, 88 (3d Cir. 2019) ("Section 1983 provides a cause of action to redress federal constitutional violations caused by officials acting under color of state law." (citation omitted)). Plaintiff brings a three-count Complaint pursuant to 42 U.S.C § 1983—Count One, for violations of the Fourth Amendment; Count Two, for violations of the Second and Fourteenth Amendments; and Count Three, for violations of the First

Amendment. (ECF No. 1 ¶¶ 56–71.) As noted, *supra*, Plaintiff must establish he has standing to pursue each count individually.

Here, the Court finds that Plaintiff's assertions satisfy the second and third elements of a standing analysis. The injuries that Plaintiff alleges are all directly linked to the issuance of the TERPO against him and, therefore, fairly traceable to the actions of Defendants. Similarly, an order from this Court enjoining the enforcement of the ERPO Act and ordering the return of Plaintiff's property would provide Plaintiff relief from the Constitutional violations he alleges. The critical inquiry, therefore, is whether Plaintiff has suffered an injury-in-fact for each of his claimed Constitutional deprivations.

An "injury-in-fact" is "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (internal quotations and citation omitted). "[A]llegations of a future injury, or the mere possibility of a future injury, will not establish standing." *Hindermyer v. B. Braun Med. Inc.*, No. CV 19-6585, 2019 WL 5881073, at *12 (D.N.J. Oct. 30, 2019).

### 1.    *Plaintiff's Fourth Amendment Claim*

The Fourth Amendment codifies the right of citizens to be free from "unreasonable searches and seizures" and further provides, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In contrast, the plain text of the ERPO Act states, "[a] judge shall issue the [TERPO and search warrant] if the court finds *good cause* to believe that the respondent poses an immediate and present danger." N.J. Stat. Ann. § 2C:58-23(e) (emphasis added).

"In the context of a claim for unlawful entry or search, the capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Badillo v. Amato*, No. 13-1553, 2014 WL 314727, at *4 (D.N.J. Jan. 28, 2014) (internal quotation and citation omitted). "One's home is sacrosanct, and unreasonable government intrusion into the home is 'the chief evil against which the wording of the Fourth Amendment is directed.'" *United States v. Zimmerman*, 277 F.3d 426, 431 (3d Cir. 2002) (quoting *Payton v. New York*, 445 U.S. 573, 585 (1980)).

Here, the parties do not dispute that Defendants obtained a search warrant, entered Plaintiff's home and seized Plaintiff's rifle, rifle ammunition, and Firearms Purchaser ID card. (ECF No. 1 ¶¶ 53–55; ECF No. 32 at 12.) The dispute is whether the warrant was issued upon a proper finding of probable cause. Plaintiff argues the search warrant in his case was issued only upon a showing of "good cause," which deprived him of his Constitutional rights and entitles him to injunctive relief. (ECF No. 1 ¶¶ 56–64.) Defendants counter by asserting that the judge made an explicit finding of probable cause and, therefore, the warrant was proper. (ECF No. 32 at 12.)

Here, the Court finds Plaintiff has sufficiently alleged an injury for standing purposes. Whether the warrant was properly issued is not relevant at this stage of the analysis. It is undisputed that Plaintiff's home was searched and his property was seized. Plaintiff, therefore, has standing to assert a Fourth Amendment claim.

### 2. *Plaintiff's Second and Fourteenth Amendment Claims*

Plaintiff contends his Second and Fourteenth Amendment rights were violated when his rifle and ammunition were seized without a pre-deprivation hearing. (ECF No. 1-3 at 2.) Defendants do not contest Plaintiff's standing to assert this claim, but merely contend that his

claim lacks merit. (ECF No. 32 at 30.)[9] It is undisputed that Plaintiff's rifle and ammunition were seized without a pre-deprivation hearing. The Court, accordingly, finds Plaintiff has sufficiently alleged a Fourteenth Amendment injury for Article III standing purposes. As to his Second Amendment claim, the arguments presented by the parties are less clear. However, because Plaintiff's rifle and ammunition were seized, at this time, based on the current record, the Court finds Plaintiff has sufficiently alleged Second and Fourteenth Amendment injuries for standing purposes.

### 3.    *Plaintiff's First Amendment Claim*

Finally, Plaintiff contends he was "punished by the State for exercising his fundamental First Amendment Constitutional rights." (ECF No. 1-3 at 2.) He further argues he is entitled to "exercise his right to freedom of opinion and speech without interference or retaliation from the State." (ECF No. 1 ¶¶ 69–71.) Defendants do not articulate an opposition to Plaintiff's argument, noting instead "since [Plaintiff's First Amendment] claim is an 'as-applied' challenge [it] is not part of Plaintiff's 'facial' challenge to the ERPO Act." (ECF No. 32 at 15 n.3) This, however, is a misstatement of Plaintiff's argument. Plaintiff specifically articulates, at least as to his First Amendment claim, he is challenging "the ERPO Act and the actions of the Defendants, *as applied*." (ECF No. 1 ¶ 71) (emphasis added). Plaintiff's argument, nevertheless, lacks specificity as to how exactly he was punished for his speech. As noted in exhibits to Plaintiff's own Complaint, Judge McBride considered not only Plaintiff's social media posts, but also Plaintiff's "history of threats or acts of violence directed towards self or others." (Ex. E to Compl.) It is clear, however, that Plaintiff's posts on Gab.com—ostensibly his speech—was at least

---

[9] In fact, Defendants acknowledge Plaintiff's standing to bring his Second Amendment claim. (ECF No. 32 at 25 n.7).

somewhat of a factor in the decision to issue the TERPO. At this time, based on the current record, the Court finds that Plaintiff has standing to assert his First Amendment claim.

### B.    Preliminary Injunction Analysis

Having found the Plaintiff has standing to assert his claims, the Court turns to the merits of Plaintiff's Motion for a preliminary injunction. As noted above, in order to obtain a temporary restraining order or preliminary injunction, the moving party must show:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly*, 858 F.3d at 176.

The first two factors in a preliminary injunction analysis—a reasonable probability of success on the merits, and irreparable harm—are "gateway factors" that must be satisfied before a court considers the rest of the analytical framework. *Reilly*, 858 F.3d at 179. A reasonable probability of success on the merits requires a showing "significantly better than negligible but not necessarily more likely than not." *Id.* (citing *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc). "A plaintiff seeking a preliminary injunction must prove irreparable harm is 'likely' in the absence of relief." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 142 (3d Cir. 2017) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Irreparable harm has been defined in this District and Circuit as, "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Trico Equip., Inc. v. Manor*, No. 08-5561, 2009 WL 1687391, at *8 (D.N.J. June 15, 2009) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir.1989)). Such a harm "must be of a peculiar nature, so that compensation in money cannot atone for it." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86,

92 (3d Cir. 1992) (quoting *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987)). The Court addresses each of Plaintiff's Constitutional claims in turn.

### 1.   *Plaintiff's Fourth Amendment Claim*

Here, Plaintiff has established a reasonably probability of success on the merits, because the plain language of the ERPO Act is violative of the Fourth Amendment. Plaintiff, however, has failed to demonstrate he will suffer irreparable harm in the absence of a preliminary injunction.

In support of his irreparable harm argument, Plaintiff cites *Elrod v. Burns* where the Supreme Court held, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 373 (1976) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)). Plaintiff argues that "[t]he law is well[-]settled that for injunctive relief purposes a Plaintiff satisfies the 'irreparable harm' prong of the inquiry if they can demonstrate *constitutional injury*." (ECF No. 1-3 at 6) (emphasis added).[10] The holding in *Elrod*, however, was not nearly as broad as Plaintiff asserts, as the Court's ruling was

---

[10] The Court notes that Plaintiff dedicates only two sentences to a discussion of whether he has satisfied the "irreparable harm" prong of a preliminary injunction analysis. (*See* ECF No. 1-3 at 6.) Moreover, Plaintiff does not distinguish between the different constitutional violations he alleges and instead avers that, under *Elrod*, he has "clearly alleged and proves violations of the First, Second[,] and Fourth Amendments, and thus satisfies the 'irreparable harm' prong as a matter of law." (*Id.*)

circumscribed to the First Amendment.[11] Moreover, Plaintiff cites no cases in this Circuit or District where courts have applied this per se rule to violations of the Fourth Amendment. Nor does he advance any substantive argument to that effect. (*See generally* ECF No. 1-3.)

"The movant bears the burden" of establishing he or she has suffered irreparable harm. *Reilly*, 858 F.3d at 177. In this case, Plaintiff has failed to meet this burden for several reasons. First, the plain text of the search warrant issued in conjunction with the TERPO, and attached to Plaintiff's own Complaint, indicates the court found "probable cause exists to believe . . . respondent poses an immediate and present danger of bodily injury to self or others by owning or possessing any such firearms or ammunition." (ECF No. 1, Ex. E at 4.) Additionally, Plaintiff opposed Defendants' letter request (ECF No. 19) to admit records from the TERPO hearing— including transcripts, exhibits, and other evidence Judge McBride considered when issuing his ruling (ECF No. 22)—effectively preventing this Court from analyzing Plaintiff's own claim that a standard lesser than probable cause was used.[12] While the language of the ERPO Act may be facially unconstitutional, based on the record before the Court, the warrant for Plaintiff's rifle and

---

[11] In *Elrod*, the Supreme Court considered a class action suit brought by non-civil-service employees of the Cook County Sheriff's Office, who claimed they had been fired or threatened with discharge because of their political affiliation. *Elrod*, 427 U.S. at 349. The *Elrod* plaintiffs sought, *inter alia*, injunctive relief for violations of the First and Fourteenth Amendments. *Id.* The district court denied the plaintiffs' motion for a preliminary injunction, finding they had "failed to make an adequate showing of irreparable injury." *Id.* at 350. The Seventh Circuit reversed and held "[i]nasmuch as this case involves First Amendment rights of association which must be carefully guarded against infringement by public office holders, we judge that injunctive relief is clearly appropriate in these cases." *Id.* at 373. The Supreme Court affirmed this ruling and further noted that members of the putative class had agreed to change their political support to prevent discharge. *Id.* The Court also noted the specific importance of political speech and stated, "[t]he timeliness of political speech is particularly important. *Id.* at 374 n. 29.

[12] The Court notes that in one of Plaintiff's reply briefs he includes a five-page excerpt from the transcript of the TERPO hearing with a select block of text redacted and other portions highlighted in yellow. (ECF No. 37, Ex. A.)

ammunition was issued upon a finding of probable cause, and, as such, the warrant was issued in a constitutional manner.

Second, and most critically, the ERPO Act allows Plaintiff to seek the return of his property at a FERPO hearing where he would be permitted to raise constitutional arguments. By the plain text of the statute, a FERPO hearing "shall be held . . . within 10 days of the filing of a [TERPO] petition." N.J. Stat. Ann. § 2C:58-24.[13]

Finally, the Court notes, *sua sponte*, that several courts in other states and districts have found that *Elrod*'s presumption of irreparable harm does not extend to cases involving alleged Fourth Amendment injuries. *See Rodriguez as next friend of Rodriguez v. Heitman Properties of New Mexico, Ltd.*, No. 98-1545, 1999 WL 35808391, at *4 (D.N.M. Oct. 26, 1999) ("*Elrod* does not stand for the proposition that irreparable injury will be presumed whenever a constitutional injury of any sort is alleged. Certainly there may be cases where Fourth Amendment violations give rise to findings of irreparable injury; however, this is not such a case"); *Loder v. City of Glendale*, 216 Cal. App. 3d 777, 784 (Ct. App. 1989), *modified* (Jan. 4, 1990) ("Nowhere did the *Elrod* court suggest that constitutional violations other than those offending the First Amendment automatically amount to irreparable injury."); *B.J. Alan Co., CT v. State*, No. 084038297, 2008 WL 4853628, at *2 (Conn. Super. Ct. Oct. 22, 2008) ("The plaintiff alleges no first amendment violations and this court declines to extend the per se rule beyond the first amendment realm."); *but see Ramirez v. Webb*, 787 F.2d 592, 1986 WL 16752 at *2 (6th Cir. 1986) (holding that the *Elrod* holding is "likewise applicable when Fourth Amendment rights are at stake").

---

[13] Plaintiff's FERPO hearing was initially scheduled for September 11, 2019, but was later moved to December 9, 2019. (ECF No. 32 at 13.) The FERPO hearing was subsequently adjourned until January 27, 2020, "in part to allow the State to respond to several motions" filed by Plaintiff in his State Court proceeding. (ECF No. 44 at 1.)

Moreover, in *Constructors Association of Western Pennsylvania v. Kreps*, the Third Circuit affirmed the denial of a motion for a preliminary injunction and declined to extend *Elrod*'s per se rule to violations of the Fifth Amendment. 573 F.2d 811, 820 (3d Cir. 1978) ("It should be noted that, unlike First Amendment rights whose deprivation even for minimal periods of time constitutes irreparable injury, a denial of [Fifth Amendment] equal protection rights may be more or less serious depending on the other injuries which accompany such deprivation." (internal citation omitted)).

The Court finds these arguments persuasive and, like the district court in *Rodriguez*,[14] declines to extend *Elrod*'s presumption of irreparable harm to the specific Fourth Amendment violations alleged by Plaintiff here. Based on the unique factual circumstances of the present issue, the Court finds Plaintiff has failed to demonstrate he would suffer irreparable harm in the absence of injunctive relief. Plaintiff's Motion for a Preliminary Injunction, as to his Fourth Amendment claim, therefore, fails.

### 2. Plaintiff's Second and Fourteenth Amendment Claims[15]

The Second Amendment provides, "A well[-]regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Plaintiff argues his Second Amendment rights were violated and that he suffered irreparable harm when his rifle and ammunition were seized pursuant to the TERPO. (ECF No. 1 ¶¶ 65–68.)

---

[14] 1999 WL 35808391, at *4.

[15] Plaintiff incorporates the Fourteenth Amendment into his more substantive Second Amendment arguments. First, he argues he had a Fourteenth Amendment property interest in the items seized pursuant to the TERPO. (ECF No. 1 ¶ 68.) He similarly argues his due process rights were violated because the property was taken without a pre-deprivation hearing. (*Id.*) The Court finds Plaintiff's Fourteenth Amendment arguments fail for the same reasons as his Second Amendment arguments.

Here, Plaintiff has failed to meet his burden to establish he would suffer irreparable harm in the absence of injunctive relief. *See Reilly*, 858 F.3d at 177. Plaintiff almost exclusively relies on *District of Columbia v. Heller* in support of his arguments. 554 U.S. 570 (2008). *Heller*, *inter alia*, stood for the proposition that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635. Much like his other arguments, Plaintiff cites no case law from this District or Circuit to support his contention that the seizure of his rifle and ammunition violates the Second Amendment and requires a finding of irreparable harm. (*See generally* ECF No. 1-3.) In fact, *Heller* is the only case Plaintiff cites in support of his Second Amendment argument. (*Id.*) As with *Elrod*, Plaintiff's singular reliance on *Heller* is misplaced. Critically, *Heller* does not create the unlimited right to possess firearms that Plaintiff implies. The *Heller* Court held that the protections of the Second Amendment are "not unlimited" and do not confer "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. The Court also explicitly stated that its holding did not "cast doubt on longstanding prohibitions on the possession of firearms." *Id.*[16]

Moreover, the type of statute at issue in *Heller* is easily distinguishable from the ERPO Act. In *Heller*, petitioners brought a challenge to a series of District of Columbia laws that effectively outlawed the possession of handguns. *Id* at 574. Local statutes made it a crime to carry an unregistered handgun while, at the same time, prohibited the registration of handguns. *Id.* By contrast, the ERPO Act does not seek to prohibit or inhibit gun possession or ownership writ large. Rather, it requires a respondent to temporarily "surrender firearms and ammunition in [their]

---

[16] The Court noted that the list of "presumptively lawful regulatory measures" included in the opinion "[did] not purport to be exhaustive." *Heller*, 554 U.S. at 626 n.26.

custody or control" only if a judge finds good cause to believe the respondent "poses an immediate and present danger of causing bodily injury to [themselves] or others." N.J. Stat. Ann. § 2C:58-23(e). Within ten days of such an order, the court is required to hold a FERPO hearing where it will extend the TERPO only if it finds that such "immediate and present danger" still exists. N.J. Stat. Ann. § 2C:58-24. Even if a FERPO issued, a petitioner may, at any time, regain possession of their firearms and ammunition, provided they are able to prove they no longer pose a "significant danger" to themselves or others. N.J. Stat. Ann. § 2C:58-25. The procedural posture of *Heller* further attenuates its connection to the instant case. *Heller* involved the review of a motion to dismiss and in no way addresses whether the seizure of firearms constitutes an irreparable harm, nor does Plaintiff cite any case law to that effect.

While not cited by either party, the Court is aware of several cases from other districts and circuits that have found a violation of the Second Amendment is a per se irreparable harm. Much like *Heller*, the Court finds the facts of these out-of-jurisdiction cases easily distinguishable from

the current case as they involved statutes with blanket restrictions on gun ownership or laws that effectively made legal gun ownership impossible.[17]

Moreover, the unique facts of the present case belie the notion that Plaintiff will suffer irreparable harm—harm that "must be of a peculiar nature, so that compensation in money cannot atone for it," *Campbell Soup Co.*, 977 F.2d at 92—in the absence of injunctive relief. In fact, Plaintiff's counsel has repeatedly represented to the Court his willingness to allow Plaintiff's

---

[17] In *Wiese v. Becerra*, the district court considered a challenge to California laws regarding large capacity magazines ("LCMs"). 263 F. Supp. 3d 986, 994 (E.D. Cal. 2017). Since 2000, California had banned the "purchase, sale, transfer, receipt, or manufacture" of LCMs. *Id.* Under this law, citizens were permitted to possess existing LCMs, but no one was allowed to obtain new ones. *Id.* at 990. In 2016, the state legislature passed a bill amending that law and criminalizing the possession of LCMs. (*Id.*) In 2017, California voters approved Proposition 63, which required anyone possessing an LCM to "remove the magazine from the state, sell the magazine to a licensed firearms dealer, or surrender the magazine to a law enforcement agency for destruction." *Id.* The *Wiese* court granted plaintiffs' motion for a preliminary injunction, finding they would suffer irreparable harm. *Id.* at 994. Specifically, the court noted that the mandate that LCMs had to be surrendered to law enforcement for destruction or transferred out of state had rendered the LCMs "irreplaceable." *Id. See also See Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1135 (S.D. Cal. 2017), *aff'd*, 742 F. App'x 218 (9th Cir. 2018) (finding that elements of the jurisprudence of the First and Second Amendments are analogous and, therefore like the First Amendment, a Second Amendment violation constitutes irreparable injury).

In *Grace v. D.C.*, the district court considered a challenge to a District of Columbia law regarding the issuance of permits to carry a concealed firearm. 187 F. Supp. 3d 129 (D.D.C. 2016). The law contained a provision whereby the Chief of the Metropolitan Police Department "'may' issue otherwise suitable applicants a license to carry a concealed firearm *only* if 'it appears that the applicant has good reason to fear injury to his or her person or property or has any other proper reason for carrying a pistol.'" *Id.* at 130. The court ultimately found that this violated the Second Amendment and that such a was within the scope of *Elrod*'s per se irreparable injury rule. *Id.* at 149.

In *Ezell City of Chicago*, the Seventh Circuit considered a challenge to a city ordinance that required individuals to undergo one hour of firearms training at a gun range as a prerequisite for owning a gun. 651 F.3d 684, 689–90 (7th Cir. 2011). However, at the same time, the law prohibited firing ranges from operating within the city. *Id.* at 690. The court found this violated the Second Amendment and constituted an irreparable harm because like the First Amendment, the Second Amendment protects "intangible and unquantifiable interests" and therefore violations cannot be compensated by damages. *Id.* at 699.

TERPO to remain in effect and for Defendants to remain in possession of Plaintiff's rifle and ammunition for the duration of the present litigation.

In an October 29, 2019 letter to the Court, Plaintiff's counsel wrote, "[m]y client, David Greco, does not object to the continuance of the TERPO during the pendency of the [f]ederal matter so long as the Camden County Prosecutor's Office and the Gloucester Township Police Department safeguard my client's firearm." (ECF No. 9 at 2.) In a November 15, 2019 response to an order to show cause, Plaintiff's counsel wrote:

> First, plaintiff is not asking this Court at this juncture to undo or set aside any action of any law enforcement agency at this juncture. All the Plaintiff is asking the Court to do is stay all current actions and prevent any further harm by use of this unconstitutional statute pending a full and final decision. All those TERPOs and any FERPOs already entered and currently in effect will remain in effect, including Plaintiff's, pending the Court's ultimate resolution of the matter.

(ECF No. 37 at 23.) Plaintiff's counsel made similar representations at oral argument on November 20, 2019:

> We've offered to keep—the fact that we've offered not to take the firearms back at this point is a conciliatory measure. My client will happily take his one gun back because it's one gun. He'll happily take it back if Your Honor will give it to us in the injunction. But we're willing to say ["]stay the law, stay the lower courts, let's decide this up here, figure out what's going on, and then, in an orderly fashion, based on what happens from Your Honor's decision, we can move forward from that."

(ECF No. 39, Tr. 43:3–11.)

The Court finds that Plaintiff's apparent consent to the continuation of the TERPO and the retention of his property during the pendency of this litigation vitiates the idea that a failure to enter an injunction would result in irreparable harm. Plaintiff's Motion for a Preliminary Injunction, as to his Second Amendment claim, therefore, fails.

As to Plaintiff's Fourteenth Amendment claim, Plaintiff's assertion that he was entitled to "advance notice and a pre-deprivation hearing to challenge the State's intentions [before] any [s]earch [w]arrant was issued" (ECF No. 1 ¶ 68) is unconvincing. The very nature of a search warrant belies any notion that the subject of the warrant is entitled to contest its validity before it is issued. *See, e.g.*, *Matter of Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 300 F. Supp. 3d 61, 88 (D.D.C.), *reconsideration denied sub nom. Matter of Leopold*, 327 F. Supp. 3d 1 (D.D.C. 2018) (holding that the target of a search warrant "has no opportunity to challenge a search warrant 'before the warrant issues'—a judicial probable cause determination is the only pre-execution check on the government's ability to obtain information via a warrant.") As discussed in the Court's Fourth Amendment analysis, *supra*, Plaintiff can recover his property at the upcoming FERPO hearing. Plaintiff, accordingly, has failed to establish he would suffer irreparable harm in the absence of injunctive relief. Plaintiff's Motion for a Preliminary Injunction, as to his Fourteenth Amendment claim, therefore, fails.

### 3.    *Plaintiff's First Amendment Claim*

Finally, Plaintiff argues he has suffered irreparable harm because his First Amendment rights have been infringed. As the Court noted above, *Elrod* and its progeny, clearly stand for the proposition that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. at 373; *see also K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113 (3d Cir. 2013); *Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010); *Americans for Prosperity v. Grewal*, No. 19-14228, 2019 WL 4855853, at *6 (D.N.J. Oct. 2, 2019). "One reason for such stringent protection of First Amendment rights certainly is the intangible nature or the benefits flowing from the exercise of those rights; and the fear that, if these rights are not jealously safeguarded, persons will be deterred, even if

imperceptibly, from exercising those rights in the future." *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989).

But "the assertion of First Amendment rights does not automatically require a finding of irreparable injury." *Conchatta, Inc. v. Evanko*, 83 F. App'x 437, 442 (3d Cir. 2003) (quoting *Hohe v. Casey*, 868 F.2d 69, 72–73 (3d Cir. 1989)); *see also N. Jersey Vineyard Church v. Twp. of S. Hackensack*, No. 15-8369, 2016 WL 1365997, at *3 (D.N.J. Apr. 6, 2016) (same). "Rather the [plaintiff] must show a chilling effect on free expression," and "it is the direct penalization, as opposed to incidental inhibition, of First Amendment rights [which] constitutes irreparable injury." *Hohe*, 868 F.2d at 73 (internal quotations omitted).

Here, Plaintiff contends he was "punished by the State for exercising his fundamental First Amendment Constitutional rights." (ECF 1-3 at 2.) While Plaintiff acknowledges that his opinions may seem "misguided" or "repugnant" to others, he argues he is entitled to "exercise his right to freedom of opinion and speech without interference or retaliation from the State." (ECF 1-3 at 3; ECF No. 1 ¶¶ 69-71.) While Plaintiff's assertion is undoubtedly correct, the record before the Court has not established that Plaintiff's rifle and ammunition were seized because of the *opinions* he expressed. As demonstrated in exhibits to Plaintiff's own Complaint, Judge McBride considered not only Plaintiff's social media posts, but also Plaintiff's "history of threats or acts of violence directed towards self or others." (ECF No. 1, Ex. E at 1–2.) Furthermore, as noted above, Plaintiff's briefing offers no details as to the what specific instances of speech he is claiming the TERPO is impermissibly punishing him for. Plaintiff opposed Defendants' letter request (ECF No. 19) to admit records from the TERPO hearing, including transcripts, exhibits, and other evidence Judge McBride considered when issuing his ruling (ECF No. 22).

Given Plaintiff's briefing on the issue and the Plaintiff's objection to the Court reviewing the information Judge McBride considered, this Court cannot conclude, on the record before it, that Plaintiff was penalized because of his lawful speech. Plaintiff's Motion for a Preliminary Injunction, as to his First Amendment claim, therefore, fails.

"[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury, must necessarily result in the denial of a preliminary injunction." *Vignola v. Twp. of Edison*, No. 06-630, 2006 WL 8457642, at *6 (D.N.J. Sept. 7, 2006) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)). Plaintiff has failed to establish he would suffer irreparable injury in the absence of an injunction. Plaintiff's Motion for a Preliminary Injunction, accordingly, is **DENIED**. Because the Court resolves the Motion on the "irreparable harm" prong, it does not reach a decision on the merits of Plaintiff's arguments as to the other prongs of the preliminary injunction analysis.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a Preliminary Injunction is **DENIED**. An appropriate Order follows.[18]

Date: February 21, 2020

*s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

---

[18] The Court notes, however, although the ERPO Act, as it is currently being enforced, is constitutional, this does not cure the long-term facial defect of the statute. The AOC and AG Directives are not permanent orders and can be rescinded or altered in a similar summary manner to which they were promulgated.