**Law Offices of Albert J. Rescinio, L.L.C.**
**1500 Allaire Avenue - Unit #101**
**Ocean Township, New Jersey  07712**
**Telephone:    (732) 531-2005**
**Telefax:        (732) 531-8009**
**By:      Albert J. Rescinio, Esq. (ID#034331989)**
**Attorneys for Plaintiff David M. Greco,** *individually and on behalf of others similarly situated*

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

|  |  |
|---|---|
| **David M. Greco,**<br>***individually and on behalf of others***<br>***similarly situated,***<br><br>***Plaintiff,***<br><br>**vs.**<br><br>**Gurbir S. Grewal,**<br>***New Jersey Attorney General, et al.,***<br><br>***Defendants.*** | **Civil Action No. 3:19-cv-19145-BRM-TJB**<br>**Honorable Brian R. Martinotti, U.S.D.J.**<br>**Honorable Tonianne J. Bongiovanni, U.S.M.J.** |

**MEMORANDUM OF LAW**

**INTRODUCTION:**

Pending before the Court is the within action wherein Plaintiff is challenging the constitutionality and legality of the *"New Jersey Extreme Risk Protective Order Act of 2018"*, *New Jersey Public Law 2018, Chapter 35, now codified at N.J.S.A. 2C:58-20 through -32* (hereinafter the "ERPO Act"), which became effective September 1, 2019, as being facially

1

unconstitutional in violation of the mandatory "probable cause" standard for issuance of a search warrant found in both the *United States Constitution's* Fourth Amendment and Article I, paragraph 7 of the *New Jersey State Constitution* (1947).[1]   Plaintiff previously moved for a Preliminary Injunction and after oral argument on November 20, 2019 the Court reserved decision which decision is still pending.[2]

Now in these related Motions the Plaintiff moves before the Court seeking the entry of an Order Certifying the matter as a *Rule* 23 "Class Action" and granting the following specific forms of associated relief:

- An Order certifying the matter as a "*Rule* 23(b)(3) Class Action" and specifically defining the "Certified Class";

- An Order appointing Plaintiff David Greco as "Class Representative";

- An Order appointing Albert J. Rescinio, Esq. of Ocean Township (Monmouth County), New Jersey, as "Lead Class Counsel";

- An Order  approving the initial proposed "Class Notices";

- An Order approving the initial proposed "Plan of Providing Notice"; and

- An Order commencing the providing of Notice of the pendency of this Class Action in the form and in the manner requested.

---

[1]      In the Complaint Plaintiff asserts and argue a variety of specific cumulative and alternative grounds that the ERPO Act is unconstitutional, but for purposes of the earlier Preliminary Injunction Motion and for purposes of these Motions Plaintiff is by design for the moment limiting the argument to the clear (and essentially undisputable) claim that the ERPO Act is facially unconstitutional as failing to meet the mandatory "probable cause" standard in the Federal and State Constitutions for issuance of any search warrant.

[2]      All named Defendants have been served and entered appearances and were present and participated in opposing the Plaintiff's motion for a Preliminary Injunction on November 20, 2019.  By Consent Order the Defendants are not required to file their responsive pleading until 20 days after the Court decides the Preliminary Injunction Motion.

## FACTS:

For purposes of this MEMORANDUM the Plaintiff shall rely upon the facts as contained in the Declaration of Plaintiff David Greco and as contained in the Declaration of Albert J. Rescinio, Esq. with exhibits both submitted herewith, with the following additional facts as taken from Plaintiff's Complaint.

On June 13, 2018 the "*New Jersey Extreme Risk Protective Order Act of 2018*" (hereinafter "EPRO Act"), New Jersey Public Law 2018, Chapter 35, now codified at *N.J.S.A.* 2C:58-20 through -32, was passed into law by the New Jersey State Legislature, and signed into law by the New Jersey Governor.  By literal terms, the EPRO Act was to go into effect fifteen months later on September 1, 2019.

The EPRO Act, specifically *N.J.S.A.* 2C:58-21, defines "Petitioner" as follows: "*'Petitioner' means <u>a family or household member or law enforcement officer</u>.*" (emphasis added), *Id.*  The ERPO Act also defines Law enforcement officer specifically as follows:   "*'Law enforcement officer' means a person whose public duties include the power to act as an officer for the detection, apprehension, arrest, and conviction of offenders against the laws of this State." Id.*   Similarly the ERPO Act defines Law enforcement agency as follows: "*'Law enforcement agency' means a department, division, bureau, commission, board or other authority of the State or of any political subdivision thereof which employs law enforcement officers." Id.*

By simple statutory definitions, a "Petitioner" may be either (1) a "family member" of the respondent, or (2) a "household member" of the respondent, or (3) a "law enforcement ***officer***." (Emphasis added).   There is no authority for a law enforcement ***agency*** to file a "Petition" under the ERPO Act.

3

The EPRO Act, specifically *N.J.S.A.* 2C:58-23, authorizes, under certain circumstances, the issuance of a "Temporary Extreme Risk Protection Order" ("TERPO") on application of a "Petitioner". As a matter of procedure, a TERPO is sought using the following procedures and legal standards:

> \*\*\*
> A petitioner may apply for relief under this section in accordance with the Rules of Court.
>
> **b.**   A petition for a temporary extreme risk protective order ***shall include an affidavit*** setting forth the facts tending to establish the grounds of the petition, or the reason for believing that they exist, and, to the extent available, the number, types, physical description, and locations of any firearms and ammunition currently believed by the petitioner to be controlled or possessed by the respondent.
>
> **c.**   The court shall not charge a fee to file the petition.
>
> **d.**   The court, before issuing a temporary extreme risk protective order, ***shall examine under oath the petitioner and any witnesses the petitioner may produce. The court, in lieu of examining the petitioner and any witnesses, may rely upon an affidavit submitted in support of the petition.*** (Emphasis added).

[*N.J.S.A.* 2C:58-23b, c & d].

Pursuant to the cited law, when seeking a TERPO, a ***petitioner*** may submit an ***affidavit*** to a court, which shall not charge a filing fee, and the court shall then "…*examine under oath the petitioner and any witnesses the petitioner may produce.*" *Id.* Alternatively, the ***petitioner*** need not personally appear, and instead the court may "… *rely upon an affidavit submitted in support of the petition...*" when deciding whether to issue the TERPO.

The EPRO Act itself does not define "Affidavit", but the *New Jersey Court Rules* quite specifically identify what is required in an "Affidavit", and provides as follows:

**1:4-4.   Affidavits**

4

(a)  Form.  Every affidavit shall run in the first person and be divided into numbered paragraphs as in pleadings.  The caption shall include a designation of the particular proceeding the affidavit supports or opposes and the original date, if any, fixed for hearing.  Ex parte affidavits may be taken outside the State by a person authorized to take depositions under *R.* 4:12-2 and *R.* 4:12-3.

(b)  Certification in Lieu of Oath.  In lieu of the affidavit, oath or verification required by these rules, the affiant may submit the following certification which shall be dated and immediately precede the affiant's signature:   "I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment."

(c)  Requirement for Original Signature.  Every affidavit or certification shall be filed with an original signature, except that a copy of an affidavit or certification may be filed instead, provided that the affiant signs a document that is sent by facsimile or in Portable Document Format (PDF), or similar format, by the affiant and provided that the attorney or party filing the copy of the affidavit or certification filed the original document if requested by the court or a party.

[*R.* 1:4-4(a), (b) & (c)].

Quite clearly, as a threshold matter, an affidavit must be prepared over the name of an actual person who is certifying and attesting to the truth of the facts contained therein.  *R.* 1:4-4(a), (b) & (c).  And for purposes of any "Petition" filed in accordance with the EPRO Act, by simple statutory definitions, the "Petitioner" must be either (1) a "family member" of the respondent, or (2) a "household member" of the respondent, or (3) a "law enforcement ***officer***." (Emphasis added).

Moreover, *New Jersey Court Rule R.* 1:4-5 specifically provides that all pleadings (which clearly includes an "EPRO Petition" filed with the court) must be:

… signed by the attorney of record or the attorney's associate or by a pro se party.  Signatures of a firm may be typed, followed by the signature of an attorney of the firm.  Signatures on any duplicate original or carbon copy required to be filed may be typed.  Every paper to be filed shall bear the date on which it was signed.

5

[*R.* 1:4-5].

Once a "Petitioner" signs a "Petition" and submits an accompanying Affidavit or Certification, the court must then consider the application without giving any advanced notice to the Respondent and without affording the Respondent any opportunity to be heard or represented at the hearing where the court determines whether to issue a TERPO.  At this point in the process, the court is by statute required to employ a "good cause" legal standard when determining whether to issue a TERPO as per *N.J.S.A.* 2C:58-23(e) which provides as follows:

> \*\*\*
>
> **e.**  A judge shall issue the order ***if the court finds good cause*** to believe that the respondent poses an immediate and present danger of causing bodily injury to the respondent or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm.  (Emphasis added).

[*N.J.S.A.* 2C:58-23(e)].

In determining whether the Petitioner has met the legal "… ***good cause*** …" standard, the court considers the information provided by the Petitioner in the Petition by way of Affidavit or Certification and may consider additional sworn testimony, all in the context of the factors enumerated in *N.J.S.A.* 2C:58-23(f).  If the court finds that there is legal "… ***good cause*** *to believe that the respondent poses an immediate and present danger of causing bodily injury to the respondent or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm* …" (emphasis added),  the court "shall" issue a TERPO Order.

Significantly, if the court finds "… ***good cause*** …" and issues the TERPO Order, and the Petition

> "… indicates that the respondent owns or possesses any firearms or ammunition, **the court shall issue a search warrant** with the temporary or final extreme risk protective order and the law enforcement officer who serves the order shall request that all

firearms and ammunition immediately be surrendered.   (Emphasis added).

[*N.J.S.A.* 2C:58-26(b)].

Moreover, in addition to the mandatory requirement in *N.J.S.A.* 2C:58-26(b) that the court issue a "shall" issue a search warrant in conjunction with any TERPO if the respondent owns or possesses any firearms or ammunition, subsection (c) provides a cumulative and additionally - in theory discretionary and perhaps redundant - authorization for the issuance of a search warrant along with the issuance of any TERPO.   That section of the statute provides as follows:

> The court which issued the protective order ***may issue a search warrant*** for a firearm or ammunition that is in the custody or control of, owned, or possessed by a respondent who is subject to a temporary or final protective order issued pursuant to section 4 or 5 of P.L. 2018, c. 35 (C. 2C:58-23 or C. 2C:58-24) if the respondent has lawfully been served with that order and has failed to surrender the firearm or ammunition as required by this section. (emphasis added).

[*N.J.S.A.* 2C:58-26(c)].

While it is mandatory that if a TERPO - a civil order - is issued that a Search Warrant also shall automatically be issued, the EPRO itself does not itself anywhere specifically authorize the issuance of a so called "No-Knock" Search Warrant under any circumstances for this civil Search Warrant.   In *State v. Johnson,* 168 *N.J.* 608 (2001), and in the context of a criminal Search Warrant, the New Jersey Supreme Court held that (1) the imminent destruction of evidence, (2) the officer's peril, or (3) the frustration of the arrest, all remain viable possible exceptions to the "Knock and Announce Rule", the affidavit in support of the (there, criminal) Search Warrant must specifically and sufficiently articulate the basis to support a reasonable

belief that one or more of these three exceptions applies to the circumstances.  *Id.* at 619 and 623.

By operation of the "good cause" legal standard for the issuance of a TERPO found in *N.J.S.A.* 2C:58-23(f) considered in consort with the mandatory issuance of a "civil" Search Warrant required by *N.J.S.A.* 2C:58-26(b) and the discretionary right to issue a "civil" Search Warrant found in *N.J.S.A.* 2C:58-26(c), the statutory framework of the ERPO Act requires the issuance of a "civil" Search Warrant on a "good cause" legal standard.

Both the Fourth Amendment to the *United States Constitution* made applicable to the States by virtue of the Fourteenth Amendment to the *United States Constitution*, and Article I, Paragraph 7 of the *New Jersey State Constitution* (1947), *as amended*, specifically require that for the State to issue any Search Warrant, that among other mandatory procedures and factors, the legal standard for determining whether to issue a Search Warrant is the heightened legal standard of "Probable Cause" which is a much more strict legal standard that the much lesser mere "Good Cause" legal standard in the ERPO Act.  Otherwise stated, on its face, the ERPO Act quite clearly violates the Fourth Amendment to the *United States Constitution* and Article I, Paragraph 7 of the *New Jersey State Constitution* (1947), *as amended.*

In *Camera v. Municipal Court,* 387 *U.S.* 523, 538-539 (1967) the United States Supreme Court made it clear that the "probable cause" legal standard and requirement of the *United States Constitution's* Fourth Amendment applies not only to criminal searches but equally applies to civil and administrative searches conducted under the authority of a State.  As such, the law was and is "clearly established" within the meaning of 42 *U.S.C.* §1983 that a (ostensible) "Civil" Search Warrant may not be issued by a State on a mere "good cause" legal standard which in the ERPO Act is literally mandated by the "good cause" standard for issuance of a TERPO in

*N.J.S.A.* 2C:58-23(f) in consort with the mandatory issuance of a "civil" Search Warrant required by *N.J.S.A.* 2C:58-26(b) whenever a TERPO is issued.

After the ERPO Act was enacted but before it went into effect, on July 24, 2019 the New Jersey Supreme Court issued their unrelated decision in *State v. Hemenway, ___ N.J. ____* (2019) which addressing the Search Warrant provision in the New Jersey Domestic Violence Act, *N.J.S.A.* 2C:25-29(j) and reaffirmed the mandatory requirement of meeting the "probable cause" standard as Constitutionally required by both the Federal and State Constitution before any civil Search Warrant can be issued.

On August 12, 2019 the New Jersey Administrative Office of the Courts issued "Directive #19-19" where at page 6 it was admitted that the mandatory Search Warrant Provisions in the ERPO Act (*N.J.S.A.* 2C:58-26(b)) that effectively requires a Search Warrant to be issued on the much lesser "Good Cause" legal standard violated the Fourth Amendment to the *United States Constitution* and Article I, Paragraph 7 of the *New Jersey State Constitution* (1947), *as amended.* **(*See* True Copy of AOC "Directive #19-19 - MEMO on "Guidelines for Extreme Risk Protective Orders" at Plaintiff's Complaint, "Exhibit B" at page 6).**

On August 15, 2015, Defendant Gurbir S. Grewal, New Jersey Attorney General, issued a formal MEMO entitled "Attorney General Directive Pursuant to the Extreme Risk Protective Order Act of 2018" where, acknowledging AOC "Directive #19-19 and agreeing that the ERPO Act was unconstitutional. **(*See* True Copy of August 15, 2015 "Attorney General Directive Pursuant to the Extreme Risk Protective Order Act of 2018" at Plaintiff's Complaint, "Exhibit C" at page2 17-18)**

Rather than take action to delay implementation of the ERPO Act for the legislature to correct the admittedly unconstitutional provisions, the AOC and Defendant Attorney General

issued ways to "construe" and "implement" the Act so as to make actions of State officials comport with required Constitutional Legal Standards.  However, such prophylactic measures are little more than changing the words and phrases in pre-printed forms from the unconstitutional "Good Cause" to the constitutional "Probable Cause" without any measures to actually assure, and to accurately document, that it is the separate heightened "Probable Cause" standard that is being met before the issuance of any Search Warrant in conjunction with a TERPO Order.  More importantly, only a New Jersey State Court sitting in a JUDICIAL CAPACITY after hearing and the building of a record (as opposed to summary Administrative Capacity) can properly direct and order state actors to disregard the literal text of a statute as passed by the State Legislature and Governor as an "Administrative Memo" from the New Jersy Judiciary has no such power as it would clearly violate the separation of powers doctrine.  *See Winberry v. Salisbury,* 5 *N.J.* 240, *cert.* denied 340 *U.S.* 877 (1950),

Moreover, the Defendant's defense that they will follow "MEMOS" and ignore the actual statute and therefore "use the unconstitutional statute responsibly" is no defense at all, as this claimed defense has been flatly rejected by the United States Supreme Court in similar circumstances.  As the Supreme Court stated in *United States v. Stevens*, 559 U.S. 460 (2010), the Federal Constitution  *… protects against the Government; it does not leave us at the mercy of **noblesse oblige**.*[3] *We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." United States v. Stevens*, *supra,* 559 U.S. at 479; *see also Whitman v. American Trucking Association, Inc.,* 531 *U.S.* 457 (2001); to the same effect is the Supreme Court's decision in *McDonnell v. United States*, 579 *U.S.* ___ (slip. op at page 23), 136 S. Ct. 2355, 2373–74 (2016) (noting that "we cannot construe a criminal statute on

---

[3]     French, literal translation is "nobility obligates".  The common meaning attributed to this phrase refers to the unwritten obligation of people from noble ancestry to act honorably and charitably and generously to others.

the assumption that the Government will 'use it responsibly'") (quoting *United States v. Stevens*, 559 U.S. 460, 480 (2010)  and *Lewis v. Alexander*, 685 *F.3d* 325, 341 (3d Cir. 2012) ("[T]o the extent the agency is pleading for a chance to interpret the statute more leniently than the statute's text might suggest, we question whether we can credit such an interpretation").

The ERPO Act as written, specifically *N.J.S.A.* 2C:58-26(b), is facially unconstitutional and violates the mandatory "probable cause" legal standard required for search warrants as found in the *United States Constitution's* Fourth Amendment and in Article I, paragraph 7 of the *New Jersey State Constitution* (1947).  The AOC agrees, and the Defendant Attorney General agrees - in writing.  (*See* **Plaintiff's Complaint, Exhibit B" and "Exhibit C").**  The ERPO Act, as applied, even with the so called prophylactic measures where law enforcement and judges are advised in a MEMO to disregard the literal text of the ERPO Act says, is still unconstitutional. *United States v. Stevens*, 559 U.S. 460 (2010).

Nevertheless, on September 5, 2019, 5 days after the EPRO Act went into effect, a "Petition for Temporary Extreme Risk Protective Order" was filed against Plaintiff (named in the Petition as the "Respondent") in the Gloucester Township, Camden County, New Jersey Municipal Court by an unknown and yet to be identified person, Defendant "John Doe #1", who anonymously identified themselves on the Petition only with the pseudonym(s) "*NEW JERSEY HOMELAND SECURITY*" and "*PDPACE2*".  (**A true copy of that Petition is attached hereto at "Exhibit D" to Plaintiff's Complaint).**  The actual form of Petition that was used was a new standard 3 page form issued by the New Jersey Administrative Office of the Courts pursuant to their "Directive #19-19".  The Petitioner was listed only as "NEW JERSEY HOMELAND SECURITY" with an address of "1200 Negron Drive, Hamilton, New Jersey  08691", and with no Home Phone Number listed and a Work Phone Number listed of (609) 584-5051.  The only

11

relationship to the Respondent listed was "PEPD-PETITIONER LAW ENFORCEMENT OFFICER".  No name on any actual person was listed anywhere on the Petition, nor was any signature of any person included.  All information was typed in.  On page 2 under the "Certification" section where there was a place for the petitioner to sign their name and certify to the truth of the contents of the Petition, the name "NEW JERSEY HOMELAND SECURITY" was typed in.  On page 3 where the petitioner was also required to sign their name, no signature is found and rather someone typed in "PAPACE2".  (**See Plaintiff's Complaint, "Exhibit D" at pages 2 and 3**).   The Petition was captioned "In the Matter of, DAVID M. GRECO, Respondent", and was assigned "Petition Number 0415 XTR 2019 000001, and stated verbatim on the first page as follows:

> I am the Petitioner named below.  I believe Respondent poses an immediate and present danger of causing bodily injury to the Petitioner, the Respondent, or others by owning, possessing, purchasing or receiving firearms and/or ammunition.  I ask the court to grant a Temporary Extreme Risk Protective Order to prohibit Respondent from owning, possessing, or acquiring firearms and/or ammunition, and to order surrender of firearms and/or ammunition to a law enforcement agency.

[*See* **Plaintiff's Complaint, "Exhibit D" at pages 1**].

On Page 2 of the Petition there is a short list of several (irrelevant) prior low level arrests and/or charges and/or convictions, followed by a section where the petitioner was directed to specifically "List any other information that may be relevant", where the Petition contains the following information - *by its terms all apparently hearsay information obtained from an unidentified person in the FBI* - added by the petitioner to the Petition as follows:

**INFORMATION WAS RECENTLY OBTAINED, THROUGH FBI CONTACTS, THAT DAVID GRECO IS INVOLVED IN ONLINE ANTI-SEMITISM.  GRECO WAS FOUND TO BE IN CONTACT WITH THE PITTSBURGH SYNAGOGUE SHOOTER, BEFORE THE MASS**

**SHOOTINGS IN BOTH OHIO AND EL PASO. PRECAUTIONS WERE TAKEN AND CONTACT WAS MADE WITH GRECO IN COORDINATION WITH THE FBI. OFFICERS REACHED OUT TO GRECO IN REGARDS TO RECENT POSTS IN THE SOCIAL MEDIA SIGE GAB.COM. ALL PREVIOUS SOCIAL MEDIA ACCOUNTS WERE BLOCKED DUE TO THE NATURE OF CONTENT. WHILE TALKING TO GRECO, HE APPEARED EXTREMELY INTELLIGNET TO OFFICER AND DID NOT MENTION ACTING ON ANY VIOLENT BEHAVIOR TOWARDS JEWS. HIS BEHAVIOR WAS METHODICAL AND FOCUSED ON FACTS, SPECIFICALLY FROM NAZI GERMANY. GRECO BELIEVES THAT FORCE OR VIOLENCE IS NECESSARY TO REALIGN SOCIETY. GRECO FREQUENTLY MENTIONED HIS DISDAINED (*sic*) FOR THE JEWISH TALMUD AND HOW HE BELIEVES THAT JEWS ARE RAPING OUR WOMEN AND CHILDREN.**

[*See* **Plaintiff's Complaint, "Exhibit D" at pages 2**].

Apparently some photocopies on information somehow claimed to have been "posted" by Plaintiff on the internet were included, and it was alleged that Plaintiff possessed a lawful handgun (identified as "H&K USP .40 - SERIAL #22070650), a rifle (identified as "NORINCO SKS 7.62 - SERIAL #22002894) and a valid New Jersey Firearms Purchaser ID Card. **(See Plaintiff's Complaint, "Exhibit D" at pages 2).** The "Certification" to the truth of the information contained in the Petition was not signed by anyone and rather the name "NEW JERSEY HOMELAND SECURITY" was simply typed in by Defendant "JOHN DOE #1". **(See Plaintiff's Complaint, "Exhibit D" at pages 2).** On Page 3 where the petitioner was supposed to sign again, Defendant "JOHN DOE #1" merely typed in "PDPACE2" (whatever that may mean). **(See Plaintiff's Complaint, "Exhibit D" at pages 3).**

No effort was made by any of the Defendants to give, or to try to give, Plaintiff any advance notice of the fact that this "Petition for Temporary Extreme Risk Protective Order" was being filed against him so that he could appear and be heard. Rather, this unsigned uncertified

document was submitted *ex parte* by "JOHN DOE #1" to the Gloucester Township Municipal Court at some unspecified time on the date of Thursday September 5, 2019.  The matter was brought before the Superior Court late on the afternoon of September 6 but the matter was so urgent in nature and Mr. Greco was such an imminent threat that it was held off and carried to the morning of September 6. At some time the next day Friday September 6, 2019, the Petition was presented to the Honorable Edward McBride, J.S.C. of the Superior Court of New Jersey, Law Division, Criminal Part (despite this ostensibly being a "Civil Proceeding") at the Camden County Court House in Camden, New Jersey for consideration.  No effort was made during the day of September 6 by any of the Defendants or the State Court to give, or to try to give, Plaintiff any advance notice of the fact that this "Petition for Temporary Extreme Risk Protective Order" was being filed against him so that he could appear and be heard.  Rather, the Petition was presented by Defendants Camden County Prosecutor's Office, Jill S. Mayer and Nevan Soumails, with no notice to Plaintiff in an *ex parte* manner.  At approximately 4:06 p.m. on September 6, 2019, Judge McBride "found "good cause" under 2C:58-23(f) and issued a "Temporary Extreme Risk Protective Order" ("TERPO") and, as required by *N.J.S.A.* 2C:58-26(b) also issued a "No Knock Search Warrant" using the new standard 5 page form for TERPO and required accompanying Search Warrant issued by the New Jersey Administrative Office of the Courts pursuant to their "Directive #19-19".  **(See True Copy of TERPO and SEARCH WARRANT attached to Plaintiff's Complaint at "Exhibit E").**  Immediately thereafter the 5 page TERPO and (NO-KNOCK) SEARCH WARRANT form was faxed to Defendants Gloucester Township Police Department who then responded to Plaintiff's home, detained Plaintiff, served him with the TERPO and (NO-KNOCK) SEARCH WARRANT, and then executed the (NO-KNOCK) SEARCH WARRANT  on Plaintiff's home.

Plaintiff then retained Counsel and this Federal lawsuit ensued.  Specifically Plaintiff filed a Verified Class Action Complaint and Jury Demand along with an application seeking a preliminary injunction by way of Order to Show Cause.  The Court entered the Order to Show Cause, and all parties were then promptly and properly served with the Summons and Complaint and injunction moving papers.  On November 20, 2019 the Court heard oral argument on the application for a Preliminary Injunction and reserved decision.  No decision has been handed down to date.  *See* Footnote 2, *supra.*

Plaintiff now moves under *F.R.Civ.P.* 23 for class certification and other associated forms of related class relief.

### LEGAL ARGUMENT:

### A.     PLAITNIFF'S MOTION FOR CLASS CERTIFICATION:

Plaintiff first moves for an Order certifying this matter as a Class Action. To this end, the *Manual for Complex Litigation* (Fourth), published by the Federal Judicial Center (2004) counsels that *F.R.Civ.P.* 23(c)(1) directs the court to determine "at an early practicable time" whether to certify an action as a class action, noting that "… [t]he 'early practicable time' is when the court has sufficient information to decide whether the action meets the certification criteria of *Rules* 23(a) and (b)."  *Id.* at §21.133 - Timing of the Certification Decision, page 252-253.  Despite Defendants not yet having filed their responsive pleadings, *see* Footnote 1, *supra.,* the reality is that the statue is indeed facially unconstitutional and the reality is that the only defense asserted to date (that they will follow an Administrative Judicial memo rather than the literal text of the actual law) is no legitimate defense at all.  *See Winberry v. Salisbury,* 5 *N.J.* 240, *cert.* denied 340 *U.S.* 877 (1950) and *United States v. Stevens*, 559 U.S. 460 (2010).

Therefore the claims are clear, and it is submitted that at this point the court clearly has sufficient information to decide whether the action meets the certification criteria of *Rules* 23(a) and (b).

Plaintiff proposes a 42 *U.S.C.* §1983 Class Action for which he seeks Nominal Damages, Compensatory Damages, Punitive Damages, Declaratory Relief and both Temporary and Permanent Injunctive Relief, as well as costs and attorneys fees under 42 *U.S.C.* §1988.  In this regard and more specifically, Plaintiff seeks an Order pursuant to *F.R.Civ.P.* 23(b)(3) certifying the matter as a "*Rule* 23(b)(3) Class Action" and specifically defining the "Certified Class" as follows:

> *Any person who has had a Temporary Extreme Risk Protection Order entered against them by the Superior Court of New Jersey under the authority of the "New Jersey Extreme Risk Protective Order Act of 2018", New Jersey Public Law 2018, Chapter 35, now codified at N.J.S.A. 2C:58-20 through -32, from the date of September 1, 2019 and on any date thereafter."*

A Plaintiff seeking to certify a class must satisfy each of the requirements of *Fed.R.Civ.P.* 23(a) and at least one of the three criteria for certification under *Rule* 23(b). *See Amchem Products, Inc. v. Windsor,* 521 *U.S.* 591, 614–15 (1997).

**1.    The Proposed Classes Satisfy the Requirements of *Rule* 23(a):**

A Plaintiff seeking class certification must meet four requirements under Rule 23(a): first, the class must be so numerous that joinder of all members would be impracticable; second, there must be questions of law or fact common to the class; third, the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and fourth the representative parties must fairly and adequately protect the interests of the class. *See Fed.R.Civ.P.* 23(a). As discussed below, the proposed classes meet these prerequisites—known respectively as numerosity, commonality, typicality, and adequacy.

16

## **Numerosity**

Rule 23(a)(1) requires that "… *the class [be] so numerous that joinder of all members is impracticable*." In determining class size, the exact number of potential members need not be shown.   *Joseph v. General Motors Corp.*, 109 *F.R.D.* 635, 639 (D. Colo. 1986).   However, classes have been certified with as few as 17 to 46 class members. *See Horn v. Associated Wholesale Grocers, Inc.,* 555 *F.2d* 270, 275-76 (10th Cir. 1977) (trial court erred in denying class certification on numerosity grounds where class consisted of between 41 and 46 persons). "Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Horn*, 555 *F.2d* at 276. There are a several factors that are relevant to the impracticability issue, including "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute."   *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.,* 765 *F.3d* 1205, 1215 (10th Cir. 2014) citing 7A Charles Alan Wright, Arthur R. Miller & Marry Kay Kane, Federal Practice and Procedure § 1762, at 206–07 (3d ed.2005); *see also Kohn v. Am. Housing Found., Inc.,* 178 *F.R.D.* 536, 540 (D. Colo. 1998) ("In determining whether joinder is impractical, the court looks at the size of the proposed class, the geographic dispersion of its members, and whether the members' names are easily ascertainable.");   *Yazzie v. Ray Vickers' Special Cars, Inc.,* 180 *F.R.D.* 411, 415 (D.N.M. 1998) ("In determining whether joinder is impractical, the court must consider such factors as the size of the proposed class, the geographic dispersion of class members, the nature of the action, the size of individual claims, judicial economy, the financial resources of class members and whether the class members' names are easily ascertainable."). To be impracticable does not mean that joinder must be impossible, but rather, that it would be difficult or inconvenient. *See Yazzie*, 180 *F.R.D.* at 415 ("To satisfy the

numerosity requirement, the plaintiff must show that joinder is impracticable, not impossible."). The proposed Classes satisfy the numerosity requirements for four reasons. First, the number of people in each Class is well beyond the number that other courts have found viable for certification. There are - based upon representations of statistics from the State - presumably well over 200 persons to date who have had *ex parte* TERPOs and search warrants issued against them.   Second, it would be practically impossible to join each putative class member to the action individually. By definition, Plaintiffs could not join the future stream of class members because their number changes every day as more TERPOs and search warrants are issued.  *See Abercrombie & Fitch Co.,* 765 *F.3d* at 1215 ("[T]he fact that the class includes unknown, unnamed future members also weighs in favor of certification.") (quoting *Pederson v. La. State Univ.*, 213 *F.3d* 858, 868 n.11 (5th Cir. 2000)); *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (finding impracticability of non-class joinder for a class including future members, who could not yet be identified); *Skinner v. Uphoff,* 209 *F.R.D.* 484, 488 (D. Wyo. 2002) (finding certification appropriate for class of current and future prisoners seeking injunctive relief because "[a]s members in futuro, they are necessarily unidentifiable, and therefore joinder is clearly impracticable").   Third, the vast majority of potential plaintiffs will lack the resources to bring separate 42 *U.S.C.* §1983 lawsuits in Federal or State Court as they are already defending TERPOs in State Court. *See Colorado Cross-Disability Coal. v. Taco Bell Corp.,* 184 *F.R.D.* 354, 359 (D. Colo. 1999) (finding joinder impracticable where many class members could not afford to bring individual actions); *Jackson v. Foley*, 156 *F.R.D.* 538, 541–42 (E.D.N.Y. 1994) (finding joinder impracticable where the majority of class members came from low-income households, greatly decreasing their ability to bring individual lawsuits); *Sherman v. Griepentrog,* 775 *F. Supp.* 1383, 1389 (D. Nev. 1991) (finding joinder impracticable because the

proposed class consisted of poor, elderly, and disabled plaintiffs who could not bring individual lawsuits without hardship). Fourth and finally, adjudicating this case through individual lawsuits against Defendants would strain judicial resources. Separate lawsuits would result in duplicative discovery (including numerous depositions of the same officials and repetitive production of documents), repeated adjudication of similar controversies in this Court (with the resultant risk of inconsistent judgments), and excessive costs for everyone involved. *See Harlow v. Sprint Nextel Corp.*, 254 *F.R.D.* 418, 423 (D. Kan. 2008)

## Commonality

The second *Rule* 23(a) requirement is that "*… there [be] questions of law or fact common to the class.*" *Fed.R.Civ.P.* 23(a)(2). *Rule* 23(a)(2) "… requires only a single question of law or fact common to the entire class." *D.G. ex rel. Stricklin v. Devaughn*, 594 *F.3d* 1188, 1195 (10th Cir. 2010); *J.B. ex rel. Hart v. Valdez*, 186 *F.3d* 1280, 1288 (10th Cir. 1999). The threshold for this requirement is usually satisfied when it can be demonstrated that class members have suffered similar injuries. *See Wal-Mart Stores v. Dukes,* 564 U.S. 338, 349–50 (2011) (commonality requires common factual or legal questions that "generate common answers apt to drive the resolution of the litigation" (emphasis omitted)). Commonality is generally satisfied where, as in this case, "the lawsuit challenges a systemwide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 *F.3d* 849, 868 (9th Cir. 2001); *see also Adamson v. Bowen*, 855 *F.2d* 668, 676 (10th Cir. 1988) ("That the claims of individual putative class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy."); *Milonas v. Williams*, 691 *F.2d* 931, 938 (10th Cir. 1982) (holding that common issue of law concerning legality of Defendant's practices overrode factual differences among class members); *Stricklin*, 594 *F.3d*

1188 ("Factual differences between class members' claims do not defeat certification where common questions of law exist."). The commonality requirement does not demand that all questions of law or fact at issue be common, it only requires that significant common issues of law or fact exist. *Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.,* 183 *F.R.D.* 687, 691 (D. Colo. 1998);   Even "factual differences in the claims of the individual putative class members should not result in a denial of class certification where common questions of law exist." *In re Intelcom Group Sec. Litig.*, 169 *F.R.D.* 142, 148 (D. Colo. 1996). The commonality requirement is satisfied here because the legal and factual questions arising from Defendants' procedures and practices do not vary from one Class member to the next. *See Adamson*, 855 F.2d at 676 (application of common policy to all class members suffices to meet commonality requirement). Defendants enforce the facially unconstiotutional ERPO Act in a routine and consistent way, despite knowing they are acting unlawfully, and all Class members were (and future Class Members will be) similarly subjected to Defendants' policies and procedures. And although different members may have entered the system through different factual contexts and suffered different degrees of harm, that does not diminish the commonality among them with respect to the uniform policies and practices applied to them.

<u>**Typicality**</u>

"[T]ypicality exists where . . . all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *Stricklin*, 594 *F.3d* at 1199; *see also Adamson* 855 *F.2d* at 676 ("[D]iffering fact situations of class members do not defeat typicality under *Rule* 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory."); *Penn v. San Juan Hospital, Inc.*, 528 *F.2d* 1181, 1189 (10th Cir. 1975) ("It is to be recognized that there may be varying fact

situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory."). Here, the named Plaintiff's claims are typical of - indeed identical to - the claims of the members of the proposed Classes, and Plaintiff has the same interests in this case as all other members of the Class that he represents. Each of them suffered injuries from the failure of the Defendants to comply with the basic constitutional provisions detailed herein. If the named Plaintiff succeeds in his claim that the Defendants' policies and practices concerning issuance of TERPOs and search warrants violates the Federal and State Constitutions in the ways alleged in the Complaint, then that ruling will likewise benefit every other member of the Class. In sum, because the named Plaintiff suffered from the same scheme that has harmed and continues to harm other members of the proposed classes, and because his legal arguments and claims for relief are the same as those of his classmates, Plaintiff satisfies the typicality requirement of *Rule* 23(a)(3). If he succeeds in his claims that Defendants' policies and practices violate the Federal and State Constitutions as alleged in the Complaint, that ruling will likewise benefit every other member of the Class. That is the essence of *Rule* 23 typicality.

## Adequacy

Finally, it is clear that the Class representatives will "… *fairly and adequately protect the interests of the class*," as required by *Rule* 23(a)(4). The adequacy analysis encompasses two separate inquiries: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Willbanks Corp. v. Shell Oil Co.,* 314 *F.3d* 1180, 1187-88 (10th Cir. 2002). The named Plaintiff is an adequate representative because he shares his classmates' interests in establishing the illegality of Defendants' policies and practices

21

concerning issuing search warrants on a legal standard of less than probable cause.  Plaintiff is a member of the class he represents. His injuries arise from policies that all class members were subjected to and that future class members will be subject to, and his legal challenges to Defendants' policies are shared among the members of this classes. There are no known or contemplated material conflicts of interest between plaintiff and the members of the class or any foreseeable conflicts between the contemplated members of the proposed classes, all of whom have a similar interest in vindicating their constitutional rights in the face of their similar unlawful treatment. The Plaintiff and proposed class are represented by attorneys who are "qualified, experienced and able to vigorously conduct the proposed litigation." *In re Ribozyme Pharm., Inc. Sec. Litig.,* 192 F.R.D. 656, 659 (D. Colo. 2000). Plaintiff is represented by Albert J. Rescinio, Esq., a 30 year attorney with experience litigating similar civil rights in state and federal courts.   *See* Declaration of Albert J. Rescinio, Esq. dated January 7, 2020 submitted herewith.  Mr. Rescinio's efforts with regard to this litigation have so far included extensive investigation of the legislative history of the ERPO Act, research into other so-called "Red Flag" laws that have been enacted in other states, and hours of extensive research on the main and ancillary issues in this case.   Indeed, while credible information indicates that several hundred people today have had TERPOs and search warrants entered against them illegally, Mr. Rescinio is the only attorney so far to actually bring a case challenging the constitutionality and validity of the ERPO Act.

  **2.**  <u>**The Proposed Class Satisfies the Requirements of *Rule* 23(b)**</u>

  In addition to the threshold requirements of *Rule* 23(a), Plaintiffs must also demonstrate that the proposed class action fits within one of the categories described in *Rule* 23(b). *In re*

*Motor Fuel Temperature Sales Practices Litig.,* 271 *F.R.D.* 221, 224 (D. Kan. 2010). For the reasons discussed below, the Class satisfies *Rule* 23(b)(3).

First, plaintiffs must show that Defendants' actions or inactions are based on "grounds generally applicable to all class members." *Shook v. El Paso Cty.,* 386 *F.3d* 963, 971 (10th Cir. 2004). Second, plaintiffs must demonstrate that the requested injunctive relief is "appropriate for the class as a whole." *Id.* Together, the requirements demand "cohesiveness" among class members with respect to their injuries such that (1) the requested injunction will satisfy the requirements of *Rule* 65(d); and (2) class members' injuries are sufficiently similar that they can be remedied in a single injunction without differentiating among class members. *See Stricklin,* 594 *F.3d* at 1199–1200.   *Rule* 23(b)(2) is "… well suited for cases where the composition of a class is not readily ascertainable; for instance, in a case where the plaintiffs attempt to bring suit on behalf of a shifting prison population." *Shook*, 386 *F.3d* at 972. Indeed, the Advisory Committee Notes to the 1966 amendment to Rule 23 demonstrate that subsection (b)(2) was intended to reach precisely the type of class proposed in this case: "Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration."  The declaratory and injunctive relief sought satisfy *Rule* 23(b)(2) because Defendants, through the policies, practices, and procedures that make up their application of the ERPO Act, have acted and/or refused to act on grounds generally applicable to the Class.

Thus, a declaration that the policy, pattern, and practice of routinely issuing search warrants on a "good cause" legal standard rather than the constitutionally required "probable cause" standard would benefit every member of the proposed Classes.   *Rule* 23(b)(2) arose out of experience "in the civil rights field," *Amchem*, 521 U.S. at 614 (quoting Benjamin Kaplan,

*Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure*, 81 *Harv.L.Rev.* 356, 389 (1967)), in which the government typically treats a whole class in an unconstitutional manner based on law or government policy. "*Rule* 23(b)(2) was drafted in significant measure to enable civil rights class actions." *Shook*, 543 *F.3d* at 610; *see also Moore's Federal Practice* § 23.43. This category is typically employed in civil rights cases and other actions not primarily seeking money damages. The (b)(2) class action is often referred to as a 'civil rights' or 'injunctive' class suit.".   Moreover, Plaintiffs' request for relief satisfies 23(b)(2) because the remedy they seek would provide relief to all current and future Class Members.  Having already met the threshold requirements of Rule 23(a), the Class fulfills all the prerequisites for certification.

**B.**    **PLAINTIFF'S MOTION FOR APPOINTMENTOF PLAINTIFF DAVID GRECO AS CLASS REPRESENTATIVE:**

The District Court Judge must appoint one or more persons to serve as "Representative" of the Class.   Here it is proposed that Plaintiff David Greco be preliminarily appointed as Representative of the "Class" as defined.    In this regard, it is clear that the law

> … does not necessarily require legal experience or expertise on the part of the representative, who is usually a layperson.  No particular level of education or sophistication is required.  In all cases, the representatives must be free of conflicts and must represent the class adequately throughout the litigation.  The judge must ensure that the representatives understand their responsibility to remain free of conflicts and to vigorously pursue the litigation in the interests of the class, including subjecting themselves to discovery.

[*See Manual for Complex Litigation* (Fourth), published by the Federal Judicial Center (2004), at §21.26 - Appointment of the Class Representatives, page 277].

Plaintiff submits that based upon the information in the Declaration of Plaintiff David Greco that he clearly qualifies, meets all of the requisite criteria, and therefore should be appointed by this court as "Class Representative."

## C. PLAITNIFF'S MOTION FOR APPOINTMENT OF ALBERT J. RESCINIO, ESQ. AS CLASS COUNSEL:

Plaintiff is also moving for the appointment of Albert J. Rescinio, Esq. as lead class counsel.  To this end, *Rule* 23(c)(1)(B) and 23(g) recognize that the certification decision and order required judicial appointment of counsel for the class. The judge must ensure that the lawyer seeking appointment as class counsel will fairly and adequately represent the interests of the class.  *Rule* 23(g)(1)(B).  In many cases the lawyer who filed the initial suit will be the obvious and only choice to be appointed counsel for the class. In such cases, the judge's task is to determine whether the applicant is able to provide adequate representation for the class in light of the *Rule* 23(g) factors.[4]  It is submitted that based upon the facts contained in the Declaration of Albert J. Rescinio, Esq. submitted herewith that Mr. Rescinio qualifies as class counsel as satisfying the *Rule* 23(g) factors and as there is no question that Mr. Rescinio, with 30 years experience, is and will be more than able to provide adequate representation for the class in this matter.

---

[4]     *F.R.Civ.P.* 23(g) provides as follows:

> (g) CLASS COUNSEL.
>    (1) *Appointing Class Counsel.* Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>    (A) must consider:
>    (i) the work counsel has done in identifying or investigating potential claims in the action;
>    (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>    (iii) counsel's knowledge of the applicable law; and
>    (iv) the resources that counsel will commit to representing the class;
>    (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
>    (C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;
>    (D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and
>    (E) may make further orders in connection with the appointment.

**D.**   **PLAINTIFF'S MOTION FOR APPROVAL OF THE FORM OF THE INITIAL NOTICE TO THE CLASS OF THE PENDENCY OF THIS CLASS ACTION:**

Plaintiff also moves for approval of the form of the actual initial notice to the class of the pendency of this class action and approval of the plan for providing notice of the pendency of this class notice.   Plaintiff asserts that both his proposed class notice and his proposed plan of notice should be approved because they meet the *Rule* 23(c)(2)(B) requirements that apply to class actions certified under *Rule* 23(b)(3) and comports with due process in "providing the requisite information about the lawsuit and class members' rights to exclude themselves from this proceeding."

*Rule* 23(c)(2)(B) governs class notice for classes certified under Rule 23(b)(3), and is applicable here.   *Rule* 23(c)(2)(B) provides that:

> … [f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances . . . . The notice must clearly and concisely state in plain, easily understood language:
>> (i) the nature of the action;
>> (ii) the definition of the class certified;
>> (iii) the class claims, issues, or defenses;
>> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>> (v) that the court will exclude from the class any member who requests exclusion;
>> (vi) the time and manner for requesting exclusion; and
>> (vii) the binding effect of a class judgment on members under *Rule* 23(c)(3).

[*Fed. R. Civ. P.* 23(c)(2)(B)].

In order to help courts comply with the requirements of Rule 23(c)(2)(B), the "… Federal Judicial Center has created illustrative clear-notice forms that provide a helpful starting point for actions similar to those described in the forms."   *Fed.R.Civ.P.* 23(c) advisory committee's note. Here, Plaintiff's notice was drafted based upon the Federal Judicial Center's notice forms and

26

with specific reliance and reference to the Federal Judicial Center's "Checklist", a copy of which is attached to the Declaration of Albert J. Rescinio, Esq. dated January 7, 2020 at "Exhibit A". Plaintiff's specific forms of proposed initial class notice are attached to the Declaration of Albert J. Rescinio, Esq. dated January 7, 2020 at "Exhibit B" and "Exhibit C". It is submitted that this initial notice is clear and concise and provides the information required by Rule 23(c)(2)(B). Moreover, the initial notice is completely neutral on the merits of the case as any initial notice must be neutral and must avoid endorsing the merits of the claim. *See Hoffman La–Roche v. Sperling*, 493 *U.S.* 165, 173 (1989) ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality."). As such, it is respectfully requested that the Court approve this form of initial notice to the class of the pendency of this action.

**E.**     **PLAINTIFF'S MOTION FOR APPROVAL OF THE PLAN FOR PROVIDING NOTICE OF THE PENDENCY OF THIS CLASS ACTION:**

Plaintiffs actual "Plan for Providing Notice of the Pendency of this Class Action" is attached to the Declaration of Albert J. Rescinio, Esq. dated January 3, 2020 at "Exhibit D".

Often generally defining the membership of a Class is easier than actually physically locating and notifying them of the pendency of a class action they may want to participate in. This case is the odd exception. Here that will not be an issue because certain aspects of the ERPO Act which mandate record collection will actually will make it easy to specifically locate those individuals who have been harmed by application of this unconstitutional law and are therefore members of the class. This is because the ERPO Act literally requires the State of New Jersey to compile and has kept a confidential and secrete electronic database of all individuals who have had a TERPO or FERPO entered against them under the ERPO Act. Specifically, *N.J.S.A.* 2C:58-30 requires that the New Jersey Administrative Office of the Courts shall keep an

electronic central registry which "… *shall include all persons who have had a final extreme risk*

*protective order entered against them …* " and also shall include "… *all persons who have been*

*charged with a violation of a temporary or final extreme risk protective order …*". *Id.*  While

the law does not require the keeping of records of those who a Petition was filed but no TERPO

was entered, this is of no moment as it is the issuance of the TERPO and the mandatory

accompanying search warrant based upon the "good cause" legal standard that makes the ERPO

Act facially and fatally unconstitutional.  Otherwise stated, the mere bringing of a Civil Petition

***seeking a TERPO*** does not violate the Federal or State Constitutions (nor does Plaintiff claim

that it does), but rather it is ***the actual issuance of a TERPO*** with the mandatory accompanying

search warrant on the statutory "good cause" legal standard that renders the ERPO Act facially

and fatally unconstitutional.  And the Class is therefore defined accordingly.  More importantly,

this central electronic database will have indeed have the name and address and other contact

information for anyone who has had a TERPO issued against them since September 1, 2019.

And this is the specific universe of people who make up the Class, which makes all members

easily identifiable and easy to contact.

**F.      PLAINTIFF'S MOTION FOR AN ORDER COMMENCING FORMAL NOTICE
         TO CLASS MEMBERS:**

Lastly Plaintiff seeks an Order directing that Notice of the pendency of this Class Action

shall be commenced immediately in accordance with the approved Plan.

**<u>CONCLUSION:</u>**

For the reasons previously stated and for the foregoing reasons, it is requested that the

relief court requested by the Plaintiff herein be granted.


**Respectfully submitted,**

**s/ *Albert Rescinio***

**ALBERT J. RESCINIO, ESQ.**