**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE**

| | |
|---|---|
| DAVID M. GRECO,<br><br>                    Plaintiff,<br><br>        v.<br><br>GURBIR S. GREWAL, ET AL.,<br><br>                    Defendants. | Civil Action No.  3:19-CV-19145 |

**DEFENDANTS GLOUCESTER TOWNSHIP POLICE DEPARTMENT,
BERNARD JOHN DOUGHERTY, NICHOLAS C. AUMENDO, DONALD
B. GANSKY, WILLIAM DANIEL RAPP AND BRIAN ANTHONY
TURCHI BRIEF IN SUPPORT OF MOTION TO DISMISS**

ARCHER & GREINER
A Professional Corporation
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033-0968
(856) 795-2121

*Attorneys for Defendants,
Gloucester Township Police Department, Bernard
John Dougherty, Nicholas C. Aumendo, Donald B.
Gansky, William Daniel Rapp and Brian Anthony
Turchi*

BY:   VINCENT P. SARUBBI, ESQ.
        KERRI E. CHEWNING, ESQ.
        DANIEL J. DEFIGLIO, ESQ.

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................. ii

I.   INTRODUCTION ...................................................................................... 1

II.  PROCEDURAL HISTORY AND STATEMENT OF FACTS ........................... 2

III. ARGUMENT ............................................................................................ 6

   A.   Standard of Review................................................................................ 6

   B.   Plaintiff Cannot Maintain a Claim against the GTPD. ............................ 8

      1.   The GTPD is not a "person" under Section 1983. ........................... 8

      2.   Plaintiff Has Not Identified Any "Policy" Or "Custom" That violated Plaintiffs' Rights. ............................................................................ 9

   C.   The Officers are entitled to Qualified Immunity. ................................ 12

      1.   Standard for Qualified Immunity ................................................. 12

      2.   Plaintiff Cannot Allege a Plausible Fourth Amendment Violation. ............................. 14

      3.   The Officers Are Qualifiedly Immune From Plaintiff's First Amendment And Second Amendment Claims. ........................................ 21

         a.   Second Amendment (Count Two). .......................................... 21

         b.   First Amendment (Count Three). ............................................ 23

   D.   Further Amendment as to the GTPD Defendants would be Futile.................. 26

IV.  CONCLUSION ....................................................................................... 27

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alvin v. Suzuki*,
227 F.3d 107 (3d Cir. 2000) ....................................................................................26

*Armstrong v. Asselin*,
734 F.3d 984 (9th Cir. 2013) ..............................................................................16, 17

*Armstrong v. F.A.A.*,
296 F. App'x 88 (D.C. Cir. 2008) ...........................................................................25

*Ashcroft v. al-Kidd*,
563 U.S. ..............................................................................................14, 17, 18, 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................6

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007) .....................................................................................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 555 (2007) .....................................................................................6, 7

*Benham v. Borough of Highland Park*,
79 F. Supp. 3d 513 (D.N.J. 2015) ............................................................................9

*Bielevicz v. Dubinon*,
915 F.2d 845 (3d Cir.1990) ......................................................................................9

*Blackhawk v. Commonwealth of Pennsylvania*,
381 F.3d 202 (3d Cir.2004) ....................................................................................19

*Briggs v. Moore*, No. CIV. 05-1906 (SRC), 2005 WL 1076059, at *4 (D.N.J. May 5,
2005), *aff'd*, 251 F. App'x 77, 79 (3d Cir. 2007) ..................................................8

*City of Canton v. Harris*,
489 U.S. 378 (1989) .................................................................................................9

*Cnty. of Hudson v. Janiszewski*,
351 Fed.Appx. 662 (3d Cir. 2009) .........................................................................26

*Coleman v. Snowden*,
No. CV 15-4270 (FLW), 2016 WL 1628880 (D.N.J. Apr. 25, 2016) ....................11

*Curay-Cramer v. Ursuline Acad. of Wilmington Del., Inc.*,
    450 F.3d 130 (3d Cir. 2006)............................................................................7

*Curley v. Klem*,
    499 F.3d 199 (3d Cir. 2007)..........................................................................13

*Davenport v. Borough of Homestead*,
    870 F.3d 273 (3d Cir. 2017)....................................................................13, 14

*District of Columbia v. Heller*,
    554 U.S. 570 (2008).........................................................................21, 22, 23

*Duran v. Merline*,
    923 F. Supp. 2d 702 (D.N.J. 2013) ................................................................12

*Egolf v. Witmer*,
    421 F. Supp. 2d 858 (E.D. Pa. 2006), *aff'd,* 526 F.3d 104 (3d Cir. 2008)..............................19

*Evans v. Gloucester Twp.*,
    124 F. Supp. 3d 340 (D.N.J. 2015) ................................................................12

*Fairview Ritz Corp. v. Borough of Fairview*,
    No. CIV.A. 9-875 JLL, 2013 WL 5946986 (D.N.J. Nov. 6, 2013) .........................................10

*Fiore v. City of Bethlehem*,
    510 F. App'x 215 (3d Cir. 2013) ..............................................................15, 17

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)............................................................................7

*Gaymon v. Esposito*,
    No. CIV.A. 11-4170 JLL, 2013 WL 4446973 (D.N.J. Aug. 16, 2013) ...................................10

*GJJM Enterprises, LLC v. City of Atl. City*,
    352 F. Supp. 3d 402 (D.N.J. 2018) ................................................................24

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)..............................................................................12, 13

*Iudici v. Passaic Cty. Sheriff's Dep't*,
    No. 12-CV-3466, 2018 WL 3000332 (D.N.J. June 15, 2018).................................................11

*Kelly v. Borough of Carlisle*,
    622 F.3d 248 (3d Cir. 2010)............................................................................15

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty
    Abuse–Wisconsin, Inc.*,
    991 F.2d 1249 (7th Cir.1993) ....................................................................25, 26

*Lopez-Siguenza v. Roddy*,
   2014 U.S. Dist. LEXIS 43238 (D.N.J. Mar. 31, 2014).........................................26

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010)............................................................................21, 22

*Estate of McKloskey v. Twp.*,
   2017 WL 2600456 (D.N.J. June 15, 2017) ...........................................27

*Messerschmidt v. Millender*,
   565 U.S. 535 (2012)....................................................................15, 16, 17

*Michigan v. DeFillippo*,
   443 U.S. 31 (1979)...........................................................................19

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985)..........................................................................13

*Monell v. Department of Social Sers.*,
   436 U.S. 658 (1978)....................................................................9, 10, 11

*Mullenix v. Luna*,
   136 S. Ct. 305 (2015)........................................................................14

*Pierner-Lytge v. Mitchell*,
   412 F. Supp. 3d 1012 (E.D. Wis. 2019)...................................................22

*Reed v. Town of Gilbert, Ariz.*,
   135 S. Ct. 2218 (2015)......................................................................24

*Rivera v. Zwiegle*,
   No. CIV 13-3024 KM MAR, 2014 WL 6991954 (D.N.J. Dec. 9, 2014) ................8

*Saucier v. Katz*,
   533 U.S. 194 (2001)..................................................................13, 14, 26

*Schaeffer v. Egg Harbor Twp.*,
   No. CIV. 07-5022 RMB, 2008 WL 1925306 (D.N.J. Apr. 30, 2008) .....................9

*Schlaflin v. Borowsky*,
   128 F. App'x 258 (3d Cir. 2005) ................................................18, 20, 24

*Schlaflin v. Borowsky*,
   2004 WL 5562040 (D.N.J. June 8, 2004) ...............................................20

*Sharrar v. Felsing*,
   128 F.3d 810(3d Cir. 1997).................................................................12

*Sines v. Kessler*,
  324 F. Supp. 3d 765 (W.D. Va. 2018) ...................................................................25

*Smart v. Twp. of Winslow*,
  No. 13CV4690 RMB, 2015 WL 5455643 (D.N.J. Sept. 16, 2015)........................10

*Stewart v. City of Atl. Police Dep't*,
  No. CIV. 14-4700 NLH, 2015 WL 1034524 (D.N.J. Mar. 10, 2015) ......................8

*Torres v. Goddard*,
  194 F. Supp. 3d 886 (D. Ariz. 2016) ...............................................................16, 18

*United States v. Fullmer*,
  584 F.3d 132 (3d Cir. 2009)..................................................................................25

*United States v. Leon*,
  468 U.S. 897 (1984) ..............................................................................................15

*West v. City of Jersey City Police Dep't*,
  No. CIV. A. 09-2836 DRD, 2009 WL 2016221 (D.N.J. July 7, 2009) ...................8

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989)..................................................................................................8

*Wisconsin v. Mitchell*,
  508 U.S. 476 (1993)..............................................................................................25

**State Cases**

*State v. Hemenway*,
  239 N.J. 111 (2019) (Complaint ) .........................................................................18

**Federal Statutes**

42 U.S.C.A. § 1983 .......................................................................................... *passim*

739 F. App'x 392 (9th Cir. 2018) ...............................................................................16

**State Statutes**

New Jersey Extreme Risk Protective Order Act of 2018, n. J ............................. *passim*

N.J.S.A. 2C:33-4d ................................................................................................18, 20

N.J.S.A. 2C:58-23 .........................................................................................................4

N.J.S.A. 2C:58-24 .........................................................................................................5

N.J.S.A. 40A:14–118 ....................................................................................................8

v

Stat. Ann. §§ 2C:58-20 *et seq.* ....................................................................................................1

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................6

**Constitutional Provisions**

First Amendment ....................................................................................... *passim*

Second Amendment...........................................................................................21, 22

Fourth Amendment ................................................................................5, 14, 15, 16

Fourteenth Amendment ...............................................................................5, 21

**Other Authorities**

Martin A. Schwartz, *Fed. Judicial Center, Section 1983 Litigation 94* (3d ed. 2014) ...........................................................................................................12

## I.     INTRODUCTION

Plaintiff David Greco seeks to hold Defendants, Gloucester Township Police Department ("GTPD") and Gloucester Township Police Officers, Bernard John Dougherty, Nicholas C. Aumendo, Donald B. Gansky, William Daniel Rapp and Brian Anthony Turchi ("the Officers") (collectively "the Gloucester Township Defendants") responsible for the constitutionality of a law they did not write.

However, the statute – the New Jersey Extreme Risk Protective Order Act of 2018 (the "ERPO Act"), N.J. Stat. Ann. §§ 2C:58-20 *et seq.* – is facially valid, and therefore, any actions by the Gloucester Township Defendants in furtherance of its objectives are shielded from suit and liability.

However, even assuming this was an open question, the claims against the Gloucester Township Defendants still fail for a several reasons. First, the GTPD is not a "person" subject to liability under 42 U.S.C.A. §1983.  And, even if it could be, Plaintiff has not identified any "policy" or "custom" which is alleged to have violated Plaintiffs' constitutional rights.  The Complaint as to the GTPD is therefore facially deficient and must be dismissed.

Second, as to the Officers, Plaintiff's Complaint alleges that the Officers served and executed a warrant that was signed and approved by a Judge of the Superior Court of New Jersey.  The Officers are thus entitled to judicial and

qualified immunity, and no facts alleged can serve as a basis for subjecting the Officers to suit under any Constitutional provision.

Thus, for all the reasons discussed herein, the Gloucester Township Defendants respectfully request that Plaintiff's Complaint with prejudice, in its entirety as to all claims against them.

## II.   PROCEDURAL HISTORY AND STATEMENT OF FACTS

The Gloucester Township Defendants repeat and incorporate the Procedural History and Statement of Facts set forth in the brief of co-defendants Gurbir S. Grewel, Jared M. Maples, the New Jersey Office of Homeland Security and Preparedness, Jill S. Mayer, and Nevan Soumalis (the "State Defendants") as if set forth at length herein.  The Gloucester Township Defendants add the following by way of supplementation.

Filed on October 21, 2019, Plaintiff's Verified Complaint asserts three causes of action arising out of the procurement and execution of a no-knock search warrant in September 2019.  (Complaint ¶¶53-71).[1]

Plaintiff's Complaint collectively identifies the Gloucester Township Defendants as one of several governmental entities. (Complaint ¶¶3-17). These entities include:

---

[1] The following factual recitation is taken from Plaintiff's Complaint.

1. Gurbir S. Grewal, in his official capacity as the New Jersey Attorney General (Complaint ¶4);

2. Jared M. Maples, in his official capacity as the Director of the New Jersey Office of Homeland Security (Complaint ¶5);

3. The New Jersey Office of Homeland Security and Preparedness (Complaint ¶6);

4. Jill S. Mayern, in her official capacity as the Camden County Prosecutor (Complaint ¶8);

5. Nevan Soumails, in her official capacity as an Assistant Camden County Prosecutor (Complaint ¶9);

6. The Gloucester Township Defendants (Complaint ¶¶10-15); and

7. Jane Doe(s) (Complaint ¶¶16-17).

According to Plaintiff's Verified Complaint, on September 5, 2019, an entity named "New Jersey Homeland Security" filed a "Petition of Temporary Extreme Risk Protective Order" against Plaintiff in Gloucester Township captioned "In the Matter of, DAVID M. GRECO, Respondent." (Complaint ¶41, 45).

The petition reported that "information was recently obtained, through FBI contacts, that [Plaintiff] is involved in online anti-Semitism" and had been "in contact with the Pittsburgh synagogue shooter." It also reported that Plaintiff "believes that force or violence is necessary to realign society" and has "frequently mentioned his disdained [sic] for the Jewish Talmud and how he believes that Jews are raping our women and children." (Complaint ¶46-47, Ex. D).

The Petition attached to Plaintiff's Complaint also notes that it was supported by documentation, including "copies of social media posts from

'GAB.COM,'" video of an interview taken on August 5, 2019, and "reports from [the] FBI and GTPD." (Complaint ¶46-47, Ex. D).[2]

The following day, September 6, 2019, "the Petition was presented to the Honorable Edward McBride, J.S.C of the Superior Court of New Jersey, Law Division, Criminal Part" by Defendants CCPO, Mayer and Soumails. (Complaint ¶50).  Following consideration of evidence, Judge McBride found "probable cause to believe that (1) [Plaintiff] owns or possesses firearms or ammunition . . . (2) [Plaintiff] poses an immediate and present danger of bodily injury to self or others by owning or possessing any firearms or ammunition, and (3) such firearms or ammunition are presently" at the Plaintiff's home. (Complaint ¶51, Ex. E).  Based upon these findings, Judge McBride signed a Temporary Extreme Risk Protective Order under N.J.S.A. 2C:58-23 and issued a no-knock search warrant for the retrieval of Plaintiff's firearms.  (*Id.*)

Plaintiff alleges that "[i]mmediately" after Judge McBride signed the TERPO and search warrant, the documents were sent to the Officers.  (Complaint ¶53). Plaintiff then alleges the Officers "detained him and served him with the TERPO and search warrant and then executed on the warrant at his home. (*Id.*) During the search, the Gloucester Township Defendants recovered "(1) Plaintiffs

---

[2] Copies of those additional documents have not been attached to Plaintiff's Complaint.

valid New Jersey Firearms Purchaser ID Card, (2) Plaintiff's legal rifle (identified as "NORINCO SKS 7.62 SERIAL #22002894), and (3) legal ammunition for the legal rifle."

Plaintiff filed this Complaint 45 days after his weapon was seized under authority of Judge McBride's Order, or, 40 days *after* the original date set for the post-deprivation hearing mandated by the ERPO Act. *See* N.J.S.A. 2C:58-24. Indeed, but for repeated adjournment requests, Plaintiff's final restraining hearing under the ERPO Act – providing Plaintiff a full opportunity to reclaim his weapon – would have been held on September 11, 2019.

In any event, Plaintiff's Complaint asserts three constitutional causes of action arising from that seizure of his weapons. First, Plaintiff asserts that the ERPO Act violates the Fourth Amendment because it is "facially unconstitutional." More specifically, Plaintiff alleges that the ERPO Act is unconstitutional because it "not only permits the State to obtain but actually requires and mandates that a Court issue a Search Warrant based upon [sic] on the much lesser 'good cause' legal standard." (Plaintiff's Complaint  ¶63).

Second, Plaintiff asserts that Defendants violated his Second and Fourteenth Amendment rights because they "interfered with and violated" his fundamental right to own a firearm by "enter[ing] his home with a Search Warrant" purportedly

issued on "good cause" as opposed to "probable cause." (Plaintiff's Complaint ¶68).

Third, Plaintiff asserts that he has a "right to exercise his right to freedom of opinion and speech without interference or retaliation" and that the "ERPO Act and the actions of the Defendants, as applied, violated and continue to violate Plaintiff's fundamental First Amendment, rights." (Complaint ¶70-71).

The Gloucester Township Defendants now move to dismiss Plaintiff's Verified Complaint under Fed. R. Civ. P. 12(b)(6).

## III.   ARGUMENT

### A.   Standard of Review

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain more than "an unadorned, 'the-defendant-unlawfully-harmed-me accusation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A motion to dismiss will thus be granted if a plaintiff, as here, has not articulated enough facts "to raise a right to relief above the speculative level," as to any particular defendant. *Twombly*, 550 U.S. 544, 555 (2007). Allegations of mere "labels and conclusions, and a formulaic recitation of the

elements of a cause of action" will not suffice to save a complaint from dismissal. *Id.* Similarly, a Court is not "compelled to accept ... 'a legal conclusion couched as a factual allegation.'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

In evaluating the sufficiency of a complaint, the Court "may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Court may also disregard "the non-movant's . . . unreasonable factual inferences." *Curay-Cramer v. Ursuline Acad. of Wilmington Del., Inc*., 450 F.3d 130, 133 (3d Cir. 2006) (internal citations omitted).

Here, Plaintiff's claims against the Gloucester Township Defendants fail for at least two reasons. First, the GTPD is not a "person" subject to liability under 42 U.S.C.A. §1983. And, even if it could be, Plaintiff has not identified any "policy" or "custom" which is alleged to have violated Plaintiffs' constitutional rights. Second, the Officers are entitled to qualified immunity. Thus, for all the reasons discussed herein, the Gloucester Township Defendants request Plaintiff's claims against them be dismissed, with prejudice. [3]

---

[3] In addition to the foregoing, the Gloucester Township Defendants also repeat and incorporate the legal argument set forth in Point 1 of the State Defendants' brief as if set forth more fully herein and respectfully request this Court abstain from considering this case.

**B.     Plaintiff Cannot Maintain a Claim against the GTPD.**

**1.     The GTPD is not a "person" under Section 1983.**

The Gloucester Township Police Department is not a "person" subject to liability under § 1983. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58 (1989); *accord* 42 U.S.C. § 1983 (applying, in relevant part, to "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State"). Indeed, as has been universally recognized in this District, because New Jersey police departments, like the Gloucester Township Police Department, are not independent entities with the capacity to sue and be sued, *see* N.J.S.A. 40A:14– 118, they are not proper defendants under Section 1983. *Briggs v. Moore*, No. CIV. 05-1906 (SRC), 2005 WL 1076059, at *4 (D.N.J. May 5, 2005) (dismissing claims against the Asbury Park Police Department because it is not a "person" under Section 1983) (Chesler, U.S.D.J), <u>aff'd</u>, 251 F. App'x 77, 79 (3d Cir. 2007); *see also Stewart v. City of Atl. Police Dep't*, No. CIV. 14-4700 NLH, 2015 WL 1034524, at *4 (D.N.J. Mar. 10, 2015) (dismissing claims against the Atlantic City Police Department because it is not a "person" under Section 1983) (Hillman, U.S.D.J.); *Rivera v. Zwiegle*, No. CIV 13-3024 KM MAR, 2014 WL 6991954, at *3 (D.N.J. Dec. 9, 2014) (dismissing claims against the Byram Township Police Department because it is not a "person" under Section 1983) (McNulty, U.S.D.J); *West v. City of Jersey City Police Dep't*, No. CIV. A. 09-2836 DRD, 2009 WL

8

2016221, at *1 (D.N.J. July 7, 2009) (dismissing claims against the Jersey City

Police Department because it is not a "person" under Section 1983) (Debevoise,

U.S.D.J.); *Schaeffer v. Egg Harbor Twp.*, No. CIV. 07-5022 RMB, 2008 WL

1925306, at *1 (D.N.J. Apr. 30, 2008) (dismissing claims against the Egg Harbor

Township Police Department because it is not a "person" under Section 1983)

(Bumb, U.S.D.J).

For this reason, Plaintiff's claims against the Gloucester Township Police

Department fail and should be dismissed.

### 2. Plaintiff Has Not Identified Any "Policy" Or "Custom" That violated Plaintiffs' Rights.

Even if the GTPD could be considered a "person" under Section 1983,

Plaintiff's claims against the municipality still fail. In this regard, Plaintiff appears

to allege that, because the GTPD Officers executed the warrant against Plaintiff,

the GTPD itself is liable under Section 1983 because it employs the individual

officers.  Plaintiffs' theory of liability fails because this is not the law.

"[M]unicipal liability under Section 1983 'may not be proven under the

respondeat superior doctrine, but must be founded upon evidence that the

government unit itself supported a violation of constitutional rights.'" *Benhaim v.*

*Borough of Highland Park*, 79 F. Supp. 3d 513, 521 (D.N.J. 2015)

(quoting *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990); *accord City of*

*Canton v. Harris,* 489 U.S. 378 (1989); *Monell v. Department of Social Sers.,* 436

U.S. 658, 694 (1978).  A municipality may therefore be liable under Section 1983 only where the constitutional injury is alleged to have been caused by a municipal "policy" or "custom".  *See Monell,* 436 U.S. at 694.

Here, Plaintiff's Verified Complaint does not allege the existence of any custom or policy addressing the ERPO Act, or related to the execution of warrants in general.  The Complaint further fails to allege that some unidentified custom or policy caused Plaintiff any injury.  Still more, the Verified Complaint identifies no pattern of violations that the GTPD knew about or failed to remedy; it identifies no warning signs with regard to the adequacy of training that a diligent search would have uncovered; and it fails to allege that such facts, if uncovered, would have prevented the alleged injury in the first place.  *See Smart v. Twp. of Winslow*, No. 13CV4690 RMB, 2015 WL 5455643, at *6 (D.N.J. Sept. 16, 2015) (dismissing claim against township where the plaintiff did not allege that the "specific training program is deficient" and against the county prosecutor's office where the allegations were "wholly conclusory"); *Gaymon v. Esposito*, No. CIV.A. 11-4170 JLL, 2013 WL 4446973, at *15 (D.N.J. Aug. 16, 2013) (dismissing claim against Essex County where the complaint lacked any facts "whatsoever about the nature and extent of training" on deadly force including the "existence or lack thereof" of such a policy); *Fairview Ritz Corp. v. Borough of Fairview,* No. CIV.A. 9-875 JLL, 2013 WL 5946986, at *24 (D.N.J. Nov. 6, 2013) (failure to train not alleged

10

where complaint "fail[ed] to state facts supporting their ... 'single-incident' theory" such as "specific deficiencies in training programs").

Rather, the Complaint posits that, because Plaintiff believes the ERPO Act is facially unconstitutional, the GTPD must have violated his civil rights by executing a facially-valid search warrant against him.  This, however, is insufficient to allege a plausible cause of action based upon *Monell* liability, and the GTPD respectfully requests that Plaintiff's claims as to the GTPD be dismissed, with prejudice. *Iudici v. Passaic Cty. Sheriff's Dep't*, No. 12-CV-3466, 2018 WL 3000332, at *3 (D.N.J. June 15, 2018)(granting defendants' motion for judgment on the pleadings and explaining, in the context of municipal liability related to certain individual officers' execution of a warrant, that "actions taken against Plaintiff alone are insufficient to establish custom that can give rise to municipal liability").[4]

---

[4] *See also Coleman v. Snowden*, No. CV 15-4270 (FLW), 2016 WL 1628880, at *2 (D.N.J. Apr. 25, 2016) (dismissing claims against the City of Long Branch Police Department because it was not a "person" under Section 1983, and noting that any potential claims against the related municipal entity also failed because plaintiff failed to identify any custom or policy that led to the alleged violations of his constitutional rights).

## C.    The Officers[5] are entitled to Qualified Immunity.

### 1.    Standard for Qualified Immunity

Qualified immunity provides that public officials performing discretionary duties within the scope of their employment are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See also Sharrar v. Felsing*, 128 F.3d 810, 828(3d Cir. 1997). The privilege is more than a defense to liability, it is immunity

---

[5] Qualified immunity is available to persons sued in their "individual," and not "official," capacities. However, it is unclear from the face of Plaintiff's complaint if the officers are being sued in their "individual" or "official" capacities, or both. *See, e.g.* Complaint ¶¶11-15 (referring to the individual officers "ostensibly taking official action."). For purposes of this motion, it is assumed that Plaintiff intends to sue the officers in an individual capacity, but was inartful in his pleading. *See generally Duran v. Merline*, 923 F. Supp. 2d 702, 712 (D.N.J. 2013) (explaining that "[t]o determine the nature of the liability the plaintiff seeks to impose, courts consider the complaints and the 'course of proceedings'"). Otherwise, naming the officers in their "official capacity" would be a redundancy, and such claims must be dismissed in any event. *See generally* Martin A. Schwartz, *Fed. Judicial Center, Section 1983 Litigation 94* (3d ed. 2014) ("when a § 1983 complaint asserts a claim against a municipal entity and municipal official in her official capacity, federal district courts routinely dismiss the official capacity claim as duplicative or redundant."); *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 356 (D.N.J. 2015) (noting that the plaintiff's claims against a Township official in his "official capacity are duplicative of those against the Township and should be construed as claims against the Township" and dismissing those claims with prejudice).

from the suit. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001) (emphasis added)

(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The purpose of qualified immunity is a practical one:

> [T]he immunity incorporates a recognition that "claims
> frequently run against the innocent as well as the guilty –
> at a cost not only to the defendant officials, but to society
> as a whole. … While unproductive societal costs may be
> unavoidable in a system that relies on private litigation as
> one means to enforce our constitutional norms, the aim of
> qualified immunity is to limit those costs to the greatest
> practical degree. We do not want to let the threat of
> litigation and personal liability "deter() … able citizens
> from acceptance of public office(,)" nor do we want to
> "dampen the ardor of all but the most resolute, of the
> most irresponsible public officials, in the unflinching
> discharge of their duties." Hence, "(t)his immunity is
> broad in scope and protects 'all but the plainly
> incompetent or those who knowingly violate the law.'"

*Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (internal citations omitted). In

this way, qualified immunity is "the best attainable accommodation of competing

values." *Harlow*, 457 U.S. at 814.

The analysis to determine whether a police officer is entitled to qualified

immunity is governed by a two-prong test. First, looking at the evidence in the

light most favorable to the plaintiff, the court must determine if "the facts alleged

show the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at

201. *Davenport v. Borough of Homestead*, 870 F.3d 273, 279-280 (3d Cir. 2017).

Second, the court must determine if that right was "clearly established" at the time

13

of the incident.  *Saucier*, 533 U.S. at 202; *accord Davenport v. Borough of Homestead*, 870 F.3d at 280.

In evaluating this second prong, the Court must find that existing precedent placed the statutory or constitutional question "beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. at 741; *accord Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (stating that "[t]he dispositive question is whether the violative nature of particular conduct is clearly established").

A finding that the defendant has satisfied either prong of the analysis is sufficient to establish the qualified immunity defense.  *See Saucier*, 533 U.S. at 201. Analyzed under either prong, the Officers here are entitled to qualified immunity.

### 2. Plaintiff Cannot Allege a Plausible Fourth Amendment Violation.

Plaintiff cannot show that the Officers violated his Fourth Amendment rights as a result of executing a facially-valid warrant.  And even if he could, execution of that warrant did not violate any clearly established law.

As noted, Plaintiff does not allege that the Officers presented the Petition to Judge McBride.  *See, e.g.*, Complaint ¶52 ("Page 1 of the TERPO stated that the TERPO and (NO-KNOCK) SEARCH WARRANT were issued based upon the certified petition and sworn testimony of "NEW JERSEY HOMELAND AND SECURITY")).  Rather, Plaintiff alleges that the Officers received and executed a

14

facially-valid search warrant after a neutral and detached magistrate found

"probable cause" based upon the presentation of evidence by Defendants CCPO,

Mayer and Soumails. (Complaint ¶50, 53).[6]

  These facts strongly support qualified immunity for the Officers for at least

three reasons.  First, because Plaintiff alleges that the Officers consulted with, and

obtained approval from, Camden County Prosecutor's Office, and of a judicial

officer, they are presumptively entitled to qualified immunity.  *Fiore v. City of*

*Bethlehem*, 510 F. App'x 215, 220 (3d Cir. 2013); *accord Kelly v. Borough of*

*Carlisle*, 622 F.3d 248, 255–56 (3d Cir. 2010) (noting that "a police officer who

relies in good faith on a prosecutor's legal opinion that the arrest is warranted under

the law is presumptively entitled to qualified immunity from Fourth Amendment

claims premised on a lack of probable cause"); *accord Messerschmidt v. Millender*,

565 U.S. 535, 546 (2012) ("[T]he fact that a neutral magistrate has issued a warrant

is the clearest indication that the officers acted in an objectively reasonable manner

or, as we have sometimes put it, in 'objective good faith.'" (quoting *United States*

*v. Leon,* 468 U.S. 897, 922–23 (1984))).

---

[6] Even if the Plaintiff alleged that the named Officers presented the petition, it
would make no difference to the constitutional analysis, as there are no allegations
of any improper reporting of facts contained in the search warrant application.
Indeed, Plaintiff admits those facts to be true.

The rationale behind this presumption is simple, and, in fact, acknowledged in Plaintiff's Complaint. *See* Complaint ¶62 (alleging that the Fourth Amendment and New Jersey Constitution require a warrant to be "issued by a neutral and detached magistrate")). To be sure, "state officials are not expected to second-guess issuing courts that have found probable cause" nor are they expected "to scour the materials for defects in probable cause to ensure that a warrant may issue." *Torres v. Goddard*, 194 F. Supp. 3d 886, 895 (D. Ariz. 2016) ((observing that defendants officers' service and execution of seizure for forfeiture warrants must be viewed "light of the legal rules that clearly established at the time it was taken"), *aff'd*, 739 F. App'x 392 (9th Cir. 2018). Rather, as the United State Supreme Court explained in *Messerschmidt*, when a court has issued a warrant (as here), any alleged defects, assuming they exist, would need to be "obvious" to the state official with just a simple glance. *Messerschmidt*, 565 U.S. at 547.

In other words, a duly-executed warrant confers a "shield of immunity" for individual officers and is lost only in "rare" circumstances, even for mistakenly issued warrants. *Messerschmidt*, 565 U.S. at 547, 556. This is because, it is "magistrate's responsibility to determine whether the officer's allegations establish probable cause"—that is, a "fair probability" that evidence of a crime will be found. *Armstrong v. Asselin*, 734 F.3d 984, 992 (9th Cir. 2013) (reversing the District Court's denial of officers' motion to dismiss and noting that "approval by

16

superiors, prosecutors, and a judge almost guarantees the honest police officer's claim to qualified immunity").

Qualified immunity for police officers, on the other hand, does not even require that much, because the shield "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Accordingly, the Officers' consultation with the Prosecutor's Office and a neutral juror creates a presumption of qualified immunity that cannot be overcome in these circumstances.

Second, Plaintiff has not alleged any errors, much less an "obvious error," [7] on the otherwise facially-valid warrant which could (hypothetically) pierce the officers' "shield of immunity." *Messerschmidt*, 565 U.S. at 547, 556; *accord Fiore*, 510 F. App'x at 220. Indeed, Plaintiff does not dispute the *factual basis* of the warrant, but appears to simply argue that the facts presented were *legally insufficient* to support removal of his weapons and firearms' permit.

But this Court has already found that "based on the record before the Court, the warrant for Plaintiff's rifle and ammunition was issued upon a finding of

---

[7] The Ninth Circuit provided a helpful illustration of such an "obvious" error in *Armstrong v. Asselin*, 734 F.3d 984, 991–92 (9th Cir. 2013). There, the court held an error would be "obvious" for purposes of piercing an individual officer's "shield of immunity" if the warrant authorized "the search *of* a house *for* a concealed two story house," as such an error would have been revealed by "just a simple glance."

probable cause, and, as such, ***the warrant was issued in a constitutional manner***."

*See* Feb. 21, 2020 Opinion Denying Plaintiff's Motion for Preliminary Injunction at 14-15, ECF Dkt. 57.

In any event, even if he were right, any legal defects "would only become apparent upon a careful and detailed legal analysis, looking at the warrant, affidavit, and relevant statutes." *Torres v. Goddard*, 194 F. Supp. 3d at 895. And if that is true, then Plaintiff cannot establish any violation of a "clearly established" right because he cannot show that existing precedent had placed the statutory or constitutional question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. at 741.

Finally, even if the ERPO Act were to eventually be deemed unconstitutional (a position assumed only for purposes of this motion), the Officers' actions were still objectively reasonable. As the Complaint acknowledges, the Officers acted in accordance with the (1) language of the statute, (2) the Court's precedent in *State v. Hemenway,* 239 N.J. 111 (2019) (Complaint ¶35), (3) the binding guidance from the Office of the Attorney General, (Complaint ¶37, Ex. C) and (4) a warrant signed by a Superior Court Judge (Complaint ¶51, Ex. E). The Officers' belief that execution of the duly issued warrant would not violate any clearly established right was objectively reasonable. *See Schlaflin v. Borowsky*, 128 F. App'x 258, 261 (3d Cir. 2005) (applying the same logic to an arrest made under N.J.S.A. 2C:33-4d).

Any subsequent determination about the facial constitutionality of the statute would not change this conclusion.[8] *Michigan v. DeFillippo,* 443 U.S. 31, 38 (1979) (explaining that "[p]olice are charged to enforce laws until and unless they are declared unconstitutional. . . . Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement."); *accord See Egolf v. Witmer*, 421 F. Supp. 2d 858, 875 (E.D. Pa. 2006), *aff'd,* 526 F.3d 104 (3d Cir. 2008) (noting that "[e]ven if the statute is arguably unconstitutional the Troopers were obligated to enforce it, and are entitled to qualified immunity for any constitutional violation that might have resulted") (internal alterations and citations omitted).

Indeed, the Third Circuit has repeatedly found that, while a statute may later be deemed unconstitutional or repealed, this fact is not dispositive in determining whether individual defendants are entitled to qualified immunity in the first instance.  *See, e.g.*, *Blackhawk v. Commonwealth of Pennsylvania,* 381 F.3d 202 (3d Cir.2004) (finding that, although the statute at issue relating to a waiver of a permit fee was later found to be unconstitutional, the "governing precedents were

---

[8] For the reasons presented in the Motion to Dismiss filed on behalf of the State Defendants, there is no reason to assume that the Statute was unconstitutional. Accordingly, the Gloucester Township Defendants only assume this for purposes of this motion.

complex and developing" such that the officers were entitled to qualified immunity).

The Plaintiff in *Schlaflin v. Borowsky*, for example, was arrested for "bias harassment" under N.J.S.A. 2C:33-4d after he painted a racial threat on his truck. After he was later acquitted based on the conclusion that the words on his truck constituted protected speech under the First Amendment (a similar claim to the one here), Plaintiff "brought suit against the officers, alleging violation of his freedom of speech, arrest without probable cause, false imprisonment, the seizure and impoundment of his truck, and civil conspiracy." *Schlaflin v. Borowsheky*, 128 F. App'x 258, 259 (3d Cir. 2005), *cert denied* 546 U.S. 977 (2005).

Despite N.J.S.A. 2C:33-4d having been later repealed, the Honorable Anne Thompson, U.S.D.J., found that the individual officers' were qualifiedly immune. *Schlaflin v. Borowsky*, 2004 WL 5562040, at *1 (D.N.J. June 8, 2004).  The Third Circuit then affirmed, reasoning that, although the statute had been repealed, at the time of the arrest, "it was reasonable for the officers, with the language of the statute as a guide, to believe that their arrest of Schlaflin would not violate any clearly established right, given the fact that New Jersey had an existing statute which appeared to authorize such an arrest." *Schlaflin*, 128 F. App'x at 261.

So too here.  The warrant attached to Plaintiff's Complaint provides that the Officers are "commanded" to execute the warrant issued on "probable cause", not

20

that they "may" execute it at their discretion. *See* Plaintiff's Complaint, Ex. E

("You are hereby commanded to search for the above-described firearms . . .")).  It

was therefore objectively reasonable for the Officers at the time of the seizure to

believe that their seizure of Plaintiff's weapons in accordance with the duly-issued

warrant did not violate any *clearly established* right such that they can be held

responsible.  Plaintiff therefore cannot establish that the Officers violated any

"clearly established" right and his Complaint must be dismissed.

### 3.   The Officers Are Qualifiedly Immune From Plaintiff's First Amendment And Second Amendment Claims.

#### a.   Second Amendment (Count Two).

The Second Amendment provides that "[a] well regulated Militia, being

necessary to the security of a free State, the right of the people to keep and bear

Arms, shall not be infringed."  U.S. Const. amend. II. The Supreme Court has

determined that the Second Amendment protects an individual's right to keep and

bear arms even outside the context of service in a militia.  *See District of*

*Columbia v. Heller*, 554 U.S. 570, 592 (2008); *see also McDonald v. City of*

*Chicago*, 561 U.S. 742, 791 (2010) (applying Second Amendment to states through

Fourteenth Amendment).  Although the *Heller* Court did not delineate the

complete dimensions of the Second Amendment right, it made clear that the

Second Amendment does not guarantee an unlimited right to "keep and carry any

weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S. at 626, 128 S.Ct. 2783.

Applying those principles, Plaintiff's theory "that seizure and temporary retention of [an] individual's firearms can constitute a Second Amendment violation," does not assert a plausible claim against the Officers. *See Pierner-Lytge v. Mitchell*, 412 F. Supp. 3d 1012, 1020 (E.D. Wis. 2019) (analyzing a claim of an alleged Second Amendment violation after the plaintiff's guns were seized and temporarily retained in conjunction with mental health incidents and holding that the officers were entitled to qualified immunity).

Indeed, even if the Court assumes the Gloucester County Defendants violated some "right" by temporarily seizing Plaintiff's weapons pursuant to a signed warrant, it was not "clearly established" in September 2019 that the such a seizure and temporary retention of Plaintiff's firearm under a duly-enacted statute would violate Plaintiff's constitutional rights. This is particularly true because the statute at issue provides for a hearing within 10 days of the seizure. *Pierner-Lytge v. Mitchell*, 412 F. Supp. 3d at 1020.

To be sure, Neither *Heller*[9] nor *McDonald*[10] guaranteed citizens an unfettered right to possess weapons without oversight or regulation. In fact, as this

---

[9] 554 U.S. 570.
[10] 561 U.S. 742.

Court previously recognized, *Heller* itself was extremely narrow: it invalidated a statute banning handguns in the home and a statute prohibiting operable firearms in the home. *Id.* at 628–35.

But the ERPO Act does not "seek to prohibit or inhibit gun possession or ownership writ large. It instead requires a respondent to temporarily "surrender firearms and ammunition in [their] custody or control" <u>only</u> if a judge finds good cause to believe the respondent "poses an immediate and present danger of causing bodily injury to [themselves] or others." *See* Feb. 21, 2020 Opinion Denying Plaintiff's Motion for Preliminary Injunction at 17-18, ECF Dkt. 57. Plaintiff cannot therefore allege any facts to show that the Officers' seizure and temporary retention of his weapons in this instance was the type of violation that was "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. at 741. The Officers thus respectfully request that Plaintiff's Count Two be dismissed, with prejudice.

### b.   First Amendment (Count Three).

Plaintiff's Complaint can also be construed to contend that the Gloucester Township Defendants violated his First Amendment rights because they executed search warrants for things he published on the internet. Plaintiff thus appears to allege that Defendants' "retaliated" against him by obtaining a TERPO in response to his exercise of First Amendment rights.

Yet as this Court previously recognized, "Plaintiff's argument . . . lacks specificity as to how exactly he was punished for his speech." *See* Feb. 21, 2020 Opinion Denying Plaintiff's Motion for Preliminary Injunction at 14-15, ECF Dkt. 57.  Indeed, Judge McBride did not make a determination that Plaintiff engaged in "bias harassment," as was the case in *Schlaflin v. Borowsheky*, 128 F. App'x at 259. Nor does the ERPO Act directly "draw[] distinctions based on the message the speaker conveys," such that Plaintiff was penalized for violating the ERPO Act. *GJJM Enterprises, LLC v. City of Atl. City*, 352 F. Supp. 3d 402, 406 (D.N.J. 2018) (invalidating a statute banning use of "bring your own beer and wine" advertising); *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015) ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.").

Rather, as this Court implicitly recognized, Judge McBride considered evidence of "Plaintiff's posts on Gab.com—ostensibly his speech" in making a determination (based on probable cause) that "[Plaintiff] poses an immediate and present danger of bodily injury to self or others by owning or possessing any firearms or ammunition"  (Complaint ¶51, Ex. E).

But merely considering Plaintiff's statements that he "believes that . . . . force or violence is necessary to realign society. . .  [and] Jews are raping our

women and children," (Complaint ¶46-47, Ex. D)[11] along with a litany of other

factors to determine whether Plaintiff poses "an immediate and present danger to

self or others" does not mean the ERPO Act violates the First Amendment.

To the contrary, the Supreme Court of the United States has instructed that

"[t]he First Amendment . . . does not prohibit the evidentiary use of speech to

establish the elements of a crime or to prove motive or intent."  *Wisconsin v.*

*Mitchell*, 508 U.S. 476, 489 (1993); *United States v. Fullmer*, 584 F.3d 132, 158

(3d Cir. 2009) (dismissing a defendant's as-applied First Amendment claim and

finding that, although defendant did not engage in any illegal conduct per se, his

speech could still be used as evidence of an intent to violate a federal statute).[12]

This is because, "[u]sing the allowed speech as evidence of a prohibited action

does not negate the right to so speak.  Conduct may be prohibited, even if the

conduct is evidenced or carried out by speech, without abridging the right of free

---

[11] The Gloucester Township Defendants do not concede that Plaintiff engaged in any "protected conduct."  *See Sines v. Kessler,* 324 F. Supp. 3d 765, 803 (W.D. Va. 2018) (explaining, in the context of a civil lawsuit arising from the "Unite the Right" rally in Charlottesville, Virginia, that expressive conduct that can "incite lawless action" is not protected by the First Amendment).

[12] *See also Armstrong v. F.A.A.*, 296 F. App'x 88, 89 (D.C. Cir. 2008) (explaining that the National Transportation Safety Board did not violate the plaintiff's "First Amendment rights by using his speech as evidence of his intent to violate the FAA's regulations"); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse–Wisconsin, Inc.,* 991 F.2d 1249, 1260 (7th Cir.1993) ("While the first amendment in fact does preserve the right to speak offensively, it does not provide a shield against the logical import of that speech.").

speech." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse–Wisconsin, Inc.,* 991 F.2d 1249, 1260 (7th Cir.1993)

In any event, even if this were a "close call," the Officers are still entitled to the "shield of immunity" because a neutral magistrate approved the warrant. *See generally Saucier*, 533 U.S. at 206 (explaining that the defense is intended to protect state actors who must operate along the "hazy border" that divides acceptable from unreasonable conduct). The Officers thus respectfully request that Plaintiff's Count Two be dismissed, with prejudice.

### D.    Further Amendment as to the GTPD Defendants would be Futile.

As discussed above, there is no basis for liability as to the Gloucester Township Police Department and any actions taken by the Officers (to the extent they are alleged to be personally liable) would be shielded by qualified immunity. Accordingly, Plaintiff's claims as to Gloucester Township Defendants should be dismissed with prejudice as further amendment would be futile.  *Cnty. of Hudson v. Janiszewski*, 351 Fed.Appx. 662, 666 (3d Cir. 2009) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000)); *see also  Lopez-Siguenza v. Roddy*, 2014 U.S. Dist. LEXIS 43238, *36 (D.N.J. Mar. 31, 2014) (finding, in the context of a §1983 claim against the Atlantic County Prosecutor's Office and an assistant prosecutor,

that amendment of the complaint would be futile given that defendants' actions were "covered by absolute or qualified immunity").[13]

## IV.    CONCLUSION

For all of the foregoing reasons, the Gloucester Township Defendants respectfully request that this court grant their motion to dismiss all claims asserted against them in Plaintiff's Complaint, with prejudice, in their entirety.

Respectfully submitted,

ARCHER & GREINER,
A Professional Corporation

Attorneys for Gloucester Township
Defendants


By:   */s/Daniel J. DeFiglio*
     VINCENT P. SARUBBI, ESQUIRE
     KERRI E. CHEWNING, ESQUIRE
     DANIEL J. DEFIGLIO, ESQUIRE

Dated: May 11, 2020
217661103v16

---

[13] *See also Estate of McKloskey v. Twp.*, 2017 WL 2600456, at *6 (D.N.J. June 15, 2017) (same).

27