# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### TRENTON VICINAGE

| | |
|---|---|
| DAVID M. GRECO, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>GURBIR S. GREWAL, New Jersey Attorney General; JARED M. MAPLES, Director, New Jersey Office of Homeland Security and Preparedness; NEW JERSEY OFFICE OF HOMELAND SECURITY AND PREPAREDNESS, a Cabinet Level Department of the State of New Jersey; CAMDEN COUNTY PROSECUTOR'S OFFICE, a municipal entity of the state of New Jersey; JILL S. MAYER, Acting Camden County Prosecutor; NEVAN SOUMILAS, Assistant Camden County Prosecutor; GLOUCESTER TOWNSHIP POLICE DEPARTMENT, a Municipal Entity of the State of New Jersey; BERNARD JOHN DOUGHERTY, Detective, Gloucester Township Police Department; NICHOLAS C. AUMENDO, Patrolman, Gloucester Township Police Department; DONALD B. GANSKY, Detective Sergeant, Gloucester Township Police Department; WILLIAM DANIEL RAPP, Detective, Gloucester Township Police Department; BRIAN ANTHONY TURCHI, Patrolman, | Hon. Brian R. Martinotti, U.S.D.J.<br>Hon. Tonianne J. Bongiovanni, U.S.M.J.<br><br>Docket No. 3:19-cv-19145<br><br>### CIVIL ACTION<br><br>(ELECTRONICALLY FILED)<br><br>Motion Return Date: June 15, 2020 |

Gloucester Township Police Department; "JOHN DOE #1" (a fictitious name); and "JOHN DOES 2-10" (fictitious names),

Defendants.

**BRIEF OF DEFENDANTS GURBIR S. GREWAL, JARED M. MAPLES, NEW JERSEY OFFICE OF HOMELAND SECURITY AND PREPAREDNESS, CAMDEN COUNTY PROSECUTOR'S OFFICE, JILL S. MAYER, AND NEVAN SOUMALIS IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, NJ 07101
Attorney for Defendants Gurbir S. Grewal, Jared M. Maples, New Jersey Office of Homeland Security and Preparedness, Camden County Prosecutor's Office, Jill S. Mayer, and Nevan Soumalis
973-648-7811
Bryan.Lucas@law.njoag.gov

Joseph C. Fanaroff
Michael C. Walters
Assistant Attorneys General
  Of Counsel and On the Brief


Bryan Edward Lucas
Robert McGuire
Deputy Attorneys General
  On the Brief

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT ...............................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................2

ARGUMENT .....................................................................................3

      POINT I:   PLAINTIFF'S MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED BECAUSE HIS COMPLAINT FAILS ON ITS MERITS..................................................................................3

      POINT II:   EVEN IF PLAINTIFF'S COMPLAINT COULD SURVIVE DEFENDANTS' MOTION TO DISMISS, PLAINTIFF'S MOTION SHOULD STILL BE DENIED BECAUSE IT CANNOT WITHSTAND THE "RIGOROUS ANALYSIS" REQUIRED FOR CERTIFICATION UNDER FED. R. CIV. P. 23 ......................................................................7

            A. Plaintiff Has Failed to Satisfy The Four Factors Required By Fed. R. 23(a) ...............................................................................11

                  i.   Common issues of law and fact do not predominate in Plaintiff's prospective class ...................................................11

                  ii.  Plaintiff's claims are not typical of the claims or defenses of the class .....................................................................14

                  iii.  Plaintiff's prospective class is not so numerous that joinder of all members is impracticable ...............................................16

                  iv.  Plaintiff, as the prospective class representative, will not fairly and adequately protect the interests of the class .............23

                  v.  Plaintiff's application for class certification does not account for the significant privacy interests of non-parties and the practical considerations that render it impossible to ascertain the identities of class members .......................................24

i

B.  Plaintiff Has Failed to Satisfy the Requirements of Fed. R. Civ. P. 23(b) ...................................................................................................28

i.  Certification under Fed. R. Civ. P. 23(b)(2) is inappropriate because Defendants have not acted, refused to act, or failed to perform a legal duty on grounds generally applicable to all class members and because declaratory or injunctive relief respecting the proposed class as a whole would be inappropriate ............30

ii.  Certification under Fed. R. Civ. P. 23(b)(3) is equally inappropriate because common questions of law and fact do not predominate over questions affecting only individual members of the proposed class and because class resolution is not superior to other available methods for the fair and efficient adjudication of the controversy....................................................................35

C.  Even if Class Certification Could Be Granted, Plaintiff's Proposed Notice is Improper..............................................................................38

CONCLUSION ..........................................................................................39

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u><span style="float:right"><u>Page</u></span>

*Adamson v. Bowen*,
    855 F.2d 668 (10th Cir. 1988) ............................................................................12

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................... 32, 36, 37

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
    133 S. Ct. 1184 (2013)..........................................................................10

*Barnes v. American Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998) ................................................. 29, 32, 37

*Block v. First Blood Assoc.*,
    125 F.R.D. 39 (S.D.N.Y. 1989) ..........................................................21

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015) ................................................................28

*Calloway v. Westinghouse Elec. Corp.*,
    642 F.Supp. 663 (M.D. Ga. 1986) ......................................................21

*CGC Holding Co., LLC v. Broad & Cassel*,
    773 F.3d 1076 (10th Cir. 2014) ............................................................8

*Chakejian v. Equifax Info. Servs., LLC*,
    256 F.R.D. 492 (E.D. Pa. 2009)..........................................................16

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)..........................................................................8, 29

*Daigle v. Shell Oil Co.*,
    133 F.R.D. 600 (D. Colo. 1990) .........................................................21

*Dewey v. Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012) ................................................................23

*District of Columbia v. Wesby*,

138 S. Ct. 577 (2018) ..................................................................... 33, 34

*Friends and Residents of St. Thomas Township, Inc. v. St. Thomas Development, Inc.*, 176 Fed. Appx. 219 (3d Cir. 2006) ............................................... 5

*Garcia v. Gloor*,
618 F.2d 264 (5th Cir. 1980) ................................................. 21

*Gayle v. Warden Monmouth Cty. Corr. Inst.*,
838 F.3d 297 (3d Cir. 2016) ............................................... 9, 34

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ...................................................... 8, 9, 14

*Harnish v. Widener University School of Law*,
833 F.3d 298 (3d Cir. 2016) ................................................. 9

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349 (3d Cir. 2013) ........................................... 17, 28

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
795 F.3d 380 (3d Cir. 2015) ................................................ 23

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768 (3d Cir. 1995) ................................................ 8

*In re Hydrogen Peroxide Antitrust Litigation*,
552 F.3d 305 (3d Cir. 2008) ............................................. 7, 10

*In re Modafinil Antitrust Litig.*,
837 F.3d 238 (3d Cir. 2016) ........................................... 17, 18

*In re Schering Plough*,
589 F.3d at 585 (3d Cir. 2009) ......................................... 23, 24

*Kilgo v. Bowman Transp., Inc.*,
789 F.2d 859 (11th Cir. 1986) ............................................. 21

*Lawson v. Wainwright*,
108 F.R.D. 450 (S.D. Fl. 1986) ............................................. 21

*Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*,
   149 F.R.D. 65 (D.N.J. 1993) ................................................................ 20, 21, 22

*Lisa v. Saxon Mortgage Services, Inc.*,
   2016 WL 5930846 (E.D. Pa. 2016) ................................................................ 36

*Maloney v. Microsoft Corp.*,
   2012 WL 715856 (D.N.J. Mar. 5, 2012) ........................................................ 37

*Marcial v. Coronet, Ins. Co.*,
   122 F.R.D. 529 (N.D. Ill. 1988) ..................................................................... 20

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) ........................................................ 14, 15, 16, 17

*Mielo v. Steak 'n Shake Operations, Inc.*,
   897 F.3d 467 (3d Cir. 2018) ............................................................. 16, 17, 18

*Moskowitz v. Lopp*,
   128 F.R.D. 624 (E.D. Pa. 1989) ..................................................................... 16

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ............................................................. 10, 37, 38

*O'Shea v. Twp. of W. Milford*,
   982 A.2d 459 (N.J. App. Div. 2009) ............................................................. 33

*Polsky v. United States*,
   844 F.3d 170 (3d Cir. 2016) ............................................................................ 5

*Reinig v. RBS Citizens, N.A.*,
   912 F.3d 115 (3d Cir. 2018) ............................................................................ 8

*Rodriguez v. Nat'l City Bank*,
   726 F.3d 372 (3d Cir. 2013) .......................................................................... 11

*Rowe v. E.I. Dupont De Nemours and Co.*,
   262 F.R.D. 451 (D.N.J. 2009) ........................................................................ 32

*S.M. v. K.M.*,
 81 A.3d 723 (N.J. App. Div. 2013) ......................................................33

*Sanna v. Delta Airlines*,
 132 F.R.D. 47 (N.D. Ohio 1990) .........................................................21

*State v. Hemenway*,
 216 A.3d 118 (N.J. 2019) ....................................................................33

*Stoudt v. E.F. Hutton & Co.*,
 121 F.R.D. 36 (S.D.N.Y. 1988) ............................................. 20, 21, 22

*Sullivan v. DB Investments, Inc.*,
 667 F.3d 273 (3rd Cir. 2011) ................................................. 29, 30, 36

*T.R. v. School District of Philadelphia*,
 2019 WL 1745737 (E.D. Pa. 2019) ............................................. 32, 33

*Tyson Foods, Inc. v. Bouaphakeo*,
 136 S. Ct. 1036 (2016) .........................................................................36

*Underwood v. Kohl's Department Stores, Inc.*,
 2017 WL 5261535 (E.D. Pa. 2017) .....................................................36

*Vargas v. Meese*,
 119 F.R.D. 291 (D.D.C. 1987) ................................................... 20, 21

*Verma v. 3001 Castor, Inc.*,
 2014 WL 2957453 (E.D. Pa. 2014) .......................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011).................................................................... passim

*Wilson v. County of Gloucester*,
 256 F.R.D. 479 (D.N.J. 2009).............................................................35

*Women's Health Center, Inc. v. Webster*,
 670 F.Supp. 845 (E.D. Mo. 1987) ......................................................20

*Younger v. Harris*, 401 U.S. 37 (1971).......................................... 3, 6, 38

**Statutes**

42 U.S.C. § 1983 ...................................................................................18

N.J. Stat. Ann. § 2C:58-30 ..................................................................24

**Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................................2, 4

Fed. R. Civ. P. 12(b)(6) ......................................................................2, 4

Fed. R. Civ. P. 23 ......................................................................... passim

Fed. R. Civ. P. 23(a) ..................................................................... passim

Fed. R. Civ. P. 23(a)(1) ............................................................. 16, 18, 20

Fed. R. Civ. P. 23(a)(2) ......................................................................11

Fed. R. Civ. P. 23(b) ..................................................................... passim

Fed. R. Civ. P. 23(b)(2) ................................................................. passim

Fed. R. Civ. P. 23(b)(3) ................................................................. passim

Fed. R. Civ. P. 23(c)(1)(a) ....................................................................4

Fed. R. Civ. P. 23(c)(2)(A) ..................................................................39

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................39

Fed. R. Civ. P. 23(c)(3) .......................................................................39

Fed. R. Civ. P. 23(g) .............................................................................5

**Other Authorities**

Herr, Ann. Manual Complex Lit.,
    (4th ed. May 2020 Update) ..............................................................6

Rubenstein, 2 Newberg on Class Actions,
    (5th ed. December 2019 Update) ...................................... 5, 32, 36, 38

## PRELIMINARY STATEMENT

The "Extreme Risk Protective Order Act of 2018" ("ERPO Act" or "Act"), N.J. Stat. Ann. §§ 2C:58-20 to -32 is a constitutional and reasonable measure to promote public safety. To that end, Plaintiff David Greco's Complaint in this case should be dismissed for the reasons discussed at length in Defendants' motion to dismiss, currently pending before this Court. And for those very same reasons, the Court should reserve any decision on Plaintiff's motion for class certification until the motion to dismiss is resolved — and then deny class certification as effectively moot without reaching the merits of that application.

But even if the Court were to determine whether a class could be certified in this case, the rigorous analysis required by Fed. R. Civ. P. 23 leads to the inescapable conclusion that class certification is inappropriate. In his application, Plaintiff makes absolutely clear that he seeks class certification only on his claim under the Fourth Amendment "that the ERPO Act is facially unconstitutional as failing to meet the mandatory 'probable cause' standard in the Federal and State Constitutions for issuance of any search warrant." But Plaintiff's focus on his Fourth Amendment claim for purposes of class certification, and exclusion of his First and Second Amendment claims, merely serves to underscore that certification is inappropriate in this case. This Court has already found that the ERPO Act is constitutional on its face as currently interpreted under New Jersey law. Thus, the only remaining Fourth

1

Amendment question is whether the ERPO Act was constitutional as applied to Plaintiff. Of course, again, the Court already concluded at the preliminary injunction stage that Plaintiff's own pleadings proved probable cause was the standard used to issue the ERPO Act search warrant against him. Still, the reality is that to evaluate whether the Superior Court of New Jersey actually applied something less than probable cause — despite expressly stating that probable cause was applied — would require a fact-intensive inquiry specific to this Plaintiff. Such inquiries are of course incompatible with class certification because the Court would have to individually evaluate every prospective class member's claim in probing detail. This deficiency is fatal to Plaintiff's motion for class certification under Fed. R. Civ. P. 23.

Thus, Plaintiff's motion to certify this matter as a class action should be denied.

## **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

For the Court's convenience, and to avoid repetition, Defendants incorporate by reference the Statement of Facts and Procedural History contained in their pending motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), filed on May 11, 2020.   ECF No. 65.

Plaintiff's first motion for class certification pursuant to Fed. R. Civ. P. 23(b)(3) was filed on January 10, 2020. ECF No. 48. On January 15, 2020,

Defendants requested a stay of the first class certification motion pending resolution of Plaintiff's motion for preliminary injunctive relief.   ECF No. 49. The Court granted Defendants' request on January 19, 2020, and administratively terminated the motion without prejudice. The Court heard argument on the motion for preliminary injunctive relief on November 20, 2019, ECF No. 39, and denied the motion on February 21, 2020. ECF Nos. 57-58. Plaintiff's second motion for class certification was filed on February 24, 2020. ECF No. 59.  Defendants' opposition to class certification follows.

## ARGUMENT

### POINT I

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED BECAUSE HIS COMPLAINT FAILS ON ITS MERITS.**

As discussed in Defendants' motion to dismiss, Plaintiff's complaint fails as a matter of law. As a result, his motion for class certification is effectively moot, and should be rejected outright along with the rest of his case.

First and foremost, this Court should abstain from hearing this case pursuant to *Younger* abstention, because the civil enforcement proceedings involving Plaintiff — which gave rise to this lawsuit — remain pending in the Superior Court of New Jersey. *Younger v. Harris*, 401 U.S. 37 (1971). This jurisdictional argument alone requires dismissal of Plaintiff's complaint in its entirety pursuant to Fed. R. Civ. P.

12(b)(1). Further, dismissal on the merits of Plaintiff's First and Fourth Amendment claims — Counts One and Three of the complaint — is also appropriate under Fed. R. Civ. P. 12(b)(6). Plaintiff has failed to assert a claim upon which relief can be granted under the Fourth Amendment because the search warrant issued in this case was based on constitutionally sufficient probable cause. Likewise, his First Amendment claim fails because the ERPO Act simply does not regulate speech, and because Plaintiff has not sufficiently alleged that the TERPO and seizure of his firearms resulted from any interference with protected speech. Notably, Plaintiff is not seeking class certification relating to the Second Amendment claims contained in Count Two of his complaint, so there is no basis to certify a class on that claim alone. *See* Pl.'s Br. at 2 n.1. Finally, all of Plaintiffs' claims for monetary damages are barred by sovereign immunity or qualified immunity, rendering his application for class certification pursuant to Fed. R. Civ. P. 23(b)(3) — pertaining to claims for monetary damages — an absolute nullity.

No doubt, Fed. R. Civ. P. 23(c)(1)(a), which governs the timing of class certification, states that, "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." This helps courts and litigants achieve the goals of "(1) enabling discovery relevant to certification; (2) helping a court to 'determine how the case will be tried,' including possibly creating a 'trial plan'; (3) permitting a

court to consider dispositive motions without binding the class; and (4) giving more leeway to consider counsel's adequacy under [ ] enacted Rule 23(g)." Rubenstein, 2 Newberg on Class Actions § 7:5 (5th ed. December 2019 Update) ("Newberg") (citing and quoting Fed. R. Civ. P. 23(c)(1)(A) advisory committee's note (2003)). But common sense instructs that "[r]uling first on dispositive motions is typically a more efficient procedure and will often render moot the necessity of a court ruling on certification." Newberg § 7:9; *see also, e.g.*, *Polsky v. United States*, 844 F.3d 170, 172 n.2 (3d Cir. 2016) (quoting Newberg) (ruling that district court had permissibly evaluated the defendant's motion to dismiss before ruling on class certification since, "[g]iven the early nature of most motions to dismiss, courts will often handle them prior to deciding a motion for class certification"); *Friends and Residents of St. Thomas Township, Inc. v. St. Thomas Development, Inc.*, 176 Fed. Appx. 219, 222 (3d Cir. 2006) ("the District Court granted both motions to dismiss, denied the motion for sanctions and denied as moot Appellants' motion for class certification.").

The Court here, too, should address Defendants' motion to dismiss before evaluating the motion for class certification. This serves practical, as well as substantive, ends:

> Efficiency and economy are strong reasons for a court to resolve challenges to personal or subject-matter jurisdiction before ruling on certification . . . Similarly, courts should rule early on motions to dismiss, challenging whether the plaintiffs have stated a cause of action.

> Early resolution of these questions may avoid expense for the parties
> and burdens for the court and may minimize use of the class action
> process for cases that are weak on the merits.

Herr, Ann. Manual Complex Lit. § 21.133 (4th ed. May 2020 Update) ("Herr").

While it is true that a determination of the merits and class certification are two

separate issues, this is not a case in which a request for certification could continue

after dismissal of the proposed class representative's individual claim.[1] The bases

for dismissal of Plaintiff's individual claims — *Younger* abstention, or alternatively,

that the ERPO Act is constitutional — make clear that no class should certify here.

Plaintiff has not identified even one other similarly situated plaintiff, let alone

another lawsuit premised on the same (or even similar) flawed legal theories as his

own. And even if that were not the case, Plaintiff would still need to separately

satisfy the requirements for certification, which he cannot for the reasons discussed

herein, infra  Point II.

---

[1] *See, e.g.*, *Salter v. Philadelphia Hous. Auth.*, 1999 WL 997758, at *3 (E.D. Pa. Nov. 3, 1999) (explaining that "[a] named plaintiff in a class action presents to the court two claims for review. The first claim presented is the individual claim on the merits. The second claim presented is the claim of entitlement to represent a class. The second claim is premised on the 'right to have a class certified if the requirements of the Rules are met.'") (internal citations omitted) (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980); *Rosetti v. Shalala*, 12 F.3d 1216 (3d Cir. 1993)). While courts recognize that special mootness rules apply in the class action context for "determining at what point in time a named plaintiff must still have a personal stake in the litigation to continue seeking to represent a putative class action," no such exception is applicable in this case. *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003).

Thus, because Defendants' motion to dismiss remains pending at this time, the Court should resolve it before addressing Plaintiff's application for class certification. Moreover, because Plaintiff's claims fail on the merits on both jurisdictional and substantive grounds, the motion for class certification should be denied as effectively moot without even reaching Plaintiff's additional failure to satisfy the stringent requirements for certification.

## POINT II

**EVEN IF PLAINTIFF'S COMPLAINT COULD SURVIVE DEFENDANTS' MOTION TO DISMISS, PLAINTIFF'S MOTION SHOULD STILL BE DENIED BECAUSE IT CANNOT WITHSTAND THE "RIGOROUS ANALYSIS" REQUIRED FOR CERTIFICATION UNDER FED. R. CIV. P. 23.**

Plaintiff's application for class certification does not satisfy the "rigorous analysis" that a trial court must undertake when evaluating such a motion to confirm that the requirements of Fed. R. Civ. P. 23(a) and (b) are met. No doubt, a district court is empowered with substantial discretion to determine whether to grant or deny class certification motions. *See In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 320 (3d Cir. 2008), *as amended*, (Jan. 16, 2009) ("In reviewing a district court's judgment on class certification, we apply the abuse of discretion standard. A district court abuses its discretion in deciding whether to certify a class action if its 'decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" (quoting *In re General Motors Corp.*

7

*Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 783 (3d Cir. 1995))). But a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). The "rigorous analysis standard," first articulated by the Supreme Court in *Falcon*, was reiterated again in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), in which the court emphasized that "[a]ctual, not presumed, conformance with Rule 23(a) remains indispensable." (quoting *Falcon*, 457 U.S. at 160).

Further, "[i]n its recent *Behrend* decision, the Supreme Court confirmed that the same 'rigorous analysis' standard that it had applied to the class certification requirements under Rule 23(a) in *Dukes* also applied to the predominance requirement under Rule 23(b)(3)." *Verma v. 3001 Castor, Inc.*, 2014 WL 2957453, *15 (E.D. Pa. 2014) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). The rigorous analysis standard is a demanding one. *See, e.g.*, *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 129 (3d Cir. 2018) (remanding to the district court because the original "barebones analysis, without citations to specific, factual support in the record, simply does not permit a reviewing court to conclude that the District Court in fact undertook the 'rigorous' review mandated by our precedents"); *see also CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014) ("Because class action litigation remains an exception to the usual rule that litigation

is conducted by and on behalf of the individual named parties only the requirements of Rule 23 are heavily scrutinized and strictly enforced. Actual, not presumed, conformance with Rule 23 remains indispensable.") (internal quotation marks and citations omitted). Thus, a court's rigorous analysis often requires it to "probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160.

The analytical framework that courts must follow first requires plaintiffs to show that "'the class is so numerous that joinder of all members is impracticable' (numerosity); that 'there are questions of law or fact common to the class' (commonality); that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class' (typicality); and that 'the representative parties will fairly and adequately protect the interests of the class' (adequacy)." *Gayle v. Warden Monmouth Cty. Corr. Inst.*, 838 F.3d 297, 308-09 (3d Cir. 2016) (citing Fed. R. Civ. P. 23(a) (additional citations omitted). Next, plaintiffs must establish that the proposed class "falls within one of the three types enumerated in Rule 23(b)." *Id.*

The burden of establishing each element of Rule 23 by a preponderance of the evidence is on the movant. *Harnish v. Widener University School of Law*, 833 F.3d 298, 304 (3d Cir. 2016) ("trial courts must engage in a rigorous analysis and find each of Rule 23[]'s requirements met by a preponderance of the evidence before granting certification. They must do so even if it involves judging credibility,

9

weighing evidence, or deciding issues that overlap with the merits of a plaintiff's claims.") (internal quotation marks and citations omitted); *see also In re Hydrogen Peroxide*, 552 F.3d at 307 ("the decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met. Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence."). The Fed. R. Civ. P. 23 inquiry thus requires some review of "merits questions" but only to the extent that "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[2] *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013); *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001), *as amended*, (Oct. 16, 2001) ("Because the determination of a certification request invariably involves some examination of factual and legal issues underlying the plaintiffs' cause of action, a court may consider the substantive elements of the plaintiff's case. . . .").

Following this framework, Plaintiff must first satisfy, by a preponderance of evidence, the four requirements of Fed. R. Civ. P. 23(a) — commonality, typicality, numerosity, and adequacy. He clearly has not done so, thus his request for

---

[2] While some review of the merits of Plaintiff's claims may be necessary to fully evaluate his motion for class certification, this is not a case in which pre-certification discovery is appropriate or necessary because the "claims for relief rest on readily available and undisputed facts or raise only issues of law (such as a challenge to the legality of a statute or regulation)." Herr, § 21.14.

certification fails rigorous analysis.  In fact, Plaintiff cannot demonstrate any of the four requirements by a preponderance of the evidence.

> A.   Plaintiff Has Failed to Satisfy The Four Factors Required By Fed. R. Civ. P. 23(a).

> > i.   *Common issues of law and fact do not predominate in Plaintiff's prospective class.*

Rule 23(a)(2) requires Plaintiffs to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ommonality does not require perfect identity of questions of law or fact among all class members. "The focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is on whether the defendant[s'] conduct was common as to all of the class members." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (internal quotation and citations omitted).  Although the commonality bar is "not a high one," *Rodriguez*, 726 F.3d at 382, nonetheless, the Rule 23(a)(2) "language is easy to misread, since '[a]ny competently crafted class complaint literally raises common questions.'" *Dukes*, 564 U.S at 349 (quotations omitted). A complaint's mere recital of superficial questions that happen to be shared by class members, such as whether each class member suffered a violation of the same provision of law, is "not sufficient to obtain class certification." *Id.*  Rather to satisfy Rule 23(a)(2), the resolution of the common question of law or fact must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.

In this case, Plaintiff's sole contention as to commonality is:

> The commonality requirement is satisfied here because the legal and factual questions arising from *Defendants' procedures and practices do not vary from one Class member to the next*. *See Adamson* [*v. Bowen*], 855 F.2d [668, 676 (10th Cir. 1988)] (application of common policy to all class members suffices to meet commonality requirement). *Defendants enforce the facially unconstiotutional [sic] ERPO Act in a routine and consistent way, despite knowing they are acting unlawfully*, and all Class members were (and future Class Members will be) similarly subjected to Defendants' policies and procedures.
>
> [Pl. Br. at 20 (emphasis added) (citation omitted)]

This plainly misstates the core argument that Plaintiff has advanced in the Complaint and his briefing in this court, which is that a single phrase in the ERPO Act's text that provides for the issuance of a warrant based on "good cause" renders the Act unconstitutional facially. But, as this Court's Opinion denying Plaintiff's motion for a preliminary injunction noted, the warrant in Plaintiff's case, on its face, provided that the warrant for Plaintiff's rifle and ammunition had been issued on probable cause and therefore "was issued in a constitutional manner," and Plaintiff's ultimate success in this case (and the success of any other plaintiff) will depend on showing that a search warrant issued was based on a standard less than probable cause. *See* ECF No. 57 at 14-15.

In this Court's decision denying Plaintiff's request for a preliminary injunction, the Court's analysis regarding whether Plaintiff could claim to have

12

suffered irreparable harm focused first on the contents of the relevant search warrant, with this Court noting that "the plain text of the search warrant issued in conjunction with the TERPO, and attached to Plaintiff's own Complain indicates the court found 'probable cause exists to believe . . . respondent poses an immediate and present danger of bodily injury to self or others by owning or possessing any such firearms or ammunition.'" *Id*. at 14. This Court then noted that, to evaluate Plaintiff's claim that a standard less than probable cause was used, the Court would need to consider the materials that had been before the trial court that issued Plaintiff's TERPO – and that Plaintiff had "effectively prevented" such an analysis by refusing to allow such materials into the motion record. *Id.* Plaintiff's ultimate success in asserting a Fourth Amendment violation thus depends on an examination of the contents of Plaintiff's own search warrant and the particular evidence in the state-court record in Plaintiff's case.

For this reason, Greco cannot satisfy the commonality requirement, because each potential class member's Fourth Amendment claim will rise or fall almost entirely based on highly-individualized factors regarding the contents of that member's search warrant, and the state-court evidentiary record leading up to the issuance of the warrant. Given that reality, the fact that all members would share the "common" contention that the ERPO Act text permits a search warrant, which has no final determinative effect for any member's own claim plainly fails to satisfy

13

the "commonality" requirement of Rule 23(a).  Instead, this is the type of "mere recital of superficial questions that happen to be shared by class members, such as whether each class member suffered a violation of the same provision of law," that the Supreme Court has held does not satisfy the commonality requirement.  *Dukes*, 564 U.S at 349 (quotations omitted).

ii.   *Plaintiff's claims are not typical of the claims or defenses of the class.*

The second Rule 23(a) factor — "typicality" — aids a court in determining whether "maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597-98 (3d Cir. 2012) (citing *Falcon*, 457 U.S. at 158 n.13). Typicality "screen[s] out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Id*. at 598. To determine whether a named plaintiff is markedly different from the class as a whole, the court must address three distinct concerns: "(1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3)

the interests and incentives of the representative must be sufficiently aligned with those of the class." *Id*. at 598 (quotations omitted).

Plaintiff's allegations in his Complaint are not "typical" of the potential claims of other class members, and it is plain that the facts of each potential case will depend on an examination of the warrant issued in each case, and the facts related to the issuance of that warrant.  In addition, Plaintiff's allegations in his own complaint show the extent to which each challenge to a particular warrant is likely to be individualized.  For instance, Plaintiff intimates that the TERPO petition in his case was not valid because it was not signed by an individual as the petitioner, but rather had "PDPACE2" in the space for a signature.  ECF No. 1, ¶ 48.  Plaintiff also suggests that the "no knock" warrant in his case was inappropriate because the issuing judge issued it "with no specific or additional findings as required as a pre-condition" for a "no knock" warrant.  *Id*., ¶ 52.  In addition, Plaintiff's Complaint asserts a First Amendment claim on his own behalf, contending that the warrant in his case was issued because of his expression of certain unpopular views and opinions.  *Id*., ¶ 69-71.  Plaintiff also advances a Second Amendment claim, which some or all potential member plaintiffs may not be interested in advancing.  *Id*., ¶ 66-67.

Just by taking into account the idiosyncratic allegations in Plaintiff's own allegedly "typical" complaint, it becomes unequivocal that neither Plaintiff (nor

anyone else) can be a "typical" plaintiff, given that each potential plaintiff's case would be dependent on individualized facts.

      iii.    *Plaintiff's prospective class is not so numerous that joinder of all members is impracticable.*

A plaintiff seeking certification must also demonstrate that the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). "In recent years, the numerosity requirement has been given 'real teeth.'" *Mielo v. Steak 'n Shake Operations, Inc*., 897 F.3d 467, 484 (3d Cir. 2018). Third Circuit precedent demands that a court "make a factual determination, based on the preponderance of the evidence, that Rule 23's requirements have been met." *Id*. (quoting *Marcus*, 687 F.3d at 596). Thus, a party seeking class certification must prove (a) a sufficiently large number of potential class plaintiffs and (b) impracticability of joinder.

The first part of the numerosity inquiry is the size of the class. "No magic number exists satisfying the numerosity requirement, nor must plaintiff allege the exact number or identity of class members." *Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989); *see also Chakejian v. Equifax Info. Servs., LLC*, 256 F.R.D. 492, 497 (E.D. Pa. 2009). Nonetheless, a party seeking certification must present evidence that would enable the reviewing court to make a factual determination, without resorting to mere speculation, that Rule 23(a)'s requirements have been met. *Mielo*, 897 F.3d at 484. Although "Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members . . . in the

16

absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the . . . . problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir. 2013) (quoting *Marcus*, 687 F.3d 596–97). Although a court may use common-sense assumptions to determine whether numerosity has been satisfied, *Mielo*, 897 F.3d at 486, "common sense" cannot, however, be relied on without evidence. *Marcus*, 687 F.3d at 596–97. "[W]here a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone." *Hayes*, 725 F.3d at 358.  In other words, although it may be "tempting to assume" that a class meets a numerosity requirement based on the fact that the class members will be drawn as a subset from a larger pool, the Third Circuit "has rejected the idea that giving in to such temptation could excuse speculation." *Mielo*, 897 F.3d at 485 (quotation omitted).

Even assuming *arguendo* that Plaintiffs could establish the size of the potential class, Plaintiffs must establish the second half of the numerosity inquiry, *i.e.*, that joinder is impracticable. Whether joinder of all of the class members would be impracticable depends on the circumstances surrounding the case and not merely on the number of class members. *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016), *as amended* (Sept. 29, 2016). The Third Circuit has enumerated a non-exhaustive list of factors to consider, including: judicial economy, the claimants'

ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages. *Id*. at 253. Of those factors, both judicial economy and the ability to litigate as joined parties are of primary importance. *Id*. The mere fact that Plaintiffs may primarily be seeking injunctive relief does not ease their burden in satisfying Rule 23(a)(1). *Mielo*, 897 F.3d at 487.

Plaintiff fails to demonstrate by a preponderance of the evidence that joinder is impractical, and seemingly relies primarily on his presumption that TERPOs and search warrants have been issued to "well over 200 persons to date" and that "their numbers change every day as more TERPOs and search warrants are issued." Pl. Br. at 18.

Plaintiff does make a blanket assertion that joinder supposedly is impractical because "the vast majority of potential plaintiffs will lack the resources to bring separate 42 U.S.C. 1983 lawsuits in Federal or State Court as they are already defending TERPOs in State Court." *Id*. Plaintiff provides no information to support his conclusion about the financial resources of other persons who have been subject to TERPOs. Plaintiff's personal, unsupported supposition about the finances of others subject to TERPOs cannot support a finding about the impracticability of joinder.

18

In his impracticality argument, Plaintiff's last argument is that granting class certification would promote judicial economy because "[s]separate lawsuits would result in duplicative discovery (including numerous depositions of the same officials and repetitive production of documents)", "repeated adjudication of similar controversies" in the District Court, and "excessive costs for everyone involved." None of those contentions withstands even minimal scrutiny. Given that a potential plaintiff's success within this litigation would depend on showing that the warrant in that plaintiff's case was issued on a standard other than probable cause — which will depend on the facts related to each plaintiff's warrant — the relevant discovery for each plaintiff would be unique, not the same. As for the suggestion that cases would involve the "same officials" and "repetitive documents," Plaintiff certainly has not identified which officials and documents he contends would be part of the evidence common to the plaintiff's cases. If anything, the opposite is true - because Plaintiff's class certification includes any New Jersey resident subject to a TERPO, the number of additional law enforcement officers and prosecutors affected by the certification would number in the dozens, if not hundreds.

As for Plaintiff's overarching suggestion that "judicial economy" is promoted by federal class action litigation, he ignores the fact that any person who is subject to a TERPO has the right — within the proceedings in state court — to make the legal argument that their search warrant has been issued improperly. It is illogical

to contend that it is more practical to argue against the issuance of a search warrant by joining in class action in the federal court, rather than asserting that argument in the existing state-court proceeding in which the TERPO was issued.

The decision within this Circuit in *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp*., 149 F.R.D. 65 (D.N.J. 1993), is instructive, and demonstrates that a court should not reflexively grant class certification simply based on the representation that a large number of potential class members is alleged.  In that case, an automobile dealer brought an action against an automobile manufacturer concerning the manufacturer's warranty reimbursement practices, and the dealer thereafter sought class certification for a class that would include 123 New Jersey dealerships.   The court denied that motion, finding that the proposed class failed to satisfy the numerosity requirement:

> Liberty Lincoln has not established that joining all members of its proposed class is so inconvenient or difficult that class certification is required. Despite recognizing that the numerosity requirement of Fed. R. Civ. P. 23(a)(1) is more than a mere "numbers game," the sole argument presented by Liberty Lincoln is that courts "have certified classes with as few as twenty members." . . . As courts have repeatedly recognized, mere conclusory or speculative allegations that joinder is impractical are not sufficient to satisfy the numerosity requirement of Rule 23(a)(1). *See, e.g.*, *Marcial v. Coronet, Ins. Co.*, 122 F.R.D. 529, 531 (N.D. Ill. 1988), *aff'd*, 880 F.2d 954 (7th Cir. 1989); *Stoudt v. E.F. Hutton & Co.*, 121 F.R.D. 36, 38 (S.D.N.Y. 1988); *Vargas v. Meese*, 119 F.R.D. 291, 293 (D.D.C. 1987); *Women's Health Center, Inc. v. Webster*, 670 F.Supp. 845, 851–52 (E.D. Mo. 1987); *Calloway v.*

> *Westinghouse Elec. Corp.*, 642 F.Supp. 663, 671 (M.D. Ga. 1986); *see also Sanna v. Delta Airlines*, 132 F.R.D. 47, 50 (N.D. Ohio 1990).
>
> Practicability of joinder depends on a number of factors, including: the size of the class, ease of identifying members and determining addresses, ease of service on members if joined, geographical dispersion and whether proposed members of the class would be able to pursue remedies on an individual basis. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986); *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); [*Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 603 (D. Colo. 1990)]; *Block v. First Blood Assoc.*, 125 F.R.D. 39, 42 (S.D.N.Y. 1989); *Vargas*, 119 F.R.D. at 293; *Calloway*, 642 F.Supp. at 671; *Lawson v. Wainwright*, 108 F.R.D. 450, 454 (S.D. Fl. 1986).
>
> [*Id.* at 74 (footnote omitted).]

The court then found that the number of potential members was not so large as to make joinder impractical, in part because, of the potential class members, only two had challenged the manufacturer's reimbursement policies. *Id.* The court further noted that joinder was not impractical because all potential class members were located in the limited geographical area of the state of New Jersey. *Id.* The court in *Liberty Lincoln* concluded its rejection of the impracticality argument in that case by observing:

> Finally, as the case law indicates, a class action is not appropriate when proposed class members are able to protect and defend their own interests. *See, e.g.*, *Block*, 125 F.R.D. at 42–43; *Stoudt*, 121 F.R.D. at 38; *Vargas*, 119 F.R.D. at 293. In this case, the purported class members

21

are all motor vehicle dealerships; each is a substantial business capable of litigating for itself. As the court in *Stoudt* reasoned: "[When] each proposed class member ... possesses the ability to assert an individual claim, the goal of obtaining redress can be accomplished without the use of the class action device." 121 F.R.D. at 38.

[*Id.* (footnote omitted).]

The present matter has many parallels with *Liberty Lincoln*. First, it is noteworthy that, despite the fact that the ERPO Act went into effect in September 2019 and Plaintiff contends that more than 200 persons have been subject to TERPOs and search warrants since then, there does not appear to be any other pending action within this District that has issued a similar constitutional challenge to Plaintiff's, and he is the sole complainant in this case. The papers submitted in support of the motion to certify a class actually undercut the suggestion that a class action is required, stating: "Indeed, while credible information indicates that several hundred people today have had TERPOs and search warrants entered against them illegally, Mr. Rescinio is the only attorney so far to actually bring a case challenging the constitutionality and validity of the ERPO Act." Pl. Br. at 22. As in *Liberty Lincoln*, the potential members in this case are also located within this State. Finally, as discussed previously, Plaintiff has faied to demonstrate that any potential member is unable to obtain redress without resort to a class action, and it is undeniable that those potential members do have a means of obtaining redress without resort to a

class action, by advancing any constitutional challenges in state court litigation in which the potential members are already a party.

For all of these reasons, Plaintiff fails to satisfy the numerosity requirement.

      iv.   *Plaintiff, as the prospective class representative, will not fairly and adequately protect the interests of the class.*

The last Rule 23(a) factor considers adequacy of representation. "The principal purpose of the adequacy requirement is to determine whether the named plaintiffs have the ability and the incentive to vigorously represent the claims of the class." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 393 (3d Cir. 2015). The adequacy requirement has two components: (1) the interests and incentives of the representative plaintiffs; and (2) the experience and performance of class counsel. *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012) (citation omitted).

As to the class representative, "the adequacy inquiry seeks to uncover conflicts of interest between named parties and the class they seek to represent." *In re Schering Plough*, 589 F.3d at 585, 601–02 (3d Cir. 2009) (quotation omitted). "There are clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests, and this second part of the adequacy inquiry that focuses on possible conflicts of interest." *Id.* "Because of the similarity of [the typicality and adequacy] inquiries, certain

23

questions—like whether a unique defense should defeat class certification—are relevant under both." *Id.* (quotation omitted).

As observed above, Plaintiff's case is not "typical" and involves many individualized issues. Moreover, for the reasons set forth in Defendants' motion to dismiss, the majority of Plaintiff's claims are subject to immediate dismissal, potentially leaving him with little incentive or desire to carry forward this litigation once his most prominent claims have been dismissed. As such, Plaintiff is not an adequate class representative.

> v. *Plaintiff's application for class certification does not account for the significant privacy interests of non-parties and the practical considerations that render it impossible to ascertain the identities of class members.*

Plaintiff suggests that potential class members (under his motion, persons who have had a New Jersey TERPO entered against them) can be quickly and easily identified and notified of the class-action suit "because the ERPO Act literally requires the State of New Jersey to compile and has kept a confidential and secrete [sic] electronic database of all individuals who have had a TERPO or FERPO entered against them under the ERPO Act," *see* Pl. Br. at 27, citing the requirement under N.J. Stat. Ann. § 2C:58-30 that the AOC maintain a registry of persons who: (1) have had a FERPO entered against them or (2) have been charged with a violation of a TERPO or a FERPO, *id*. at 27-28.

24

Plaintiff blithely ignores that the relevant statute provides for the confidentiality of such records, stating in relevant part:

> All records made pursuant to this section *shall be kept confidential and shall be released only to a police or other law enforcement agency investigating a report of a crime, offense, or act of domestic violence, or conducting a background investigation involving a person's application for a firearms purchaser identification card or permit to purchase a handgun or employment as a police or law enforcement officer, or for any other purpose authorized by law or the Supreme Court of the State of New Jersey.* A respondent's information, other than information related to a violation of a temporary or final order issued pursuant to section 4 or 5 of P.L.2018, c.35 (C.2C:58-24 or C.2C:58-25), shall be removed from the registry upon the termination of the extreme risk protective order.
>
> [*Id*. (emphasis added).]

Both the AOC Guidelines and the AG's Directives related to ERPO Act proceedings contain similar provisions requiring that confidentiality be maintained as to records concerning matters.  AOC Guideline 8(a) provides:

> Any records related to proceedings for extreme risk protective orders are confidential and may not be disclosed, by subpoena or otherwise, to anyone other than the respondent for use in the extreme risk protective order proceeding, except by order of the court on good cause shown.  However, the petitioner will receive copies of the orders.
>
> [ECF No. 1, Ex. B, at 15.]

Specifically as to the information in the registry required by the statute, AOC Guideline 8(b) provides:

> All records made pursuant to this section shall be kept confidential and shall be released only to a police or other law enforcement agency investigating a report of a crime, offense, or act of domestic violence, or conducting a background investigation involving a person's application for a firearms purchaser identification card or permit to purchase a handgun or employment as a police or law enforcement officer, or for purposes of an extreme risk protective order proceeding, or for any other purpose authorized by law or the Supreme Court of the State of New Jersey.   A respondent's information, other than information related to a violation of a temporary or final order issued pursuant to this law, shall be removed from the registry upon the termination of the extreme risk protective order.

[*Id.*]

The AG Directive likewise contains a provision that provides that "any records created submitted to the ERPO Act and this Directive are confidential and not subject to public disclosure."  AG Directive at 19.

Thus, nothing in the ERPO Act, or in the AOC Guidelines and AG Directive concerning the implementation of the Act would permit the disclosure to Plaintiff and his counsel of the names and addresses of other persons against whom a TERPO had been issued.

Moreover, it seems beyond debate that persons who have been subject to a TERPO have a privacy interest in preventing the nonconsensual dissemination of that information to third parties.  It appears just as evident that those persons might likewise object to their addresses being provided, without their prior consent, to a

third party for the purpose of allowing that third party to solicit their participation in a class action.

Plaintiff's lack of concern about these privacy considerations is ironic, given his own strenuous refusal in this litigation against any of the information related to his the proceedings in his TERPO case. *See* ECF No. 22 (objecting to the potential inclusion of materials from Plaintiff's TERPO proceedings in any of Defendants' submissions in this case, which Plaintiff characterized as "highly confidential"). Indeed, this Court has previously noted Plaintiff's refusal to permit this Court to review materials concerning his own TERPO proceedings because of his contention that those materials were confidential. The Court denied Plaintiff's request for a preliminary injunction because the absence of that evidence left Plaintiff without proof of irreparable harm for his Fourth Amendment claim. *See* ECF No. 57 at 14 ("Plaintiff opposed Defendants' letter request (ECF No. 19) to admit records from the TERPO hearing—including transcripts, exhibits, and other evidence Judge McBride considered when issuing his ruling (ECF No. 22)—effectively preventing this Court from analyzing Plaintiff's own claim that a standard lesser than probable cause was used.")

Because the relevant statute, AOC Guidelines and AG Directive preclude identification of potential class members in the only manner that Plaintiff has proposed, this requires denial of class certification based on a concept that the Third

27

Circuit refers to as "ascertainability." "The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria; and (2) there is a 'reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc*., 784 F.3d 154, 163 (3d Cir. 2015) (quoting *Hayes v. Wal-Mart Stores, Inc*., 725 F.3d 349, 355 (3d Cir. 2013)).

Given that potential class members cannot be identified in the manner Plaintiff proposes without violating the privacy interests of non-parties that are set forth unambiguously in the Act, the AOC Guidelines and the AG directive, there is no "reliable and administratively feasible mechanism" for identifying potential class members and evaluating whether those persons fall within the class definition. The impossibility of contacting putative class members without violating those same person's privacy rights also weighs heavily against class certification. This is particularly true because, as observed previously, those persons have a readily-available alternative forum for any constitutional arguments – the state-court ERPO Act proceedings.

B.    Plaintiff Has Failed to Satisfy the Requirements of Fed. R. Civ. P. 23(b).

As Plaintiff fails to satisfy the four requirements of Fed. R. Civ. P. 23(a), the Court need not decide whether he fulfills one of the categories of Fed. R. Civ. P. 23(b). But even assuming for the sake of argument that Plaintiff did meet Fed. R.

Civ. P. 23(a)'s requirements, he would still fail to satisfy subsection (b) of the same rule.

In addition to the four core requirements under Rule 23(a), a prospective class must satisfy additional requirements that vary depending on the nature of the relief sought. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3rd Cir. 2011) (citing Fed. R. Civ. P. 23(b)). At the outset, as the Supreme Court has instructed, the same "analytical principles" that govern Rule 23(a) — including rigorous analysis and the preponderance of the evidence standard — govern Fed. R. Civ. P. 23(b). *Behrend*, 569 U.S. at 34 (2013). Here, it is not even clear which part of subsection (b) Plaintiff argues is applicable. On one hand, his motion seeks "[a]n Order certifying the matter as a 'Rule 23(b)(3) Class Action," *see, e.g.*, Pl.'s Br. at 2, 16, 23, but on the other hand, in the portion of the brief addressing "Rule 23(b)(3)," Pl.'s Br. at 22-24, Plaintiff discusses the standards applicable to the prior section, Fed. R. Civ. P. 23(b)(2).[3] No matter — under either section of Rule 23(b), Plaintiff's

---

[3] The distinction actually does matter, not only because it is Plaintiff's burden to prove he satisfies the requirements of either provision, but also because members of a Fed. R. Civ. P. 23(b)(2) class cannot "opt out," whereas Fed. R. Civ. P. 23(b)(3) class members can, and thus the notice requirements, and related due process concerns, are different. *See, e.g.*, *Barnes v. American Tobacco Co.*, 161 F.3d 127, 142–43 (3d Cir. 1998) ("[A] (b)(2) class may require more cohesiveness than a (b)(3) class … because in a (b)(2) action, unnamed members are bound by the action without the opportunity to opt out."). Because Rule 23(b)(2) classes are non-opt-out classes, binding an entire category of people, potentially without notice, is particularly troubling where, as here, the adequacy and typicality requirements of Fed. R. Civ. P. 23(a) are not met. *See* Point II.A, *infra*.

proposed class is insufficient.

> i. *Certification under Fed. R. Civ. P. 23(b)(2) is inappropriate because Defendants have not acted, refused to act, or failed to perform a legal duty on grounds generally applicable to all class members and because declaratory or injunctive relief respecting the proposed class as a whole would be inappropriate.*

A prospective class seeking injunctive relief must show that the defendant "has acted or refused to act on grounds that apply generally to the class . . . so that final injunctive relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Sullivan*, 667 F.3d at 296. As the Supreme Court observed in *Dukes*, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." 564 U.S. 338, 360-61 (2011). "In other words," the Court continued, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.*

Here, because Plaintiff's class certification application pertains only to his Fourth Amendment claim, and because this Court has already found that Defendants did not violate Plaintiff's Fourth Amendment rights — because they applied probable cause in obtaining the TERPO search warrant — he clearly cannot show

that Defendants have acted or refused to act on grounds that generally apply to the class. *See* ECF No. 57 at 14-15 ("[B]ased on the record before the Court, the warrant for Plaintiff's rifle and ammunition *was issued upon a finding of probable cause*, and as such, the warrant was issued in a constitutional manner.") (emphasis added). Plaintiff's alleged grounds for injunctive relief, that a search warrant was executed against him based on something less than probable cause, does not even apply to him, let alone the prospective class. Thus, final injunctive relief would be inappropriate for the same reasons the Court found preliminary relief inappropriate — Plaintiff cannot show that Defendants acted in his case, or any other case, in a manner that could (or need) be corrected by an injunction.

Similar deficiencies plague Plaintiff's class certification application with respect to the second requirement for a 23(b)(2) class: that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As the Supreme Court explained in *Dukes*:

> Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

131 S. Ct. at 2557. In interpreting the "class as a whole" language, the Third Circuit has explained that "[w]hile 23(b)(2) class actions have no predominance or

superiority requirements [as with Fed. R. Civ. P. 23(b)(2)], it is well established that the class claims must be cohesive." *Barnes*, 161 F.3d at 143.[4] "For a court to find a class cohesive, it must find that the 'class's claims are common ones and that adjudication of the case will not devolve into consideration of myriad individual issues.'"). *T.R. v. School District of Philadelphia*, 2019 WL 1745737, at \*21 (E.D. Pa. 2019) (quoting Newberg § 4:34). The cohesiveness requirement mirrors Fed. R. Civ. P. 23(b)(3)'s requirement that common issues "predominate." *See, e.g.*, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (explaining that Fed. R. Civ. P. 23(b)(3)'s predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.")

To find cohesiveness, "[t]he Court must examine the elements of Plaintiffs' common law claims to determine whether the presence of individualized issues precludes a finding of cohesiveness." *Rowe v. E.I. Dupont De Nemours and Co.*, 262 F.R.D. 451, 458 (D.N.J. 2009). Again, because Plaintiff bases his pursuit of class certification only on his Fourth Amendment claims, the only question here is whether that particular claim presents individualized issues that preclude a finding of cohesiveness. This Court has already found that the AOC and Attorney General

---

[4] Indeed, "a (b)(2) class may require more cohesiveness than a (b)(3) class. . .because in a (b)(2) action, unnamed members are bound by the action without the opportunity to opt out." *Barnes*, 161 F.3d at 142-43; *see also Gates v. Rohm and Haas Co.*, 655 F.3d 255 (3d Cir. 2011).

directives issued subsequent to *State v. Hemenway*, 216 A.3d 118 (N.J. 2019) —
which confirmed that the "probable cause standard determines whether a search
warrant can be issued" under the ERPO Act — resolved Plaintiff's concerns about
the plain language of the statute and "have the force of law" in New Jersey. *See* ECF
No. 57 at 4 nn. 3 & 4 (citing *S.M. v. K.M.*, 81 A.3d 723, 728 n.2 (N.J. App. Div.
2013); *see also O'Shea v. Twp. of W. Milford*, 982 A.2d 459, 465–466 (N.J. App.
Div. 2009)). Thus, the ERPO Act, "as it is currently being enforced, is
constitutional." *See* ECF No. 57 at 23 n.18.

So Plaintiff's Fourth Amendment claim that the ERPO Act is unconstitutional
as *applied* to him is all that remains. This Court has already found, "based on the
record before the Court, the warrant for Plaintiff's rifle and ammunition *was issued
upon a finding of probable cause*, and as such, the warrant was issued in a
constitutional manner." *See* ECF No. 57 at 14-15. But setting aside that conclusion
for argument's sake, it is clear that any determination of whether probable cause was
applied to Plaintiff, specifically, has nothing to do with whether probable cause was
applied to others for the issuance of search warrants under the ERPO Act. As a result,
individualized issues preclude a finding of cohesiveness because "adjudication of
the case" *will*, necessarily, devolve into consideration of "myriad individual issues."
*T.R.*, 2019 WL 1745737, at *21. Indeed, as the Supreme Court recently reiterated in
*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) — albeit in the arrest context

— a determination of whether probable cause existed is based upon "the whole picture" and the "totality of the circumstances," requiring a fact intensive inquiry. *Id.* at 588.

Moreover, while the Third Circuit has rejected necessity as a "freestanding requirement justifying the denial of class certification," it is a factor that "may be considered to the extent it is relevant to the enumerated Rule 23 criteria, including 'that final injunctive relief or corresponding declaratory relief [be] appropriate respecting the class as a whole.'" *Gayle*, 838 F.3d at 310 (citing Fed. R. Civ. P. 23(b)(2)). "That is, there may be circumstances where class certification is not appropriate because in view of the declaratory or injunctive relief ordered on an individual basis, there would be no meaningful additional benefit to prospective class members in ordering classwide relief." *Id.* This is just such a case. An injunctive order requiring application of probable cause to a prospective class of people — ostensibly subjects of ERPO Act proceedings — would offer no meaningful benefit where State law already requires that exact standard be applied.

Another issue with class certification under Fed. R. Civ. P. 23(b)(2) in this case is Plaintiff's claim for monetary damages. Setting aside that those claims fail as a matter of law pursuant to qualified immunity as discussed in Defendants' motion to dismiss, ECF No. 65, and in Point II.B.ii, *supra*, the Supreme Court has held that claims for monetary relief may only be certified under Fed. R. Civ. P. 23(b)(2) where

34

such relief is "incidental to the injunctive or declaratory relief." *Dukes*, 131 S. Ct. at 2557. Monetary damages claims "for individualized relief" — as in this case — "do not satisfy the rule." *Id.* Any calculation of monetary damages for Plaintiff, or for any other prospective class members, would necessitate the exact type of individualized fact-finding that is proscribed by Fed. R. Civ. P. 23(b)(2). This case would also be inappropriate for "hybrid" certification under multiple parts of Fed. R. Civ. P. 23(b). *See, e.g.*, *Wilson v. County of Gloucester*, 256 F.R.D. 479, 491–92 (D.N.J. 2009). That is because Plaintiff's proposed class does not satisfy the requirements for either Fed. R. Civ. P. 23(b)(2), as discussed above, or Fed. R. Civ. P. 23(b)(3), as discussed below.

ii.   *Certification under Fed. R. Civ. P. 23(b)(3) is equally inappropriate because common questions of law and fact do not predominate over questions affecting only individual members of the proposed class and because class resolution is not superior to other available methods for the fair and efficient adjudication of the controversy.*

Certification for monetary damages claims is permitted under Fed. R. Civ. P. 23(b)(3), but here, because Plaintiff has no valid claim for monetary damages as a result of sovereign immunity and qualified immunity, his (possible) application for class certification pursuant to Fed. R. Civ. P. 23(b)(3) is baseless. The Court need look no further to deny certification under Fed. R. Civ. P. 23(b)(3), but Plaintiff has also failed to meet the substantive requirements of the rule. Class certification seeking monetary compensation is only permitted where (1) "questions of law or

fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy*." Sullivan*, 667 F.3d at 296 (citing Fed. R. Civ. P. 23(b)(3)). "These twin requirements are commonly referred to as predominance and superiority." *Id.* This type of class action generally exists to ensure compensation where individual damages are not substantial enough to justify the effort and expense of litigation. *See Amchem*, 521 U.S. at 617 (noting that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

The first factor, predominance, entails "(a) first examining each element of the plaintiff's legal claim to see if it involves common issues of law or fact and then (b) determining whether issues common to the class overwhelm issues subject to individualized proof." *Underwood v. Kohl's Department Stores, Inc.*, 2017 WL 5261535, at *5 (E.D. Pa. 2017) (citing Newberg § 4:50). Put another way, "a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Lisa v. Saxon Mortgage Services, Inc.*, 2016 WL 5930846, *9 (E.D. Pa. 2016) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). As discussed at length above, in the sections addressing commonality for purposes of

Fed. R. Civ. P. 23(a) and cohesiveness for purposes of Fed. R. Civ. P. 23(b)(2),

Plaintiff's claim does not present common questions of law and fact applicable to all

prospective class members.[5] Plaintiff claims that, notwithstanding binding New

Jersey law requiring probable cause for issuance of a search warrant under the ERPO

Act, and relevant documents attached to Plaintiff's complaint that evince application

of that standard to him, something less than probable cause was applied.

Undoubtedly, this legal theory would require the facts of every case to be scrutinized

to determine if that is true.  As a result, this is a case in which, even if there was

evidence of liability applicable to an entire class of people, Defendants "would have

to be afforded the opportunity to cross-examine each individual plaintiff." *Maloney*

*v. Microsoft Corp.*, 2012 WL 715856, at *6 (D.N.J. Mar. 5, 2012) (citing *Barnes*,

161 at 145-46). Thus, common questions of law and fact do not predominate, and

certification under Fed. R. Civ. P. 23(b)(2) is inappropriate.

Similarly, the second factor — superiority — also weighs against

certification. "A class action must represent the best 'available method[] for the fair

and efficient adjudication of the controversy.'" *Newton*, 259 F.3d at 191 (quoting

Fed. R. Civ. P. 23(b)(3)). Relevant factors include: (1) the class members' interest

---

[5] Even if Plaintiff could satisfy the Fed. R. Civ. P. 23(a) commonality requirement, Fed R. Civ. P. 23(b)(3) is not automatically satisfied. *See Amchem*, 521 U.S. at 623-24 (explaining that the predominance inquiry is "far more demanding" than the commonality requirement because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation").

in individually controlling their separate actions; (2) the extent and nature of existing litigation by class members concerning the same claims; (3) the desirability or undesirability of concentrating the litigation in the particular forum; and (4) the likely difficulties in class management. Fed. R. Civ. P. 23(b)(3). Technically, the rule provides that these factors are relevant to both predominance and superiority, but courts usually analyze them in the context of superiority. Newberg, § 4:68.

Here, class certification is undoubtedly inferior by comparison to other available alternatives. In the absence of any valid claim for money damages, and because Plaintiff's facial challenge to the ERPO Act under the Fourth Amendment is addressed by applicable directives, the only remaining relevant question is whether probable cause was actually applied to the search warrant executed against him. This court has already found that it was. But Plaintiff, like any other subject of a TERPO proceeding, has a sufficient venue in which to assert his "as applied" constitutional challenge to the ERPO Act — the Superior Court of New Jersey, where the proceedings were initiated in the first place, and remain pending even now. This reality strongly counsels in favor of this Court's abstention pursuant to *Younger*, 401 U.S. 37, but for the same reasons makes clear that a class action here is most certainly not the best available method for the fair and efficient adjudication of the controversy. *Newton*, 259 F.3d at 191

C.   <u>Even if Class Certification Could Be Granted, Plaintiff's Proposed Notice is Improper.</u>

Notice of certification is discretionary for classes under Fed. R. Civ. P. 23(b)(2), and mandatory for those certified pursuant Fed. R. Civ. P. 23(b)(3). While it is unclear which rule Plaintiff relies upon for his application for certification, assuming he means to rely on Fed. R. Civ. P. 23(b)(3), the proposed notice is improper. Fed. R. Civ. P. 23(c)(2)(A) to (B) sets forth the standard by which notice of class certification is to be made: "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The rule provides that notice must "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.* In particular, the "How do the Defendants' respond?" section, Pl. Ex. B at 5-6, mischaracterizes the Defendants' legal arguments and this Court's findings at the preliminary injunction stage.

## **CONCLUSION**

For these reasons, this Court should deny the motion seeking class certification.

39

Dated: May 21, 2020                    Respectfully Submitted,

                                       GURBIR S. GREWAL
                                       ATTORNEY GENERAL OF NEW JERSEY

                                       By: /s/ Bryan Edward Lucas

                                       Joseph Fanaroff
                                       Assistant Attorneys General
                                         Of Counsel and On the Brief

                                       Rachel Simone Frey
                                       Bryan Edward Lucas
                                       Robert McGuire
                                       Deputy Attorneys General
                                         On the Brief