Law Offices of Albert J. Rescinio, L.L.C.
1500 Allaire Avenue - Unit #101
Ocean Township, New Jersey  07712
Telephone:   (732) 531-2005
Telefax:     (732) 531-8009
By:    Albert J. Rescinio, Esq. (ID#034331989)
Attorneys for Plaintiff David M. Greco, *individually and on behalf of others similarly situated*

## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

|  |  |
|---|---|
| **David M. Greco,** *individually and on behalf of others similarly situated,* <br><br> *Plaintiff,* <br><br> vs. <br><br> **Gurbir S. Grewal,** *New Jersey Attorney General, et al.,* <br><br><br> *Defendants.* | **Civil Action No. 3:19-cv-19145-BRM-TJB** <br> **Honorable Brian R. Martinotti, U.S.D.J.** <br> **Honorable Tonianne J. Bongiovanni, U.S.M.J.** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE VARIOUS DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT AND IN SUPPORT OF PLAINTIFF'S AFFIRMATIVE CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND ENTRY OF PERMANENT INJUNCTIVE RELIEF**

## Procedural Background:

Plaintiff David M. Greco (hereinafter "Plaintiff") filed the instant Complaint and Jury

Demand on October 21, 2019 behalf of himself and others similarly as a proposed *Rule* 23(b)(3)

Class Action.  More specifically, the Complaint contained Four Counts.[1] (*See* **ECF Document No. 1).**

In the First Count, Plaintiff alleges that the Civil ERPO Act, both on its face, and as applied to Plaintiff, is unconstitutional and that the named Defendants had knowingly and intentionally and with deliberate indifference violated Plaintiff's clearly established rights federal rights under the Fourth Amendment to the *United States Constitution* applied to the States by virtue of the Fourteenth Amendment in violation of 42 *U.S.C.* §1983,  and also in violation of Article I paragraph 7 of the *New Jersey State Constitution* (1947), as amended, both of which Federal and State Constitutional provisions require that a Search Warrant may only issue upon a legal standard of "probable cause".

In the Second Count, Plaintiff alleges that the Civil ERPO Act, both on its face and as applied to Plaintiff, violates his Second Amendment and Fourteenth Amendment rights in violation of 42 *U.S.C.* §1983, arguing that he has a clearly established recognized fundamental

---

[1]     The Plaintiff's "VERIFIED CLASS ACTION COMPLAIN AND JURY DEMAND" *(See* ECF Document No. 1) contained a typo on page 25, first listing "THIRD COUNT" (42 U.S.C. §l983 - First Amendment) consisting of paragraphs 69, 70 & 71, followed by what incorrectly read THIRD COUNT again for a second time, but this second "Third Count" SHOULD have read properly read "FOURTH COUNT (Right to Jury Trial)", which is then followed by paragraphs 72,73 & 74. On page 28 is the Plaintiff's actual *F.R.Civ.P.* 38 JURY DEMAND signed by counsel. In this regard, the New Jersey State Constitution's Article I, paragraph 9 reads as follows:

> 9.  The right of trial by jury shall remain inviolate; but the Legislature may authorize the trial of civil causes by a jury of six persons. The Legislature may provide that in any civil cause a verdict may be rendered by not less than five-sixths of the jury. The Legislature may authorize the trial of the issue of mental incompetency without a jury.

Plaintiff argues in the FOURTH COUNT, incorrectly denominated at the beginning as a *second* "Third Count" where it should properly read "FOURTH COUNT", that the Civil ERPO Act violates the New Jersey State Constitution as the consequences of a litigant losing the Civil FERPO hearing - the indefinite seizure of weapons and the indefinite suspension of full Second Amendment rights (which are themselves "fundamental" Federal Constitutional Rights) is serious and is a "consequence of magnitude" similar to the Supreme Court's ruling (in a different context) in *Blanton v. City of North Las Vegas,* 489 U.S. 538 (1989). It is understood that this is strictly a state constitutional argument, as the ERPO Act is a State Civil statute, and the Federal Constitution's Seventh Amendment right to a civil jury trial has not to date been "incorporated" through the Fourteenth Amendment to be imposed as a right against the States. Upon reflection, and in light of the typo, Plaintiff agrees that this claim is perhaps unclear. As such, Plaintiff will move separately for leave to file a First Amendment Complaint wherein this claim will be expanded and clarified to rest solely on an asserted Article I, paragraph 9 New Jersey State Constitutional right to a Jury Trial at the FERPO hearing.

Second Amendment right to own and possess a firearm unconnected with service in a militia, and to use that firearm for traditionally lawful purposes such as self defense within the home (*See Heller v. District of Columbia,* 554 *U.S.* 570 (2008)) that once he is in lawful possession of weapons and ammunition that the State can not Constitutionally and lawfully deprive him of that fundamental constitutional "liberty" and / or "property" interest without FIRST affording him notice and a "pre-deprivation hearing" where he has a right to appear, be heard, and oppose the application.

In the Third Count, Plaintiff claims that he is being retaliated against and punished for his words and thoughts (and claimed associations) which is a violation of his right to freedom of speech and association protected by the First Amendment to the United States Constitution in violation of 42 *U.S.C.* §1983.

In the Fourth Count (*See* Footnote 1, *supra*), Plaintiff argues that the Civil ERPO Act violates the Article I, paragraph 9 of *New Jersey State Constitution* (1947) as the consequences of a litigant losing the Civil FERPO hearing - the indefinite seizure of weapons and the indefinite suspension of full Second Amendment rights (which are themselves "fundamental" Federal Constitutional Rights) is serious and is a "consequence of magnitude" similar to the Supreme Court's ruling (in a different context) in *Blanton v. City of North Las Vegas,* 489 *U.S.* 538 (1989), and as such Plaintiff and others similarly situated are therefore constitutionally entitled to have a jury, rather than a single judge, sit as the finder of facts at the FERPO hearing. Plaintiff seeks a Final Judgment granting, in addition to other forms of, certain final relief that is relevant for purposes of his Cross-Motion as follows:  (1) a Court declaration that the Civil

ERPO Act, both facially and as applied to him, is unconstitutional, (2) a Court declaration that the unconstitutional portions of the Civil ERPO Act can not properly be severed from the remainder of the statute, (3) a permanent injunction barring enforcement of any portions of the Civil ERPO Act by the Defendants, (4) nominal damages, (5) compensatory damages, (6) punitive damages and (7) costs and attorneys fees as permitted under 42 *U.S.C.* §1988.

At the time of the filing of the Complaint Plaintiff also sought a Preliminary Injunction by was of Order to Show Cause. The Court entered the Order to Show Cause as requested and thereafter the Pleadings, Order to Show Cause and other moving papers were immediately served upon the Defendants along with the appropriate Summons.[2]

Thereafter on November 8, 2019 Deputy Attorney General Brian Lucas of the Office of the New Jersey Attorney General entered an appearance on behalf of named Defendants Gurnir S. Grewal, Jared M. Maples, New Jersey Office of Homeland Security and Preparedness, Camden County Prosecutor's Office, Jill S. Mayer and Nevan Soumalis and filed opposition to Plaintiff's application for a preliminary injunction (*See* **ECF Document No. 32)**, and that same day attorneys Vincent P. Sarubbi, Esq, Kerri E. Chewning, and Daniel J. DeFiglio of ARCHER & GREINER law firm entered an appearance on behalf of named Defendants Gloucester Township Police Department, Bernard John Dougherty, Nicholas C. Aumendo, Donald B. Gansky, William Rapp and Brian Anthony Turchi and joined in the arguments made by Mr. Lucas on behalf of the other Defendants and opposed the Plaintiff's application of a preliminary

---

[2]       Plaintiff has already affirmatively moved, by way of separate formal Motion, for an Order Certifying this matter as a *F.R.Civ.P.* 23(b)(3) Class Action, an Order appointing Albert J. Rescinio. Esq. as lead attorney for the Certified Class, and other related Class Action relief regarding preliminary Notices. That Motion and those requests for relief are briefed separately.

injunction. (*See* **ECF Document No. 33).**

Specifically, the collective Defendants' written opposition to the Plaintiff's preliminary injunction application was as follows: In Point I, it was argued that "Plaintiff Has Failed To Demonstrate A Likelihood Of Success On The Merits" (*See* **ECF Document No. 32 at page 16)** with sub arguments "A" through "C". Point IA was detailed written argument that the Court should abstain under *Younger* (*See* **ECF Document No. at page 17 through 24),** Point IB was written detailed argument that claimed that Plaintiff lacks Article III standing to bring a Fourth Amendment challenge and is unlikely to prevail on that claim (*See* **ECF Document No. 33 at page 24 though page 30),** and Point IC was detailed written argument that claimed that Plaintiff was unlikley to prevail on his Second Amendment claim  (*See* **ECF Document No. 33 at page 30 though page 39).**  In Point II it was argued that "The Other Preliminary Injunction Factors Weigh In Defendants' Favor".  (*See* **ECF Document No. 39 at page 39 though page 41**). Thereafter, on November 15, 2019, Plaintiff filed a detailed written Reply to the collective Defendant's written arguments in opposition to the application for a preliminary injunction. (*See* **ECF Document No. 37).**

The Court then held oral argument on the preliminary injunction application on November 20, 2019 at which time the fully briefed issue of the non-applicability or applicability of *Younger* Abstention was indeed extensively argued.[3] (*See* Argument of Plaintiff's Attorney Rescinio at 1T:  Page 20 Line 14 through page 22 line 21; Argument of Attorney General Farnhoff at 1T:   Page 28 Line 10 Page 33 Line 1 ending with "... *Younger we think, again, is the*

---

[3]     A copy of the certified transcript from such proceedings is submitted herewith and shall be cited to as "IT" in this Legal Memorandum.

*appropriate thing to do here.*" at 1T:  Page 32 Line 25 to Page 33 Line 1.  The Court then

discussed the arguments made by summarizing as follows:

> THE COURT:  ***So just to recap your argument, initially this Court should***
> ***abstain under the Younger Doctrine and these matters can be addressed in the***
> ***state court in the Greco matter.  If I do not abstain,*** they haven't met their
> burden for preliminary injunction for a variety of reasons, and I guess
> transcending the whole argument is the fact that because of the two directives
> and the Supreme Court decision, the law is being applied constitutionally
> because it's utilizing probable cause and not good cause. (Emphasis added).
> MR FANAROFF:  And I would add to your wonderful summation of final point,
> which is that if for some reason a prosecutor attempted to secure a search
> warrant on less than probable cause, that could be challenged in the state court as
> well, regardless of whether or not the directives existed.
> THE COURT: Okay.
> MR. FANAROFF: So otherwise, Your Honor, yes, ***you have summarized our***
> ***argument well.*** Thank you. (Emphasis added).

**[*See* 1T at Page 38 Line 16 through Page 39 Line 8].**

Plaintiff's Attorney Rescinio then briefly re-addressed the Defendants' *Younger*

abstention arguments again.  (1T:  Page 40 Line 9 through Page 41 Line 3).  The Court reserved

decision.[4]  On December 5, 2019 Plaintiff submitted a supplemental Letter Brief.  **(ECF**

**Document No. 44).**  On January 10, 2020 Plaintiff filed a motion for an Order certifying the

matter as a *Rule* 23(b)(3) Class Action.  **(ECF Document No. 48).**   On January 15, 2020 the

Collective Defendants formally requested by letter that the Court stay their obligation to respond

to the Class Certification Motion until such time as the Court issued a decision on the pending

application for a preliminary induction, similar to what had been done with the temporary stay of

their obligation to file a responsive pleading, and moreover.  Moreover, in that letter the

Defendants posited that before a Class Action can be certified, the class representative must

---

[4]       The parties agreed that no responsive pleadings would be due to be filed until after the Court issued a decision on the application
for a preliminary injunction.

demonstrate "standing", which was an issue contested at the pending preliminary injunction application still not decided by the Court.   (*See* **ECF Document No. 49;** *see also* **Footnote 3,** *supra***.)**   Plaintiff replied to the letter request for a stay on January 16, 2020. **(***See* **ECF Document No. 50).**   On January 17, 2020 the Court granted the Defendants' request and Administratively Terminated the Plaintiff's Class Action Motion to be filed after the decision on the preliminary injunction was issued, and - notwithstanding the fact that the issue of Plaintiff's "standing" had already been fully briefed by all parties and then argued - the Court directed the parties to file further supplemental briefs limited solely to the issue of Plaintiff's specific Article III "standing" to pursue both (1) a "facial" constitutional challenge to the Civil ERPO Act and (2) an "as applied" constitutional challenge to the Civil ERPO Act. **(***See* **ECF Document No. 51).** Plaintiff therefore filed the supplemental briefas directed on January 24, 2020 **(***See* **ECF Document No. 51),** and Defendants filed their response on January 31, 2020 again arguing that Plaintiff lacks Article III Standing to pursue any claim and then, despite the Court Order's direction that only the issue of standing was to be discussed, Defendants nevertheless apparently could not help themselves and ended their Brief on page 10 with a Footnote that read:  "*The State, of course, maintains its position that there are other obstacles to hearing this case in federal court, including the abstention doctrine announced in Younger v. Harris, 401 U.S. 37 (1971). See ECF 32 at 17-24.*" **(***See* **ECF Document No. 53 at page 10, Footnote 3).**  On February 3, 2020 Plaintiff filed his reply brief.  **(***See* **ECF Document No. 55).**

On February 21, 2020 the Court issued a 23 page detailed written Opinion and denied the application for a preliminary injunction. **(***See* **ECF Document No. 57).**

First, the Court addressed the issue of Article III "standing", noting with regard to the First Count

(Fourth and Fourteenth Amendments) that:

> ...  *__Here, the Court finds Plaintiff has sufficiently alleged an__*
> *__injury for standing purposes__*.  Whether the warrant was properly
> issued is not relevant at this stage of the analysis.  It is undisputed
> that Plaintiff's home was searched and his property was seized.
> *__Plaintiff, therefore, has standing to assert a Court Amendment__*
> *__claim.__*

**(*See* ECF Document No. 57 at page 10).**

The Court next noted that the Defendants concede  Plaintiff has standing to bring his

Second and Fourteenth Amendment claims.  **(*See* ECF Document No. 57 at page 11, footnote**

**9).**  Lastly on the issue, the Court also found that "...[a]t this time, based on eth current record,

the Court finds that Plaintiff has standing to assert his First Amendment claim." **(*See* ECF**

**Document No. 57 at page 12).**

The Court next engaged in analysis of the traditional four factors considered on a

preliminary injunction.  The Court first concluded that "... [h]ere, Plaintiff has established a

reasonable probability of success on the merits, because the plain language of the ERPO Act is

violative of the Fourth Amendment."   **(*See* ECF Document No. 57 at page 13).**

Next, the Court addressed the "irreparable harm" issue.  Plaintiff had argued in his brief

and at oral argument that a *per se* presumption of irreparable harm applied, citing to cases

involving other Federal Constitutional right violations that clearly supported this argument.  The

Court in turn noted that "... Plaintiff cites no cases ***in this*** Circuit or District where courts have

applied this per se rule to violations of the Fourth Amendment." (Emphasis added).   **(*See* ECF**

**Document No. 57 at page 14).**   While this is accurate it is also noted that the Court did not cite

or make reference to any such published case in the District of New Jersey or the Third Circuit

that directly addressesses the issues of whether a Fourth Amendment violation, properly plead,

carries with it a presumption of irreparable harm.  To the best of Plaintiff's knowledge no such

case exists and thus was not cited by either Plaintiff or the Court.  The Court noted that the 6th

Circuit Court of Appeals has specifically held - in fully published opinion - that the United States

Supreme Court's holding in *Elrod v. Burns,* 427 *U.S.* 347, 373 (1976) (that "[t]he loss of First

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

injury.") of *per se* "irreparable harm" for injunction purposes is indeed "... likewise applicable

when Fourth Amendment rights are at stake."  *Ramierz v. Webb,* 787 *F.2d* 592 (6th Cir. 1986).

(*See* **ECF Document No. 57 at page 15).**  But then, instead of simply following the fully

published 6th Circuit Court of Appeals existing precedent in *Ramirez v. Webb,* the Court instead

reached across the country to a 20 year old  "WestLaw® only published" Federal *District Court*

*Level Case* from the District of New Mexico, *Rodriguez as next friend of Rodriquez v. Heitman*

*Properties of New Mexico, Ltd.*, No. 98-1545, 199 WL 35808391, at *4 (D.N.M. Oct. 26, 1999),

which held that the *Elrod* presumption does not apply to Fourth Amendment cases.  Then, noting

a fully published Third Circuit case where the Court declined to extend the *Elrod* presumption to

Fifth Amendment equal protection claims there (which of course are by their nature *very different*

the Fourth Amendment claim here)[5], *Constructors Association of Western Pennsylvania v.*

*Kreps,* 573 F.2d 811 (3d Cir. 1978), the Court in this case then "... declin[ed] to extend *Elrod's*

---

[5]        It is frankly hard for Plaintiff to place the state government kicking in front door of a citizen's home and confiscating personal property - which unique personal property itself is subject to a separate specific constitutional level of protection-on the same footing for an analysis of *per se* irreparable constitutional harm as, for example, the theoretical propriety of an 10% public works project fund for "minority business enterprises" being administered by the Department of Commerce that was being temporarily withheld, such as was at issue in the Third Circuit in *Kreps.*

presumption of irreparable harm to the specific Fourth Amendment violations alleged by Plaintiff here." (*See* **ECF Document No. at page 16**). The Court then concluded that "Based on the unique factual circumstances of the present issue, the Court finds Plaintiff has failed to demonstrate he would suffer irreparable harm in the absence of injunctive relief." (*See* **ECF Document No. at page 16**). The Court likewise found a lack of "irreparable injury" on the Second and Fourteenth Amendment claims. On the First Amendment claim where the *Elrod* presumption clearly applies, the Court held that it could not "… conclude, on the record before it, that Plaintiff was penalized because of his lawful speech."" (*See* **ECF Document No. at page 23**). The Court, by acting, finding that Plaintiff has Article III standing to pursue each of his claims, and then considering the preliminary injunction application on its merits, considered and rejected the Defendants motion for the Court to abstain under *Younger*.

<u>**The Responsive Pleadings:**</u>

Finally on May 11, 2020 the Defendants all filed their first responsive pleadings.[6]
Defendants Gurnir S. Grewal, Jared M. Maples, New Jersey Office of Homeland Security and Preparedness, Camden County Prosecutor's Office, Jill S. Mayer and Nevan Soumalis have filed a motion under *Rule* 12. First, these Defendants seeks to - again - raise the very same *Younger* abstention argument already briefed and argued and lost at the preliminary injunction phase, again seeking dismissal under *Rule* 12(b)(1). Next, these Defendants argue that Count One and Count Three should be dismissed under *Rule* 12(b)(6) for failure to state a claim upon which relief can be granted. No such challenge is brought to the claims in Count Two. Lastly, these

---

[6] The Defendant's collective 3 month delay in filing the responsive pleadings was due to the COVID-19 Virus crisis and New Jersey statewide "shut down".

Defendants argue that all claims for money damages are barred by the doctrines of either sovereign immunity or qualified immunity.

Defendants Gloucester Township Police Department, Bernard John Dougherty, Nicholas C. Aumendo, Donald B. Gansky, William Rapp and Brian Anthony Turchi similarly filed their own *Rule* 12 Motion.  Firstly they argue (correctly) that the Defendant Gloucester Township Police Department is not a "person" for 42 U.S.C. §1983 purposes arguing that such Defendant should be dismissed as a named Defendant because any further amendment about this Defendant would be "futile", but in so doing never addressing the fact and ignoring the reality of the properly plead State Constitutional Claim (Article I, paragraph 7 of the *New Jersey State Constitution* (1947)) where such Defendant is indeed a proper named Defendant.  Next it is argued that all these Defendants are entitled to Qualified Immunity, which is tied in to their arguments that the arguments in Count I and Count III fail to state a claim.

Plaintiff hereby opposed all of the Defendants' arguments and hereby also affirmatively Cross-Moves pursuant to *F.R.Civ.P.* 56 for an Order granting Partial Summary Judgment in his favor on the issue of liability on the Federal and New Jersey State "Facially Unconstitutional" arguments in Count I and on the Fourteenth Amendment "notice and pre-deprivation hearing" argument in Count II, and specifically seeking (1) nominal damages, (2) a declaration that the ERPO Act, as written, is facially unconstitutional, and (3) the remedy of a PERMANENT injunction preventing enforcement of this clearly unconstitutional law, with the issue of the quantum of compensatory and punitive damages, if any, to be decided by a jury.  Lastly, Plaintiff argues that "severance" is not appropriate under the circumstances and that the entirety of the

Civil ERPO Act should be struck down as unconstitutional.

**PART I:  PLAINTIFF'S OPPOSITION TO DEFENDANTS' RESPONSIVE PLEADING MOTIONS TO DISMISS:**

**LEGAL ARGUMENT:**
**PONT I:**
**THE ISSUE OF *YOUNGER* ABSTENTION WAS ALREADY DECIDED IN PLAINTIFF'S FAVOR AND MAY NOT BE RAISED AGAIN; ALTERNATIVELY OR CUMULATIVELY THE DOCTRINE SIMPLY DOES NOT APPLY UNDER THE FACTS OF THIS CASE:**

**A.      The Law of the Case Doctrine Applies to Preclude the Defendants From Re-Litigating the Court's Earlier Ruling That It Will Not Abstain Under *Younger*:**

In general, law of the case doctrine is a concept that precludes the re-litigation of issues *within the context of a single case* once the issue has previously been decided.  The doctrine is thus in this respect slightly different to the other recognized doctrines of preclusion and bar such as collateral estoppel, *res judicata*, entire controversy doctrine, *stare decisis*, equitable estoppel and judicial estoppel, all of which doctrines operate to preclude re-litigation in a separate subsequent action once decided between parties who have been given a full and fair opportunity to litigation the issue the first time.  It is also different from other doctrines as it equally applies to rulings and findings made in non-final interlocutory rulings, as opposed to only final judgments.  *See* Point IB, infra.  The doctrine operates to prevent a party from getting a second - or successive - "bites at the apple" so to speak, in that once an issue is decided, absent a timely

12

motion for reconsideration[7] or an appeal, the issue has been conclusively decided within that case.   But if the law of the case doctrine were to be strictly applied without exception, a trial court would at all times and under all circumstances be absolutely bound by its first adjudication of an issue and there would be no possibility of any change or modification or alteration of an earlier decision once made at the trial level.   As is explained *infra.,* law of the case preclusion principles are therefore best understood as rules of sensible and sound practice that permit logical progression toward final judgment, but that does not operate as total and absolute bar tying a Court's hands prohibiting a Court from ever altering prior interlocutory decisions in a case in all instances.   There are a few exceptions, none of which are applicable here.

Having said that, the law of the case doctrine is indeed the framework for the preclusion argument here as it is the appropriate preclusion doctrine to " ... *appl[y]in subsequent proceedings __of the same case__.*" (Emphasis added).   *Hutchins v. U.P.S., Inc.*, No. 01-1462, 2005 WL 1793719, at *3 (D.N.J. July 26, 2005) (citation omitted); *see also Hamilton v. Leavy*, 322 *F.3d* 776, 787 (3d Cir. 2003) ("... [t]he law of the case doctrine limits re-litigation of an issue once it has been decided in an earlier stage __of the same litigation__." (Emphasis added)); *ACLU v. Mukasey*, 534 *F.3d* 181, 187 (3d Cir. 2008) ("Under the law of the case doctrine, when a court decides upon a rule of law, __that decision should continue to govern the same issues in subsequent stages in the same case__." (Emphasis added)).   Here, again, as Plaintiff is specifically relying upon the earlier ruling made by this Court at an earlier stage - the preliminary injunction

---

[7]       In this regard, the law is clear that "... [t]he purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact to present newly discovered evidence ..." *see Max's Seafood Café ex rel Lou-Ann Inc.* v. *Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999), and not to simply bring again the same identical argument already rejected by the Court a second time hoping the Court will for some reason simply change its mind.

13

stage - of this very same litigation, it is the "law of the case doctrine" that is indeed the appropriate framework for assessing and deciding the appropriateness of the preclusion issues raised in the instant motions. *Id; see also Casilla v. N.J. State Prison*, No. 05-4590, 2008 WL 4003664, at *8 n. 5 (D.N.J. Aug. 22, 2008) (noting that since the defendant sought preclusion "based on this Court's ***ruling in an earlier stage of the same case***, [the defendant's] argument probably should have been framed under 'the law of the case' doctrine". (Emphasis added)). As noted, there are very limited circumstances where there is an exception to the general rule, described in a legal sense as certain enumerated "extraordinary circumstances" that justify reconsideration of an issue decided earlier in the course of the same litigation. *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 *F.3d* 111, 116-17 (3d Cir. 1997). For purposes of the "extraordinary circumstances" exceptions, such may be found to exist under the following limited circumstances: (1) the availability of new evidence; (2) the announcement of a supervening new law; and (3) a clearly erroneous decision that would create manifest injustice. *Id.* at 117; *see also McDuffy v. Marsico*, No. 00-0938, 2008 WL 3925167, at *3 (D. Del. Aug. 21, 2008) (noting same factors). Otherwise, there is no basis to revisit or disturb earlier decided issues in a case once they have been decided. *Id.* and *Ibid.*

It is submitted that clearly on the facts of this case extant none of the three enumerated "extraordinary circumstances exceptions" apply: Defendants do not argued that there is some "new" evidence previously unknown or undisclosed. Defendants do not argue that there has been a change in the law since the original ruling. Nor do Defendants argue that the earlier decision was "clearly erroneous" and "would create manifest injustice". Indeed, the Attorney

14

General does not even mention the reality that the issue has already been raised by them, fully briefed by all parties, extensively discussed at oral argument, and (Plaintiff maintains raised **inappropriately**) yet again in writing post oral argument in the Attorney General's Court Ordered supplemental brief that was **supposed to have been** strictly limited to the issue of Plaintiff's "standing".   Defendants have already briefed, argued, and lost the literally identical "Abstention Doctrine" argument at the preliminary injunction phase.   And now, as part of a responsive pleading *Rule* 12 motion, Defendants have filed the virtually identical legal argument again now for a second time, expecting to somehow be permitted to re-argue the very same threshold issue that they already lost.   Under the circumstances extant, the "law of the case doctrine" indeed applies to bar Defendants from attempting to re-litigate this already decided issue now for a second time in this very same case.

**B.      The Third Circuit has Specifically Ruled that the "Law of the Case Doctrine" Applies to Non-Final Preliminary Injunction Rulings:**

Again as briefly noted above, with regard to most of the other doctrines of preclusion and bar (collateral estoppel, *res judicata*, entire controversy doctrine, *stare decisis*, equitable estoppel and judicial estoppel), "... the general rule [is] that issue preclusion attaches only when an issue of fact or law is actually litigated and determined by a valid and **_final_** judgment." (Emphasis added).  *National Association of Letter Carriers, AFL-CIO v. U.S.P.S.*, 272 *F.3d* 182, 189 (3d Cir. 2001) (quoting *Arizona v. California*, 530 *U.S.* 392, 414 (2000)).   The granting or denial of a preliminary injunction is of course not a "valid and **_final_** judgment," because it "does not involve a **_final_** determination on the merits." *Evans v. Buchanan*, 555 *F.2d* 373, 387 (3d Cir. 1977). Nevertheless, it has long been the governing law of the Third Circuit that preliminary injunction

findings and rulings may have preclusive effect "... if the circumstances make it likely that the findings are 'sufficiently firm' to persuade the court that there is no compelling reason for permitting them to be litigated again." *Hawksbill Sea Turtle v. FEMA*, 126 *F.3d* 461, 474 n.11 (3d Cir. 1997).  Speaking on this issue, the Court of Appeals for the Third Circuit, although in that case reversing the district court's application of issue preclusion on other grounds, squarely addressed the propriety of the concept of applying law of the case preclusion doctrine to preliminary injunction findings, doing so in their detailed footnote 11, and stating in relevant part as follows:

> ...[F]indings made in granting or denying preliminary injunctions can have preclusive effect if the circumstances make it likely that the findings are "sufficiently firm" to persuade the court that there is no compelling reason for permitting them to be litigated again. *Dyndul v. Dyndul*, 620 F.2d 409, 411-412 (3d Cir. 1980); *accord Commodity Futures Trading Comm'n v. Bd. of Trade*, 701 *F.2d* 653, 657 (7th Cir. 1983) (findings made in preliminary injunction decisions have preclusive effect "if the circumstances make it likely that the findings are accurate [and] reliable"); 18 Wright, Miller & Cooper §§ 4434, 4445; 1 *Restatement of Judgments* (Second) §13, illus. 1 at 136-137 (1982).

[*Hawksbill, supra*, 126 *F.3d* at 474 n.11].

In *Pennsylvania Public Interest Research Group, Inc. v. P.H. Glatfelter Co.,* 128 *F.Supp.*2d  747, 756 (M.D. Pa. 2001) the District Court recognized the "Third Circuit's unequivocal statement" in the governing *Hawksbill* footnote 11 that "findings made in granting or denying preliminary injunctions can have preclusive effect".  Whether the findings are "sufficiently firm" to merit preclusive effect "turns on a variety of factors, including '[1] whether the parties were fully heard, [2] whether the court filed a reasoned opinion, and [3] whether that decision could have been, or actually was appealed.'" *Hawksbill*, 126 *F.3d* at 474 n.11 (citing *In*

*re Brown*, 951 *F.2d* 564, 569 (3d Cir. 1991)); *see also Naser Jewelers, Inc. v. City of Concord*,

538 *F.3d* 17, 20 (1st Cir. 2008) (holding that law of the case doctrine applies to findings from a

preliminary injunction motion when the record was "sufficiently developed and facts necessary to

shape the proper legal matrix we[re] sufficiently clear").

      Here, it is submitted that application of the law of the case doctrine must apply.

*Hawksbill*, 126 F.3d at 474 n.11.  First, Defendants can not be heard to argue NOW that they did

not have adequate notice that the issue was being raised, as it was THEY who raised the issue of

the claimed applicability of *Younger* Abstention the first time at the preliminary injunction phase.

Second, Defendants can not argue that they did not have an opportunity to be fully heard.

Defendants briefed the issue of *Younger* abstention extensively in their opposition to the

Plaintiff's application for a preliminary injunction.  Plaintiff fully briefed the *Younger* abstention

issue once already in response.  Then, Defendants orally presented their *Younger* abstention

argument in open Court on the return date, with Plaintiff equally arguing against.  The Court

itself, after hearing oral argument on the *Younger* issue and at times engaging each party,

clarified to the Defendants that the procedural *Younger* abstention argument was their primary

argument in opposition ("THE COURT:  *So just to recap your argument, initially this Court*

*should abstain under the Younger Doctrine ..."* (***See* 1T at Page 38 Line 16 through Page 38**

**Line 17)).**  After the Court reserved, the Defendants again reminded the Court of their primary

argument in the supplemental briefing on the issue of Article III standing stage.  **(*See* ECF**

**Document No. 53 at page 10, Footnote 3)** *"**The State, of course, maintains its position that**

**there are other obstacles to hearing this case in federal court, including the abstention**

**doctrine announced in Younger v. Harris, 401 U.S. 37 (1971). See ECF 32 at 17-24."**).

Certainly the record for deciding the issue of *Younger* abstention was fully developed at this point such that the Court could make a fully informed decision and ruling on the issue.  On February 21, 2020 the Court issued the formal written Opinion and decided all of the substantive issues as discussed earlier herein, and in so doing the Court quite clearly rejected the Attorney General's Younger abstention arguments, as otherwise the Court would have not been able to proceed and substantively entertain the preliminary injunction arguments and make substantive rulings.  The Court would have had to outright dismiss the entire case, not just the Order to Show cause, if it found the *Younger* doctrine applied.  Frankly, Plaintiff was not surprised to see nothing specific about *Younger* abstention as in light of *Sprint Communications, Inc. v. Jacobs*, 571 *U.S.* 69 (2013) and the facts of this case, such argument was bordering on the frivolous within the meaning of *Rule* 11, which was Plaintiff's understanding why the Court did not bother to discuss the issue: It was frivolous.  Moreover, the Attorney General neither moved for reconsideration, not was there effort to appeal.  As such, this ruling - that *Younger* abstention does not apply to this case - is now the law of the case, and these Defendants should be precluded and barred now from rearguing the very point that they already lost.  Not only are there no other compelling reasons for re-litigating the same issue now, Defendants do not even so much as argue that there are any compelling reasons!  Rather, they simply re-submit essentially the same non-applicable boiler plate argument for a second time.  The Court should therefore completely disregard this second identical motion and reject same under the law of the case doctrine for the reasons stated herein.

18

**C.    Cumulatively or Alternatively, *Younger* Abstention is the Rare Exception And Not The Usual Rule, and it Does Not Apply:[8]**

That Federal Courts should abstain from deciding cases ***only in "exceptional"***

***circumstances*** is a bedrock principle that the United States Supreme Court recently again

specifically reinforced in *Sprint Communications, Inc. v. Jacobs*, 571 *U.S.* 69 (2013).   In a

strongly worded decision, the Supreme Court explained that Federal Courts have a "virtually

unflagging" obligation to hear cases within their jurisdiction. The unanimous ruling emphasizes

that abstention pursuant to *Younger v. Harris*, 401 *U.S.* 37 (1971)  is not appropriate merely

because a State Court is considering a case involving the same subject matter.  As the Supreme

Court explained:

> ***   In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction. Abstention is not in order simply because a pending state court proceeding involves the same subject matter. *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 *U.S.* 350, 373 (1989) (NOPSI ) ("[T]here is no doctrine that . . . pendency of state judicial proceedings excludes the federal courts.").  This Court has recognized, however, certain instances in which the prospect of undue interference with state proceedings counsels against federal relief. *See id.*, at 368.
> *Younger* exemplifies one class of cases in which federal court abstention is required [.] ... *** ... Circumstances fitting within the *Younger* doctrine, we have stressed, are "exceptional"; they include, as catalogued in *NOPSI* , **[1]** "state criminal prosecutions," **[2]** "civil enforcement proceedings," and **[3]** "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." 491 *U.S.*, at 367–368. Because this case presents none of the circumstances the Court has ranked as "exceptional," the general rule governs:  "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 *U.S.* 800, 817 (1976) (quoting *McClellan v. Carland*, 217 *U.S.* 268, 282 (1910)).

[*Sprint Communications, Inc. v. Jacobs*, 571 *U.S.* 69, 72-72 (2013)].

---

[8]        If the Court is willing to entertain this improper attempt at re-argument, Plaintiff additionally relies upon his other written opposition to such argument previously filed.

The Third Circuit clarified in *Acra Turf Club, LLC v. Zanzuccki* , 748 F.3d 127,

138 (3d Cir. 2014) that ...

> ... *Sprint* offers a forceful reminder of the longstanding principle that federal
> courts have a "virtually unflagging" obligation to hear and decide cases within
> their jurisdiction. *Sprint*, 134 S. Ct. at 591 (quoting *Colo. River*, 424 *U.S.* at
> 817); *see also Cohens v. Virginia*, 19 *U.S.* 264, 404 (1821) ("We have no more
> right to decline the exercise of jurisdiction which is given, than to usurp that
> which is not given."). Abstention under the *Younger* line of cases overcomes
> this principle only when federal litigation threatens to interfere with one of three
> classes of cases: (1) state criminal prosecutions, (2) state civil enforcement
> proceedings, and (3) state civil proceedings involving orders in furtherance of
> the state courts' judicial function. *Sprint*, 134 S. Ct. at 591.

[*Acra Turf Club, LLC v. Zanzuccki* , 748 F.3d 127, 138 (3d Cir. 2014)]

Moreover, with any constitutional claim, there is a *Younger* exception where the Plaintiff

shows the state act "flagrantly and patently" violates the constitution or, in other words, where

the Plaintiff presents a "facially conclusive" claim that the statute violates the constitution. *See*

*H.P. Hood, Inc. v. Comm'r of Agric., Food, and Rural Resources*, 764 *F.Supp.* 662, 675 (D.Me.

1991) (explaining that NOPSI "distinguishes between two standards: the more difficult to prove

'flagrantly and patently violative' standard, which [NOPSI] equates to 'facially conclusive' and

the easier to prove 'substantial' standard."). Here there is no question that the literal text of the

Civil ERPO Act is facially unconstitutional as violating the clear prohibition of the United States

Constitution's Fourth Amendment prohibition on the State issuance of a search warrant on a

legal standard of less that "probable cause" (Which prohibition is applicable to the States

through the Fourteenth Amendment) as this Court has already specifically found this to be a fact.

There is nothing otherwise "exceptional" justifying abstention, nor does the Attorney General

even try to argue that there is. This Court must - *now for a second time* - reject the Attorney

20

General's frivolous (in context) *Younger* abstention argument.

## POINT II:
## PLAINTIFF'S COMPLAINT STATES A CAUSE OF ACTION FOR *RULE* 12(B)(6) PURPOSES:

The Attorney General's Office next argues[9] on behalf of their collective clients Defendants Gurnir S. Grewal, Jared M. Maples, New Jersey Office of Homeland Security and Preparedness, Camden County Prosecutor's Office, Jill S. Mayer and Nevan Soumalis that the allegations in the First Count and Third Count of Plaintiff's Complaint fail to state a claim upon which relief may be granted within the meaning of *F.R.Civ.P.* 12(b)(6).  The Attorney General concedes that Plaintiff's Second Amendment claim in the Second Count states a valid claim for 12(b)(6) purposes.

Conversely, The Police Officer Defendants argue[10] only that "Plaintiff cannot allege a plausible Fourth Amendment violation", but do so only in the context of their "qualified immunity" arguments which Plaintiff addresses in detail in POINT III, *infra.*

### Standard of Review on a *Rule* 12(b)(6) Motion:

In deciding a motion to dismiss pursuant to *F.R.Civ.P.* 12(b)(6), a District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 *F.3d* at 228. "[A]

---

[9]      For the balance of this Memorandum of Law whenever the arguments are made collectively on behalf of all the named Defendants represented by the Attorney General's Office (as opposed to the Attorney General, who is actually a named defendant himself), Plaintiff will preface such arguments for ease of reference with *"The Attorney General's Office argues..."* rather than repeating all of the collective Defendants names in relation to the argument.

[10]      For the balance of this Memorandum of Law whenever arguments are made collectively on behalf of all the named Defendants represented by the ARCHER & GREINER Law Firm, Plaintiff will preface such arguments for ease of reference with "The Police Officer Defendants argue ..." rather than repeating all of the collective Defendants names in relation to the argument.

complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 *U.S.* 544, 555 (2007).   However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain,* 478 *U.S.* 265, 286 (1986)).   A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 *U.S.* at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 *U.S.* at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 *U.S.* 662, 678 (2009) (citing *Twombly*, 550 *U.S.* at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly, 550 U.S.* at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 *U.S.* at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 *U.S.* at 679. "[W]here the well-pleaded facts do not permit the court to infer

22

more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting *F.R.Civ.P.* 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 *F.3d* 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 *F.3d* at 1426 (emphasis in original).

Against this standard of review, the arguments of the Office of the Attorney General and of the Police Officer Defendants that Plaintiff fails to state a claim for Fourth Amendment purposes is - there is no reason to be polite - denial of reality that is bordering on delusional.  Not only do the parties disagree, Plaintiff believes the claims so clear and strong that on the pre-discovery record, Plaintiff is already herein Cross-Moving under the heightened *Rule* 56 standard for Partial Summary Judgment and permanent declaratory and injunctive relief in a Final Judgment on the very same identical claims the collective Defendants (try to) argue fail to state a claim for *Rule* 12(b)(6) purposes!  Both Plaintiff and Defendant can not be right.  Since Plaintiff is Cross-Moving herein for Partial Summary Judgment on the very same Fourth Amendment (and, as to the Attorney General's Office only, also the Third Count Fourteenth Amendment claim) addresses those claims by their heightened *Rule* 56 standard, Plaintiff shall not waste time here arguing the lesser standard but rather hereby incorporates such *Rule* 56 arguments, *infra.,* in

23

opposition to the *Rule* 12(b)(6) motion of the Defendants here with the following brief

observations: This Court, as to the Fourth Amendment claim, has already found as fact and law

that "... *Plaintiff has established a reasonable probability of success on the merits, because the*

*plain language of the ERPO Act is violative of the Fourth Amendment* ..." and that "... *Plaintiff*

*has sufficiently alleged a[] [Fourth Amendment] injury for standing purposes*." (*See* ECF

Document No. 57 at page 13 and at page 10).


### POINT III:
### NONE OF THE IMMUNITY DOCTRINES ASSERTED
### APPLY TO THE PLAINTIFF'S CLAIMS IN THIS CASE:

**A.)**     **The Attorney General Office's Immunity Arguments:**

**1.**     **Sovereign Immunity:**

Firstly, the Attorney General's Office argues, citing to *Pennhurst State School &*

*Hospital v. Halderman,* 465 *U.S.* 89, 100 (1984) and relevant progeny, that any claim Plaintiff

has *for money damages* against the Defendants in their "official capacities" is barred by the

doctrine of sovereign immunity.  **(See ECF Document No. 65-1 at page 32 and 33 (brief page**

**26 & 27)).**  The Attorney General's Office is correct in their recitation of literal hornbook law

regarding money damages, they have indeed managed to keenly point out this obvious principle

of law.  Except Plaintiff *is not seeking money damages* against such Defendants in their Official

capacity (nor could he), he is only seeking prospective declaratory and injunctive relief against

such Defendants in their "official capacities".  And in this regard, it is equally clear hornbook law

that such prospective non-monetary relief may be properly sought, obtained and entered by Final

Judgment against such Defendants, even in their "official capacity". *See Quern v. Jordan*, 440

*U.S.* 332, 338 (1979).  As plead, Plaintiff does not seek money damages against named

Defendants Gurbir S. Grewal and Jared M. Maples (all who were specifically sued in their

"official capacity only"), and only seeks money damages against the Attorney General's Office's

clients Defendants Jill S. Mayer, Nevan Soumails, John Doe #1 and John Does 2-10 who were

clearly sued in their individual capacity, and which the Attorney General's Office concedes is

clearly permitted under the law.

### 2.    <u>Qualified Immunity:</u>

Next, the Attorney General's Office argues that the doctrine of Qualified Immunity

operates to bar any claims for money damages by Plaintiff against Defendants Jill S. Mayer and

Nevan Soumails.   Firstly, the burden of proving the affirmative defense of qualified immunity

rests on the party seeking to invoke it. *See Thomas v. Independence Twp.*, 463 *F.3d* 285, 292 (3d

Cir. 2006); *Hicks* v. *Feeney*, 850 *F.2d* 152, 159 (3d Cir. 1988).  Here, with legal argument that is

just short of 2 pages (***See* 3 last three lines of regular text in Brief Page 27, then pages 28 &

most of page 29, ECF Document No. 65-1 at page 33-34)** such Defendants advance a

generalized unfocused almost impossible to respond to argument, and fail to meet their burden, at

least at this point in time.  This will be further addressed in Section C, *infra*.[11]

---

[11]        These Defendants also casually assert and in passing in a footnote #12 that - they claim, that they believe that Defendants Mayer and Soumilas are also protected by the doctrine of absolute prosecutorial immunity, citing to a seminal Supreme Court case establishing absolute prosecutorial immunity for action taken in a *criminal* prosecution and to a Third Circuit case where such immunity was extended to a certain *quasi-criminal* case. The ERPO Act is a CIVIL statute, not a criminal or quasi-criminal statute. The mere fact that the a Prosecutor's Office is handling a case is not in and of itself determinative and does not automatically make the actions "prosecutorial". There was and is no "Prosecutorial" function that the Defendants engaged in here. Moreover, the law is equally well established that Prosecutors can be held liable for non-prosecutorial functions and are only entitled to "qualified immunity" for non-prosecutorial functions. *See cg. Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (Prosecutor only entitled to qualified immunity for false statements made at a press conference). Plaintiff will not frame or make Defendants arguments for them. Again, the law is clear that the burden of proving the affirmative defense of immunity (absolute or qualified) rests on the party seeking to invoke it. *See Thomas* v. *Independence Twp.*, 463 *F.3d* 285, 292 (3d Cir. 2006); *Hicks* v. *Feeney*, 850 *F.2d* 152, 159 (3d Cir. 1988). Here, with no factual argument and legal argument of 2 sentences in a footnote, and with the Defendant failing to cite to a case where a Court has EVER before applied the doctrine of absolute immunity in a purely CIVIL context, these Defendants most certainly have not met their burden.

**B.)**     **Police Officer Immunity Arguments:**

      **1.**     <u>**Police Department as "Defendant":**</u>

The Police Officer Defendants first argue that Defendant Gloucester Township Police

Department is not a "person" subject to liability under §1983, and cumulatively that Plaintiff has

not identified a "policy or custom" for imposition of municipal liability.  **(*See* ECF Document**

**No. 66-1, brief at pages 8 through 11.)**   Plaintiff will be brief in response to this argument.

This Defendant is only sued only in the FIRST COUNT and FOURTH COUNT relative to the

*New Jersey State Constitutional* provisions at issue in each.  *But see Footnote* 1, *supra.*

      **2.**     **Police Officers and Qualified Immunity:**

Next, the Police Officer Defendants argue that they should be entitled to quaffed

immunity against money damages for claims against them in their individual capacity because -

they say - that the law is not "clearly established".

**C.)**     **Qualified Immunity Generally:**

"The doctrine of qualified immunity protects government officials 'from liability for

civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.' "  *Pearson v. Callahan*,

555 *U.S.* 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 *U.S.* 800, 818 (1982)).  When

properly applied, qualified immunity protects "... all but the plainly incompetent or those who

knowingly violate the law." *Malley v. Briggs*, 475 *U.S.* 335, 341 (1986).  To overcome qualified

immunity, a Plaintiff must plead facts sufficient to show that: (1) the official violated a statutory

or constitutional right; and (2) "the right at issue was 'clearly established' at the time of Defendant's alleged misconduct." *Pearson*, 555 *U.S.* at 232; *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 *F.3d* 164, 168-69 (3d Cir. 2016). A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, ___ *U.S.* ____, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted). The Court has discretion to approach these steps in the sequential order that it deems "most appropriate for the particular case before [it]." *Santini v. Fuentes*, 795 *F.3d* 410, 418 (3d Cir. 2015); *see Pearson*, 555 *U.S.* at 236. Finally, the burden of proving the affirmative defense of qualified immunity rests on the party seeking to invoke it. *See Thomas v. Independence Twp.*, 463 *F.3d* 285, 292 (3d Cir. 2006); *Hicks v. Feeney*, 850 *F.2d* 152, 159 (3d Cir. 1988).

First, the text of the ERPO Act itself clearly facially violates the Fourth Amendment and Article I, paragraph 7 of the *New Jersey State Constitution*. Clearly all Defendants were on notice of this, because the law presumes these Defendants were on noticed of all published laws. And this particular law was and is so fatally defective on it's face that the Court literally started oral argument on the preliminary injunction application by stating to those in the Courtroom the following: "THE COURT: *Okay, you could all be seated. Before we get started, could we agree for purposes of this hearing that on its fact this law is unconstitutional?*" (**See 1T at Page 38 Line 16 through Page 39 Line 8**). Against this background, certainly the law of the Fourth Amendment and Article I, paragraph 7 both requiring "probable cause" for the issuance of a search warrant was "clearly established." Defendants are not entitled to the refuge of qualified

immunity under such circumstances.

Next, there is the issue of the obvious facial invalidity of the affidavit and warrant. Again, both the Fourth Amendment and Article I, paragraph 7 of the *New Jersey State Constitution* clearly, and the Civil ARPO Act specifically, require the affidavit to be sworn by oath or affirmation, which requires a PERSON to sign the document, as a "Petition" may only be filed by a "Petitioner", which is specifically and unequivocally defined in the Civil ERPO Act as follows: "*** "Petitioner" means a family or household member or law enforcement officer." *N.J.S.A.* 2C:58-23(1). The law is clear that only (1) a family or household member, or (2) a law enforcement officer may institute this process as a Petitioner by filing a Petition *which requires a sworn oath or affirmation by the Petitioner.* A "Law Enforcement *Agency*" can not swear to or attest to anything. Only a "Law Enforcement *Officer*" - a live person - can satisfy the mandatory Constitutional and statutory requirements which are a prerequisite to the issuance of a a Civil TERPO Search Warrant.

However, in this case, on September 5, 2019, 5 days after the EPRO Act went into effect, a "Petition for Temporary Extreme Risk Protective Order" was filed against Plaintiff in the Gloucester Township, Camden County, New Jersey Municipal Court by Petitioner "*NEW JERSEY HOMELAND SECURITY*", elsewhere identified as "*PDPACE2*". **(A true copy of that Petition is attached the Verified Complaint, ECF Document No. 1, at "Exhibit D").** As can be seen, the actual form of Petition that was used was the then new (already replaced)[12] standard

---

[12] The New Jersey Administrative Office of the Courts has already corrected and changed their original 3 page ERPO Act TERPO Petition form to a new 5 page form, a copy of which is attached hereto at "Exhibit A" for reference, which the Court can take Judicial Notice of. Note that Page 1 has been changed so that NOW, unlike the original 3 page petition used against Plaintiff, under the section "Petitioner's Information" the first line before was only for "Name", whereas now in the new version the first line is divided into "Name", "Date of Birth", and a box to check for Male or Female, to now ensure that only an actual PERSON fills out and signs the Petition.

3 page form issued by the New Jersey Administrative Office of the Courts pursuant to their "Directive #19-19". Again, the "Petitioner" was listed only as "NEW JERSEY HOMELAND SECURITY, with the Petitioner's relationship to the Respondent listed as "PEPD-PETITIONER LAW ENFORCEMENT OFFICER". On page 2 under the "Certification" section where there was a place for the Petitioner to sign their name so as to certify and attest to the truth of the contents of the Petition - so as to comply with the Constitutional and statutory requirements that the Petition and application be "... *supported by oath or affirmation* ..." - the "name" of "NEW JERSEY HOMELAND SECURITY" was merely typed in. While "NEW JERSEY HOMELAND SECURITY" may or may not ultimately be determined to qualify as a "Law Enforcement *Agency*" within the definition of the Civil ERPO Act, it certainly does not qualify as (1) a family or household member of Plaintiff Greco, or (2) a law enforcement ***officer*** . (Emphasis added). Otherwise stated, the entire application clearly was fatally defective from the onset as it was not brought by a "Petitioner" within the meaning of *N.J.S.A.* 2C:58-23(1), nor was the application "... *supported by oath or affirmation* ..." as specifically required by the Fourth Amendment and Article I, paragraph 7 of the *New Jersey State Constitution* (1947). That these legal principles are "clearly established" can hardly be disputed. As the initial Petition was fatally defective the warrant itself is therefore invalid, meaning that the search shall be treated as warrantless and therefore treated as presumptively unconstitutional. *Groh v. Ramirez*, 540 *U.S.* 551 (2004). Certainly the law enforcement officer defendants know the difference between a law enforcement AGENCY and a law enforcement OFFICER, and as such they were clearly on notice that the warrant was therefore so fatally defective that should have known such to be the case, and therefore qualified immunity simply does not apply here either. *Groh v. Ramirez.*

29

(*See* November 20, 2019 Transcript Page 36 Line 17 through Line 20)

On February 21, 2020 the Court issued a formal written opinion and held at the

preliminary injunction phase of this litigation the following:

> The Fourth Amendment codifies the right of citizens to be free from
> "unreasonable searches and seizures" and further provides, in relevant part, that
> "no Warrants shall issue, but upon probable cause, supported by Oath or
> affirmation, and particularly describing the place to be searched, and the persons
> or things to be seized. U.S. Const. Amend. IV. In contrast, the plain text of the
> ERPO Act states, "[a] judge shall issue the [TERPO and search warrant] if the
> court finds *good cause* to believe that the respondent poses an immediate and
> present danger." N.J. Stat. Ann. §2C:58-23(e) (emphasis added).

**[*See* ECF Document No. 57 at page 9].**

The Court then further specifically ruled as a matter of fact and law that "... ***the plain***

***language of the ERPO Act is violative of the Fourth Amendment*** ..." **(Emphasis added) (*See***

**ECF Document No. 57 at page 14),** with the Court further stating that the Attorney General's

claimed defense to the facial unconstitutionality being a "temporary interim measure" being

implemented (that the literal text of the law was being temporarily disregarded and rather that

State Executive Branch Attorney General and State Judicial Branch Administrative Office of the

Courts "Memo Directives" were instead allegedly being followed instead of the actual statutory

law) "***... does not cure the long-term facial defect of the statute. The AOC and AG Directives***

***are not permanent orders and can be rescinded or altered in a similar summary manner to***

***which they were promulgated***." (Emphasis added) **(*See* ECF Document No. 57 at page 23).**

Moreover, the Court has specifically held that "... *Plaintiff has sufficiently alleged an injury for*

*standing purposes. ... It is undisputed that Plaintiff's home was searched and his property was*

*seized. Plaintiff, therefore, has standing to assert a Fourth Amendment claim.*" **(*See* ECF**

**Document No. 57 at page 10).**

Additionally, the First Count of his Complaint Plaintiff also clearly asserts a specific claim that the Civil ERPO Act also violates Article I, paragraph 7 of the *New Jersey State Constitution* (1947).  This Federal Court has authority to decide this additional New Jersey State Constitutional Law claim pursuant to the supplemental jurisdiction statute, 28 *U.S.C.* §1367. And on this purely New Jersey State Constitutional Law claim Plaintiff is now relying on the *New Jersey* Declaratory Judgments Act, *N.J.S.A.* 2A:16-51 to -62, which specifically authorizes and empowers Courts acting under its authority to declare rights, status and other legal relations so as to afford litigants relief from uncertainty and insecurity.   In this regard, *N.J.S.A.* 2A:16-53 states as follows:

> A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

[*N.J.S.A.* 2A:16-53].

Also under New Jersey State Law a Plaintiff must have "standing" to proceed under the New Jersey Declaratory Judgments Act, but this is not remotely the same strict, exacting "standing" as Article III Standing required in Federal Courts.  Under New Jersey State Law, "...[s]tanding refers to the plaintiff's ability or entitlement to maintain an action before the Court. Courts will not entertain matters in which plaintiffs do not have sufficient legal standing." *Stubaus v. Whitman,* 339 N.J. Super. 38, 47 (App. Div. 2001).  But New Jersey Courts take a very liberal approach to standing. *Crescent Park Tenants Association v. Realty Equities Corp. of*

33

*New York*, 58 *N.J.* 98, 107-08 (1971).  A party must simply demonstrate "a sufficient stake in the

outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial

likelihood that the party will suffer harm in the event of an unfavorable decision." *In re Camden*

*County*, 170 *N.J.* 439, 449 (2002).  A showing of harm is essential because courts "will not

render advisory opinions or function in the abstract nor will [they] entertain proceedings by

plaintiffs who are mere "intermeddlers" or who are merely interlopers or strangers to the

dispute." *Crescent Park Tenants Association*, supra, 58 N.J. at 107.   In other words, "[t]he party

who seeks to annul legislation on grounds of its unconstitutionality must be able to show not only

that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some

direct injury as a result of its enforcement." *In re Camden County, supra*, 170 N.J. at 449.


## POINT V:
### THE CIVIL ERPO ACT'S FAILURE TO PROVIDE NOTICE AND A PRE-DEPRIVATION HEARING VIOLATES THE FOURTEENTH AMENDMENT:

Due process under the Fourteenth Amendment can be broken down into two categories:

(1) procedural due process and (2) substantive due process.   Here at issue is *procedural* due

process.

The Fourteenth Amendment's Due Process Clause provides generally that no states

shall deprive any "person" of "life, liberty or property" without due process of law.  So otherwise

stated, in a procedural due process analysis, the question is exactly what process is due before the

state can deprive a "person" of "life, liberty or property" interest.  The "procedures and process "

actually due usually includes one or more of the following:  Fair notice, an opportunity for

hearing, an opportunity for confrontation and cross-examination of witnesses, discovery, basis of

decision, and availability of counsel.  Depending on the nature of the interest at issue, these

procedures and processes must sometimes be provided *before* the State may act (called "pre-

deprivation rights"), other times it is sufficient to afford such procedures and processes *after* the

State has already acted and deprived a litigant of a liberty or property interest (called "post-

deprivation remedies").  Whether the specific liberty interest(s) or property right(s)  at issue

invoke "pre-deprivation rights" which must be afforded *before* a State may act, or whether the

rights at issue only implicate "post-deprivation remedies" that must be afforded to a litigant *after*

the State has already acted, is a fact specific analysis.  Directly in this case the governing

question is which if any of these enumerated "processes" must be afforded to a litigant *before* the

State of New Jersey can kick in the front door to a litigant's home and seize and confiscate that

litigant's guns, ammunition, and other properly issued state papers that authorize purchase and

possession of weapons, and which if any must be afforded to a ***litigant after*** the State of New

Jersey has already taken such actions?

        To start, it is submitted that there can be no legitimate question but that Plaintiff Greco

is a "person" for Fourteenth Amendment purposes.  Nor can there be any reasonable question in

light of the United States Supreme Court's holding in  *Heller v. District of Columbia, 554 U.S.*

*570* (2008) that Plaintiff Greco's Second Amendment right to purchase, own and possess guns

and other weapons is a "liberty" and "property" interest within the meaning of the Fourteenth

Amendment.   So the literal - and dispositive - question is "what process is due to Plaintiff Greco

and others under the Fourteenth Amendment *before* the State of New Jersey can kick in the front door to a private home and seize and confiscate that litigant's guns, ammunition, and other properly issued state papers that authorize purchase and possession of weapons?

Plaintiff Greco first has a general "property right" in his ownership of guns and ammunition which no one can dispute qualifies as personal property, and is therefore "property" within the meaning of the Fourteenth Amendment. Second, Plaintiff Greco also has a general "fundamental" Second Amendment Constitutional right to purchase, own and legally possess guns and ammunition the same as all other citizens, *see Heller v. District of Columbia,* 554 *U.S.* 570 (2008). Third, Plaintiff Greco has a specific legally vested unqualified right conferred to him by the State of New Jersey - by virtue of his vetting and licensing by the State of New Jersey and his state issued firearms purchaser card - to lawfully purchase, own and legally possess guns and ammunition, presumptively without any furtgher interference from the State.

Before proceeding, for context, Plaintiff Greco points out that holding a valid New Jersey State issued driver's licence and driving a motor vehicle are both "privileges". Legally possessing firearms and a firearms purchaser card - if one qualifies - implicates a fundamental Second Amendment Federal Constitutional right. It is not a fundamental Federal (or State) Constitutional right to have a driver's license or to drive, it is a merely a "privilege". All should be mindful that "State offered Privileges" and "Federally Mandated Constitutional Rights" are not the same thing. However, once the requirements for the State to confer driving privileges is satisfied and such privileges have been granted, the rights are then "vested" rights, and the State may not thereafter simply unilaterally revoke a *vested privilege* without ***first affording*** the holder

36

of the (vested privilege) licence (1) notice and (2) a hearing and (3) a right to be heard: What is known as a "pre-deprivation hearing". The right to a pre-deprivation hearing in this context is not based upon a fundamental Federal Constitutional Right, nor is it based upon the requirements of the Fourteenth Amendment, but rather is based upon the New Jersey Supreme Court's application of the "doctrine of fundamental fairness. *See Rodriquez v. Rosenblatt, 58 NJ* 281 (1971). This non-constitutional requirement is presented for context, for surely if a "State vested privilege" requires a pre-deprivation hearing, then certainly a generalized Federal Constitutional right which is also, buy virtue of additional licencing and regulation from the State of New Jersey, additionally converted into a "State vested" fundamental Constitutional right, requires notice and a pre-deprivation hearing before it may be interfered with. These are pretty basic concepts.

In the Constitutional context, in 1969 the United States Supreme Court addressed the question of "pre-deprivation hearings" in *Sniadach v. Family Finance Corp*, 395 *U.S.* 337 (1969). There, the question was whether whether Wisconsin's civil garnishment procedure met the minimum requirements of the Fourteenth Amendment's Due Process Clause. The Wisconsin garnishment statute allowed a creditor to obtain a summons from the clerk of the court and to serve the garnishee - the alleged debtor's employer - who was then required to hold half of the debtor's wages subject to the outcome of the main action. Under Wisconsin law no hearing was required *prior* to the garnishment where half of the alleged debtor's pay would be taken. The Court struck down the Wisconsin garnishment statute as violating the Fourteenth Amendment's Procedural Due Process requirements for failing to include prior notice of the action and a pre-deprivation hearing to challenge the money seizure in the process. In striking down the statute

37

for failing to provide notice and a prior hearing, the Court first noted their authority to deal with

the state's garnishment procedure as "a taking of property without that procedural due process

that is required by the Fourteenth Amendment." *Id.* at 339.   Next on the issue of whether a ***prior***

***hearing*** was required under the due process clause, the Court focused on the seriousness of the

injury which an individual might suffer from the garnishment of his wage, with the Court further

noting that as the seriousness of the deprivation increases, so does the corresponding need for a

prior hearing, and that such a serious taking where no prior hearing or notice of any kind was

given could hardly be considered "due process." *Id.* At 340-342

Next, in *Matthews v. Eldrige*, 424 *U.S.* 319 (1976) the United States Supreme Court

adapted three part balancing test for Courts to use to determine exactly *what procedures* are

Constitutionally required and exactly *when those procedures* are Constitutionally required when

there has been or is a threatened deprivation of life, liberty or property protected by the

Fourteenth Amendment:

***First,*** when assessing the procedures, the Court must balance the importance of the interest to the individual, as the more important the interest is to the individual the more procedural protections the Court must require as indeed the Due Process Clause itself implies that property owners in general are to be protected from deprivations by a prior determination of the validity of claims made against their property;

***Second,*** the Court must balance the ability of additional procedures to increase the accuracy of the fact finding as this will decrease the danger of an erroneous deprivation; and

***Third,*** the Court must balance the interest of the State in Administrative Efficiency.

[*See id.* at 335 - 344].

Here, as to the First inquiry, that being the importance of the interest, this is actually

multifaceted.  First, there is Plaintiff Greco's generalized 14th Amendment interest in the actual

38

literal "property" at issue, which here is a privately and legally owned gun, ammunition and a

firearms purchaser card.  But these are heightened property rights as his right to purchase and to

own and to possess a gun and ammunition has already been specifically approved and permitted

by the State of New Jersey after a detailed vetting process where the State has already by license

specifically approved Plaintiff Greco to own such property.  By virtue of his vetting and licensing

by the State of New Jersey, Greco now had and still has a ***specifically vested right*** to purchase,

own and legally possess guns and ammunition which can not be unilaterally revoked by the State,

and can only be rvoked after fair advanced notice, an opportunity for ahearing, confrontation and

cross-examination of witnesses, discovery, basis of decision, and availability of counsel.  None

of which were afforded to him before the the secrete "confidential" civil court proceeding and the

State kicking in his front door and cnfiscating his property.


### POINT VII:
**THE ENTIRETY OF THE CIVIL ERPO ACT MUST BE
STRUCK DOWN AS UNCONSTITUTIONAL AS SO MANY
PORTIONS OF THE STATUTORY SCHEME VIOLATE
THE CONSTITUTION THAT SEVERANCE OF THE
OFFENDING SECTIONS IS NOT AN APPROPRIATE
REMEDY:**

Federal Courts going back as far as *Marbury v. Madison*  (where in declining to void the

entirety of the Judiciary Act of 1789, the Supreme Court implicitly held the remaining valid

provisions severable from the unconstitutional) Federal Courts have typically applied a

presumption of severability when a portion or portions of a statute are declared unconstitutional.

Indeed, in modern times the basic rules of "severability doctrine" have remained largely

consistent for decades.  Severability  - the notion that a court may use a pen and engage in

"judicial surgery" and in so doing excise an unconstitutional part or parts of a statute while

leaving valid portions intact and in legal effect - forms a core tenet of American Constitutional

Law.  Indeed, Courts have long traditionally maintained a strong presumption of severability,

premised on the general rule that a court should not "nullify more of a legislature's work than is

necessary."  A court should sever the offending portions of a statute rather than strike down the

entirety  "[u]nless it is evident that the Legislature would not have enacted those provisions

which are within its power, independently of that which is not, the invalid part may be dropped if

what is left is fully operative as a law." *Alaska Airlines, Inc. v. Brock*, 480 *U.S.* 678, 684 (1987)

(quoting *Buckley v. Valeo*, 424 *U.S.* 1,108 (1976) (per curiam)); *see also National Federation of*

*Independent Business v. Sebelius*, 567 *U.S.* 519, 691-694 (2012) (Scakia, Kennedy, Thomas and

Alito, JJ, dissenting).  The traditional test supports severing when the Court finds that (1) the

unconstitutional portions of the statute remaining is still  "[]capable of functioning

independently", *see Alaska Airlines, Inc. v. Brock*, supra, 480 *U.S.* at 684, and (2) the Legislature

would have preferred "what is left . . . to no statute at all" , *see Ayotte v. Planned Parenthood of*

*Northern New England,* 546 *U.S.* 320, 330 (2006).  However, recently in *Murphy v. National*

*Collegiate Athletic Association*, 584 U.S. ___ (2018), in an opinion written by Justice Alito along

with a 5 justice  majority (joining were Roberts, CJ, and Kennedy, Thomas, Kagan and Gorsuch,

JJ), that majority significantly departed from both the traditional presumption of severance and

traditional severance analysis by instead simply focusing on the "coherence" of the remaining

statutory scheme without the unconstitutional portions, reasoning that once the unconstitutional

portion was severed from the rest of the statute that the remaining portions would "cease[] to

40

implement any coherent federal policy."  *Murphy v. National Collegiate Athletic Association*,
584 U.S. ___ (2018) (slip opinion at 28).   Justice Alito's step-by-step assessment of the purpose
behind each portion of the severed scheme departed from the traditional congressional-intent
inquiry. The majority conspicuously disregarded the rule that a court should maintain the severed
statute if "the legislature [would] have preferred what is left . . . to no statute at all."   Missing
was the traditional detailed inquiry of Legislative history and intent, and instead a perfunctory
conclusory and unsupported statement ("*We do not think that Congress ever contemplated that
such a weird result would come to pass*."), *Id.* at  (slip opinion at 29), and rather the inquiry was
more on the literal remaining surviving text with the analysis instead focusing on "coherence" of
the statute with the unconstitutional portions removed.  In declining to simply sever in the face of
uncertainty, and instead modifying the traditional congressional-intent inquiry on "statutory
coherence", the majority of the *Murphy* Court most certainly departed from traditional
severability doctrine.

It is unclear whether the *Murphy* deviation is an isolated anomaly or instead was actually
the beginning of a radical change in the law, perhaps laying the groundwork for a broader
reformation of the Court's approach to severability.  However, this Federal District Court here
and now does not have to decide this question to conclusively rule in Plaintiff's favor and strike
down the entirety of the ERPO Act rather than sever the unconstitutional sections.  Plaintiff
submits that whether the remaining of the un-severed portions of the ERPO Act are considered
under the traditional *Alaska Airlines, Inc. v. Brock* "legislative intent" analysis or the new
"statutory coherence" analysis relied upon by the Supreme Court majority in  *Murphy v. National
Collegiate Athletic Association,* that under either analysis it is evident that the entirety of the

41

ERPO Act should be stricken as unconstitutional.

Firstly, there is the reality that the ERPO Act contains an obvious and glaring *per se* facial violation of both the Fourth Amendment and Article I paragraph 7 of the New Jersey State Constitution, each which bars any search warrant from being issued on a legal standard of less than "probable cause", whereas the literal text of the Civil ERPO Act literally mandates that a search warrant be issued on a "good cause" legal standard. Secondly, there is the fact that at issue in the Civil ERPO Act is the potential of the State infringing on fundamental Second Amendment rights, which rights have become "vested", and therefore the Fourteenth Amendments Due Process requires notice and a pre-deprivation hearing before such fundamental rights may be interfered with by the State. But it is not just that. The Civil ERPO Act is literally a minefield of constitutional violations just waiting to be raised. Though not raised in Plaintiff's initial Complaint[13], such additional basis of unconstutionality is directly relevant for a court to consider when determining whether to sever, or strike the entirety of a statute.

**A.    Additionally, The Civil ERPO Act Violates Plaintiff's State Constitutional Right to Have a Jury Decide All Disputed Questions of Material Fact in a Civil Case in State Court:**

Reference is made to Footnote 1. The Fourth Count was by inadvertent typo mis-designated as a *second* Third Count. On page 28 of Plaintiff's Complaint is his actual *F.R.Civ.P.* 38 JURY DEMAND signed by counsel. Plaintiff has already indicated his intent to clarify this claim in an amended pleading which will be filed if the Cross-Motion is denied. In this regard, the New Jersey State Constitution's Article I, paragraph 9 reads as follows:

---

[13]     Indeed if the Court does not rule in Plaintiff's favor on the within Cross-Motion and strike down the entirety of the Civil ERPO Act as unconstitutional, Plaintiff will seek to amend his complaint to include the additional constitutional claims now discussed as cumulative reason for striking the entirety of the statute.

42

> 9.   The right of trial by jury shall remain inviolate; but the Legislature may authorize the trial of civil causes by a jury of six persons. The Legislature may provide that in any civil cause a verdict may be rendered by not less than five-sixths of the jury. The Legislature may authorize the trial of the issue of mental incompetency without a jury.

Plaintiff argues in the FOURTH COUNT, incorrectly denominated at the beginning as a *second* "Third Count" where it should properly read "FOURTH COUNT", that the Civil ERPO Act violates the New Jersey State Constitution as the consequences of a litigant losing the Civil FERPO hearing - the indefinite seizure of weapons and the indefinite suspension of full Second Amendment rights (which are themselves "fundamental" Federal Constitutional Rights) is serious and is a "consequence of magnitude" similar to the Supreme Court's ruling (in a different context) in *Blanton v. City of North Las Vegas,* 489 *U.S.* 538 (1989).  It is understood that this is strictly a state constitutional argument, as the ERPO Act is a State Civil statute, and the Federal Constitution's Seventh Amendment right to a civil jury trial has not to date been "incorporated" through the Fourteenth Amendment to be imposed as a right against the States.  Upon reflection, and in light of the typo, Plaintiff agrees that this claim is perhaps not sufficiently clear.  In the event that this Cross-Motion is not granted, Plaintiff will move separately for leave to file a First Amendment Complaint wherein this claim will be expanded and clarified.  However, for purposes of "severance" analysis, there can be little question that having a judge serve as the finder of fact at a FERPO hearing rather than a Jury is a clear violation of Article I, paragraph 9 of the *New Jersey State Constitution* (1947).

**B.    The Preferential Treatment the ERPO Act Afforded "Law Enforcement Officers" Violates the Equal Protection Clause of the Fourteenth Amendment:**

The Fourteenth Amendment, by its terms, limits discrimination only by governmental entities, not by private parties.  Lawmaking by its very nature is mostly drawing lines of classification, or otherwise stated, drawing lines of discrimination.  As a general principle, when government draws those lines, the Fourteenth Amendment's "Equal Protection Clause" requires not that all people be treated identically, but rather that all similarly situated people be treated in a substantially similar manner, unless there is a valid reason.

Having said, that, the Civil ERPO Act, specifically *N.J.S.A.* 2C:58-23(1) provides the following relevant definitions:

> * * *
> "Law enforcement agency" means a department, division, bureau, commission, board or other authority of the State or of any political subdivision thereof which employs law enforcement officers.
>
> "Law enforcement officer" means a person whose public duties include the power to act as an officer for the detection, apprehension, arrest, and conviction of offenders against the laws of this State.
>
> "Petitioner" means a family or household member or law enforcement officer.
> * * *

[*N.J.S.A.* 2C:58-21].

Next, *N.J.S.A.* 2C:58-23(a) provides in relevant part as follows:

> a. ***Except as provided in subsection l. of this section,*** a petitioner may file a petition, as prescribed by the Administrative Director of the Courts, for a temporary extreme risk protective order in the court in accordance with the Rules of Court alleging that the respondent poses a significant danger of bodily injury to self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm. The petition shall be heard by the court in an expedited manner. (Emphasis added).

[*N.J.S.A.* 2C:58-23(a)]

44

As is plainly stated in the statute, in all cases - except those that fall within the limited "law enforcement officer exception found later in the statute in subsection "l" - a "Petitioner" (*ie.* "... *a family or household member or law enforcement officer ...*", *N.J.S.A.* 2C:58-21) can file a Petition in the Municipal or Superior Court at any time the Petitioner believes that a respondent "... *poses a significant danger of bodily injury to self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm.*" Once that Petition is filed and and the contents sworn to as true by the Petitioner, the Petition is immediately presented to the Court which "shall" hear the application in an expedited manner. The two step Petition filing and review process is simple: (1) a Petitioner files a Petition with the Clerk of the Municipal or Superior Court and swears that the allegations are true, and (2) the Petition is immediately presented to the Court for consideration of whether to issue a TERPO.

Under the "law enforcement officer" exception found in *N.J.S.A.* 2C:58-23(l), however, there is a very different multi level initial filing and review procedure. When the respondent themself is a "law enforcement officer" - "... *a person whose public duties include the power to act as an officer for the detection, apprehension, arrest, and conviction of offenders against the laws of this State ...*" - the statute provides as follows:

> l.      (1)  A petition for a temporary extreme risk protective order filed against a law enforcement officer shall be filed in the law enforcement agency in which the officer is employed. The law enforcement officer or employee receiving the petition shall advise the petitioner of the procedure for completing and signing a petition.
> (2) Upon receipt of the petition, the law enforcement officer's employer shall immediately initiate an internal affairs investigation.
> (3) The disposition of the internal affairs investigation shall immediately be served upon the county prosecutor who shall make a determination whether to refer the matter to the courts.
> (4) The law enforcement officer's employer shall take appropriate steps to

45

implement any findings set forth in the disposition of the internal affairs
investigation.  The law enforcement officer shall not be terminated during the
pendency of the internal affairs investigation.

[*N.J.S.A.* 2C:58-23(l)].

As indicated above, the *very different multiple steps* for filing a Petition against a

respondent law enforcement officer are as follows:    First, rather that simply filing the Petition

with the Clerk of the municipal or superior court, instead (1) the sworn Petition must be filed "...

in the law agency in which the officer is employed ...".  (2) Next, the Petition is preliminarily

reviewed by the officer's employer who shall then (3) "... *immediately initiate an internal affairs*

*investigation* ...", and (4) once the investigation is complete, the "disposition" shall be served

upon the County Prosecutor, and (5) the County Prosecutor shall review the results of the internal

affairs investigation and (6) them make a determination as to "... whether to refer the matter to

the courts ...".  The County Prosecutor has discretion to refer the matter to the Court or close the

file.

When the respondent is a "mere citizen", any Petitioner can certify facts which must

then be presented to a court for further review as to whether to issue a TERPO in what is

essentially a "1 step then judge review" process that could tale less than an hour and all will take

place ex parte without notice to the respondent.  Conversely, when the respondent is a "law

enforcement officer", there are at least 6 steps - overseen by his employer, not a Court Clerk -

during which there is an "internal affairs investigation".  And there is no specific prohibition

against the internal affairs investigator actually interviewing or questioning the respondent (and

46

therefore putting the respondent on notice of the application and giving the respondent an opportunity to deny, explain or refute the charges BEFORE they are presented to a judge). And indeed, even after the internal affairs investigation is complete, there is nothing that requires the County Prosecutor to cause the Petition to be presented to a Court for judicial review and consideration as to whether to issue a TERPO. The County Prosecutor has complete discretion to take no action, irrespective of the findings and conclusions in the internal affairs report. So, in short, in addition to the 6 steps and notice, there is not even a process that ensures that the Petition against a law enforcement officer will ever be presented to a Court for judicial review as to whether to issue a TERPO.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution consists of the facially simple mandate: "... *[No State] shall deny to any person within its jurisdiction the equal protection of the laws*. ..." Statutes and the subjects that they regulate and the classifications that they draw will usually contain criteria identifying who is subject to the legislation and who is not. Such criteria, or classifications, provide the threshold basis for determining whether persons are similarly situated. No authority has been found for the proposition that law enforcement officers have Second Amendment rights that are superior to those of regular "citizens". Any other "rights" that law enforcement officers may have beyond Second Amendment rights in this regard merely statutory or contract rights, none of which are "superior rights" to the equal fundamental Constitutional right which both "citizens" and law enforcement officers both have and share equally. Since the statutory discrimination at issue in this case - the different treatment - between citizens and law enforcement officers directly

47

involves and implicates fundamental Second Amendment rights, this statutory discrimination is

issue presumptively unconstitutional in violation of the Equal Protection Clause.  And according

to well settled Supreme Court framework of analysis, any statute that impinges upon the exercise

of a fundamental rights requires "strict scrutiny."  The Supreme Court requires a reviewing Court

apply the "strict scrutiny" standard in two contexts: First, when a fundamental constitutional

right is infringed (particularly those found in the Bill of Rights such as the Second Amendment

rights at issue here), or when a government action applies to a "suspect classification", such as

race or national origin.  *See generally Grutter v. Bollinger,* 539 *U.S.* 306 (2003); *Regents of the*

*University of California v. Bakke,* 438 *U.S.* 265 (1978).  To survive strict scrutiny analysis, the

law is presumed unconstitutional, and the burden is on the State to demonstrate that the law or

policy satisfies the classic three part test:  (1) the law or policy must be justified by a compelling

governmental interest; (2) The law or policy must be narrowly tailored to achieve that goal or

interest; and (3) The law or policy must be the least restrictive means for achieving that interest:

There must not be a less restrictive way to effectively achieve the compelling government

interest.  *Id.*

Plaintiff does not have the burden to prove that the vastly different treatment in the

statutory scheme affords to "law enforcement officers" in *N.J.S.A.* 2C:58-23(l)(1), (2), (3) & (4)

as opposed to that afforded to all other "citizens" in *N.J.S.A.* 2C:58-23(a) is unconstitutional,

rather the State has the burden to demonstrate - with reference to the three part test - that the law

*is constitutional*.

C.    **In Addition to Other Infirmities, The Civil ERPO Act's "Closed" Civil Court Proceedings and "Confidentiality of Court Records" Mandate Violates the First Amendment and the New Jersey Common Law:**

It has long been established in the United States and in the State of New Jersey specifically that all citizens and news reporters have a specifically recognized and clearly established First Amendment right to attend both criminal trials and civil trials and to access Court documents and recordsc *See Richmond Newspapers, Inc. v. Virginia*, 448 *U.S.* 555, 580 (1980) (as to criminal trials); *Publicker Industries, Inc. v. Cohen*, 733 *F.2d* 1059 (3d Cir. 1984) (as to civil trials). This First Amendment right applies to and includes not just the actual trial proceedings but also applies to all preliminary hearings and the jury selection. In general - with a few exceptions - New Jersey citizens and reporters have a constitutional right to attend all phases of civil court proceedings, which are presumptively open to the public in New Jersey state courts, and to access public Court Records.

In *Publicker Industries, Inc. v. Cohen, supra,* the Third Circuit extensively discussed the existence of both a common law and constitutional right to attend civil trials, and traced the common law right in New Jersey well back into the American Colonies prior to the Revolution of 1776, noting that the pre-Revolution 1677 New Jersey Constitution itself specifically provided that any person could attend a trial whether it was "civil *or* criminal ...[.]" (internal citations omitted), *Id.* at 1069 (citing *Gannett Co. v. DePasquale,* 443 *U.S.* 368, 386, n. 5 (1979)). The Third Circuit continued:

> The existence of a common law right of access to judicial proceedings and to inspect judicial records is beyond dispute. *United States v. Criden*, (*Criden* I), 648 F.2d 814, 819 (3d Cir. 1981). This common law right of access to judicial proceedings and records usually has been considered by the Supreme Court in connection with criminal trials and proceedings. *See, Richmond Newspapers, Inc. v. Virginia*, 448 *U.S.* at 564-69, 580, n. 17; *Gannett Co., Inc. v.*

49

*DePasquale*, 443 *U.S.* at 368, 386, n. 15; *Nixon v. Warner Communications, Inc.*, 435 *U.S.* 589, 597-98; and *In re Oliver*, 333 *U.S.* 257 (1948).

*** 

[*Publicker, supra* at 1066]

*** 

... [T]he public and the press possess a First Amendment and a common law right of access to civil proceedings; indeed, there is a presumption that these proceedings will be open. The trial court may limit this right, however, when an important countervailing interest is shown. ... *** ... A trial court must satisfy certain procedural and substantive requirements before it can deny access to civil proceedings.

### A.  PROCEDURAL REQUIREMENTS

Procedurally, a trial court in closing a proceeding must both articulate the countervailing interest it seeks to protect and make "findings specific enough that a reviewing court can determine whether the closure order was properly entered." *See Press-Enterprise Co. v. Superior Court of California, Riverside County*, 478 *U.S.* 1 , ___, 104 *S.Ct.* 819, 824, 78 *L.Ed.*2d 629 (1984); *In re Iowa Freedom of Information Council*, 724 *F.2d* at 662.  Substantively, the record before the trial court must demonstrate "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court of California, Riverside County*, 478 *U.S.* at ___; 104 *S.Ct.* at 824.

[*Publicker, supra* at 1071]

In light of the furtherance of this common law and constitutional right,  New Jersey

Court Rule *R.* 1:2-1 provides as follows:

All trials, hearings of motions and other applications, first appearances, pretrial conferences, arraignments, sentencing conferences (except with members of the probation department) and appeals shall be conducted in open court ***unless otherwise provided by rule or statute.***  If a proceeding is required to be conducted in open court, no record of any portion thereof shall be sealed by order of the court except for good cause shown, as defined by R. 1:38-11(b), which shall be set forth on the record.  Settlement conferences may be heard at

50

the bench or in chambers. Every judge shall wear judicial robes during proceedings in open court. (Emphasis added).

[*R.* 1:2-1].

As stated, *R.* 1:2-1 mandates and creates a heavy presumption that all Court proceedings shall be open and public "... ***unless otherwise provided by rule or statute*** ...".  The rule also prohibits a Judge from "sealing" the records of the otherwise public Court proceeding except on application under *R.* 1:38-11 which provides that the moving party has the burden of demonstrating, by a preponderance of the evidence, satisfaction of the specific and hard to satisfy "good cause" standard listed in *R.* 1:38-11(b)[14] which requires a finding that there will be "serious injury".

In this regard, Section 11 of the Civil ERPO Act, now codified at *N.J.S.A.* 2C:58-30(a) & (b)[15], requires that the Administrative Office of the Courts create and maintain an "electronic

---

[14]     *R.* 1:38-11(b) provides as follows:

(b).     Good cause to seal a record except as provided in subparagraph (e)(2) shall exist when:
(1)      Disclosure will likely cause a clearly defined and serious injury to any person or entity; and
(2)      The person's or entity's interest in privacy substantially outweighs the presumption that all court and administrative records are open for public inspection pursuant to R. 1:38.

[15]     *N.J.S.A.* 2C:58-30 provides as follows:

(a)      The Administrative Office of the Courts shall include all persons who have had a final extreme risk protective order entered against them pursuant to section 5 of P.L.2018, c.35 (C.2C:58-24), and all persons who have been charged with a violation of a temporary or final extreme risk protective order issued pursuant to section 4 or 5 of P.L.2018, c.35 (C.2C:58-23 or C.2C:58-24), in an electronic central registry created and maintained by the Administrative Office of the Courts. All records made pursuant to this section shall be kept confidential and shall be released only to a police or other law enforcement agency investigating a report of a crime, offense, or act of domestic violence, or conducting a background investigation involving a person's application for a firearms purchaser identification card or permit to purchase a handgun or employment as a police or law enforcement officer, or for any other purpose authorized by law or the Supreme Court of the State of New Jersey. A respondent's information, other than information related to a violation of a temporary or final order issued pursuant to section 4 or 5 of P.L.2018, c.35 (C.2C:58-23 or C.2C:58-24), shall be removed from the registry upon the termination of the extreme risk protective order.

(b)      Any person who disseminates or discloses a record or report of the central registry for a purpose other than the purposes authorized in this section or as otherwise authorized by law or the Supreme Court of the State of New Jersey is guilty of a crime of the fourth degree

51

central registry" which shall include in it  (1) all persons who have had a final extreme risk protective order entered against them and (2) all persons who have been charged with a violation of a temporary or final extreme risk protective order.  *N.J.S.A.* 2C:58-30(a).  It is also mandated that any records or information collected, or discussion of any records or information collected, "... *shall be kept confidential* ..." and shall be released only to:

> ... a police or other law enforcement agency investigating a report of a crime,  offense, or  act of domestic violence, or conducting a background investigation involving a person's application for a firearms purchaser identification card or permit to purchase a handgun or employment as a police or law enforcement officer, or for any other purpose authorized by law or the Supreme Court of the State of New Jersey.

[*N.J.S.A.* 2C:58-30(a)].

In addition to the Civil ERPO Acts statutory confidentiality and close court proceedings, on August 8, 2019 the Administrative Office of the Courts issued a formal MEMO along with accompanying "Guidelines" which make clear that all Civil ERPO Act related information is indeed "confidential", so the Courts are simply going along withe the Legislature closing proceedings.  Quite clearly the statute's requirement and the AOC policy directive's **(copy found at "Exhibit B" to Plaintiff's Complaint)** requirement of "confidentiality of records" and closed proceedings violates the First Amendment and New Jersey Common Law.  Moreover, the statute's provision allosing disclosure "... *for any other purpose authorized by law* ..." quite clearly encompasses Court Orders, such as one that would be issued by this Court.  As such, the Attorney General's arguments in this regard, in totality of context, have no merit.

## **CONCLUSION:**

For the foregoing reasons and authorities cited in support thereof, it is respectfully requested that the various Defendants' Motions be DENIED and that Plaintiff's Cross-Motion be GRANTED.

Respectfully submitted,

ALBERT J. RESCINIO, ESQ.

# Exhibit

# A

| In the Matter of,<br><br>_____, Respondent<br><br>SBI Number _____<br><br>Date of Birth_____ | ☐ Superior Court of New Jersey<br>☐ Municipal Court of _____<br>County _____<br>Petition Number _____<br>Complaint/Ind Number _____<br><br>**Petition for**<br>**Temporary Extreme Risk Protective Order** |
|---|---|

I am the Petitioner named below. I believe Respondent poses an immediate and present danger of causing bodily injury to the Petitioner, the Respondent, or others by owning, possessing, purchasing or receiving firearms and/or ammunition. I ask the court to grant a Temporary Extreme Risk Protective Order to prohibit Respondent from owning, possessing, or acquiring firearms and/or ammunition, and to order surrender of firearms and/or ammunition to a law enforcement agency.

**Petitioner's Information**

| Name | | Date of Birth | Sex<br>☐ Male   ☐ Female |
|---|---|---|---|
| Street Address | City | State | Zip |
| Home Phone Number | Work Phone Number<br>ext. | Relationship to Respondent | |

**Respondent's Information** (to the extent the information is known)

| First Name | MI   Last Name | | Date of Birth | SSN | Sex<br>☐ Male   ☐ Female |
|---|---|---|---|---|---|
| Street Address | | City | | State | Zip |
| Home Phone Number | Work Phone Number<br>ext. | E-mail Address | | | |

| Aliases |
|---|

| Employer's Name |
|---|

| Employer's Address | City | State | Zip |
|---|---|---|---|

| Height<br>ft    in | Weight | Hair Color | Eye Color | Race/Ethnic | Distinguishing Features (Scars, facial hair, etc.) |
|---|---|---|---|---|---|
| Military Status<br>☐ Yes  ☐ No | Driver's License Number | | | State | Expiration Date |

I believe Respondent poses an immediate and present danger of causing bodily injury to self or others by owning, possessing, purchasing or receiving firearms and/or ammunition because Respondent:

☐   has any history of threats or acts of violence directed towards self or others.  Explain.

_____
_____
_____
_____
_____
_____

☐   has any history of use, attempted use, or threatened use of physical force against another person. Explain.

_____
_____
_____
_____
_____
_____

☐   is the subject of a temporary or final restraining order or has violated a temporary or final restraining order issued pursuant to the "Prevention of Domestic Violence Act of 1991," P.L.1991, c.261 (C.2C:25-17 *et. seq*).  Explain.

_____
_____
_____
_____
_____
_____

☐   is the subject of a temporary or final protective order or has violated a temporary or final protective order issued pursuant to the "Sexual Assault Survivor Protection Act of 2015," P.L.2015, c.147 (C.2C:14-13 *et al*.).  Explain.

_____
_____
_____
_____
_____
_____

☐   has any prior arrests, pending charges, or convictions for a violent indictable crime or disorderly persons offense, stalking offense pursuant to section 1 of P.L.1992, c.209 (C.2C:12-10), or domestic violence offense enumerated in section 3 of P.L.1991, c.261 (C.2C:25-19).  Explain.

_____
_____
_____
_____
_____
_____

☐   has any prior arrests, pending charges or convictions for any offense involving cruelty to animals or any history of acts involving cruelty to animals.  Explain.

_____
_____
_____
_____
_____

☐   has any history of drug or alcohol abuse and recovery from this abuse.  Explain.

_____
_____
_____
_____
_____

☐   has recently acquired a firearm, ammunition or other deadly weapon.  Explain.

_____
_____
_____
_____
_____

☐   has recklessly used, displayed, or brandished a firearm.  Explain.

_____
_____
_____
_____
_____

☐   has an existing or previous extreme risk protective order issued against him or her.  Explain.

_____
_____
_____
_____
_____

☐   has previously violated an extreme risk protective order issued against him or her.  Explain.

_____
_____
_____
_____
_____

☐ has any prior involuntary commitment in a hospital or treatment facility for persons with psychiatric disabilities.  Explain.

_____
_____
_____
_____
_____

☐ has received or is receiving mental health treatment.  Explain.

_____
_____
_____
_____
_____

☐ has complied or has failed to comply with any mental health treatment.  Explain.

_____
_____
_____
_____
_____

☐ has received a diagnosis of a mental health disorder.  Explain.

_____
_____
_____
_____
_____

☐ List any other information that may be relevant.

_____
_____
_____
_____
_____
_____
_____
_____
_____

☐ Supporting documentation provided.  Explain.

_____
_____
_____
_____

☐   The Respondent currently possesses the following firearm(s) and/or ammunition

| Type | Description | Number | Location |
|------|-------------|--------|----------|
| Handgun | _____ | _____ | _____ |
| Shotgun | _____ | _____ | _____ |
| Rifle | _____ | _____ | _____ |
| Assault Firearm | _____ | _____ | _____ |
| Ammunition | _____ | _____ | _____ |
| Other | _____ | _____ | _____ |

Does the Respondent possess a:
a.   Firearms Purchaser ID Card?          ☐ Yes  ☐ No  ☐ Unknown
b.   Permit to Purchase a Handgun?        ☐ Yes  ☐ No  ☐ Unknown
c.   Permit to Carry a Handgun?           ☐ Yes  ☐ No  ☐ Unknown

### Certification

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Date

_____
Signature of Petitioner

I was assisted in the completion of this petition by _____.

_____
Date

_____
Signature