# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| DAVID M. GRECO, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>GURBIR S. GREWAL, New Jersey Attorney General; JARED M. MAPLES, Director, New Jersey Office of Homeland Security and Preparedness; NEW JERSEY OFFICE OF HOMELAND SECURITY AND PREPAREDNESS, a Cabinet Level Department of the State of New Jersey; CAMDEN COUNTY PROSECUTOR'S OFFICE, a municipal entity of the state of New Jersey; JILL S. MAYER, Acting Camden County Prosecutor; NEVAN SOUMILAS, Assistant Camden County Prosecutor; GLOUCESTER TOWNSHIP POLICE DEPARTMENT, a Municipal Entity of the State of New Jersey; BERNARD JOHN DOUGHERTY, Detective, Gloucester Township Police Department; NICHOLAS C. AUMENDO, Patrolman, Gloucester Township Police Department; DONALD B. GANSKY, Detective Sergeant, Gloucester Township Police Department; WILLIAM DANIEL RAPP, Detective, Gloucester Township Police Department; BRIAN ANTHONY TURCHI, Patrolman, | Hon. Brian R. Martinotti, U.S.D.J.<br>Hon. Tonianne J. Bongiovanni, U.S.M.J.<br><br><br>Docket No. 3:19-cv-19145-BRM-TJB<br><br><u>**CIVIL ACTION**</u><br><br>**(ELECTRONICALLY FILED)**<br><br>Motion Return Date: July 20, 2020 |

| Gloucester Township Police Department; "JOHN DOE #1" (a fictitious name); and "JOHN DOES 2-10" (fictitious names), | |
| --- | --- |
| Defendants. | |

REPLY BRIEF OF DEFENDANTS GURBIR S. GREWAL, JARED M. MAPLES, NEW JERSEY OFFICE OF HOMELAND SECURITY AND PREPAREDNESS, CAMDEN COUNTY PROSECUTOR'S OFFICE, JILL S. MAYER, AND NEVAN SOUMALIS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, NJ 07101
Attorney for Defendants Gurbir S. Grewal, Jared M. Maples, New Jersey Office of Homeland Security and Preparedness, Camden County Prosecutor's Office, Jill S. Mayer, and Nevan Soumalis
973-648-7811
Bryan.Lucas@law.njoag.gov

Joseph C. Fanaroff
Jeremy Feigenbaum
Michael C. Walters
Assistant Attorneys General
   Of Counsel and On the Brief


Rachel Simone Frey
Bryan Edward Lucas
Robert McGuire
Deputy Attorneys General
   On the Brief

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT ...............................................................1

STANDARDS OF REVIEW ....................................................................2

ARGUMENT .........................................................................................3

    POINT I: THIS COURT MUST ABSTAIN FROM HEARING THIS CASE
    ON THE MERITS ..........................................................................3

    POINT II: THE MOTION TO DISMISS PLAINTIFF'S FIRST AND
    FOURTH AMENDMENT CLAIMS (COUNTS ONE AND THREE)
    SHOULD BE GRANTED ................................................................5

        A.  Count One (Fourth Amendment) ....................................................6

        B.  Count Three (First Amendment) ....................................................7

    POINT II:   PLAINTIFF'S   CROSS-MOTION   MUST   BE   DENIED
    ..................................................................................................8

        A.  This Court Should Not Grant Summary Judgment To Plaintiff On
        His Second Amendment And Due Process Theories ...........................8

        B.  Plaintiff's State Law Claims Are Barred By Sovereign Immunity
        .........................................................................................13

        C.  Plaintiff Did Not Plead Any Other Claims .....................................15

CONCLUSION ....................................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986)...............................................................................2

*Arizona v. California*,
  460 U.S. 605 (1983)...............................................................................4

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney General*,
  910 F.3d 106 (3d Cir. 2018) .................................................................10

*Bellevue Drug Co. v. Caremarks PCS*,
  582 F.3d 432 (3d Cir. 2009) ...................................................................4

*City of San Diego v. Boggess*,
  216 Cal. App. 4th 1494 (Cal. Ct. App. 2014)......................................10

*Crespo v. Crespo*,
  972 A.2d 1169 (N.J. App. Div. 2009) ........................................... 12, 13

*Davis v. Gilchrist Cty. Sheriff's Office*,
  280 So. 3d 524 (Fla. Ct. of App. 2019) ...............................................10

*Ex parte Young*,
  209 U.S. 123 (1908)..............................................................................14

*Farina v. Nokia, Inc.*,
  625 F.3d 97 (3d Cir. 2010) .....................................................................4

*Hawksbill Sea Turtle v. FEMA*,
  126 F.3d 461 (3d Cir. 1997) ...................................................................5

*Heller v. Dist. of Colum.*,
  554 U.S. 570 (2008)..........................................................................9, 13

*Hope v. State*,
  133 A.3d 519 (Conn. 2016) ..................................................................10

*In re Forfeiture of Pers. Weapons and Firearms Identification Card*,
   139 A.3d 67 (N.J. 2016) ....................................................................13

*In re PennEast Pipeline Co., LLC*,
   938 F.3d 96 (3d Cir. 2019) ................................................................14

*King v. Christie*,
   981 F. Supp. 2d 296 (D.N.J. 2013).....................................................14

*Lombardo v. Pennsylvania*,
   540 F.3d 190 (3rd Cir. 2008) .............................................................15

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)..................................................................... 11, 12

*Pa. Fed'n of Sportsmen's Clubs v. Hess*,
   297 F.3d 310 (3d Cir. 2002) ..............................................................14

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984).............................................................................14

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992)..............................................................................7

*Raygor v. Regents of the Univ. of Minn.*,
   534 U.S. 533 (2002)...........................................................................14

*Redington v. State*,
   992 N.E.2d 823 (Ind. App. 2013) ......................................................10

*S.M. v. K.M.*,
   81 A.3d 723 (N.J. App. Div. 2013) ......................................................7

*Seila Law LLC v. Consumer Financial Protection Bureau*,
   No. 19-7, 2020 WL 34926412 (U.S. June 29, 2020)...........................17

*Sprint Commc'n Inc. v. Jacobs*,
   571 U.S. 69 (2013)................................................................................3

*State v. Cassidy*,
  843 A.2d 1132 (N.J. 2004) ............................................................. 11, 12

*State v. Hemenway*,
  216 A.3d 118 (N.J. 2019) ...................................................................6

*Taylor v. Sanders*,
  536 F. App'x 200 (3d Cir. 2013) ......................................................16

*Wisconsin v. Mitchell*,
  508 U.S. 476 (1993)...........................................................................7

*Younger v. Harris*,
  401 U.S. 37 (1971)..................................................................... passim

## **Statutes**

N.J. Stat. Ann. § 2C:25-17 ...................................................................11

N.J. Stat. Ann. § 2C:25-28(j) ..............................................................12

## **Rules**

Fed. R. Civ P. 12(b)(1)...........................................................................2

Fed. R. Civ P. 12(b)(6)...........................................................................2

Fed. R. Civ. P. 15(a).............................................................................16

Fed. R. Civ. P. 56(a)...............................................................................2

## **Other Authorities**

Introduction Statement to A1217 ........................................................13

## **PRELIMINARY STATEMENT**

Plaintiff is overcomplicating a simple case. Ten months ago, law enforcement officers initiated a civil enforcement action against Plaintiff under the ERPO Act. A state court judge sided with those officers the next day, finding that Plaintiff had to be briefly dispossessed of his weapons because he posed an "immediate and present danger of bodily injury to self or others by owning or possessing any such firearms or ammunition." And the state court set a hearing for a mere five days later, to enable Plaintiff to press his case in response. There is no dispute that Plaintiff could have participated in that hearing. And there is no dispute that, at that hearing, Plaintiff had the ability to raise constitutional challenges to the ERPO Act—just as other litigants have done in the context of similar laws. Plaintiff decided not to do so. Instead, one month later, Plaintiff brought a challenge in *federal* court, seeking an injunction that would directly interfere with the ongoing state court proceedings. The doctrine the Supreme Court announced in *Younger v. Harris* is designed to prevent these sorts of litigation tactics, and nothing Plaintiff says is to the contrary. This Court has yet to address *Younger*'s applicability to this case. It should do so now.

In its effort to stave off a motion to dismiss, and to obtain summary judgment, Plaintiff seeks to turn this case on its head. No longer is Plaintiff's lawsuit limited to the allegations in his Complaint. Instead, Plaintiff claims that this Court must strike down the ERPO Act in its entirety based on a whole array of new theories. Plaintiff,

of course, does rehash arguments (rejected by this Court) that his Fourth Amendment rights were violated, even though the judge in his case made the finding of probable cause that he demands. And he rehashes the same arguments that the TERPO in his case reflected retaliation in violation of the First Amendment, another claim that this Court already rejected. But Plaintiff now also relies on claims regarding procedural due process that have been rebuffed by every court to consider them; state law claims that cannot be heard in light of New Jersey's sovereign immunity; and federal claims that appear nowhere in this Complaint. It should be for the state court to sift through these claims, but if this Court undertakes the task, then it should reject them all. Far from beyond invalid in its entirety, the ERPO Act is entirely lawful.

## <u>STANDARDS OF REVIEW</u>

In their Opening Brief, Defendants described the applicable standards relevant to their motion to dismiss under Rules 12(b)(1) and 12(b)(6). Regarding Plaintiff's motion for summary judgment, such relief is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

**ARGUMENT**

**POINT I**

**THIS COURT MUST ABSTAIN FROM HEARING
THIS CASE ON THE MERITS.**

As the State explained in its Opening Brief, the federal courts should abstain

from hearing Plaintiff's challenge to the EPRO Act in light of the related, pending

state civil enforcement proceeding against him. That proceeding is plainly the kind

of civil enforcement proceeding that is sufficiently "akin to a criminal prosecution,"

*Sprint Commc'n Inc. v. Jacobs*, 571 U.S. 69, 79 (2013), to warrant abstention. *See*

ECF 65 at 12-20. Plaintiff does not deny the presence of pending civil enforcement

proceedings; does not deny that every single constitutional challenge he raises here

could be raised in those proceedings; and does not grapple with any of the Supreme

Court and Third Circuit decisions abstaining from analogous proceedings.

Plaintiff offers just two responses to *Younger*. First, Plaintiff says, there is an

exception for *Younger* abstention where a state law "flagrantly and patently" violates

constitutional rights. ECF 69-2 at 20. But that exception is inapplicable. For one, the

ERPO Act is plainly not "flagrantly and patently violative of express constitutional

provisions *in every clause, sentence, and paragraph, and in whatever manner and*

*against whomever an effort might be made to apply it*"—the standard the Supreme

Court set for this exception. *Younger v. Harris*, 401 U.S. 37, 53-54 (1971) (emphasis

added). That is why Plaintiff has not identified any analogous cases in which a court

3

declined to abstain on these grounds. For another, whatever this Court may conclude about the "good cause" language in the ERPO Act, there is no "flagrant" violation where (as this Court already recognized) the State's Chief Law Enforcement Officer mandated use of the probable cause standard instead, and the state court in Plaintiff's case explicitly relied on such a finding of probable cause. And finally, even if this Court thought it did not have to abstain from hearing the Fourth Amendment claim on the basis of this exception, this logic would not extend to any of Plaintiff's other claims, and Plaintiff includes no arguments that it would.

Second, Plaintiff claims this Court already rejected application of *Younger* at the preliminary injunction stage, and that under the "law of the case" doctrine, this Court may not now deviate from that prior decision. *See* ECF 69-2 at 6, 14-15. Not so. Law of the case doctrine only applies "when a court decides upon a rule of law, which then govern[s] the same issues in subsequent stages in the same case." *Farina v. Nokia, Inc.*, 625 F.3d 97, 117 n. 21 (3d Cir. 2010) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see also Bellevue Drug Co. v. Caremarks PCS*, 582 F.3d 432, 439 (3d Cir. 2009) (confirming that "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit'"). In a case on which Plaintiff himself relies, the Third Circuit explained that findings at the preliminary relief stage should have binding effect only if "circumstances make it likely that the findings are 'sufficiently

4

firm' to persuade the court that there is no compelling reason for permitting them to be litigated again." *Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 474 n.11 (3d Cir. 1997); *see also id.* (noting this "turns on a variety of factors, including whether the parties were fully heard, whether the court filed a reasoned opinion, and whether that decision could have been, or actually was appealed"). Here, Plaintiff cannot identify any language in any opinion in this case that mentions, let alone decides, application of *Younger* to this suit. While it is true this Court did not abstain at the preliminary relief stage, that was likely because this Court was declining to issue the requested injunction and did not have to resolve the State's abstention arguments conclusively. Indeed, in issuing an opinion denying the preliminary relief, this Court did not say anything regarding *Younger*, and certainly did not reject the State's position.

This Court can decide now whether to abstain from hearing this case. Plaintiff has failed to rebut the compelling argument for doing so.

## POINT II

### THE MOTION TO DISMISS PLAINTIFF'S FIRST AND FOURTH AMENDMENT CLAIMS (COUNTS ONE AND THREE) SHOULD BE GRANTED.

Even if this Court decides not to abstain, it should still grant Plaintiff's motion to dismiss both Count One (Fourth Amendment) and Count Three (First Amendment retaliation) of the Complaint. Plaintiff's Fourth Amendment claim fails because, as this Court found, the warrant issued in conjunction with the TERPO in Plaintiff's

5

case was based on the constitutionally-sufficient probable cause standard. Plaintiff's First Amendment claim likewise fails because the ERPO Act in no way regulates speech, and Plaintiff has not sufficiently alleged the seizure of his firearms resulted from any interference with his protected speech.

A.    Count One (Fourth Amendment)

As Defendants argued in their Opening Brief, there is no relief this Court can grant as to Plaintiff's Fourth Amendment claim. *See* ECF 65 at 20-23. After all, the core argument in Plaintiff's brief is that search warrants can issue only on a finding of probable cause. But his did, as this Court already recognized. *See* ECF 57 at 14-15 ("[B]ased on the record before the Court, the warrant for Plaintiff's rifle and ammunition was issued upon a finding of probable cause, and as such, the warrant was issued in a constitutional manner.").

Plaintiff's response misunderstands the State's argument. Plaintiff claims it is "delusional" for the State to defend against a Fourth Amendment challenge because this Court already found "the plain language of the ERPO Act" to violate the Fourth Amendment. ECF 69-2 at 24. But the State's response does not turn on the propriety of the "good cause" phrase after *State v. Hemenway*, 216 A.3d 118 (N.J. 2019). To the contrary, the State's point is that the Attorney General and Administrative Office of the Courts issued directives addressing this very issue, and these directives "have the force of law" in New Jersey. *See* ECF No. 57 at 4 nn. 3 & 4 (citing *S.M. v. K.M.*,

6

81 A.3d 723, 728 n.2 (N.J. App. Div. 2013)). Probable cause is therefore already the established standard for New Jersey courts and law enforcement officers, which is why this Court rightly decided that the ERPO Act, "as it is currently being enforced, is constitutional." ECF 57 at 23 n.18. By continuing to focus on the text and ignoring subsequent developments, Plaintiff overlooks the reality on the ground.

For these reasons, Plaintiff's Fourth Amendment claim should be dismissed, and his cross-motion for summary judgment on this count should be denied. Plaintiff may well believe that there was insufficient evidence to support any probable cause finding in his case, but he can press that issue to the appropriate state court.

B. Count Three (First Amendment)

In its Opening Brief, the State explained that the ERPO Act does not restrict speech as a general matter, and did not restrict Plaintiff's speech as applied. *See* ECF 65-1 at 23-26. With respect to the former, the State explained that the statute allows a state court judge to temporarily dispossess someone of their weapons based on the dangers they pose to others, not as a punishment for their speech. While speech can be *evidence* of that danger, that does not run afoul of the First Amendment. *See id.* at 24 (citing *Wisconsin v. Mitchell*, 508 U.S. 476 (1993); *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992)). Plaintiff offers no response whatsoever to the State's points on this score, and does not grapple with *Mitchell* or *R.A.V.*

As the State already explained, that means the only way Plaintiff could make out a First Amendment claim is by establishing that the issuance of *this* TERPO is an instance of unlawful retaliation for protected speech. *See* ECF 65-1 at 25-26. In his opposition brief, Plaintiff fails to do so. Rather, Plaintiff conclusorily repeats the assertion from his Complaint that "he is being retaliated against and punished for his words and thoughts (and claimed associations)" in violation of the First Amendment. ECF No. 69-2 at 3; *see also* ECF 1 ¶¶ 69-71 (allegation in Complaint). But this Court already examined Plaintiff's allegations and found them wanting. *See* ECF 57 at 22 (finding no plausible claims that Plaintiff's weapons had been seized "because of the *opinions* he expressed," and noting there are "no details as to what specific instances of speech he is claiming the TERPO is impermissibly punishing him for"). In failing to provide any new arguments or case law in support of its claim, Plaintiff gives this Court no reason to diverge from its prior and correct conclusions.

## POINT III

### PLAINTIFF'S CROSS-MOTION MUST BE DENIED.

A.   This Court Should Not Grant Summary Judgment To Plaintiff On His Second Amendment And Due Process Theories.

In his Complaint and again in seeking summary judgment, Plaintiff appears to advance a theory that the ERPO Act violates the Second Amendment and the Due Process Clause when those provisions are taken together. The linchpin of his theory

8

is that by undermining Plaintiff's Second Amendment rights, the ERPO Act affects fundamental interests in a way that triggers procedural protections. *See* ECF 69-2 at 24 (in arguing that procedural due process rights are violated, relying on Plaintiff's "fundamental Second Amendment Constitutional right to purchase, own and legally possess guns and ammunition the same as all other citizens" (citing *Heller v. Dist. of Colum.*, 554 U.S. 570 (2008)); *id.* at 39 ("Greco now had and still has a *specifically vested right* to purchase, own and legally possess guns and ammunition which can not be unilaterally revoked by the State"). Summary judgment is unwarranted.

The request for a ruling on summary judgment that the ERPO Act violates the Second Amendment is baseless. The only case on which Plaintiff relies for support is *Heller*, a fact this Court previously highlighted. *See* ECF 57 at 17 (raising concerns that, "[m]uch like his other arguments, Plaintiff cites no case law from this District or Circuit to support his contention that the seizure of his rifle and ammunition violates the Second Amendment"). But as this Court already held, "*Heller* does not create the unlimited right to possess firearms that Plaintiff implies." *Id.* Instead, the Supreme Court determined "that the protections of the Second Amendment are not unlimited and do not confer a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* (citation omitted).

Rather, under Third Circuit precedent, Plaintiff has not remotely proven his Second Amendment case. To prevail on this theory, Plaintiff must not only show the

Act burdens a Second Amendment right, but also supply evidence regarding whether the law furthers "a significant, substantial, or important interest," whether there is "a reasonable fit between that asserted interest and the challenged law," and whether the law "burden[s] more conduct than is reasonably necessary." *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney General*, 910 F.3d 106, 119 (3d Cir. 2018) (citation omitted). Despite that, Plaintiff demands judgment in his favor without introducing *any* evidence regarding whether this law, which dispossess individuals of weapons if they present an "*immediate and present danger*" of causing injury to themselves or others, promotes public safety and offers a reasonable way of doing so. And while Plaintiff may reply this is the State's burden, Plaintiff demands summary judgment even before providing the State with an opportunity to introduce evidence, at a time when the State is still seeking to dismiss the Complaint. That strategic call is all the more noteworthy given that every court to consider an analogous legal challenge to a similar law has rejected it. *See* ECF 65-1 at 28-29 (citing *Hope v. State*, 133 A.3d 519 (Conn. 2016); *Redington v. State*, 992 N.E.2d 823 (Ind. App. 2013); *City of San Diego v. Boggess*, 216 Cal. App. 4th 1494 (Cal. Ct. App. 2014); *Davis v. Gilchrist Cty. Sheriff's Office*, 280 So. 3d 524 (Fla. Ct. of App. 2019)).

Plaintiff's efforts to obtain summary judgment by focusing on the procedural due process aspects of his claims fare no better. For one, given that Plaintiff's Second Amendment and Due Process claims are intertwined, Plaintiff's failure to establish

10

the former prevents resolution in his favor of the latter. But in any event, he has also failed at this early stage to prove his procedural claim. The very cases on which he relies set forth that due process is "flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). That evaluation thus requires an analysis of "[f]irst, the private interest that will be affected by the official actions; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* And yet Plaintiff is nevertheless seeking summary judgment without introducing any evidence, and before allowing the State to demonstrate the public safety need for the procedures the Act adopts.

Plaintiff's approach cannot be squared with how challenges to analogous laws and procedures have been handled. The ERPO Act was largely modeled on the New Jersey Prevention of Domestic Violence Act ("PDVA"), N.J. Stat. Ann. § 2C:25-17 *et seq.*, which adopts similar *ex parte* procedures to handle emergencies. *See* AOC Directive 19-19 at 1 (discussing ERPO Act's legislative history). Indeed, the PDVA "recognizes that, in certain circumstances, removal of weapons will be necessary to protect a victim," *State v. Cassidy*, 843 A.2d 1132, 1139 (N.J. 2004), and so permits the issuance of a search warrant on probable cause for the seizure of "weapons that

11

the abuser could use to cause further and potentially fatal harm to the victim." N.J.

Stat. Ann. § 2C:25-28(j); *Cassidy*, 843 A.2d at 1139. As courts have recognized,

evaluating the propriety of such procedures requires evaluating competing interests:

the potential victims' interests "in being protected" against the defendants' interests.

*Crespo v. Crespo*, 972 A.2d 1169, 1176 (N.J. App. Div. 2009); *see also id.* (holding

that "the limits imposed upon a defendant's private interests carry far less weight in

the *Mathews* analysis than does the governmental interest in eliminating domestic

violence and in affording immediate and effective protection to victims of domestic

violence"). Given that doctrinal test, Plaintiff's tactical effort to obtain judgment in

his favor before the State can introduce evidence of those interests—as it will here

if this Court declines to abstain, or in state court if this challenge properly proceeds

there—should be rejected. Plaintiff may wish for a resolution that ignores all of the

available evidence confirming the Legislature's conclusions that this Act promotes

public safety and prevents suicide, but he has no right to such result.[1]

Even on the face of his arguments, Plaintiff cannot obtain summary judgment.

As courts have long recognized, legislative findings themselves play a key role in

---

[1] The case itself provides evidence of the compelling public safety interests involved.
The court heard testimony and reviewed evidence before determining Plaintiff posed
a threat to others and made specific findings on that score. *See* ECF 1, Ex. E (noting,
among other things, that Plaintiff "threatened, advocated, and celebrated the killing
of Jewish people" and "post[ed] to social media threads ... glorification of extreme
violence against Jewish people even after encounter with investigators"). That court
scheduled a hearing just five days later for Plaintiff to rebut these findings. *Id.*

evaluating the safety implications of similar laws. *See id.* at 1176 (upholding PDVA procedures based in part on the Legislature's "unmistakable expressions of public policy" relating to "the strong societal interest in protecting persons victimized by domestic violence"). Similar findings also exist in the context of the ERPO Act. *See, e.g.*, Introduction Statement to A1217 at 7 ("The purpose of this bill is to provide law enforcement officers in this State with the means to take away firearms from persons whose friends or family have reported as being mentally unstable."). Indeed, keeping firearms out of the hands of such individuals is precisely one of the interests the Supreme Court cited in listing the "longstanding" laws that withstand scrutiny. *Heller*, 570 U.S. at 626-27. It is thus no surprise that other courts upheld similar laws with analogous procedures, *see* ECF 65-1 at 28-29; *Crespo*, 972 A.2d at 1178 n.10; *In re Forfeiture of Pers. Weapons and Firearms Identification Card*, 139 A.3d 67, 79, 83 (N.J. 2016), which confirms the impropriety of Plaintiff's request.

Plaintiff is not entitled to summary judgment. To the contrary, the State will be able to include evidence demonstrating that the ERPO Act's procedures promote public safety and ultimately withstand constitutional scrutiny.

B.    Plaintiff's State Law Claims Are Barred By Sovereign Immunity.

In his latest brief, Plaintiff establishes that he is pursuing an independent state law claim (Count Four) for an alleged violation of his right to a jury trial under the New Jersey constitution and New Jersey common law, ECF 69-2 at 42-24, among a

13

series of other state law claims. But that focus is misplaced, because this Court lacks jurisdiction to adjudicate any of Plaintiff's state law claims.

It is black letter law that "States are not 'subject to suit in federal court unless' they have consented to suit." *In re PennEast Pipeline Co., LLC*, 938 F.3d 96, 103 (3d Cir. 2019). Although there is a well-established exception to this rule that allows litigants to seek injunctive relief in federal court to prevent violations of *federal* law by States, *see, e.g.*, *Pa. Fed'n of Sportsmen's Clubs v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citing *Ex parte Young*, 209 U.S. 123 (1908)), no such exception exists for claims under *state* law. Instead, a plaintiff suing in federal court "may not bring state law claims - including state constitutional claims - against the State regardless [of] the type of relief it seeks," a prohibition that extends to requests for relief against a state official acting in his official capacity. *King v. Christie*, 981 F. Supp. 2d 296, 310 n.12 (D.N.J. 2013) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984)). Moreover, the fact that a complaint includes federal law claims (as it does here) does not change this analysis, as pendant jurisdiction cannot trump state immunity. *See King*, 981 F. Supp. 2d at 310 n.12 (finding that "supplemental jurisdiction does not authorize district courts to exercise jurisdiction over claims against non-consenting states"); *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 540-41 (2002) (agreeing that "the Eleventh Amendment bars the adjudication of pendant state law claims against non-consenting state defendants").

14

It is of no moment that Defendants did not previously raise this immunity. For one, as Plaintiff has acknowledged, it was not clear that his Complaint was raising an independent state claim due to a typo. *See* ECF 69-2 at 42 n.1 ("Plaintiff agrees that this claim is perhaps unclear. As such Plaintiff will move separately for leave to file a First Amend[ed] Complaint wherein this claim will be expanded and clarified to rest solely on an asserted Article I, Paragraph 9 New Jersey Constitutional right to a Jury Trial at the FERPO hearing."). In other words, the State raised its immunity as soon as it was clear that Plaintiff was raising such state claims. For another, "state sovereign immunity may be raised at any time, including for the first time on appeal even if the state defended the merits of the suit in the district court." *Lombardo v. Pennsylvania*, 540 F.3d 190, 197 n.7 (3rd Cir. 2008) (citation omitted). As a result, even if this Court were to find the State law claims are properly pled in the original Complaint, adjudication of this pendant state law claim is still barred.

C.    Plaintiff Did Not Plead Any Other Claims.

Plaintiff's motion for partial summary judgment raises additional claims that cannot be found in his Complaint. First, Plaintiff asserts that the ERPO Act violates the Equal Protection Clause because it adopts different procedures for complaints against law enforcement officers and for complaints against civilians. *See* ECF 69-2 at 44-46. Second, Plaintiff argues that his First Amendment "right of access" was violated by the confidentiality rules for ERPO proceedings—a claim distinct from

15

the First Amendment retaliation claim he pled. *See id.* at 49. As Plaintiff apparently

recognizes, neither of the claims appear as causes of action in his current Complaint.

*See id.* at 42 n.13 ("Indeed if the Court does not rule in Plaintiff's favor … Plaintiff

will seek to amend his complaint to include the additional constitutional claims now

discussed as cumulative reason for striking the entirety of the statute."). Because

neither cause of action was pled, they cannot be considered on summary judgment.

*See, e.g.*, *Taylor v. Sanders*, 536 F. App'x 200, 203 (3d Cir. 2013) ("At the summary

judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend

the complaint in accordance with Fed. R. Civ. P. 15(a).").

Plaintiff believes that he can argue the ERPO Act violates these constitutional

provisions without including them in his Complaint because they go to his ultimate

argument that the law must be struck down in its entirety. *See* ECF 69-2 at 42 ("The

Civil ERPO Act is literally a minefield of constitutional violations just waiting to be

raised. Though not raised in Plaintiff's initial Complaint, such additional basis of

unconstitutionality is directly relevant for a court to consider when determining

whether to sever, or strike the entirety of a statute."). As a threshold matter, it is not

clear whether Plaintiff thinks the purportedly unconstitutional portions of the ERPO

Act could be severed. *Compare* ECF 69-2 at 41 ("However, this Federal Court here

and now does not have to decide this question to conclusively rule in Plaintiff's favor

and strike down the entirety of the ERPO Act rather than server the unconstitutional

sections."), *with id*. at 41-42 ("[I]t is evident that the entirety of the ERPO Act should be stricken as unconstitutional."). But there is a more basic problem: "severability" is not a legal cause of action in and of itself. Instead, the severability analysis follows only *after* this Court finds the relevant statute suffers from legal shortcomings. *See, e.g.*, *Seila Law LLC v. Consumer Financial Protection Bureau*, No. 19-7, 2020 WL 34926412, *18-19 (U.S. June 29, 2020) (noting that the severability analysis is part of the assessment of the "appropriate remedy" once a violation is established). So if Plaintiff wants this Court to consider any legal infirmities as part of such analysis, he must plead them in the Complaint and prove them to this Court. They cannot be considered as part of the current summary judgment analysis.

## **CONCLUSION**

For these reasons, this Court should grant Defendants' motion to dismiss and deny Plaintiff's cross-motion for partial summary judgment.

Dated: July 6, 2020                   Respectfully Submitted,

                                      GURBIR S. GREWAL
                                      ATTORNEY GENERAL OF NEW JERSEY

                        By:    /s/ Bryan Edward Lucas
                               Bryan Edward Lucas
                               Deputy Attorney General

17