<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

DAVID M. GRECO,

                  Plaintiff,

v.

GUBIR S. GREWAL, *et al.*,

                  Defendants.

Case No. 3:19-cv-19145 (BRM) (TJB)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

    Before the Court is Plaintiff David M. Greco's ("Plaintiff") Second Motion for Class Certification. (ECF No. 59.) Defendants New Jersey Attorney General Gubir S. Grewal, Jared M. Maples, and the New Jersey Office of Homeland Security and Preparedness ("New Jersey OHSP") (collectively, the "State Defendants"), and the Camden County Prosecutor's Office, Jill S. Mayer, and Nevan Soumails (collectively, the "County Defendants") opposed the Motion. (ECF No. 67.) Defendants Gloucester Township Police Department, Bernard John Dougherty, Nicholas C. Aumendo, Donald B. Gansky, William Daniel Rapp, and Brian Anthony Turchi (collectively, the "Township Defendants" and with State and County Defendants, "Defendants")[1] filed letter correspondence joining and adopting the legal arguments advanced by the State and

---

[1] Plaintiff also names John Doe Nos. 1–10 as Defendants. (ECF No. 1 at 2.) John Doe No. 1 is described as, "a name for the yet to be identified person(s) who anonymously identified themselves on September 5, 2019 only with the pseudonym(s) 'NEW JERSEY HOMELAND SECURITY' and 'PDPACE2.'" (*Id.* at 9) (capitalization in original). John Does Nos. 2–10 are identified as, "fictious names for yet to be identified persons or entities that participated and/or conspired with the other named Defendants to violate Plaintiff[']s Federal Constitutional Rights." (*Id*. at 10.)

County Defendants and providing limited briefing of their own. (ECF No. 68.) Plaintiff replied to Defendants' oppositions in a single filing. (ECF No. 70.)

The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below and for good cause appearing, Plaintiff's Second Motion for Class Certification is **DENIED**.

**I.  BACKGROUND**

**A.  Factual Background**[2]

The New Jersey Extreme Risk Protective Order Act of 2018 (the "ERPO Act"), N.J. Stat. Ann. §§ 2C:58-20 *et seq.*, was signed into law on June 13, 2018. (ECF No. 1 at 10.) The ERPO Act allows a qualified petitioner to request that a state court issue a Temporary Extreme Risk Protection Order ("TERPO") preventing a respondent from, *inter alia*, possessing firearms and ammunition for a limited period of time. § 2C:58-23(g). In their filing with the court, a petitioner must allege "the respondent poses a significant danger of bodily injury to self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm." *Id.* § 2C:58-23(a). Under the statute, a family member, household member, or law enforcement officer are the only individuals qualified to petition for the entry of a TERPO. *Id.* § 2C:58-21. A TERPO shall be issued if the court finds "*good cause* to believe that the respondent poses an immediate and present danger of causing bodily injury to [themselves] or others" because they own or possess a firearm. *Id.* § 2C:58-23(e) (emphasis added). A TERPO prohibits the respondent from "having custody or control of, owning, purchasing, possessing, or receiving firearms or ammunition" for the duration of the order. *Id.* § 2C:58-23(g). It further requires a respondent to surrender any firearms and

---

[2] The Court incorporates, in large part, its recitation of the facts contained its February 21, 2020 Opinion. (ECF No. 57.)

ammunition they own or otherwise possess to law enforcement officers. *Id.* If a TERPO is entered, the issuing court forwards a copy of the order to the appropriate law enforcement agency which serves it upon the respondent "immediately, or as soon as practicable." *Id.* § 2C:58-23(i)(2). If the petition indicated the respondent owns or possesses firearms, "the court shall issue a search warrant" contemporaneously with the TERPO. *Id.* § 2C:58-26(b). Within 10 days of the filing of the petition, the court will hold a hearing to decide whether to issue a Final Extreme Risk Protective Order ("FERPO"). *Id.* § 2C:58-24(a). After its issuance, a FERPO may be terminated at any time if the respondent shows by a preponderance of the evidence that they "no longer pose[] a significant danger of causing bodily injury" to themselves or others. *Id.* § 2C:58-25.

On August 12, 2019, the New Jersey Administrative Office of the Courts issued "Directive #19-19" (the "AOC Directive"),[3] promulgating guidelines for the issuance of TERPOs. (ECF No. 1, Ex. B.) The AOC Directive noted that while the statutory language of the ERPO Act uses the phrase "good cause," a TERPO can only be issued upon a showing of probable cause. (*Id.* at 6.) Similarly, on August 15, 2019, Attorney General Grewal issued "Law Enforcement Directive

---

[3] Directives from the New Jersey Administrative Office of the Courts have the force of law. *See S.M. v. K.M.*, 81 A.3d 723, 728 n.2 (N.J. Super. Ct. App. Div. 2013); *see also State v. Morales*, 915 A.2d 1090, 1091 (N.J. Super. Ct. App. Div. 2007); N.J. Ct. R. 1:33-3.

No. 2019-2" (the "AG Directive")[4] which reiterated that the probable cause standard determines whether a search warrant can be issued in conjunction with a TERPO. (ECF No. 1, Ex. C.)[5, 6]

By the plain language of the statute, the ERPO Act was effective as of September 1, 2019. *Id.* § 2C:58-20. On September 5, 2019, a petition for a TERPO (the "Petition") was filed against Plaintiff. (ECF No. 1 ¶ 41.) The Petition identified "New Jersey Department of Homeland Security" as the petitioner. (ECF No. 1, Ex. D at 1.) No named individual was listed under the heading "Petitioner's Information" and the field under "Relationship to Respondent" was filled in with, "PEPD – PETITIONER LAW-ENFORCEMENT OFFICER."[7] (*Id.*) On the petitioner's

---

[4] Directives from the Attorney General have "the force of law for police entities" and are "binding and enforceable on local law enforcement agencies." *O'Shea v. Twp. of W. Milford*, 982 A.2d 459, 465–466 (N.J. Super. Ct. App. Div. 2009); *see also Seidle v. Neptune Twp.*, No. 17-4428, 2019 WL 5685731, at *18 (D.N.J. Oct. 31, 2019).

[5] The AG Directive further states that in instances where law enforcement officers only have good cause to believe that the respondent poses an immediate risk of causing bodily injury, they "may still seek a TERPO petition and order, but *not* a search warrant." (ECF No. 1, Ex. C at 5) (emphasis added).

[6] The AOC Directive and AG Directive were issued in response to the New Jersey State Supreme Court's holding in *State v. Hemenway*. 216 A.3d 118 (N.J. 2019). In *Hemenway*, law enforcement officers executed a search warrant on Hemenway's home stemming from a temporary restraining order issued under the Prevention of Domestic Violence Act ("PDVA"), N.J. Stat. Ann. §§ 2C:25-17 *et seq*. *Id*. at 121. The PDVA "empowers a judge . . . to enter an order authorizing the police to search for and seize . . . weapons that may pose a threat to the victim." *Id*. at 120. Much like the ERPO Act, the statutory text of the PDVA allows a search warrant to be issued upon a showing of "good cause." *Id*. at 128. During their search of Hemenway's home, law enforcement officers recovered various quantities of illegal narcotics and Hemenway was subsequently charged with drug offenses. *Id*. The New Jersey Supreme Court reversed the Superior Court's denial of Hemenway's motion to suppress the fruits of the search. *Id*. at 121. The court held the "good cause" standard upon which the search warrant was issued was impermissibly lesser than the constitutionally required standard of "probable cause." *Id*.

[7] State Defendants identify the petitioner as "a law enforcement officer with the New Jersey OHSP." (ECF No. 32 at 10.)

4

signature line, "NEW JERSEY HOMELAND SECURITY" was typed in. (*Id.* at 2.) The Petition referenced several of Plaintiff's previous arrests and included the following:

> Information was recently obtained, through FBI contacts, that David Greco is involved in online anti-Semitism. Greco was found to be in contact with the Pittsburgh synagogue shooter, before the mass shooting that took place in October 2018. After the recent August 2019 mass shootings in both Ohio and El Paso, precautions were taken and contact was made with Greco. In coordination with the FBI, officers reached out to Greco in regards to recent posts on the social media site Gab.com. All previous social media accounts were blocked due to the nature of the content. While talking to Greco, he appeared extremely intelligent to officers and did not mention acting on any violent behavior toward Jews. His behavior was methodical and focused on facts, specifically from Nazi Germany. Greco believes that force or violence is necessary to realign society. Greco frequently mentioned his disdained [sic] for the Jewish Talmud and how he believes that Jews are raping our women and children.

(*Id.*)[8]

An *ex parte* TERPO hearing was held before the Hon. Edward McBride, J.S.C., on September 6, 2019. (ECF No. 1 ¶ 50.) In addition to the Petition, Judge McBride considered the live testimony of an New Jersey OHSP Agent, "copies of social media posts from 'Gab.com,' reports from [the] FBI and GTPD" printouts of other social media posts made by Plaintiff. (ECF No. 1, Ex. E at 1.) The court found Plaintiff had previously "threatened, advocated, and celebrated the killing of Jewish people and has celebrated the mass shootings in Pittsburgh and New Zealand" in public social media posts. (*Id.*) The court further noted Plaintiff was "extremely agitated and angry" when law enforcement officers went to speak with him about the posts and that he had a history of "threats or acts of violence directed towards self or others." (*Id.* at 3.) On this record, the court granted the Petition and issued a "no-knock" search warrant for Plaintiff's residence. (*Id.*

---

[8] The Petition and several other relevant exhibits contain fields where text has been typed in all caps. For ease of reading, the Court has converted the text to sentence case when quoting from these exhibits. For brevity, future alterations of the same kind are not noted.

at 3–4.) Later that day, Township Defendants served Plaintiff with a TERPO and executed the search warrant, seizing: (1) Plaintiff's New Jersey Firearms Purchaser ID Card, (2) Plaintiff's rifle, and (3) ammunition for the rifle. (ECF No. 1 ¶¶ 53–54.) Plaintiff's FERPO hearing was initially scheduled for September 11, 2019 but was later moved to December 9, 2019. (ECF No. 32 at 13.) The FERPO hearing was subsequently adjourned until January 27, 2020, "in part to allow the State to respond to several motions" filed by Plaintiff in his State Court proceeding. (ECF No. 44 at 1.)

### B. Procedural History

On October 21, 2019, Plaintiff filed a three-count class action Complaint in this Court challenging the constitutionality of the ERPO Act, alleging a cause of action pursuant to 42 U.S.C. § 1983 for violations of the First, Second, Fourth, and Fourteenth Amendments, and moving for preliminary injunctive relief. (*See generally* ECF No. 1.) The Court heard oral argument on Plaintiff's motion for a preliminary injunction on November 20, 2019. (ECF No. 39.) On January 17, 2019, the Court ordered the parties to provide supplemental briefing on the issue of standing. (ECF No. 51.) On February 21, 2020, the Court denied Plaintiff's motion for a preliminary injunction, finding he had failed to demonstrate irreparable injury would occur in the absence of an injunction. (*See generally* ECF No. 57.)

On February 24, 2020, Plaintiff filed the present Motion. (ECF No. 59.) On May 21, 2020, after several adjournments, Defendants opposed Plaintiff's Motion. (ECF Nos. 67, 68.) On June 3, 2020, Plaintiff replied. (ECF No. 70.)

## II.    LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 348 (2011). "To invoke this exception, every putative class action must satisfy the four requirements of

Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). A class may be certified pursuant to Rule 23(a) of the Federal Rules of Civil Procedure[9] when:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four requirements are customarily referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *Dukes*, 564 U.S. at 349. In addition, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are known as "predominance" and "superiority," respectively. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008). Additionally, when certification is sought under Rule 23(b)(3), the Third Circuit has found that a prerequisite to an analysis of the Rule 23(a) requirements is the determination of ascertainability of the proposed class. *See Marcus*, 687 F.3d at 592–93.

"[T]he requirements set out in Rule 23 are not mere pleading rules." *In re Hydrogen Peroxide*, 552 F.3d at 316. The burden is on the plaintiff "of establishing each element of Rule 23 by a preponderance of the evidence." *Marcus*, 687 F.3d at 591. This requires "actual" not "presumed" conformance with Rule 23's requirements. *Id.* "Class certification is proper only 'if

---

[9] All references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide*, 552 F.3d at 309 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

## III.   THE PARTIES' POSITIONS

### A.   Plaintiff's Position

Despite acknowledging that Defendants have yet to file responsive pleadings,[10] Plaintiff argues that the Court has sufficient information to certify the proposed class because "the reality is that the statute is indeed facially unconstitutional and the reality is that the only defense asserted to date (that [Defendants] will follow an Administrative Judicial memo rather than the literal text of the actual law) is no legitimate defense at all." (ECF No. 59-3 at 15 (citing *Winberry v. Salisbury*, 74 A.2d 406 (N.J. 1950)).)

Plaintiff further contends that all Rule 23(a) factors are satisfied in the present matter and, accordingly, the Court should certify the proposed class. (*Id.* at 16.) As to numerosity, Plaintiff argues that joinder is impracticable because: (1) the number of members of the proposed class is beyond what other courts have found sufficient; (2) "Plaintiffs could not join the future stream of class members because their number changes every day as more TERPOs and search warrants are issued"; (3) the majority of potential plaintiffs will lack the resources to bring suit on their own; and (4) adjudicating this matter through a class action would conserve judicial resources. (*Id.* at 19.) As to commonality, Plaintiff contends that the requirement is satisfied "because the legal and factual questions arising from Defendants' procedures and practices do not vary from one [c]lass member to the next." (*Id.* at 20 (citation omitted).) Plaintiff further asserts that "although

---

[10] The present Motion was filed on February 24, 2020. (ECF No. 59.) Defendants ultimately filed Motions to Dismiss on May 11, 2020. (ECF Nos. 66, 69.) Plaintiff also filed a previous motion for class certification on January 10, 2020. (ECF No. 48.)

different members may have entered the system through different factual contexts and suffered different degrees of harm, that does not diminish the commonality among them with respect to the uniform policies and practices applied to them." (*Id.*) As to typicality, Plaintiff argues his claims "are typical of—indeed identical to—the claims of the [other] members of the proposed [c]lass." (*Id.* at 21.) Finally, as to adequacy, Plaintiff asserts that he has no potential conflicts of interest with other proposed class members and that he and his counsel will vigorously prosecute this action on the behalf of the proposed class. (*Id.* at 21–22.) In addition to satisfying the four Rule 23(a) factors, Plaintiff contends requirements of Rule 23(b)(2)[11] are also satisfied and, accordingly, class certification is proper. (*Id.* at 23.)

### B. Defendants' Position

Defendants advance multiple arguments in opposition. As a preliminary matter, Defendants argue the Motion should be denied because this Court should abstain from hearing the case and because Plaintiff's complaint fails to state a claim, rendering the issue of class certification moot. (ECF No. 67 at 3.)

Alternatively, Defendants argue that Plaintiff's Motion cannot withstand the rigorous analysis required under Rule 23. (*Id.* at 7.) As to numerosity, Defendants argue that Plaintiff has not met his burden of establishing that joinder of the prospective class is impracticable because "Plaintiff . . . seemingly relies primarily on his presumption that TERPOs and search warrants have been issued to 'well over 200 persons to date'" and that this "blanket assertion" is insufficient.

---

[11] Although Plaintiff states that "[f]or the reasons discussed below, the [c]lass satisfies Rule 23(b)(3)[,]" Plaintiff's briefing only discusses Rule 23(b)(2). (ECF 59-3 at 23.) This assertion is in further conflict with the opening pages of Plaintiff's Moving Brief where he states he is seeking "[a]n Order certifying the matter as a 'Rule 23(b)(3) [c]lass [a]ction,'" (*id.* at 2), and the beginning of his legal argument section, which reads "Plaintiff seeks an Order pursuant to [Rule] 23(b)(3) certifying this matter a s a 'Rule 23(b)(3) [c]lass [a]ction'" (*id.* at 16).

(*Id.* at 27.) Defendants further assert that Plaintiff cannot satisfy the commonality requirement because "each potential class member's Fourth Amendment claim will rise or fall almost entirely based on highly-individualized factors regarding the contents of that member's search warrant, and the state-court evidentiary record leading up to the issuance of the warrant." (*Id.* at 13.) According to Defendants, Plaintiff's arguments regarding typicality are deficient for similar reasons. (*Id.* at 15.) Finally, Defendants argue that "Plaintiff's application for class certification does not account for the significant privacy interests of non-parties . . . that render it impossible to ascertain the identities of class members." (*Id.* at 33.)

### IV. DECISION

Plaintiff moves to certify the following proposed class:

> Any person who has had a [TERPO] entered against them by the Superior Court of New Jersey under the authority of the "New Jersey Extreme Risk Protective Order Act of 2018", New Jersey Public Law 2018, Chapter 35, now codified at [N.J. Stat. Ann §§] 2C:58-20 through -32, from the date of September 1, 2019 and on any date thereafter."

(ECF No. 59-3 at 16.) The four Rule 23(a) requirements are customarily referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *Dukes*, 564 U.S. at 349. The burden is on the plaintiff to "establish[] each element of Rule 23 by a preponderance of the evidence." *Marcus*, 687 F.3d at 591.

The Court begins by analyzing whether Plaintiff has carried his burden of establishing the commonality requirement by a preponderance of the evidence. After reviewing the record and argument currently before it, the Court concludes that he has not.

"Commonality does not require perfect identity of questions of law or fact among all class members." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015). "[E]ven a single common question will do." *Id.* Indeed, "the focus of the commonality inquiry is not on the strength of each

plaintiff's claim, but instead is on whether the defendant's conduct was common as to all of the class members." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (internal quotation omitted) (citation omitted); *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). The bar of satisfying Rule 23(a)(2) "is not a high one." *Id.* However, the language of Rule 23(a)(2) "is easy to misread, since [a]ny competently crafted class complaint literally raises common 'questions.'" *Dukes*, 564 U.S. at 349 (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (2009)) (internal quotation omitted). The mere recital of common questions, however, is "not sufficient to obtain class certification." *Id.* (noting that, "Do all of us plaintiffs indeed work for Wal–Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?" were examples of insufficient common questions); *see also* Nagareda, *supra* at 132 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.")

Here, Plaintiff's entire argument regarding commonality, apart from a recitation of the basic legal standard,[12] is rather summary:

> The commonality requirement is satisfied here because the legal and factual questions arising from Defendants' procedures and practices do not vary from one Class member to the next. *See Adamson*, 855 F.2d at 676 (application of common policy to all class members suffices to meet commonality requirement). Defendants enforce the facially unconstiotutional [sic] ERPO Act in a routine and consistent way, despite knowing they are acting unlawfully, and all [c]lass members were (and future [c]lass [m]embers will be) similarly subjected to Defendants' policies and procedures. And although

---

[12] Other than a single citation to *Dukes*, Plaintiff's briefing on the issue of commonality is devoid of any reference to Third Circuit or District of New Jersey caselaw. (*See* ECF No. 59-3 at 19–20.)

> different members may have entered the system through different factual contexts and suffered different degrees of harm, that does not diminish the commonality among them with respect to the uniform policies and practices applied to them.

(ECF No. 59-3 at 20.) For these reasons, Plaintiff contends he has satisfied the commonality requirement. (*Id.*) The Court disagrees. In this case, although the legal issue of whether the ERPO Act is constitutional would be common to all members of the putative class, the individualized factual circumstances of each potential class member vitiates the feasibility of class certification, particularly at such an early stage of the litigation. The unique circumstances described in Plaintiff's own complaint aptly demonstrate this issue.

In order for a TERPO to issue, the petitioner must make a filing with the court wherein they must adequately allege "the respondent poses a significant danger of bodily injury to self or others by having custody or control of, owning, possessing, purchasing, or receiving a firearm." N.J. Stat. Ann. § 2C:58-23(a). If the court finds "good cause to believe that the respondent poses an immediate and present danger of causing bodily injury to [themselves] or others" because they own or possess a firearm, a TERPO shall be issued. *Id.* § 2C:58-23(e). However, as the Court previously stated when it denied Plaintiff's motion for a preliminary injunction, "the plain text of the search warrant issued in conjunction with the [Plaintiff's] TERPO . . . indicates the [State] court found 'probable cause exists to believe . . . [Plaintiff] poses an immediate and present danger of bodily injury to self or others by owning or possessing any such firearms or ammunition.'" (ECF No. 57 at 14 (citing ECF No. 1, Ex. E at 4).) The Court concluded that "[w]hile the language of the ERPO Act may be facially unconstitutional . . . the warrant for Plaintiff's rifle and ammunition was issued upon a finding of probable cause, and, as such, the warrant was issued in a constitutional manner." (*Id.* at 14–15.) The Court also noted that its analysis could proceed no further because "Plaintiff opposed Defendants' letter request (ECF No. 19) to admit records from

the TERPO hearing—including transcripts, exhibits, and other evidence [the State court judge] considered when issuing his ruling (ECF No. 22)—effectively preventing this Court from analyzing Plaintiff's own claim that a standard lesser than probable cause was used." (ECF No. 57 at 14.)

The Court would be required to perform or, at least attempt to perform, a similar analysis for all putative members of the proposed class. Because of the highly individualized nature of this inquiry, the Court finds that it is likely, if not nearly certain, that each putative plaintiff would come to this case with a unique set of factual circumstances undergirding their claim. Moreover, the analysis and resolution of each plaintiff's factual contentions—*i.e.* whether the TERPO in their case was issued upon a finding of probable cause—would not resolve any issues for the other plaintiffs because the Defendants' conduct would be materially different as to each plaintiff. *See Rodriguez*, 726 F.3d at 382 ("[T]he focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is on whether the defendant's conduct was common as to all of the class members."). The bald assertion that all putative plaintiffs suffered a violation of the same law is also generally insufficient to satisfy the commonality requirement. *See, e.g.*, *Dukes*, 564 U.S. at 349–50 ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury' . . . [but t]his does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for

13

example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161. "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Dukes*, 564 U.S. at 351 (citation omitted). Here, the Court is not satisfied that Plaintiff has met his burden by proving by a preponderance of the evidence that the Rule 23 factors for class certification are satisfied. Plaintiff's Second Motion for Class Certification, accordingly, is **DENIED**.[13]

## V.   CONCLUSION

For the reasons set forth above, Plaintiff's Second Motion for Class is **DENIED**. An accompanying Order will follow.

Date: September 29, 2020

*s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

---

[13] Because the Court finds Plaintiff has failed to establish commonality, it does not reach the merits of the parties' remaining arguments.