**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID M. GRECO,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>GURBIR S. GREWAL, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 3:19-cv-19145 (BRM) (TJB)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

　　　Before the Court are three Motions: (1) Defendants New Jersey Attorney General Gubir S. Grewal ("Attorney General Grewal"), Jared M. Maples, and the New Jersey Office of Homeland Security and Preparedness ("New Jersey OHSP") (collectively, the "State Defendants"), and the Camden County Prosecutor's Office, Jill S. Mayer, and Nevan Soumails' (collectively, the "County Defendants") Motion to Dismiss Plaintiff's Complaint under the *Younger*[1] doctrine pursuant to Federal Rule 12(b)(1) and for failure to state a claim for which relief could be granted pursuant to Rule 12(b)(6) (ECF No. 65); (2) Defendants Gloucester Township Police Department, Bernard John Dougherty, Nicholas C. Aumendo, Donald B. Gansky, William Daniel Rapp, and Brian Anthony Turchi's (collectively, the "Township Defendants" and with State and County Defendants, "Defendants") Motion to Dismiss for failure to state a claim for which relief could be

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

granted pursuant to Rule 12(b)(6)[2] (ECF No. 66); and (3) Plaintiff David M. Greco's ("Plaintiff") Cross Motion for Partial Summary Judgment Pursuant to Federal Rule of Civil Procedure 56. (ECF No. 69.) Plaintiff opposes both of Defendants' Motions. (ECF No. 69.) The State and County Defendants filed a Reply (ECF No. 75), as did the Township Defendants (ECF No. 78). Having reviewed all of the filings submitted in connection with the Motions and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Defendants' Motions to Dismiss are **GRANTED** and Plaintiff's Cross Motion for Partial Summary Judgment is **DENIED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[3]

Plaintiff filed a three-count class action Complaint in this Court on October 21, 2019, challenging the constitutionality of the Extreme Risk Protection Order ("EPRO") Act, alleging a cause of action pursuant to 42 U.S.C. § 1983 for violations of the First, Second, Fourth, and Fourteenth Amendments, and moving for preliminary injunctive relief. (*See generally* ECF No. 1.) On November 8, 2019, the State and County Defendants jointly opposed Plaintiff's motion. (ECF No. 32.) On the same day, the Township Defendants filed correspondence joining and adopting the legal arguments advanced by State and County Defendants but declining to provide any additional briefing of their own. (ECF No. 33.) The Court heard oral argument on the Motion on November 20, 2019. (ECF No. 39.) Per the Court's Order (ECF No. 51), the parties submitted

---

[2] The Township Defendants clarify in their brief that they "repeat and incorporate the legal argument set forth in Point 1 of the State Defendants' brief as if set forth more fully herein and respectfully request this Court abstain from considering this case." (ECF No. 66-1 at 7 n.3.)

[3] The underlying facts are set forth at length in this Court's February 21, 2020 Opinion (ECF No. 57) and its September 29, 2020 Opinion (ECF No. 84). In the interest of judicial economy, the Court refers the parties to those opinions for a full recitation of the factual background of this dispute, as well as its procedural history.

supplemental briefs on the issue of standing. (ECF Nos. 52, 53, 55.) On February 21, 2020, the Court denied Plaintiff's Motion for Preliminary Injunction. (ECF No. 57.) Plaintiff then filed a Second Motion for Class Certification on February 24, 2020 (ECF No. 59), which the Court denied on September 29, 2020. (ECF No. 84.)

On May 11, 2020, the Township Defendants filed a Motion to Dismiss Greco's Complaint. (ECF No. 66.) Also on May 11, 2020, the State and County Defendants filed a Motion to Dismiss Greco's Complaint. (ECF No. 65.) On June 1, 2020, Plaintiff filed a Cross Motion for Partial Summary Judgment. (ECF No. 69.) The State and County Defendants filed their Reply on July 6, 2020. (ECF No. 75.) On July 7, 2020, the Township Defendants filed their Reply. (ECF No. 78.)[4]

## II. LEGAL STANDARD

The Defendants move to dismiss Greco's complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am.*, N.A., No. CIV. 12-03922 RBK, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (citing *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)). Because the Court finds that *Younger* abstention applies and requires dismissal, it will not recite the Rule 12(b)(6) standard or the Rule 56 summary judgment standard.

---

[4] On December 10, the Court received an email sent directly from Greco. This email was forwarded to Greco's attorney. However, the Court will not consider any part of the email since it is an unauthorized *ex parte* communication. 28 C.F.R. § 76.15(a) ("No party or attorney representing a party shall communicate in any instance with the Judge on any matter at issue in a case, unless notice and opportunity has been afforded for the other party to participate.").

In considering dismissal for lack of subject-matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief but rather on whether the court has jurisdiction to hear the claim and grant relief. *Maertin v. Armstrong World Industries, Inc.*, 241 F. Supp. 2d 434 (D.N.J. 2002).

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis*, 824 F.3d at 346. A facial attack "challenges the subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.* (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows a court [to] weigh and consider evidence outside the pleadings." *Id.* (citation omitted). Thus, when a factual challenge is made, "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "the plaintiff will have the burden of proof that jurisdiction does in fact exist," and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348-49 (collecting cases). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (quoting *Kulick v. Pocono*

4

*Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)). "In this vein, when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id.* (citing *Mortensen*, 549 F.2d at 892 (holding that dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)). These cases make clear that "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id.*

Defendants do not challenge the facts in Greco's complaint (*see generally* ECF No. 65), so this Court finds Defendants are making a facial 12(b)(1) challenge to this Court's subject matter jurisdiction. Therefore, the Court considers this facial 12(b)(1) challenge before reaching the merits of the pending motions and considers the allegations in the light most favorable to Plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen*, 549 F.2d at 891.

## III. DECISION

There are two components to the *Younger* analysis: (1) Defendants' argument in favor of abstention and (2) Greco's argument in favor of this Court's application of the law-of-the-case doctrine.

### A. *Younger* Abstention

The State and County Defendants argue this Court should abstain from this action under *Younger* because there is an ongoing state proceeding. (ECF No. 65-1 at 12.) The Township Defendants "repeat and incorporate" State and County Defendants' abstention argument. (ECF No. 66-1 at 7 n.3.) Greco argues the issue of *Younger* abstention was already decided in his favor, and re-litigation of that issue is barred by the law-of-the-case doctrine. (ECF No. 69-2 at 12.) In

their Reply, State and County Defendants contend the law-of-the-case doctrine does not apply, since the doctrine only applies "when a court decides upon a rule of law, which then governs the same issues in subsequent stages in the same case." (ECF No. 75 at 4 (citing *Farina v. Nokia, Inc.*, 625 F.3d 97, 117 n.21 (3d. Cir. 2010)).) The Township Defendants' Reply does not include further argument on the issue of abstention. (*See generally* ECF No. 78.)

The *Younger* abstention doctrine gives a federal court the "discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend the principles of comity by interfering with an ongoing state proceeding." *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). However, "abstention rarely should be invoked," *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992), and is only appropriate "in a few carefully defined situations." *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992). *Younger* abstention is only appropriate where the following three requirements are satisfied: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims. *Id.* at 1200 (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989)).

In *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court "narrowed *Younger's* domain." *Malhan v. Sec'y of U.S. Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019). Consequently, a court must first determine whether the parallel state action falls within one of "three exceptional categories": (1) criminal prosecutions, (2) "certain civil enforcement proceedings," and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78.

In light of these threshold factors, Defendants[5] argue in favor of *Younger* abstention because "[p]roceedings under the EPRO Act are the kind of civil enforcement suits that require abstention, because all three of the hallmarks the Supreme Court and Third Circuit described are present." (ECF No. 65-1 at 14.) The Court will first analyze Defendants' arguments regarding these threshold factors. Then the Court will assess whether Defendants meet the three additional requirements set forth in *Younger*.

Under *Sprint*, to be considered a "civil enforcement proceeding," the state proceeding must generally be "akin to a criminal prosecution" and, if it is, is therefore said to be "quasi-criminal" in nature. *Sprint*, 571 U.S. at 78. In determining whether underlying proceedings are quasi-criminal in nature, the Court considers whether:

> (1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges. ... We also consider whether the State could have alternatively sought to enforce a parallel criminal statute.

*PDX N., Inc. v. Comm'r New Jersey Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 882–83 (3d Cir. 2020) (citing *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014)). As this Court has previously noted, "[t]hese factors are not a mandatory checklist for quasi-criminal proceedings; instead, a court determining a state proceeding's quasi criminal character weighs the factors above; no single factor is dispositive." *PDX N., Inc. v. Asaro-Angelo*, No. 3:15-CV-7011-BRM-TJB, 2019 WL 3416836, at *4 n.5 (D.N.J. July 29, 2019) (citing *Sprint Commc'ns*, 571 U.S.

---

[5] The arguments in favor of *Younger* abstention are set forth in the State and County Defendants' brief (ECF No. 65-1), but since the Township Defendants incorporate the State and County Defendants' brief into their own, the Court will collectively refer to the arguments in State and County Defendants' brief as arguments on behalf of "Defendants."

at 79-81), *aff'd in part, rev'd in part and remanded sub nom. PDX N., Inc. v. Comm'r New Jersey Dep't of Labor & Workforce Dev.*, 978 F.3d 871 (3d Cir. 2020).

Under the first threshold factor, "a state actor [will] routinely [be] a party to the state proceeding and often initiates the action." *Sprint*, 571 U.S. at 79. "To be sure, the Supreme Court has not directly held that *Younger* applies only when a state actor files a complaint or formal charges." *ACRA Turf Club*, 748 F.3d at 140. However, "the state's 'initiation' procedure must proceed with greater formality than merely sending a targeted advisory notice to a class of people that may be affected by new legislation." *Id.*

Defendants argue a state actor will routinely be a party to the proceeding under the ERPO Act because the Act "establishes that petitions will regularly filed by law enforcement officers" and "makes clear that law enforcement officers have a duty to take over or join in any petition filed by a family or household member when the officer has probable cause to believe the temporary extreme risk protection order ("TERPO") standard is met." (ECF No. 65-1 at 14.) According to Defendants, "[i]t is impossible to separate the role of state actors from the ERPO process." (*Id.* at 15.)[6]

Under the EPRO Act, the proceedings for a TERPO are initiated by a "petitioner" which is "a family or household member or law enforcement officer." N.J. Stat. Ann. § 2C:58-21. While a law enforcement officer, a state actor, may initiate the proceedings, that is not always the case. But even if the proceeding is initiated by a "family or household member" state actors are readily involved at each stage of the proceeding. *See* N.J. Stat. Ann. § 2C: 58-23(a). Specifically, "[p]rior

---

[6] Greco does not raise any counterarguments in response to Defendants' arguments about the threshold factors or *Middlesex* factors. Instead, Greco relies exclusively on his arguments in favor of the application of the law-of-the-case doctrine and emphasizes abstention as "the rare exception and not the usual rule." (ECF No. 69 at 12-21.)

8

to filing a petition with the court, a family or household member may request assistance from a State, county, or municipal law enforcement agency which shall advise the petitioner of the procedure" for completing the petition for the TERPO. *Id.* Additionally, "[a] law enforcement officer from the agency may assist the family or household member in preparing or filing the petition." *Id.* The Act clarifies this assistance can include "joining in the petition, referring the matter to another law enforcement agency for additional assistance, or filing the officer's own petition with the court." *Id.* While the statute permits, but does not require, initiation or involvement by a state actor, the proceeding against Greco was initiated by the New Jersey Department of Homeland Security, a state actor. (*See* ECF No. 1, Ex. D at 1.) Accordingly, the Court finds the TERPO proceeding was initiated by New Jersey in its sovereign capacity, for the purposes of *Younger*.

For the second threshold factor, the Court will consider "whether the proceeding sanctions wrongful conduct." *PDX N., Inc.*, 978 F.3d at 883. Defendants contend the EPRO Act "involves imposition of a 'sanction' as the term has been understood for purposes of *Younger* abstention" because, in response to a determination that a person presents threat of danger to themselves or others, the court temporarily prohibits that person from possessing firearms and requires their surrender. (ECF No. 65-1 at 16.)

"[Q]uasi-criminal proceedings of this ilk share several distinguishing features." *Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 181 (3d Cir. 2014). For instance, the proceeding will "characteristically [be] initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act." *Sprint*, 571 U.S. at 79. This is more than simply "negative consequences." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 140 (3d Cir. 2014). "Sanctions are retributive in nature and are typically imposed to punish the sanctioned party

9

'for some wrongful act.'" *Id.* (quoting *Sprint*, 571 U.S. at 79). Sanctions must be more than the mere "cost of doing business, with the choice of whether to make such payment resting entirely with Plaintiffs." *Id.*

After a judge finds the respondent poses "an immediate and present danger of causing bodily injury" to themselves or others "by having custody or control of, owning, possessing, purchasing, or receiving a firearm" the judge must issue the TERPO. N.J. Stat. Ann. § 2C:58-23(e). The TERPO prohibits the respondent from possessing firearms and "during the period the protective order is in effect" the respondent must "surrender firearms and ammunition in the respondent's custody or control . . . and any firearms purchaser identification card, permit to purchase a handgun, or permit to carry a handgun." *Id.* § 2C:58-23(g). Additionally, violation of any order issued under the ERPO Act "shall constitute an offense under N.J. Stat. Ann. § 2C:29-9(e). *Id.* § 2C: 58-29. In *Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, the Third Circuit found a disciplinary hearing and potential termination of employment sanctions for the "wrongful conduct" of making false statements. 755 F.3d 176, 182 (3d Cir. 2014). The Court clarified "the 'sanction' is clear; if the charges were sustained, Gonzales faced termination of his employment." *Id.* Here, Greco's "wrongful conduct" is posing an "immediate and present danger of causing bodily injury" to himself or others. *See* N.J. Stat. Ann. § 2C:58-23(e). The New Jersey Department of Homeland Security's petition referenced Greco's online Anti-Semitism, contact with the Pittsburgh synagogue shooter before the mass shooting, Greco's beliefs that "force or violence is necessary to realign society," and his disdain "for the Jewish Talmud and how he believes that Jews are raping our women and children." (ECF No. 1, Ex. D at 2.) Upon this information, the Superior Court granted the petition, and the Township Defendants seized Greco's New Jersey Firearms Purchaser ID Card, Greco's rifle, and ammunition for the rifle. (ECF No. 1 ¶¶ 53-54.)

Because the removal of firearms was "imposed to punish" Greco for the "wrongful act" of posing an immediate and present danger to himself or others, the Court finds this factor weighs in favor of finding the proceedings against Greco were quasi-criminal in nature.

For the last threshold factor, the Court must consider "whether there is also a criminal analog to this action." *PDX N., Inc.*, 978 F.3d at 884. Here, Defendants note "the EPRO Act is housed in the state's criminal code; that the proceedings occur in the Criminal Part; and that violations of EPROs are 'offenses'" under N.J. Stat. Ann. § 2C:58-29. (ECF No. 65-1 at 17.) Additionally, Defendants contend the ERPO Act features an investigation before the proceeding, since the Act "demands submission of an affidavit by law enforcement . . . which can only come from a pre-initiation investigation." (*Id.* at 15 (citing N.J. Stat. Ann. § 2C:58-23(a)-(b)).) Defendants also note "the petition and the TERPO in this case . . . demonstrate that an investigation preceded OHSP's filing, and as part of the investigation, officers even interviewed Plaintiff." (*Id.* at 16 n.4.)

Often, "the proceeding [will be] both in aid of and closely related to criminal statutes." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975). A proceeding is more likely to be quasi-criminal if "the State could have alternatively sought to enforce a parallel criminal statute" that "vindicates similar interests." *ACRA Turf Club*, 748 F.3d at 138; *see also Trainor v. Hernandez*, 431 U.S. 434, 444 (1977); *Gonzalez*, 755 F.3d at 182. For that reason, "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Sprint*, 571 U.S. at 79-80; *see also Gonzalez*, 755 F.3d at 182.

As Defendants note, the ERPO Act is part of New Jersey's Criminal Code and prosecutors are charged with providing evidence to court in support of a TERPO, based on a set of factors.

N.J. Stat. Ann. § 2C: 58-23(f). Here, there is no "parallel criminal statute"[7] the State could have enforced that would "vindicate similar interests," since the Act created a procedure that had not existed prior to its enactment. New Jersey Senate Committee Statement, S.B. 2259, 6/4/2018 (stating the bill "establishes a process and procedures for obtaining a protective order against persons who pose a significant danger of bodily injury to themselves or others by possessing or purchasing a firearm"). However, the proceedings under the Act are investigatory and "culminate in the filing of a formal complaint." *See Sprint*, 571 U.S. at 79-80. Under the Act, the petition must include an "affidavit setting forth the facts tending to establish the grounds of the petition . . . and to the extent available, the number, types, physical description, and locations of any firearms and ammunition" believed to be in the respondent's possession. N.J. Stat. Ann. § 2C: 58-23(b). The petition is then filed with the court, which must "examine under oath the petitioner and any witness the petitioner may produce" but may "in lieu of examining the petitioner . . . rely on an affidavit submitted in support of the petition." *Id.* § 2C: 58-23(d). In this case, law enforcement monitored Greco's social media posts for months, received evidence from a member of Greco's household that he possessed a firearm at home, and interviewed Greco at his home as part of their investigation. (ECF No. 1, Ex. D at 1-2.) After this investigation, the New Jersey Department of Homeland Security filed a petition against Greco. (*See* ECF No. 1, Ex. D.) Because the proceedings in this case featured an investigation that "culminat[ed] in the filing of a formal complaint," this last factor weighs in favor of finding the action was quasi-criminal. In view of all three factors,

---

[7] The Act specifies "[f]iling a petition pursuant to this section shall not prevent a petitioner from filing a criminal complaint or applying for a restraining order pursuant to the 'Prevention of Domestic Violence Act of 1991.'" N.J. Stat. Ann. § 2C: 58-23(a). To the extent that Act qualifies as a criminal statute, there may indeed be a criminal analog.

this Court finds the ERPO Act proceeding against Greco is quasi-criminal in nature. *See PDX N., Inc.*, 978 F.3d at 884.

Because the Court finds that Defendants have satisfied the threshold requirements, it will now assess whether Defendants meet the *Middlesex* factors. First, the Court considers whether there are ongoing state judicial proceedings. Defendants argue there "clearly are ongoing state judicial proceedings" because the Complaint was commenced in the New Jersey Superior Court and "the state court continues holding status conferences." (ECF No. 65-1 at 18.) The Department of Homeland Security's TERPO petition was initiated on September 5, 2019. (ECF No. 1, Ex. D.) Greco filed this action before this Court on October 21, 2019. (*See id.*) Because the TERPO proceeding was initiated before Greco filed his Complaint in federal court, there is an "ongoing state judicial proceeding." This would remain true even if the state court proceeding was stayed. *PDX N., Inc.*, 978 F.3d at 885 (noting "state court proceedings 'are "ongoing" for *Younger* abstention purposes, notwithstanding a state court's stay of proceedings' if the state proceeding 'was pending at the time the plaintiff filed its initial complaint in federal court'" (quoting *Addiction Specialists, Inc.*, 411 F.3d at 408-09)). Therefore, this factor weighs in favor of abstention under *Younger*.

Second, the Court must consider whether the EPRO Act proceedings implicate an important state interest. For this factor, Defendants argue the state judicial proceedings implicate important state interests because the Act seeks to protect New Jersey residents "from the threat of injury at the hands of a person found to present an immediate and present danger." (ECF No. 65-1 at 18.) "The State of New Jersey has, undoubtedly, a significant, substantial and important interest in its citizens' safety." *Drake v. Filko*, 724 F.3d 426, 437 (3d Cir. 2013). The main function of the EPRO Act's procedure is to ensure those deemed a danger to themselves or others do not

have ready access to firearms. Because the Act furthers the state's "interest in its citizens' safety," the Court finds the Act's proceedings implicate important state interests.

Lastly, the Court considers whether Greco has an adequate opportunity to raise his federal claims though the state proceedings. Defendants contend Greco could make his constitutional arguments at his final extreme risk protection order ("FERPO") hearing and on appeal at the state court level. (ECF No. 65-1 at 18.) "It is sufficient under *Middlesex*, that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986). Not only would Greco be able to raise his constitutional claims in state court, but as this Court has previously noted, "the ERPO Act allows Plaintiff to seek the return of his property at a FERPO hearing where he would be permitted to raise constitutional arguments." (ECF No. 57 at 15.) Accordingly, based on all the factors presented above, the Court will abstain under *Younger*.

### B. The Law-of-the-Case Doctrine

Greco states he is "specifically relying upon the earlier ruling made by this Court at an earlier stage—the preliminary injunction stage—of this very same litigation." (ECF No. 69-2 at 13-14.) Because the Court decided to hear—and ultimately deny—Greco's prior Motion for Preliminary Injunction, Greco argues this Court has already chosen not to abstain and is bound by that decision. Greco also identifies three exceptions to the "law of the case" doctrine: (1) the availability of new evidence, (2) the announcement of a supervening new law; and (3) a clearly erroneous decision that would create manifest injustice, and contends none of them apply to this action. (ECF No. 69-2 at 14 (citing *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116-17 (3d Cir. 1997)).) In addition, Greco argues "Defendants have

already briefed, argued, and lost the literally identical 'Abstention Doctrine' argument at the preliminary injunction phase." (ECF No. 69-2 at 15.)

In their Reply, Defendants highlight "findings at the preliminary relief stage should have binding effect only if 'circumstances make it likely that the findings are "sufficiently firm" to persuade the court that there is no compelling reason for permitting them to be litigated again.'" (ECF No. 75 at 4-5 (citing *Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 474 n. 11 (3d Cir. 1997)).) Defendants also note this Court did not say anything regarding *Younger* in its previous opinion, and argue "Plaintiff cannot identify any language in any opinion in this case that mentions, let alone decides, application of *Younger* to this suit." (ECF No. 75 at 5.)

The Court is not persuaded by Greco's argument that the law-of-the-case doctrine applies. "Under the law-of-the-case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Am. Civil Liberties Union v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) (citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816 (1988)). However, a court "may reconsider issues that we previously resolved if any of the following 'extraordinary circumstances' are present: (1) there has been an intervening change in the law; (2) new evidence has become available; or (3) reconsideration is necessary to prevent clear error or a manifest injustice." *Id.* at 188 (citation omitted) (internal quotation marks omitted).

Greco's reliance on the law-of-the-case doctrine is improper because "while the law of the case doctrine bars courts from reconsidering matters actually decided, it does not prohibit courts from revisiting matters that are avowedly preliminary or tentative." *Council of Alternative Political Parties v. Hooks,* 179 F.3d 64, 69 (3d Cir.1999) (quotation omitted); *see R.R. Yardmasters of Am. v. Pennsylvania R.R. Co.,* 224 F.2d 226, 229 (3d Cir.1955)

("Preliminary injunctions are, by their nature, tentative and impermanent."); *see also Bowers v. City of Philadelphia*, No. CIV.A. 06-3229, 2008 WL 5234357, at *3 (E.D. Pa. Dec. 12, 2008) ("Courts generally do not apply the law-of-the-case doctrine to matters decided in the context of a motion for a preliminary injunction."). Further, the Third Circuit has rejected the same argument Greco is making before the Court. In *Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo*, the Association argued the District Court "[could not] apply *Younger* after electing to rule on the Association's preliminary injunction motion." 339 F. App'x 232, 240 (3d Cir. 2009). The Third Circuit disagreed because "[t]he District Court's denial of a preliminary injunction motion in this case was not a proceeding of substance on the merits." *Id.* For these reasons, the Court will not apply the "law of the case" doctrine to its denial of Greco's Motion for Preliminary Injunction. Because the Court rejects Greco's law-of-the-case argument and finds abstention proper[8] under *Younger*, Greco's complaint is dismissed for lack of subject matter

---

[8] This Court previously issued an opinion denying Plaintiff's Motion for Class Certification (ECF No. 84) without ruling on abstention. "The abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 (1971) . . . represents the sort of 'threshold question' we have recognized may be resolved before addressing jurisdiction."). *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005). Additionally, "the issue of abstention is a threshold matter that should be resolved before proceeding to the merits of a claim." *Mancilla-Coello v. McIntosh*, No. 607CV1446ORL19UAM, 2007 WL 4115293, at *1 (M.D. Fla. Nov. 16, 2007) (citing *Tenet v. Doe*, 544 U.S. 1, 6 n. 4 (2005)); *see Ford Motor Co. v. Ins. Comm'r of Pennsylvania*, 874 F.2d 926, 931 (3d Cir. 1989) (deciding abstention issues before reaching merits of constitutional claims); *see also Belloti v. Baird*, 428 U.S. 132, 143 n. 10 (1976) (determining that abstention may be raised by the court *sua sponte*).

Based on the above, abstention need not be decided at the outset of an action, so long as it is decided before the merits of the case. In deciding motions for class certification, a court's analysis of Rule 23's prerequisites "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal–Mart Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Here, the Court's analysis in its opinion denying Greco's Motion contained no such overlap. Greco argued in favor of class certification because "the reality is that the statute is indeed facially unconstitutional." (ECF No. 84 at 8.) In ruling on Greco's Motion, the Court did not analyze the merits of Greco's claim—that New Jersey's EPRO statute was facially unconstitutional—at any point. Instead, the Court noted Greco's argument regarding commonality was only a paragraph long and emphasized "[o]ther than a single citation to *Dukes*, Plaintiff's briefing on the issue of commonality is devoid of any

jurisdiction. *Dickerson v. Bank of Am., N.A.*, No. CIV. 12-03922 RBK, 2013 WL 1163483, at *2 (D.N.J. Mar. 19, 2013). As a result of abstention, the Court will also deny Greco's Cross Motion for Partial Summary Judgment.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are **GRANTED.** Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**[9] and Plaintiff's Cross Motion for Partial Summary Judgment is **DENIED**. An appropriate Order follows.


Date: December 11, 2020                            *s/ Brian R. Martinotti*
                                                   **HON. BRIAN R. MARTINOTTI**
                                                   **UNITED STATES DISTRICT JUDGE**

---

reference to Third Circuit or District of New Jersey caselaw." (*Id.* at 11 n.12.) After highlighting the deficiency of Greco's Motion, it proceeded to note "although the legal issue of whether the ERPO Act is constitutional would be common to all members of the putative class, the individualized factual circumstances of each potential class member vitiates the feasibility of class certification." (*Id.* at 12.) Because the Court only addressed the logistical issues associated with a potential class action, and did not engage in the kind of "overlap" that *Dukes* envisioned for most cases, this Court did not decide the merits of Greco's case in denying class certification. Since the Court has not yet "proceeded to the merits" of Greco's claim, it may still rule on abstention in this matter.

[9] The Third Circuit has clarified when there is no merits-based decision, dismissal of a federal case "does not implicate claim preclusion or otherwise prevent [a plaintiff] from returning to federal court if [their] ongoing state prosecution concludes without a resolution of [their] federal claims." *Eldakroury v. Attorney Gen. of New Jersey*, 601 F. App'x 156, 158 (3d Cir. 2015). "Such a non-merits dismissal is by definition without prejudice." *Id.* (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 505–06 (2001)). As the Court has not made a merits-based decision here, it will dismiss Greco's Complaint without prejudice. *See Zahl v. Warhaftig,* 655 F. App'x 66, 70-71 (3d Cir. 2016) (stating District Court's finding that *Younger* abstention operated as a dismissal with prejudice was "incorrect" and an "overly broad reading of our *Younger* abstention precedent").